IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DILBAGH SINGH, M.D., PAUL KIRSCH, M.D., V. RAO NADELLA, M.D., and MARTIN JACOBS, M.D., | : : : : : : |
| Relators, | : : |
| v. | : Civil Action No. 04-186E |
| BRADFORD REGIONAL MEDICAL CENTER, V & S MEDICAL ASSOCIATES, LLC, PETER VACCARO, M.D., KAMRAN SALEH, M.D., and DOES I through XX, | : : : : : : : |
| Defendants. | : |

**BRIEF IN SUPPORT OF MOTION TO COMPEL RELATORS
TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES**

Defendant Bradford Regional Medical Center ("BRMC"), by and through its undersigned counsel, moves that Dilbagh Singh, M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D. (hereinafter referred to as the "Relators") be compelled to respond to BRMC's Requests for Production of Documents and to answer Interrogatories in the above-captioned matter.

A.  **BACKGROUND**

This is an action brought under the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3730 by Relators on behalf of the United States against BRMC, V&S Medical Associates, LLC ("V&S"), Peter Vaccaro, M.D. ("Dr. Vaccaro") and Kamran Saleh, M.D. ("Dr. Saleh"). The Complaint essentially alleges that the lease of medical equipment by

1

V&S to BRMC violated the Medicare Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS") and the Physician Self-Referral Act, 42 U.S.C. § 1395nn (the "Stark Law").

On January 3, 2007, BRMC served Interrogatories and Requests for Production of Documents on Relators requesting documents related to the above-captioned matter. Counsel for Relators responded by producing electronic copies of certain documents on February 28, 2007. Additional documents were produced shortly thereafter. However, the responses filed by the Relators to said requests were incomplete. Specifically, the Relators refused to produce any documents responsive to the following requests:[1]

1. Any written disclosure of material evidence and information provided to the United States pursuant to 31 U.S.C. § 3730(b)(2) and any documents related or referring thereto.

2. Any communications with the United States or Commonwealth of Pennsylvania referring or relating to matters alleged in the Complaint.

3. Any affidavit or statement referring or relating to the matters alleged in the Complaint.

4. Any communications with any of the other Relators, any of the Defendants, or any other persons relating to the Complaint or the matters alleged in the Complaint.

9. Any documents referring or relating to any litigation in which any of the Relators were a party during the Relevant Time Period.

10. Any documents referring or relating to any governmental investigation of which any of the Relators were a subject during the Relevant Time Period.

11. Any documents referring or relating to any administrative proceeding in which any of the Relators were a party during the Relevant Time Period.

---

[1] Copies of the Requests for Production and Interrogatories and Responses and Objections of each Relator thereto are attached to the Motion.

2

12. Any documents referring or relating to disputes between any of the Relators and Medicare, Medicaid, TRICARE, CHAMPUS or Non-Governmental Payor or any investigation of Relators by Medicare, Medicaid, TRICARE, CHAMPUS or Non-Governmental Payor during the Relevant Time Period.

13. Any documents referring or relating to any hospital, health system, ambulatory surgery center, diagnostic imaging or testing facility, or other health care facility or entity with which any of the Relators had a Financial Relationship during the Relevant Time Period, or to any such Financial Relationship.

15. Documents evidencing any of the Relators' United States citizenship or, if not a U.S. citizen, any document evidencing current visa status, including, but not limited to, any I-94 form.

17. Any documents related or referring to the Indictment of Dr. Jacobs.[2]

Relators have also refused to provide complete answers to the following Interrogatories served on them:

4. Identify (a) each and every person with whom the Relators have had any communications relating to the Complaint or the matters alleged in the Complaint; (b) the subject matter of such communications; and (c) the date(s) when such communication occurred.

