IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, *ex rel.*
DILBAGH SINGH, M.D., PAUL
KIRSCH, M.D., V. RAO NADELLA,
M.D., and MARTIN JACOBS, M.D.,                    CIVIL ACTION NO. 04-186E

          Relators,

                                       Judge Cohill

      v.

BRADFORD REGIONAL MEDICAL
CENTER, V&S MEDICAL
ASSOCIATES, LLC., PETER
VACCARO, M.D., KAMRAN SALEH,
M.D., and DOES I THROUGH XX,

          Defendants.

## <u>MEMORANDUM IN OPPOSITION TO DEFENDANT<br>BRADFORD REGIONAL MEDICAL CENTER'S MOTION TO COMPEL</u>

Currently pending before the Court is a Motion to Compel Plaintiff/Relators to produce documents and answer interrogatories filed by Defendant Bradford Regional Medical Center ("BRMC"). For the reasons set forth below the Court should deny the Defendant's motion in its entirety.

### <u>Introduction</u>

The within case was filed by the plaintiff/ relators Dilbagh Singh, M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D. ("Relators") under the *qui tam* provisions of the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended. The complaint alleges that the Defendants perpetrated a scheme wherein they presented false or fraudulent claims for payment or approval to the United States seeking reimbursement for services rendered to patients unlawfully referred to Bradford Regional

Medical Center.  The "kickback/self-referral" scheme arose out of BRMC's equipment sublease with V & S Medical Associates, LLC, an entity owned by Defendant doctors Vaccaro and Saleh, who are medical staff physicians at Bradford Regional.

In their Motion to Compel, BRMC seeks to compel production of Relators' written disclosure statements provided to the United States  Government by Relators pursuant to 31 U.S.C. § 3730(b)(2).  BRMC also seeks to compel production of other communications  with the United States and other information unrelated to claims and defenses that are the subject of the within litigation.

I.      **Relators' Disclosure Statement Constitutes Work Product That Is Not Discoverable  By Defendants**

Under the Federal Rules of Civil Procedure, discovery is limited to matters not privileged.  See F.R. Civ. P. 26(b)(1).  Specifically, the Federal Rules protect materials prepared in anticipation of litigation by a party or that party's representative, including the party's counsel.  F.R. Civ. P. 26(b)(3).  The work-product privilege protects not only communications but also materials obtained or prepared by counsel.  Id.  Further, the "common interest" privilege protects communications  between attorneys for parties who share a common interest with respect to litigation.  See United States v. AT & T, 642 F.2d 1285, 1299-1301 (D.D.C. 1980); United States ex rel. Burroughs v. DeNardi Corp., 167 F.R.D. 680, 685 (S.D. Cal. 1996).

The Disclosure Statement that BRMC seeks was provided to the United States Government pursuant to the Federal False Claims Act, 31 U.S.C. § 3730 (b) (2), which provides in relevant part, that relators serve on the Government a "copy of the complaint

and written disclosure of substantially all material evidence and information" in their possession (referred to herein as Relators' Disclosure Statement). The FCA requires that the Disclosure Statement be provided only to the Government -- it is not filed with the Court, nor is it served on the defendants.

The protection of the confidentiality of these communications serves an important governmental interest in investigating allegations of misconduct. In passing the FCA, Congress intended to provide for free and open disclosure of information to the government, without the fear of disclosure to defendants. To allow defendants to compel disclosure of these communications would violate the United States' interest in encouraging the free flow of information from private citizens concerning matters of fraud. Moreover, this interest can only be protected if the privilege protects communications with DOJ or the affected agency regarding the underlying allegations of misconduct. This interest far outweighs any interest by the defendants for the requested information. To allow production of information provided by relators to the government would undermine the general law-enforcement goals of the FCA.

