IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, *ex rel.*, <br> DILBAGH SINGH M.D., <br> PAUL KIRSCH, M.D., <br> V. RAO NADELLA, M.D., and <br> MARTIN JACOBS, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> BRADFORD REGIONAL MEDICAL CENTER, V & S MEDICAL ASSOCIATES, LLC, <br> PETER VACCARO, M.D., <br> KAMRAN SALEH, M.D., and <br> DOES I through XX, <br><br> Defendants. | Civil No. 04-186 Erie |

### Opinion and Order

Dilbagh Singh M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D., commenced this *qui tam* action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended. Doctors Singh, Kirsch, Nadella, and Jacobs, who are known as the "Relators," are suing Bradford Regional Medical Center, V & S Medical Associates, LLC, Peter Vaccaro, M.D., and Kamran Saleh, M.D., on behalf of the United States Government. Following the denial of Defendants' motion to dismiss a Case Management Order was entered setting the close of discovery as June 1, 2007. (Doc. 44). On May 23, 2007, the Court entered an Amended Case management Order extending fact discovery to September 4, 2007. (Doc. 67).

Presently before the Court are two motions to compel filed by Defendant Bradford Regional Medical Center ("BRMC"). On May 10, 2007, BRMC filed a motion to compel the Relators to produce documents and to answer interrogatories. (Doc. 52.) On May 11, 2007, BRMC filed a motion to compel production of documents by non-party Tri-County Diagnostic Services, LLC. (Doc. 54). Relators and non-party Tri-County have responded to these motions and thus they are ripe for resolution.

**I. Background**

The Relators allege that the Defendants perpetrated a scheme wherein they presented false or fraudulent claims for payment or approval to the United States seeking reimbursement for services rendered to patients unlawfully referred to BRMC. The Relators allege that the scheme arose out of BRMC's equipment sublease with V & S Medical Associates, LLC (V&S"), an entity owned by Defendant Drs. Vaccaro and Saleh, who are medical staff physicians at BRMC. The Relators allege that the false claims were presented by physicians to whom Defendants provided kickbacks; physicians to whom Defendants provided illegal remuneration; and/or physicians with whom Defendants entered into prohibited financial relationships in violation of the Medicare anti-kickback statute, 42 U.S.C. § 1320a-7b(b), and the prohibition on physician "self-referrals" contained in the "Stark Law," 42 U.S.C. § 1395nn. The Relators assert four claims against Defendants under the False Claims Act, which provides for civil and criminal penalties for persons who knowingly submit false claims to the government.

2

## II. Discussion

BRMC groups the discovery items it seeks to compel into three broad categories: (1) Relators' Communications with the Government, (2) Relators' Financial Relationships with Entities to Which They Refer Patients (this category also encompasses BRMC's motion to compel production of documents by Tri-County), and (3) "Other Relevant Information." (Brief in Support of Motion to Compel, at 5-10 (Doc. 54).) We address these arguments in turn.

### (1) Relators' Communications with the Government

Under 31 U.S.C. § 3730(b)(2), relators in a *qui tam* action must submit a "copy of the complaint and written disclosure of substantially all material evidence and information" to the United States Government. BRMC seeks to compel Relators to turn over the Disclosure Statement provided to the government pursuant to 31 U.S.C. § 3730(b)(2).

Although both sides present several different arguments and counter-arguments the "issue presently before the court can be decided by application of the Work Product Doctrine and, more importantly, Federal Rule of Civil Procedure 26(b)(3)." *U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 2004 WL 868271, *1 (E.D.Pa. Apr. 21, 2004).

> The Work Product Doctrine generally protects from discovery materials prepared by an attorney or his or her client in anticipation of litigation or for use at trial. See *Hickman v. Taylor*, 329 U.S. 495, 510-511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Sporck v. Peil*, 759 F.2d 312, 216 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). However, there are two (2) generally accepted types of work product, to which different levels of protection attach. The **first type** of work product is **opinion work product**-that is, work product that includes an attorney's mental impressions, conclusions, opinions or legal theories-which is accorded an "almost absolute protection from discovery." *Sporck*, 759 at 316. The **second type** of work product is **factual work product**-that is, work product that merely contains the factual basis of a lawsuit, devoid of attorney opinion or mental impressions. Factual work product is entitled only to qualified immunity, such that it is discoverable "*only* upon a showing that

3

> the party seeking discovery has *substantial need* of the materials in preparation of the party's case *and* that the party is unable *without undue hardship* to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3) (emphasis added); *Sporck*, 759 F.2d at 316.

