IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* <br> DILBAGH SINGH, M.D., <br> PAUL KIRSCH, M.D., <br> V. RAO NADELLA, M.D., and <br> MARTIN JACOBS, M.D., <br><br> Relators, <br><br> v. <br><br> BRADFORD REGIONAL <br>  MEDICAL CENTER, <br> V & S MEDICAL ASSOCIATES, LLC, <br> PETER VACCARO, M.D., <br> KAMRAN SALEH, M.D., <br> and DOES I through XX, <br><br> Defendants. | Civil Action No. 04-186E |

## BRIEF IN SUPPORT OF MOTION TO QUASH

This is a *qui tam* action filed under the False Claims Act by the above-named Relators on behalf of the United States against the above-named Defendants. The United States has declined to intervene in the matter. On August 21, 2007, counsel for the Relators personally served a subpoena on counsel for BRMC, Daniel M. Mulholland III. Said subpoena purports to command Mr. Mulholland to appear for a deposition in the above-captioned matter on August 31, 2007 at 9:30 a.m. Mr. Mulholland has acted and continues to act as lead counsel for BRMC in this litigation. BRMC has moved to quash the subpoena for the reasons stated in its Motion and as set forth below.

Depositions of opposing counsel are clearly not favored by the courts. In Peerless Heater Co. v. Mestek, Inc., 2000 WL 151281 (E.D. Pa. 2000), the deposition of opposing counsel

1

was not allowed due to the fact that typically such depositions are allowed only upon a showing that the information sought is "relevant, non-privileged and critical to the preparation of the case and that there is no other way to obtain the information." See, also Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986); Nationwide Mutual Ins. Co. v. Home Ins. Co., 278 F.3d 621 (6th Cir. 2002). "[E]ven when a party meets two of the Shelton factors by showing the information sought is non-privileged and crucial, that party's failure to establish that the attorney deposition is the only reasonably practicable means available for obtaining the information will still defeat an attempt to depose opposing counsel." Invesco Institutional (N.A.), Inc. v. Paas, 2007 W.L. 1672357 (W.D. Ky. 2007).

Likewise, in Slater v. Liberty Mutual Insurance Co., 1999 WL 46580 (E.D. Pa. 1999), the plaintiff sought to depose defense counsel regarding its allegedly improper discovery methods. The court prevented the deposition from going forward, stating: "a deposition of one's attorney by an opposing party is inherently annoying, oppressive, disruptive, and burdensome." Id. at *1. As another court put it recently: "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." State ex rel. Edmondson v. Tyson Foods, Inc., 2007 W.L. 649335 (N.D. Okla. 2007).

In this case, it is not clear from the letter from Relators' counsel whether they intend to delve into privileged areas. However, even if the deposition of BRMC's counsel was limited solely to factual matters, there would likely be questions that could elicit information about privileged discussions that may have been held with the client during the course of the

negotiations. This would likely result in numerous objections with instructions not to answer, which would ultimately come back to the Court for resolution.

It should also be noted that BRMC has not asserted an advice of counsel defense in its Answer and New Matter. BRMC stated in its Response to Relators' Interrogatories that its defense of good faith does not encompass an advice of counsel defense. Therefore, BRMC has not waived and has no intention of waiving the privilege associated with any attorney-client communications.

Relators cannot show that what did or did not happen at a negotiating session between Defendants is relevant to their claims. Their claims hinge first on their interpretation of the Stark Law and Anti-kickback statute, with respect to a lease that was already executed and which is presently in effect. That lease either does or does not violate either or both of the statutes relied on by the Relators (and BRMC, of course, denies that it violates either statute). The fact that parties may have taken positions during the negotiations is irrelevant once a lease has been signed.

But even if Relators could prove that the lease did not fit within a Stark exception, they would still have to prove that BRMC submitted false claims to the government. Their whole theory regarding false claims liability hinges on their incorrect assertion that BRMC certified that it was in compliance with the Stark and Anti-kickback statutes when it submitted its cost reports to Medicare, Medicaid, and CHAMPUS or claims for payment from those programs (a claim that BRMC denies). What happened at any negotiating session between BRMC and V&S has nothing whatsoever to do with whether false certifications were knowingly or recklessly made by BRMC when it filed its cost reports or claims for payment.

Moreover, even if the Relators could show that information sought from BRMC's counsel is relevant, they can hardly argue that it is critical to their case. Their own actions (or rather

3

inaction) during the Rule 30(b)(6) deposition of BRMC bears this out. At that deposition, BRMC's President, George Leonhardt, testified that there were extensive negotiations between BRMC and V&S regarding the lease. Counsel for Relators could have, but did not ask Mr. Leonhardt for the details of any negotiating session, even though he could have asked. It begs credulity to argue that deposing counsel for BRMC to learn the details of any negotiations is now critical when, less than a month ago, Relators' counsel did not bother to ask BRMC's CEO any questions about those negotiations.

