## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| DILBAGH SINGH, M.D., | : | |
| PAUL KIRSCH, M.D., | : | |
| V. RAO NADELLA, M.D., and | : | |
| MARTIN JACOBS, M.D., | : | |
| | : | |
| Relators, | : | |
| | : | |
| v. | : | Civil Action No. 04-186E |
| | : | |
| BRADFORD REGIONAL | : | |
| MEDICAL CENTER, | : | |
| V & S MEDICAL ASSOCIATES, LLC, | : | |
| PETER VACCARO, M.D., | : | |
| KAMRAN SALEH, M.D., | : | |
| and DOES I through XX, | : | |
| | : | |
| Defendants. | : | |

### BRIEF IN SUPPORT OF JOINT MOTION TO COMPEL

Defendants Bradford Regional Medical Center ("BRMC"), V & S Medical Associates, LLC ("V&S"), Peter Vaccaro, M.D. ("Dr. Vaccaro") and Kamran Saleh, M.D. ("Dr. Saleh") (hereafter collectively referred to as "Defendants"), by and through their undersigned counsel, have jointly moved for an order pursuant to Fed.R.Civ.P. 37(a) compelling the Relators to answer certain categories of questions posed to them during their depositions on August 20 and 21, 2007. The Court should grant that Motion for the reasons set forth below.

## I.    BACKGROUND

The present *qui tam* action was commenced by Dilbagh Singh, M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D. (hereafter collectively referred to the "Relators") on July 2, 2004, under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-

166016.2
September 4, 2007

3732.  After reviewing this matter, the United States Government declined to intervene, instead allowing the Relators to pursue this litigation on the Government's behalf.  The Relators' allegations rest entirely on the assertion that a sublease of medical equipment between BRMC and V&S (the "Sublease") violates the Medicare Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), and the Physician Self-Referral Act, 42 U.S.C. § 1395nn (the "Stark Law").

Defendants vigorously deny any wrongdoing whatsoever.  They assert that they did not knowingly or recklessly submit any false claims to the Government.  In addition, they deny that the Sublease violates any federal law.  To the contrary, Defendants contend, among other things, that the Sublease fits within the applicable exceptions and safe harbors for permissible leases set forth in regulations promulgated pursuant to the Stark Law and the AKS, respectively.  The Sublease is a commercially reasonable, fair market value transaction which fully complies with the AKS and the Stark Law.  Furthermore, contrary to the allegations asserted by the Relators, the Sublease arrangement contains no illegal remuneration in exchange for referrals and does not vary based on the volume or value of services referred to BRMC by Dr. Saleh or Dr. Vaccaro.

On May 31, 2007, this Court entered an Order denying two Motions to Compel filed by BRMC (Document 69) (the "Court's May 31 Order").  The first sought to compel the Relators to answer certain interrogatories and respond to certain document requests propounded by BRMC.  The other sought to enforce a subpoena served on Tri-County Diagnostics Services, LLC ("Tri-County"), an entity offering diagnostic services that compete with those of BRMC in which three of the four Relators stated that they had an investment interest, and where the fourth has been employed.  In denying these motions, the Court broke the information sought by BRMC into three broad categories: (1) Relators' communications with the Government, (2) Relators' financial relationships with entities to which they refer, and (3) other relevant information.

With respect to the first category, the Court stated in its Opinion that until depositions were taken and other factual discovery was completed, BRMC would not be able to show

2

that it would be unable to obtain the factual equivalent of the Relators' disclosure statement provided to the Government under 31 U.S.C. § 3730(b)(2), without undue hardship.  This was based on the Relators' statement that BRMC "will certainly have an opportunity to ask the Relators directly about the factual information that was subject to the disclosure to the United States."  (Opinion at p. 5.)  Thus, this matter was left open for final resolution upon completion of the Relators' depositions.

Second, the Court ruled that BRMC was not entitled to additional requested information concerning the specific details of the Relators' *financial* relationships with Tri-County and other entities to which they refer patients.  The Court stated that the requested details of those financial relationships had no relevance to either the question of whether the Defendants violated the Stark Law, the AKS, or the False Claims Act, or to the intent of the Defendants.  (Opinion at pp. 6-7.)  Notably, the Court did not hold that any reference to Tri-County would be precluded in this case, or that the referral practices of other doctors in the community, including the Relators, were precluded.