9. Identify any professional corporation, partnership, limited liability company, limited liability partnership, or other entity through, or in affiliation with, which Relators practiced medicine, and with respect to each, identify: (a) the dates when Relators practiced through or in affiliation with such entity; (b) any other physicians who practiced through or in affiliation with such entity; (c) the location of any office(s) of any such entity; (d) the person(s) who have custody or control of the books and records of said entity; and (e) the amount and nature of any remuneration paid to Relators by said entity during each calendar year or part of a year in which he practiced through or in affiliation with such entity.

---

[2] Dr. Jacobs was indicted on six counts alleging violations of Titles 18, 20 and 26 of the United States Code. See U.S. v. Jacobs Criminal Ct. No. 06-58 (W.D. Pa., October 10, 2006).

3

> 10. Identify each and every hospital, health system, ambulatory surgery center, diagnostic imaging or testing facility or other health care facility or entity with which Relators had a Financial Relationship, and, with respect to each, identify: (a) the nature of the Financial Relationship; (b) the date on which it commenced and (if applicable) terminated; (c) the amount and nature of any remuneration paid to Relators as a result of said Financial Relationship during each calendar year or part of a year in which the Financial Relationship was in effect; (d) the number of patients referred to each such entity by Relators for Designated Health Services during each calendar year or part of a year when Relators had a Financial Relationship with the entity; (e) the number of claims submitted by said entity to, and the amount of money paid on said claims to said entity by, each and every Governmental Payor for said Designated Health Service(s) during each calendar year or part of a year in which the Designated Health Service was offered; (f) the location of the principal office of any such entity; and (g) the person(s) who have custody or control of the books and records of said entity.

On March 23, 2007, counsel for all Defendants and for the Relators conducted a telephone conference to discuss the insufficiencies in their response to BRMC's Interrogatories and Requests for Production of Documents. This was followed by a letter dated April 5, 2007, whereby counsel for BRMC wrote the counsel for the Relators to inform them of these deficiencies and to request compliance with BRMC's Interrogatories and Requests for Production of Documents. On April 18, 2007, counsel for Relators produced a Privilege Log, but failed to comply with any other of BRMC's requests. A final conference was held via telephone on May 4, 2007, at which time Relators declined to provide any further documents or information. As of the date of this Motion, the Relators have still not complied with BRMC's requests.

B.   ARGUMENT

The Federal Rules of Civil Procedure provide that "any party may serve on any other party a request to produce … any designated documents…. FED. R. CIV. P. 34(a). The party upon whom the request is served shall serve a written response within 30 days after the

service of the request.  FED. R. CIV. P. 34(b).  Should a party object to a request for production, the requesting party may apply for an order compelling disclosure. FED. R. CIV. P. 37(a).  As such, BRMC has filed a motion to compel the Relators to fully respond to BRMC's Interrogatories and Requests for Production of Documents.

Parties involved in litigation should have the maximum opportunity for discovery open to them.  Buffington v. Wood, 351 F.2d 292 (3d Cir. 1965).  All relevant material is dicoverable unless an applicable evidentiary privilege is asserted.  Coleman v. Sears, Roebuck & Co., 221 F.R.D. 433 (W.D. Pa. 2003).

1.   **Relators' Communications with the Government**

The Relators filed their complaint on July 2, 2004.  Under 31 U.S.C. § 3730(b)(2), a plaintiff in a *qui tam* action must submit a copy of the complaint and written disclosure of substantially all material evidence and information to the government.  Because 31 U.S.C. §3730(b)(2) requires a *qui tam* relator to provide only a statement of facts, and not any information that would be protected by the attorney-client or attorney work product privilege, the Relators should each be compelled to comply with BRMC's Requests for Production Nos. 1 through 4 and Interrogatory No. 4.