In this case Relators' Disclosure Statement was prepared pursuant to 31 U.S.C. § 3730 (b)(2) and drafted by counsel in anticipation of this specific litigation. It is classic "work product", which intertwines facts with mental impressions, legal theory, opinions, conclusions and analysis. Courts have widely held that Relators' Disclosure Statements constitute work product. See, e.g., United States ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F. Supp. 1338, 1346 (E.D. Mo. 1996) (holding that disclosure statement is work product because "[t]he plain language of the FCA requires the relator to prepare the document 'in anticipation of litigation'") (citing 31 U.S.C. § 3730 (b)(2) ); United States

ex rel. Burroughs v. DeNardi Corp., 167 F.R.D. 680, 684 (S.D. Cal. 1996) (stating that "it would be difficult for the court to see how [disclosure statements] could be characterized as anything other than 'opinion-work product,' specifically protected from disclosure to opposite counsel, because the disclosure would potentially reveal plaintiff's counsel's mental impressions, opinions and theories about the case"); United States ex rel. Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 401 (D. Colo. 1992) (classifying disclosure statement as "factual work product").

Numerous courts have gone even further, holding that the work product protection completely shields disclosure statements from discovery. See, e.g., United States ex rel. Fallon v. Accudyne Corp., No. 93-C-801-S (W.D. Wis. Mar. 2, 1995) (Memorandum and Order denying motion to compel); United States ex rel. Taxpayers Against Fraud v. Teledyne Ind., No. CV 90-4996-Kn (C.D. Cal. Mar. 16, 1993); United States ex rel. Weber v. Hughes Aircraft Co., No. CV 89-6517 JGD, at 6 (C.D. Cal. Apr. 23, 1992) (Order denying motion for review and reconsideration of denial of motion to compel) (work product protection "easily" applies to a realtor's disclosure statement because the statement was "clearly prepared by a party in anticipation of litigation").

While not aware of any decisions from this district, Relators direct the Court to Magistrate Judge Peter B. Scuderi's thoughtful decision in United States ex rel. Hunt et al v. Merck-Medco Managed Care, LLC et al, 2004 W.L. 868271 (E.D. Pa. 2004). In denying Defendants' Expedited Motion to Compel, Judge Scuderi applied a "work product" analysis and determined that because the disclosure statements were necessarily prepared "in anticipation of litigation", they fall within the general protection of the work product doctrine. He then proceeded to distinguish between "opinion work product" and

"factual work product", the former being absolutely privileged and the latter being discoverable "only upon a showing that the party seeking discovery has a *substantial need* of the materials in preparation of the party's case *and* that the party is unable *without undue hardship* to obtain the substantial equivalent of the materials by other means." <u>US ex rel. Hunt et al. v Merck-Medco et al</u>, *citing*, Fed. R. Civ. P. 26(b)(3) (emphasis added).

In the instant case, while the Defendants have served written discovery, they have yet to schedule any of the Relators' depositions. Defendants will certainly have an opportunity to ask the Relators directly about the factual information that was the subject of the disclosure to the United States. Thus, Defendants cannot demonstrate that they are unable to obtain such information by other means.

Because the Relators' Disclosure Statement is comprised of factual work product inextricably intertwined with legal theories, mental impressions, opinions and conclusions it is absolutely privileged. But even assuming that it was exclusively factual work product, BRMC cannot establish a substantial need for the Disclosure Statement, nor can it demonstrate that it is unable to obtain the substantial equivalent of the Disclosure Statement without undue hardship.

BRMC's argument that any privilege that might apply to the Disclosure Statement has been waived because it was shared with the government is also without merit. A "relator's written disclosure to the government pursuant to section 3730 (b)(2) does not operate as a waiver of work product protection." <u>United States ex rel. Bagley v. TRW Inc.</u>, 212 F.R.D. 554, 562 (C.D. Cal. 2003). Recognizing a joint prosecution privilege in <u>United States ex rel. Purcell v. MWI Corp.</u>, 209 F.R.D. 21 (D.D.C. 2002), the court noted

"Congress has made it clear that it intended to align the interests of the relator with the interests of the government in these cases." Moreover, in <u>United States ex rel. Burroughs v. DeNardi Corp.</u>, 167 F.R.D. 680 (S.D. Cal. 1996), the court reached a similar conclusion:

> In short, the government has a substantial interest in seeing that he litigation is successful against the defendants, whether or not it elects to intervene in the action. For all practical purposes, [relator] and the government are essentially the same party. All of [relator's] claims, litigation strategies, and ultimate goals, are all asserted on behalf of the government. Consequently, the court concludes that[relator] and the government have sufficient commonality of interest such that they can successfully assert the joint prosecution privilege.