*Hunt*, 2004 WL 868271, *1 (emphasis in bold added).

"As an initial matter, there is no question that the Disclosure Statements were prepared 'in anticipation of litigation, . . . .'" *Hunt*, 2004 WL 868271, *2 (citing 31 U.S.C. § 3730(b); and *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F.Supp. 1338, 1346 (E.D.Mo.1996) (plain language of the False Claims Act requires relator to prepare the document "in anticipation of litigation"). Because the Disclosure Statements here "were prepared in anticipation of litigation, they fall within the general protection of the Work Product Doctrine." *Hunt*, 2004 WL 868271, *2 (citing Fed.R.Civ.P. 26(b)(3); *Hickman*, 329 U.S. at 510-511; *Sporck*, 759 F.2d at 316.

At this point in the litigation, it is not necessary for the Court to make a ruling as to whether the Disclosure Statements are opinion work product, "that is, work product that includes an attorney's mental impressions, conclusions, opinions or legal theories-which is accorded an 'almost absolute protection from discovery.'" *Hunt*, 2004 WL 868271, *1 (quoting *Sporck*, 759 at 316). Instead we "assum[e] that the Disclosure Statements constitute factual work product, as opposed to opinion work product, [and therefore,] they can only be disclosed upon a showing by [BRMC] that they have a substantial need for the Disclosure Statements, and that they cannot obtain the substantial equivalent of the Disclosure Statements without undue hardship." *Hunt*, 2004 WL 868271, *2 (citing Fed.R.Civ.P. 26(b)(3)).

4

The Court concludes that BRMC has not met its burden. Most significantly, BRMC has not taken any of the Relators' depositions. As Relators explain, BRMC "will certainly have an opportunity to ask the Relators directly about the factual information that was the subject of the disclosure to the United States." (Relators' Memorandum in Opposition, at 5.) Until the depositions are taken and other factual discovery is completed BRMC cannot show that they cannot obtain the substantial equivalent of the Disclosure Statements without undue hardship. Thus, we will deny BRMC's motion to compel in this regard.

### (2) Relators' Financial Relationships with Entities to Which They Refer Patients.

BRMC seeks to compel information regarding Relators' financial relationships with entities (specifically Tri-County) to which they refer patients. BRMC argues in favor of its motion as follows:

> Since Relators must prove that the equipment lease was intended to induce Drs. Saleh and Vaccaro to refer patients to BRMC, rather than simply being a legitimate business arrangement, any similar arrangements that the Relators may have engaged in would be fair game for inquiry on deposition and cross-examination at trial. BRMC should be able to inquire as to whether Relators' arrangements are, in the opinion of Relators, legitimate business arrangements – as opposed to inherently illegal, as the Relators claim with respect to the BRMC-V&S equipment lease. The jury should be entitled to consider this information when weighing the claims of the Relators that the Defendants have violated the law . . . .

(BRMC's Brief in Support, doc. 53, at 8.) BRMC continues this line of reasoning by arguing as follows:

> To the extent that any of the Relators were to have an investment interest in or other financial relationship with a facility to which they refer patients covered by federal health programs like Medicare or Medicaid, the AKS could be implicated if the arrangement was entered into for the purpose of inducing referrals, rather than a legitimate business arrangement with a collateral hope for referrals. Since Relators would undoubtedly take the position that their financial relationship is

5

>   legitimate, BRMC should be permitted to obtain information through discovery as
>   to the nature of their financial relationship to determine if it is distinguishable
>   from what Relators claim is inherently suspect about the equipment lease and, if
>   not, why they believe the equipment lease is illegal and their arrangements are not.

(BRMC's Brief in Support, doc. 53, at 8-9.)

It is transparent that BRMC seeks to compel this information in order to argue that the Relators engaged in the same conduct as Defendants did, and thus further argue that either (1) the Relators are opportunistic hypocrites that engaged in the same illegal conduct that Defendants did, or (2) if the Relators conduct is legal, then so is the Defendants. But that is not what is at issue here.