For this reason as well, Relators cannot show that there is no other way to obtain the information that they claim to seek. There was another way – by asking questions about the details of any negotiating sessions during Mr. Leonhardt's testimony at the Rule 30(b)(6) deposition. Relators had an opportunity to probe into this area and failed to do so. They have therefore effectively waived any right that they have to attempt to get at this information through the disruptive back-door route of deposing BRMC's counsel.

Relators have waived any right they have to depose BRMC's counsel for another reason – they have waited until the 11th hour to do so. Fact discovery closes on September 4, 2007, which is less than two weeks away. However, Relators have known at least since receiving Defendants' Rule 26 disclosures in November 2006 (and quite likely since the inception of this litigation) that the Defendants involved their attorneys in negotiations. Had Relators believed it was so critical to depose attorneys about the negotiations, they could have so informed the Defendants early on through the discovery process and this issue could have been resolved in a more rational and less disruptive manner. Relators should not be allowed to suddenly claim that attorney depositions are now crucial at a time when all parties are focused on concluding discovery and resolving any remaining discovery disputes simply because they forgot or neglected to ask BRMC about the details of lease negotiations at its corporate deposition.

4

Interfering with counsel's ability to prepare for trial is one of the main reasons why the courts have concluded that attorney depositions are inherently disruptive and burdensome. The same can be said for interfering with counsel's ability to conclude discovery matters. As stated in the Motion to Quash, there are a number of discovery disputes presently outstanding. One or more of them will undoubtedly be before the Court prior to the close of fact discovery. One therefore has to wonder whether the attempt to depose BRMC's counsel is aimed at distracting him from those discovery disputes. Even if that was not the goal of the Relators, it certainly has had that effect.

Deposing BRMC's counsel would be oppressive and burdensome for another reason – it will cause undue hardship for BRMC because new counsel will have to represent BRMC at the deposition of its counsel. Mr. Mulholland has served as lead counsel for BRMC throughout this litigation and has primarily been responsible for all discovery and motion matters. He obviously could not act as BRMC's counsel at a deposition where he is a witness. Even if another member of the firm could represent BRMC at the deposition, it would take some time for that attorney to review the case and prepare for the deposition, which would result in unnecessary expense for BRMC.

Moreover, by making Mr. Mulholland a witness, Relators have put into play the possibility that he might be a witness at trial and thus disqualifying him and his firm from representing BRMC. If an attorney is likely to be a witness, he or she could be disqualified from acting as an advocate at trial pursuant to Rule 3.5 of the Rules of Professional Conduct. See, e.g., Teleprompter of Erie, Inc. v. City of Erie, 573 F. Supp. 963 (W.D. Pa. 1983). This would work incalculable hardship on BRMC since this complicated *qui tam* action would have to be turned over to another firm which would have to come up to speed at a fairly late stage in the proceedings.

Finally, it should be noted that the Relators have failed to give reasonable notice of the deposition. (In fact, to BRMC's knowledge, they have failed to notice the deposition at all – they have only served a subpoena.) Rule 30(b)(1) provides that: "A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." In the case of <u>In re Sulfuric Acid Antitrust Litigation</u>, 231 F.R.D. 320 (N.D. Ill. 2005), the court ruled that 10 days' notice for a deposition was not sufficient in a complex case in which there were only two weeks left in the discovery period. In this case, giving BRMC's counsel only 10 days' notice with only two weeks left is even more unreasonable.

Therefore, BRMC respectfully requests that this Honorable Court quash the subpoena served on counsel for BRMC.

Respectfully submitted,

/s/ Daniel M. Mulholland III
Daniel M. Mulholland III
HORTY, SPRINGER & MATTERN, P.C.
4614 Fifth Avenue
Pittsburgh, PA  15213
412-687-7677 (phone)
412-687-7692 (fax)
dmulholland@hortyspringer.com

Attorney for
Bradford Regional Medical Center

Dated:  August 24, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date he served the following with a copy of the foregoing Brief in Support of Motion to Quash by e-mail and by first class United States mail, addressed as follows:

Andrew M. Stone
Allegheny Building, Suite 1400
429 Grant Street
Pittsburgh, PA 15219

G. Mark Simpson
Simpson Law Firm, LLC
165 North Main Street
Jonesboro, GA 30236

Carl J. Rychcik
Fox Rothschild, LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222

Paul E. Skirtich
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

This 24th day of August 2007.

/s/ Daniel M. Mulholland III
Daniel M. Mulholland III

165836.1
August 24, 2007