Finally, the Court denied BRMC's Motion to Compel production of the following specific information requested by BRMC in its interrogatories: (1) Relators' involvement in any litigation, governmental investigations, or administrative   proceedings; (2) Relators' involvement in any disputes with third-party payors; (3) any information regarding the Relators' citizenship, resident alien status or immigration status; or (4) information about a criminal indictment filed against Dr. Jacobs.

Counsel for the Defendants have scrupulously observed the terms of the Court's May 31 Order in all subsequent phases of the discovery process.  By contrast, counsel for the Relators have drastically over-interpreted the breadth of this Court's May 31 Order, distorting it to such a degree that they have severely prejudiced the Defendants' ability to develop and assert their defenses to the claims asserted against them.  On August 20 and 21, 2007, the Relators were deposed by counsel for the Defendants.  Throughout those depositions, counsel for the Relators continuously objected to questions posed to them and instructed

3

them not to answer, ostensibly based on the Court's May 31 Order.[1]  However, the questions to which the Relators' counsel objected did not seek information that was the subject of the Court's May 31 Order.  Instead, these questions dealt with areas central to the issues of this case, many of which were prompted by allegations contained in the Complaint and questions that Relators' counsel posed during the Defendants' depositions.  In essence, in direct contradiction of the rules of discovery, counsel for the Relators have improperly used the Court's May 31 Order as a shield to obstruct the Defendants from gathering factual support for the defenses they are asserting, and to rebut allegations being made against them.  Accordingly, the Relators were improperly instructed not to answer the proffered questions, and Defendants will be unfairly prejudiced if they are not permitted to obtain the requested information from the Relators.[2]

## II.    ARGUMENT

Pursuant to Rule 37, the Court is empowered to issue an order compelling discovery where a deponent has failed to answer a question propounded at his or her deposition.  Plaisted v. Geisinger Medical Center, 210 F.R.D. 527, 532 (M.D.Pa. 2002).  Parties involved in litigation must have the maximum opportunity for discovery open to them.  Buffington v. Wood, 351 F.2d 292, 297 (3d Cir. 1965).  All relevant material is discoverable unless an applicable evidentiary privilege is asserted.  Coleman v. Sears, Roebuck & Co., 221 F.R.D. 433, 435 (W.D. Pa. 2003).  In particular, a deponent may only be instructed not to answer when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion to terminate the deposition.  Fed.R.Civ.P. 30(d)(4).  It is inappropriate to instruct a witness not to answer a question on the basis of relevance.  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).  "A deposition is meant to be a question-and-

---

[1]    Copies of the specific questions at issue are attached as Exhibits 1 through 4 to Defendants' Joint Motion to Compel.

[2]    During the depositions of the Relators, in an effort to avoid repeatedly asking each of the Relators the same questions, only to have them instructed not to answer, the parties entered into a stipulation whereby Relators' counsel represented that if a Relator had been asked a question which was objected to, along with an instruction not to answer, the same objection and instruction would be asserted for every Relator.

166016.2
September 4, 2007

answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's [sic] own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer." <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525, 528 (E.D.Pa. 1993).

In this case, there was no order limiting the questioning of Relators at their deposition. The Court's May 31 Order only dealt with the Tri-County subpoena and certain interrogatories and document requests propounded to Relators. Nevertheless, Relators' counsel are attempting to use the Court's May 31 Order as a broad shield, preventing the Relators from answering deposition questions dealing with matters not covered by the Order. This drastic over-interpretation of the Court's May 31 Order alone would be grounds to overrule the objections of Relators' counsel and order that the Defendants' questions be answered. Where a prior order limiting specific discovery has been complied with, it cannot be used to bar discovery that is not covered by the limitations in the order. <u>See</u> <u>Verticles, Inc. v. Louverdrape, Inc.</u>, 38 F.R.D. 399 (S.D.N.Y. 1965). However, in addition to being unsupported by the Court's May 31 Order, the objections and instructions of Relators' counsel improperly obstruct Defendants from asking and receiving answers to questions which are essential for the preparation and presentation of their case.

## A. Referral Patterns of Physicians

Patient referrals and what drives them are central to one of the key issues in this case: the fact that the Sublease did not induce Drs. Saleh and Vaccaro to refer patients to BRMC and did not violate the AKS. 42 U.S.C. § 1320a-7b(b).[3] Relators, however, make allegations to the contrary, and have argued that the Sublease was intended to induce referrals.