While the provisions of the False Claims Act are silent on the matter, case law is clear that a *qui tam* plaintiff's statements to the government are discoverable. See U.S. *ex rel.* v. A.D. Roe Co., 904 F.Supp. 592, 594 (W.D.Ky. 1995)(finding that the statement of material evidence in a *qui tam* action is discoverable); U.S. *ex rel.* Stone v. Rockwell Int'l Corp., 144 F.R.D. 396 (D.Colo. 1992)(finding plaintiff was required to provide the defendant with a copy of confidential disclosure statement served on government in a *qui tam* action); U.S. *ex rel.* Robinson v. Northrop Corp., 824 F.Supp. 830 (N.D.Ill. 1993)(ruling that defendant was entitled to production of statement that plaintiffs were obligated to provide to the Attorney General when they filed their *qui tam* lawsuit); Grand *ex rel.* U.S. v. Northrop Corp., 811 F.Supp. 333 (S.D.Ohio 1992)(finding that written disclosure of substantially all material evidence and information provided to the government was not protected by the attorney-client privilege or the attorney work product).

The courts have balked at the idea of an "absolute privilege" protecting these disclosures from discovery.  U.S. *ex rel.* Cericola v. Ben Franklin Bank, 2003 WL 22071484

at 2 (N.D.Il. 2003). This is because the material evidence and information that a *qui tam* plaintiff provides to the government should not contain the opinions of an attorney, and are thus not privileged. Northrop Corp. at 838-39. These communications also fail to qualify under the attorney-client privilege because any communications from the *qui tam* plaintiff to his or her attorney regarding the complaint are not made for the purpose of obtaining legal advice, but rather are "merely a recitation of facts, [with the intention that they be] given to the government to aid in its determination of whether to prosecute the case." A.D. Roe Co. at 594. Furthermore, there can be no attorney-client privilege where there is no expectation that the communications between the client and attorney will remain confidential. A.D. Roe Co. at 594.

Relators' disclosures to the government cannot be said to fall under the protections of the attorney-client privilege since the "mere recitation of facts" is not subject to the privilege. Further, the Relators clearly had no expectation that any disclosures provided to their attorneys for the purpose of filing their *qui tam* action would remain confidential. The statements were given to their attorneys with the expectation that they would be disclosed to the government, thus waiving any privilege that may have existed. Therefore, the attorney-client privilege does not prohibit the production of the Relators' disclosures to the government.

Nor does the work product privilege. For the work product privilege to apply, Relators would have to show the disclosures provided to the government were provided in "anticipation of litigation." The majority of courts have found that the work product doctrine does not prohibit the discovery of a *qui tam* plaintiff's disclosures to the government. See, e.g., U.S. *ex rel.* Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 401 (D.Colo. 1992)(finding the *qui tam* plaintiff's disclosure statement to be the best summary of the facts available to the defendant); A.D. Roe Co., 904 F.Supp. at 594 (finding that the *qui tam* plaintiff's disclosures to the government were merely a "simple recitation of factual information").

Further, even if the assumption is made that such disclosures were produced in "anticipation of litigation," the materials are not automatically protected if the defendant can demonstrate a "substantial need" for the materials and that it is "unable, without undue

hardship, to obtain the substantial equivalent of the materials by other means." A.D. Roe Co., 904 F.Supp. at 594.

Since BRMC cannot find a more detailed summary of its alleged wrongdoings than those in the Relators' disclosures to the government, "nothing could be more vital to [the] Defendant than to be made completely aware of the allegations against which it must defend." Id. It has long been held that it is "imperative" that the defendant in a *qui tam* action be made aware of the facts supporting the plaintiff's position prior to trial. U.S. *ex rel.* Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 401 (D.Colo. 1992). However, in the matter before the court, the Relators have failed to provide any materials that would allow BRMC to determine the factual allegations in the complaint brought against it. BRMC's need for the Relators' disclosures to the government is therefore exacerbated because the majority of the documents produced by the Relators were minutes from various committees affiliated with BRMC, which BRMC was already in possession of.  Nothing was produced that could allow BRMC to learn the underlying facts of the claims brought against it.

Therefore, BRMC is without doubt in substantial need of the Relators' disclosures given to the government, and, as these materials cannot be replicated by any other discoverable source, "the statement of material evidence is the best source for this information and nothing can serve as its substitute." A.D. Roe Co., 904 F.Supp. at 594. Accordingly, Relators should each be compelled to produce the documents requested by Requests for Production Nos. 1 through 4, and to answer Interrogatory No. 4.