167 F.R.D. at 686. <u>*See also*</u>, <u>United States ex rel. Pogue v. Diabetes Treatment Centers of America</u>, 2004 WL 2009413, *3-*5 (D.D.C. May 17, 2004)

## II.    <u>Discovery Of Information Related To Relators' Financial Relationships</u>

In the second part of its Motion to Compel, BRMC argues that it is entitled to documents and answers to interrogatories relating to any financial relationships that the Relators may have with persons or entities to whom they refer patients. As discussed below, such discovery is completely irrelevant to any claim or defense in this case, and appears to be for the sole purpose of harassing Relators.

### A.    <u>Discovery is limited to matters that are relevant</u>.

Although a party is given some latitude in conducting discovery, the scope of discovery is limited by Fed. R. Civ. P. 26(b)(1), which provides that the party "may obtain discovery regarding any matter, not privileged, that is <u>relevant to the claim or defense of any party</u>." (Emphasis added). The current language, requiring that discovery be relevant to a "claim or defense," was adopted in 2000, and replaced language which had more broadly authorized discovery that was relevant to the "subject matter" of the

case.  *See* Advisory Committee Notes to the 2000 Amendments, Comments to

Subdivision (b)(1) (noting that "parties seek to justify discovery requests that sweep far

beyond the claims and defenses of the parties on the ground that they nevertheless have a

bearing on the 'subject matter' involved in the action").   The new "claim or defense

language" was expressly intended to give the Court more ability to control sweeping

discovery on relevance grounds.  *Id*. ("The amendment is designed to involve the court

more actively in regulating the breadth of sweeping or contentious discovery. . . . The

Committee intends that the parties and the court focus on the actual claims and defenses

involved in the action.").

Even before the adoption of the new language of Rule 26(b)(1), the Supreme

Court had recognized certain limitations to discovery in Hickman v. Taylor, 329 U.S.

495, 507 (1947):

> … discovery, like all matters of procedure, has ultimate and necessary
> boundaries.  As indicated by Rules 30(b) and (d) and 31(d), limitations
> inevitably arise when it can be shown that the examination is being
> conducted in bad faith or in such a manner as to annoy, embarrass or
> oppress the person subject to the inquiry.  *And as Rule 26 (b) provides,*
> *further limitations come into existence when the inquiry touches upon the*
> *irrelevant* or encroaches upon the recognized domains of privilege.

(emphasis added).  Following the adoption of the amendments to Rule 26(b)(1), the

Court's authority to inquire into the relevance of proposed discovery is even further

strengthened.  Thus, the Court need not merely defer to BRMC's self-serving assertion

that its proposed discovery is relevant, but should inquire precisely how such discovery is

relevant to a claim or defense in this case.  As discussed below, the proposed discovery is

not relevant, and the only possible purpose for such discovery is a desire to convert this

case into a trial of the Relators.

**B.    The financial relationships of the Relators are not relevant.**

The present case revolves around an equipment lease entered into between BRMC, on the one hand, and Defendant V&S Medical Associates, Ltd. ("V&S"), on the other hand. Relators allege that this lease is a "sham" arrangement, intended to disguise a kickback from BRMC to V&S and its principals, Drs. Vaccaro and Saleh, so as to induce the referral of patients from V&S to BRMC. Relator also alleges that the lease arrangement creates a financial relationship between BRMC and V&S for purposes of the Stark II statute, thus prohibiting the submission of claims to Medicare and Medicaid based on referrals from V&S to BRMC. Defendants do not deny the existence of the lease agreement, but simply contend that it is not a sham and does not violate the Anti-Kickback Statute or the Stark II statute.

Rather than seeking discovery relevant to the claims and defenses in this action, however, BRMC has sought to discover details regarding unrelated financial relationships between Relators and third parties, in particular Tri-County Diagnostic Testing.[1] Notably, neither Relators nor such third parties have anything to do with the lease arrangement that is the subject of this lawsuit.

BRMC's "argument" as to how Relators' relationships with other entities are relevant to this case is patently ridiculous. BRMC states that:

> Since Relators must prove that the equipment lease was intended to induce Drs. Saleh and Vaccaro to refer patients to BRMC, rather than simply being a legitimate business arrangement, any similar arrangements that the Relators

---

[1] The only relationship BRMC identifies or discusses in its brief is the relationship between Relators and Tri-County Diagnostic Testing, which BRMC states is a freestanding diagnostic testing facility in Bradford, Pennsylvania. BRMC Brief, p. 8. Because BRMC makes no argument at all regarding any other discovery requests, Relators take it that BRMC is only seeking to compel responses regarding Relators' relationship with Tri-County, and has waived any other issues. Relators cannot be expected to respond to arguments that BRMC has elected not to make.

may have engaged in would be fair game for inquiry on deposition and cross-examination at trial.