As recognized by Defendants, what *is* relevant here is the intent of the *Defendants*. BRMC explains that this action concerns Relators' allegations "that the lease of medical equipment by V&S to BRMC violated the Medicare Anti-kickback Statute, . . . , and the Physician Self-Referral Act, . . . ." (BRMC's Brief in Support of Motion to Compel, doc. 53, at 1-2.) BRMC continues by explaining that in "order to establish a violation of the AKS, Relators must prove that *BRMC* acted knowingly and willfully, intending for the payments under the lease to induce *V&S* to refer patients to BRMC." (BRMC's Brief in Support of Motion to Compel, doc. 53, at 7 (emphasis added), citing *U.S. v. Greber*, 760 F.2d 68, 72 (3d Cir. 1985).) The Relators' financial relationship with Tri-County has no relevance as to whether *Defendants* perpetrated a scheme arising out of the equipment lease wherein *Defendants* presented false or fraudulent claims for payment or approval to the government seeking reimbursement for services rendered to patients unlawfully referred to BRMC.

6

In addition, the Relators' conduct is not at issue as "victims" since the United States government remains the real party in interest here. The "chief purpose of the statutes [§ 3729 and § 3730] here was to provide for restitution to the government of money taken from it by fraud, . . . ." *U. S. ex rel. Marcus v. Hess*, 317 U.S. 537, 551, *rehearing denied*, 318 U.S. 799 (1943). The "False Claims Act is concerned solely with false claims submitted to the government[, providing] for suits brought by individuals, but only as *qui tam* relators "in the name of the Government." *U.S. ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46, 48 (4th Cir. 1992), quoting, 31 U.S.C. § 3730(b)(1).

The information sought by BRMC has no relevance as to the intent of Defendants. A fact-finder cannot find the intent of Defendants based on financial arrangements of parties not involved in the equipment lease at issue. In other words, none of the financial information BRMC seeks is "relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). To permit such discovery would tend to shift the focus of this action to the Relators' irrelevant conduct, and we see no basis upon which to allow that to happen. The Relators' conduct is not an issue in this case and BRMC's motion to compel this information appears solely aimed at punishing the Relators for bringing this *qui tam* action. Accordingly, we will deny BRMC's motion to compel information regarding Relators' financial relationships with entities to which they refer patients. For the same reasons we will also deny BRMC's motion to compel production of documents by non-party Tri-County Diagnostic Services, LLC.

### (3) "Other Relevant Information"

BRMC also seeks to compel the Relators to discover "other" information as follows:

- Relators involvement in any litigation, governmental investigations, or administrative proceedings;

- Relators involvement in any disputes between a Relator and third-party payors;

- any information regarding the Relators' citizenship, resident alien status, or immigration status; and

- information regarding a criminal indictment filed against one of the Relators.

BRMC's sole argument in support of compelling this information is that they might find something with which to attack the Relators' credibility. BRMC's general argument is that because credibility is always an issue of consequence, discovery is permitted into anything that would tend to make a witness's credibility more or less probable.

To accept this general argument would be to remove any limits on civil discovery and leave any civil party's entire life wide open to inquiry during discovery. More significantly, BRMC's argument fails to show how the Relators' credibility in this *qui tam* action would tend to make the existence of a material fact more or less probable. Fed.R.Evid. 401 The Relators' credibility is irrelevant as to whether the equipment lease arrangement between BRMC and Drs. Vaccaro and Saleh violates the Anti-kickback statute or the Stark Law. Again, the motion to compel appears solely aimed at punishing the Relators for bringing a *qui tam* action against BRMC. Accordingly, we will deny BRMC's motion to compel this information.

### III. Conclusion

For the reasons set forth above we will deny BRMC's motions to compel. Accordingly, the following Order is entered.

## Order

AND NOW, to-wit, this 31st day of May, 2007, for the reasons set forth above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Bradford Regional Medical Center's Motion to Compel the Relators to Produce Documents and to Answer Interrogatories (Doc. 52) be and hereby is DENIED.

2. Defendant Bradford Regional Medical Center's Motion to Compel Production of Documents by Tri-County Diagnostic Services, LLC. (Doc. 54) be and hereby is DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
United States District Court Judge

cc:   counsel of record

John M. Quinn, Jr, Esquire (by regular mail)
2222 W. Grandview Blvd.
Erie, PA 16506