Given that the Relators have no direct support for their theory that there is an agreement between V&S and BRMC to refer patients, they have resorted to a desperate

---

[3]    While Defendants vigorously assert that they have never entered into any agreement to control referrals, it should be noted that Defendants have also asserted a defense based on the fact that the Sublease falls within the safe harbor for equipment rental set forth at 42 C.F.R. § 1001.952(c). To the extent that it does fall within the safe harbor, the question of whether it induced referrals or was intended to induce referrals is irrelevant. However, until such a finding is made, Defendants' ability to refute the Relators' allegations is critical.

166016.2
September 4, 2007

attempt to put Drs. Saleh and Vaccaro's historical referral practices under a microscope.  At the depositions of Drs. Saleh and Vaccaro, Relators' counsel asked numerous questions about where the Doctors referred patients for nuclear cardiology and other diagnostic imaging tests and their typical practice in deciding where to refer.  Saleh Depo. Tr. pp. 17 to 21; Vaccaro Depo. Tr. pp. 18 to 26.   In particular, Relators' counsel asked Drs. Saleh and Vaccaro questions regarding the location of the majority of their inpatient and outpatient referrals at various points in time (implying that this somehow implicitly supports an agreement to refer).  Saleh Depo. Tr. pp. 17 to 21, 25 to 26; Vaccaro Depo. Tr. pp. 18 to 26.  In addition, Relators' counsel asked Dr. Saleh how V&S compared to other physicians in the Bradford community in the amount of business referred to BRMC.  Saleh Depo. Tr. p. 21.  By doing so, Relators' counsel opened the door to asking questions of the Relators about their referral patterns, if only to establish the community standard and practice about where patients are sent for testing and inpatient admissions, and why.  However, any time Defendants' counsel asked questions about where Relators referred patients for services such as diagnostic testing, or the factors that influenced their decisions to do so, the Relators were instructed by their counsel not to answer.

Defendants have an absolute right to ask Relators questions about what factors influence their referrals, not only to establish what alternatives exist in the community for nuclear cardiology and other diagnostic testing, but also to establish the factors that influence physicians in the community to choose one facility over another.  The extent to which the referral patterns of practitioners such as Dr. Vaccaro, Dr. Saleh, and the Relators are influenced by the rural geography of the Bradford area and the small number of testing facilities within a reasonable driving distance of that area, these referral practices are highly relevant to the Defendants' ability to mount a defense to the Relators' claims.  Evidence that the few similarly situated practitioners in the Bradford area, such as the Relators, considered factors similar to those considered by Drs. Vaccaro and Saleh, and make referrals similar to those made by the Doctors, is relevant to the Relators' implication that the Doctors' history of referrals somehow indicates that the Sublease was simply a mechanism to influence referrals.

166016.2
September 4, 2007

To shield the Relators from the Defendants' questions about these matters would prejudice Defendants' ability to present a defense at trial and to establish the credibility of the positions they are asserting.

When instructing their clients not to answer these questions regarding referral practices, counsel for the Relators did not assert any type of privilege. Instead, Relators' counsel argued that the Court's May 31 Order limited the scope of questioning at the depositions "to the allegations and subject matter of the complaint." Nadella Depo. Tr. p.8.

The Court's May 31 Order did no such thing. In the first place, it only dealt with BRMC's interrogatories, document requests, and subpoena to Tri-County. It was not intended to address the questions that could be asked in depositions. Had Relators' counsel wished to limit questioning at Relators' depositions, in accordance with the Court's May 31 Order or otherwise, the proper procedure would have been to seek a protective order. Relators had over two and a half months to do so, but did not. Therefore, any right that they may have had to seek a limitation on questioning at Relators' depositions was waived.

Furthermore, even if the Court's May 31 Order could be construed as limiting the scope of questions that could be asked at deposition, its plain terms did not prohibit Defendants from asking Relators about their referral patterns and practices. The Order simply denied "BRMC's motion to compel information regarding Relators' *financial* relationships with entities to which they refer patients." Order of May 31, 2007, at p.7. (Emphasis added.) The questions that Relators were instructed not to answer did not inquire into their financial relationships, but instead focused on factors that might influence their referrals to BRMC and other facilities.