**2.      Relators' Financial Relationships with Entities to Which They Refer Patients**

The Relators' Complaint contends that the Defendants violated the False Claims Act in part because (according to Relators' allegations) the lease of equipment from V&S to BMRC violated the AKS and Stark Law.  Complaint Paragraphs 76-88, 95, and 104.  In order to establish a violation of the AKS, Relators must prove that BRMC acted knowingly and willfully, intending for the payments under the lease to induce V&S to refer patients to BRMC.  U.S. v. Greber, 760 F.2d 68, 72 (3d Cir. 1985).  The phrase "knowingly and willfully" as used in the Anti-kickback Statute has been interpreted as requiring that the

7

person(s) accused of violating the statute "(1) know that [the statute] prohibits offering or paying remuneration to induce referrals, and (2) engage in prohibited conduct with the specific intent to violate the law." Hanlester Network v. Shalala, 51 F.3d 1390 (9th Cir. 1995). It was subsequently held that "a hospital or individual may lawfully enter into a business relationship with a doctor and even hope for or expect referrals from that doctor, so long as the hospital is motivated to enter into the relationship for legal reasons entirely distinct from its collateral hope for referrals." U.S. v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000).

Since Relators must prove that the equipment lease was intended to induce Drs. Saleh and Vaccaro to refer patients to BRMC, rather than simply being a legitimate business arrangement, any similar arrangements that the Relators may have engaged in would be fair game for inquiry on deposition and cross-examination at trial. BRMC should be able to inquire as to whether Relators' arrangements are, in the opinion of Relators, legitimate business arrangements -- as opposed to inherently illegal, as the Relators claim with respect to the BRMC-V&S equipment lease. The jury should be entitled to consider this information when weighing the claims of the Relators that the Defendants have violated the law (which they have not).

Relators Singh, Nadella and Kirsch have stated in responses to interrogatories that they each have "an investment interest in TriCounty Diagnostic Testing" and Dr. Singh further stated that he has served as the Medical Director of that entity. Relator Jacobs stated in responses to an interrogatory that he "worked for TriCounty Diagnostic Testing." On information and belief, TriCounty is a freestanding diagnostic testing facility located in Bradford, Pennsylvania. To the extent that any of the Relators were to have an investment interest in or other financial relationship with a facility to which they refer patients covered by federal health programs like Medicare or Medicaid, the AKS could be implicated if the arrangement was entered into for the purpose of inducing referrals, rather than a legitimate business arrangement with a collateral hope for referrals. Since Relators would undoubtedly take the position that their financial relationship is legitimate, BRMC should be permitted to

obtain information through discovery as to the nature of their financial relationship to determine if it is distinguishable from what Relators claim is inherently suspect about the equipment lease and, if not, why they believe the equipment lease is illegal and their arrangements are not.

The fact that the Relators have brought this case on behalf of the government also does not render their financial relationships with entities to which they refer patients irrelevant. "The False Claims Act empowers the qui tam relator to act as a private prosecutor but does not empower it to replace the government." U.S. *ex rel.* Lamers v. City of Green Bay, Wisconsin, 924 F. Supp. 96, 98 (E.D. Wis. 1996). When the government declines to intervene, it does not become the relator's client. U.S. *ex rel.* Sanders v. Allison Engine Co., 364 F.Supp.2d 716, 718 (S.D. Ohio 2005). "The fact that relators sue in the name of the government is significant only with respect to their standing to sue." U.S. *ex rel.* Kelly v. Boeing Co., 9 F.3d 743, 760 (9th Cir. 1993), cert. denied, 510 U.S. 1140 (1994).

Relators cannot claim to "stand in the shoes of the Government" in order to avoid discovery of their own financial transactions. Relators are in the same position as any other private plaintiff in civil litigation for discovery purposes, and thus must comply with valid discovery requests seeking relevant information. Therefore, the Relators should each be compelled to produce documents responsive to BRMC's Request for Production No. 13 and answer Interrogatories 9 and 10.