BRMC Brief, p. 8. This assertion is a complete non sequitur. By BRMC's own admission, whether the equipment lease was intended to induce Saleh and Vaccaro to refer patients to BRMC turns on the intent of three parties – BRMC, Vaccaro, and Saleh. It is impossible to see how any financial relationships Relators might have with other entities could have anything to do with the intent of BRMC, Vaccaro, and Saleh in entering into the equipment lease agreement. Certainly BRMC provides no basis to see how this is so.

Of course, it is clear what BRMC is really seeking to do with the discovery requests at issue. Knowing that it has no reasonable basis to argue that the equipment lease was not a sham, it wants to change the subject, and turn the trial into a trial of the Relators. It wants to rummage through Relators' financial dealings, not to find anything that could affect the issue of BRMC's own intent (which is the relevant question), but rather in the hopes of finding something it can point to and say to the jury, "Aha! We did x, but the Relators did y!" Such a fishing expedition is completely unrelated to any claim or defense in this case.

BRMC's citation to cases discussing the respective roles of the relator and the United States in a False Claims Act case are completely irrelevant, since such cases have nothing at all to do with the proper scope of discovery. *See* BRMC Brief, p. 9. Indeed, contrary to BRMC's suggestion, a proper understanding of the False Claims Act serves to demonstrate why the proposed discovery regarding unrelated transactions by the Relators is not relevant to the issue of BRMC's liability.

The False Claims Act ("FCA") imposes liability upon any person who knowingly submits a false claim for payment to the United States. 31 U.S.C. § 3729. The statute allows a private citizen, commonly known as a "relator," to bring an action against such person on behalf of the United States. 31 U.S.C. § 3720(b). As described by Justice Scalia, the relator's role is that of an assignee of the government's claim. <u>Vermont Agency Of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765 (2000) ("The FCA can reasonably be regarded as effecting a partial assignment of the Government's damage claim.").

Because the United States is the real party in interest even in a non-intervened case, <u>see</u> <u>United States ex rel. Walker v. R & F Props. of Lake County , Inc</u>., 433 F.3d 1349, 1359 (11th Cir. 2005), the relator's conduct is generally not relevant. It is the *United States* that has been injured by the defendant's illegal conduct; it is in the *United States'* name that the action must be brought; and it is the *United States* that is the beneficiary of any judgment, subject to the relator's right to be paid a relator's share out of the government's recovery. *See* 31 U.S.C. § 3729(a) (noting that defendant is liable "to the United States Government"). The only time a relator's conduct becomes an issue is if the relator "planned or initiated" the fraudulent conduct at issue, in which event the relator's share of the recovery may be reduced. 31 U.S.C. § 3730(d)(3). Even in such a case, however, the relator's conduct would not affect the issue of the *defendant's* liability. And in the present case, there is no question of "planner or initiator," since Relators were not parties to or otherwise involved in the lease agreement at issue, but were outsiders to the transaction.

The issue before this court is whether the Defendants' business arrangement, as evidenced by the equipment sublease, violates the Anti-Kickback Statute and/or the Stark II statute, such that the referrals arising out of that relationship resulted in false claims being submitted to federal health insurance programs. To the extent that Relators have non-privileged information relevant to the claims and defenses at issue, such information is of course discoverable. However, the details of Relators' unrelated business arrangements with third parties, who are not involved in this litigation, can have no effect whatsoever on the question of whether *Defendants'* lease arrangement violates the Anti-Kickback Statute or the Stark II statute. The Court should not allow BRMC to transform this case into a trial of the Relators, but should limit discovery to matters relevant to the claims or defenses in this case.