Relators can hardly contend that these questions are irrelevant, since their case relies primarily on the issue of patient referrals, and they asked Drs. Saleh and Vaccaro questions about their historical referrals, as well as the referral practices of other physicians in the community. (See above.) Counsel for Relators' take on the Court's statement in its May 31 Order that "Relators' conduct is not at issue in this case" (Order at p.7), which they drastically over-interpret to shield their clients from any questioning about Relators'

7

practices, strains credulity. The Court's statement was made solely in the context of the Court's perception that BRMC was attempting to use Relators' financial relationships to argue that if the Relators are engaged in a similar financial relationship to Defendants, this is relevant to the issue of whether the Sublease is proper. The Court's May 31 Order cannot be construed as preventing *any* inquiry into the conduct of Relators, especially when information about that conduct is relevant, not subject to privilege, and crucial to the Defendants' ability to develop factual support for their defenses. [4]

**B.     Non-compete Covenants**

Similarly, Relators' counsel instructed Relators not to answer questions about whether they were bound by any non-compete covenants, or whether they tried to impose such covenants on others. Just like the questions regarding referral patterns, but unlike the interrogatories and document requests that were the subject of the May 31 Order, these questions did not deal with the specific details of the Relators' financial relationships. Moreover, the answers to these questions are also essential to allow the Defendants to develop and present their defenses, and rebut the allegations being made against them.

Relators' primary concern about the Sublease seems to center on the payment of money to V&S in consideration of a covenant not to compete. According to Relators, this amounts to a backhanded requirement that Drs. Saleh and Vaccaro refer all of their patients who need nuclear cardiology tests to BRMC. Relators have contended that a non-compete covenant implicitly requires the party bound by it to refer to the other party.[5] In paragraph 88 of their Complaint, Relators state: "To the extent that a primary purpose of the sublease agreement expressly prohibits V&S from competing with BRMC, including performing diagnostic tests for any venture or facility within 30 miles, implicitly, a primary

---

[4]     In the event the Court instructs the Relators to answer questions regarding their referral practices, the Defendants should be given limited latitude to explore the issue of how Relators' financial relationship with Tri-County impacted their referral practices, without getting into the particular details of said financial relationship. This is necessary solely to explain any drop in referrals to BRMC which may have occurred.

[5]     This position is directly contrary to the law. In the preamble to regulations promulgated under the Stark law in 2001, the Government stated: "A requirement to refer to a specific provider is different from an agreement not to establish a competing business." 66 Fed. Reg. 879 (Jan. 4, 2001).

166016.2
September 4, 2007

purpose of the agreement is to give V&S a substantial financial incentive to refer patients to BRMC." Defendants must be allowed to test that contention by asking similarly situated practitioners, such as the Relators, questions about non-competes to which they are bound and the purpose of these non-competes. Once again, this information is not being sought to attack the Relators or call into question their conduct, but rather, to support the credibility of Defendants and their allegations that non-compete covenants, such as the one at issue, are customarily used and relied upon in the community separate and apart from any agreement to refer.

**C.    Disclosure Statement Provided to the Government**

In the Court's May 31 Order, the Court stated, quoting Relators' Response to BRMC's Motion to Compel, that: "BRMC will certainly have an opportunity to ask Relators directly about the factual information that was the subject of the disclosure to the United States.'" Order at p. 5. However, when counsel for BRMC specifically asked Relators about the subject matter of that statement, Relators' counsel instructed them not to answer (Jacobs Depo. Tr. p. 21) and even objected to some questions about whether any of the Relators had ever seen that statement. (Singh Depo Tr. p. 54.) In any event, two of the Relators said that they had not seen the statement or did not know what it was. (Jacobs Depo. Tr. p. 21; Singh Depo Tr. p. 58.) The other two only gave conclusory responses to questions as to their understanding of the subject matter of the disclosure to the Government. (Nadella Depo. Tr. p. 44; Kirsch Depo. Tr. p. 35.) Given that the Relators were either prevented from answering questions about their disclosure to the Government, had not seen it, or only had a vague understanding of what it contained, Defendants are therefore entitled, pursuant to the terms of the Court's May 31 Order, to obtain a copy of that disclosure (or at least those portions which are deemed by the Court not to contain privileged work product) in order to determine if the facts alleged by the Relators in that disclosure are true and/or consistent with the allegations made in their Complaint and their deposition testimony. At the very least, the Court should conduct an *in camera* inspection of the Relators' "written disclosure" to determine if it contained any relevant information not otherwise obtainable by the

166016.2
September 4, 2007

Defendants. <u>Grand <i>ex rel.</i> U.S. v. Northrup Corp.</u>, 811 F.Supp. 333, 337 (S.D.Ohio 1992). Defendants should then be given a further opportunity to ask the Relators about the subject matter contained in their disclosure to the United States.