**3.     Other Relevant Information**

BRMC has also sought information regarding the Relators, including documents relating to litigation, governmental investigations and administrative proceedings involving the Relators (Requests for Production Nos. 9-11), disputes between Relators and third-party payors (Request for Production No. 12), information about Relators' citizenship or resident alien status (Request for Production No. 15) and information concerning the indictment of Dr. Jacobs (Jacobs Request for Production No. 17) on the basis that such matters are irrelevant to the claims or defenses in this case.

163120.5
May 10, 2007

Generally, parties are entitled to discovery of any matter that is not privileged and relevant to the litigation of their case. See Fed. R. Civ. P. 26(b)(1). Relevant evidence includes evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence need not conclusively prove the ultimate fact in issue, but need only have any tendency to make the existence of any fact which is of consequence more probable or less probable than it would be without the evidence. Huddleson v. U.S., 485 U.S. 681, 687 (1988).

Credibility is always an issue of consequence. U.S. v. Quinto, 582 F.2d 224, 233 (2d. Cir. 1978). Rule 607 of the Federal Rules of Evidence states the credibility of any witness may be attacked by any party. Furthermore, specific instances of a witness's conduct may be inquired into on cross-examination if probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b).

If the Relators were subject to governmental investigations or parties to litigation or administrative proceedings where their conduct was at issue, documents related thereto would be relevant for the purpose of assessing their credibility. So would information about their immigration status, especially if they have not complied with immigration laws. And the facts surrounding the criminal indictment of Dr. Jacobs would certainly be relevant to his credibility.

Therefore, so that BRMC may be able to adequately probe the Relators' credibility, the Relators should be compelled to fully respond to BRMC's Requests for Production Nos. 9-12 and 15. In addition, Dr. Jacobs should be compelled to produce documents responsive to Request for Production No. 17 specifically directed toward him.

## CONCLUSION

For the foregoing reasons, the Court should compel the Relators to answer the Interrogatories and produce documents responsive to the Requests for Production as described above.

May 10, 2007                                         Respectfully submitted,


                                                     /s/ Daniel M. Mulholland III
                                                     Daniel M. Mulholland III
                                                     Pennsylvania No. 28806
                                                     Ian Donaldson
                                                     Pennsylvania No. 203827
                                                     HORTY, SPRINGER & MATTERN, P.C.
                                                     4614 Fifth Avenue
                                                     Pittsburgh, PA 15213
                                                     Phone: (412) 687-7677
                                                     Fax: (412) 687-7692
                                                     dmulholland@hortyspringer.com
                                                     idonaldson@hortyspringer.com

                                                     Attorneys for
                                                     Bradford Regional Medical Center

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the attached document was served on each of the following attorneys via the Court's electronic filings system and/or first class United States mail on the date set forth below:

Via electronic filing and U.S. mail:

        Carl J. Rychcik, Esquire
        Fox Rothschild LLP
        625 Liberty Avenue
        29th Floor
        Pittsburgh, PA  15222-3115

        Andrew M. Stone, Esquire
        Stone & Stone
        828 Frick Building
        437 Grant Street
        Pittsburgh, PA  15219

        G. Mark Simpson, Esquire
        Simpson Law Firm, LLC
        165 North Main Street
        Jonesboro, GA  30236

        Robert L. Eberhardt, Esquire
        Paul E. Skirtich, Esquire
        United States Attorney's Office
        700 Grant Street, Suite 4000
        USPO & Courthouse
        Pittsburgh, PA  15219

Via U.S. mail only:        Michael Granston, Esquire
        U.S. Department of Justice
        Commercial Litigation Branch
        P.O. Box 261
        Ben Franklin Station
        Washington, DC  20044

May 10, 2007        /s/ Daniel M. Mulholland III
        _____
        Daniel M. Mulholland III