**III.    Discovery Of Other Information Unrelated To Relators' Financial Relationships**

Finally, the third part of BRMC's Motion to Compel requests other information unrelated to the "equipment sublease" arrangement or Relators' financial relationships. Request No. 9 relates to other litigation in which any of the Relators were parties. Request No. 10 relates to "governmental investigations" of which any of the Relators was a subject. Request No. 11 relates to "administrative proceedings" in which any of the Relators was a party. Request No. 12 relates to disputes or investigations involving any of the Relators and various health insurance payors. Request No. 15 relates to citizenship and immigration status of each of the Relators. Finally, Request No . 17 directed to Relator Jacobs relates to indictment documents.

BRMC cites Rule 401 of the Federal Rules of Evidence to argue that relevant evidence includes evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable than it would be without the evidence. BRMC asserts that the requested information somehow goes to the issue of Relators' "credibility," and is thus discoverable. However, BRMC's argument consists entirely of vague generalities, because it can not point to any facts the existence of which depends upon the credibility of any of the Relators.

As noted above, the issues in this case are whether the equipment sublease arrangement between BRMC and V&S violates the Anti-Kickback Statute and/or the Stark II statute, and whether claims were submitted as a result of improper referrals from V&S to BRMC. It is difficult to see how the "credibility" of the Relators is a factor on any of these issues. The Defendants acknowledge the existence of the equipment lease arrangement, but simply contend that it did not violate the law. Relators are not attorneys, and do not offer legal opinions as to the application of the Stark and Anti-Kickback Statutes; thus, their "credibility" is irrelevant on the issue of whether Defendants' relationship violated these statutes. As to the number of referrals resulting from such relationship, the evidence on that issue comes not from Relators, who are not employees of BRMC or V&S, and thus do not have independent access to such referral and claim information. Rather, such evidence comes from Defendants' own billing records, which Relators have sought and partially received in discovery. Thus, Relators' "credibility" is irrelevant on that issue.

In short, "credibility" does not exist in a vacuum, and BRMC wholly fails to show how Relators' credibility is relevant to any material fact in this case. Relators were not a participant in any of the transactions at issue, but are simply bringing this action on behalf of the United States, as partial assignee of the government's claim. Accordingly,

BRMC should not be able to engage in a broad-based fishing expedition into Relator's personal and business dealings that are unrelated to the issues in this case.

**IV.      Motion To Compel Production Of Documents By Tri-County**

   Relators note that simultaneous with the filing of the Motion to Compel Relators To Produce Documents and Answer Interrogatories, BRMC filed a similar Motion Compel Production Of Documents against Tri-County Diagnostic Testing, a non-party, to obtain many of the same documents. Relators object to the production of these same documents by Tri-County and incorporate their relevance arguments, as set forth above.

     This 16th day of May, 2007.

       Respectfully submitted,


       /s/ Andrew M. Stone
       Andrew M. Stone
       (Pa. #35176)
       STONE LAW FIRM, LLC
        828 Frick Bldg., 437 Grant Street.
       Pittsburgh, Pa. 15219
       Phone: (412) 391-2005
       Fax: (412) 391-0853
       astone@stones2.co m


       /s/ G. Mark Simpson
       G. Mark Simpson
       Georgia Bar No. 647725
       SIMPSON LAW FIRM, LLC
       165 North Main Street
       Jonesboro, Georgia 30236
       Phone: (678) 610-1994
       Fax: (678) 302-8721
       mark@marksimpsonlaw.com

       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this 16th day of May 2007, I caused a true copy of the foregoing

to be served via electronic or first class mail to:

Jay D. Marinstein, Esq.            Paul Skirtich, Esq.
Carl J. Rychcik, Esq.              United States Attorney's Office
Fox Rothschild L.L.P.             Civil Division
625 Liberty Avenue              USPO & Courthouse
29th Floor                          Pittsburgh, Pa. 15219
Pittsburgh, Pa. 15222-3115

Daniel M. Mulholland III, Esq.     Michael Granston, Esq.
Henry M. Casale, Esq.             U.S. Department of Justice
Horty Springer & Mattern, P.C.    Commercial Litigation Branch
4614 Fifth Avenue               P.O. Box 261
Pittsburgh, Pa. 15213             Ben Franklin Station
                                   Washington, D.C.

/s/ Andrew M. Stone_____
Andrew M. Stone, Esquire
Pa. # 35176
STONE LAW FIRM
828 Frick Building
437 Grant Street
Pittsburgh, Pennsylvania 15219
(412) 391-2005 (phone)
(412) 391-0853 (fax)
(astone@stone-law-firm.com)

14