**D.    Relators' Motivations**

A final set of questions that Relators' counsel improperly shielded their clients from answering focused on the Relators' motivations for filing the suit. These included questions about how the Relators stand to gain if the Defendants were to lose, Relators' plans for future diagnostic services, and the extent to which Relators may have been affected by BRMC's policy on Practitioners with Significantly Competing Financial Relationships. All of these matters are relevant since they go to the fact finder's ability to assess the credibility of the Relators' assertions, particularly given the absolute certainty that the Relators will be called as witnesses at trial, if not by the Plaintiffs, then by the Defendants themselves.

To the extent that the Relators filed this action to further their own interests by harming the Defendants or diverting attention from their own activities, the trier of fact is entitled to weigh that fact in assessing the credibility of their assertions. In <u>U.S. v. Abel</u>, 469 U.S. 45 (1984), the Supreme Court stated: "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher [sic] of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." <u>See</u>, <u>also</u> <u>U.S. v. Gonzalez</u>, 155 Fed.Appx. 580 (3d Cir. 2005).

It may well be that the <i>qui tam</i> provisions of the False Claims Act were based on the premise that "it takes a rogue to catch a rogue" as one of its sponsors claimed in 1863. <u>U.S. ex rel.</u> <u>Dunleavy v. County of Delaware</u>, 123 F.3d 734, 738 (3d Cir. 1997). However, the motivations of such rogues are fair game to explore at trial, especially in a case like this where the Government has chosen not to intervene. In such cases, "the qui tam plaintiff is surely no mere opportunistic bystander in the litigation, irrespective of whose name the litigation may bear." <u>U.S. <i>ex rel.</i> Foulds v. Texas Tech University</u>, 171 F.3d 279, 295 (5th Cir. 1999). According to <u>U.S. <i>ex rel.</i> Sequoia Orange Co. v. Sunland Packing House Co.</u>,

10

912 F.Supp.1325, 1352 (E.D.Cal. 1995), when the Government is deciding whether to allow a relator to proceed with a *qui tam* action, the Government can inquire into the relator(s)' motivations, and can base the decision not to allow the relator(s) to proceed on those same motivations.    Where, as here, the Government has not intervened and merely has a chimerical presence, the relator has significant control over the litigation process.  <u>Foulds</u>, *supra* at 795.  The Defendants should therefore have the same right as the Government previously had to probe the Relators' motivations, and let the trier of fact decide if their claims and assertions are believable.    While the Defendants can appreciate the Court's concerns that actions not be taken which are aimed solely at punishing the Relators for bringing a *qui tam* action, Defendants do not lose their right to protection, simply because allegations of an improper arrangement have been asserted against them, particularly when, as here, those allegations are vigorously disputed.


**III.    CONCLUSION**

      For all of the above reasons, the Defendants hereby request that the Court grant their Joint Motion to Compel and (1) order the Relators to be re-deposed and answer the categories of questions at issue, (2) order the Relators to provide Defendants with a copy of their Statement of Material Evidence furnished to the Government at the outset of the litigation, and (3) order the Relators to pay Defendants their reasonable expenses and attorneys' fees related to obtaining an order to compel.

11

September 4, 2007                        Respectfully submitted,

                                        /s/ Carl J. Rychcik
                                        Carl J. Rychcik
                                        Pennsylvania ID No. 73754
                                        FOX ROTHSCHILD, LLP
                                        625 Liberty Avenue, 29th Floor
                                        Pittsburgh, PA  15222
                                        Phone:  (412) 394-5549
                                        crychcik@foxrothschild.com

                                        Attorneys for Defendants
                                        V&S Medical Associates, LLC
                                        Peter Vaccaro, M.D.
                                        Karman Saleh, M.D.


                                        /s/ Daniel M. Mulholland III
                                        Daniel M. Mulholland III
                                        Pennsylvania ID No. 28806
                                        HORTY, SPRINGER & MATTERN, P.C.
                                        4614 Fifth Avenue
                                        Pittsburgh, PA 15213
                                        Phone: (412) 687-7677
                                        Fax: (412) 687-7692
                                        dmulholland@hortyspinger.com

                                        Attorneys for Defendant
                                        Bradford Regional Medical Center

166016.2
September 4, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date he served the following with a copy of the foregoing Brief in Support of Joint Motion to Compel by e-mail via the Court's ECF system and by first class United States mail, addressed as follows:

Andrew M. Stone
Allegheny Building, Suite 1400
429 Grant Street
Pittsburgh, PA  15219

G. Mark Simpson
Simpson Law Firm, LLC
165 North Main Street
Jonesboro, GA  30236

Paul E. Skirtich
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

This 4th day of September 2007.

/s/ Daniel M. Mulholland III
Daniel M. Mulholland III, Esquire

13

166016.2
September 4, 2007