1818 Market Street         25 C    nut Street        www.mar-law.com
Suite 3402                 Suite    5
Philadelphia, PA 19103     Haddonfield, NJ 08033     REPLY TO:
215.972 6400 TEL           856 354.0955 TEL              Pennsylvania
215 981.0082 FAX           856 354.0918 FAX

**MA&R**

**MILLER ALFANO & RASPANTI P.C.**

<u>FOR DISCUSSION PURPOSES ONLY</u>

March 20, 2003

**BY FAX and FIRST CLASS MAIL**

Alan J. Steinberg, Esquire
Horty, Springer & Mattern, P.C.
4614 Fifth Avenue
Pittsburgh, PA 15213

Re:  <u>V&S Medical Associates</u>

Dear Mr. Steinberg:

Thank you for your March 14, 2003 letter and your update during our conversation of March 18, 2003. As you know, Mr. Kabala has been your primary contact in the discussions regarding the V&S Medical Associates' nuclear camera. In his absence, I am happy to provide you with some preliminary reactions to the Medical Center's counterproposal. Given that I have not been a party to any of the meetings, however, I renew my request for your patience in awaiting his return for final resolution of these matters. Given the spirit of cooperation that I am pleased to see now exists between the parties, I am hopeful that this will not be a problem.

It is my understanding that on Saturday, March 8, 2003, Drs. Vaccaro and Saleh and Mr. Kabala met with you, Mr. Mulholland and Mr. Leonhardt for over three hours. The discussions focused primarily on the details of a proposed lease agreement between the Medical Center and V&S Medical for the nuclear camera. This was after the lease concept had been rejected by the hospital. It is my further understanding that the deal as initially posed by my clients was a 5 year/$2,000 per day lease in which the nuclear camera would be moved from the V&S offices to the Medical Center. By the end of the meeting, the doctors agreed to a 5 year/$1,500 per day lease. Thus, the Medical Center's current proposal of a 3 year/$1,200 per day lease is for a substantially shorter period of time and for an amount significantly lower than the initial proposal.

**EXHIBIT**

**1**

**DEPOSITION EXHIBIT**
Saleh
8901 21 jan

**Confidential**

Alan J. Steinberg, Esquire                        Page 2

**MA&R**

MILLER ALFANO & RASPANTI P.C.

In arriving at the lease proposal, please consider what the doctors have agreed to forego. First is convenience. The doctors currently can order a test, have it performed and obtain accurate, thorough results within six to eight hours. As you may know, one of the reasons the doctors pursued installing the nuclear camera was a concern about the time delays and accuracy of the Medical Center nuclear reports. While the doctors fully expect that those problems will be resolved, there is no doubt that having tests performed on-site is more convenient for both the doctors and the patients.

Second, the doctors are losing the significant up-front costs that were involved with installing the nuclear camera. The doctors secured additional space and paid for the renovations necessary for the camera.

Third, the doctors have also agreed, at least in principle, to provide the hospital with the right of first refusal for future ventures such as CT, MRI or other diagnostic imaging services. While the doctors believe that it is in both the Medical Center's and their best interest to work cooperatively on any such venture, there is little doubt that the financial benefit will inure to the hospital.

Fourth, please consider that the numbers as discussed at the March 8th meeting only contemplated the use of the camera five (5) days per week. Given that the nuclear camera would be moved to the hospital, there is no reason that it could not be utilized seven (7) days a week. Thus, the hospital is basing its payments on a five (5) day per week model, when it is very probable that services would be provided over seven (7) days. These extra days of usage have not heretofore been factored into the negotiations.

Finally, during the term of the sublease, the doctors will agree not to compete the services provided in connection with the subleased equipment or invest in any entity that chooses to do so. Thus, a five year sublease benefits both parties. I know that it is your position that a five year lease is out of the ordinary for hospitals. I believe, however, the circumstances surrounding this arrangement fit squarely into the out of the ordinary category.

**Confidential**

Alan J. Steinberg, Esquire                           Page 3

**MA&R**
MILLER ALFANO & RASPANTI P.C.

For these reasons, we believe that the offer as initially
negotiated is reasonable and fair. It was certainly made in good
faith and in the spirit of cooperation.

The lease arrangement appears to be the optimal solution for
both sides. If, however, it is not possible to agree to terms, the
doctors still are interested in pursuing the under arrangements
model. To that end, our accountants have requested additional
information for their analysis. I will provide their request under
separate cover.

In your letter, you also raised the issue of how the lease
arrangement impacts the position of the four physicians associated
with V&S Medical with respect to the Physician New Co. The lease
would not affect the status of those discussions. The doctors
still anticipate taking the lead in developing and maintaining the
primary role in the Physician New Co. We will need to address the
issues that were raised by both parties before the discussions were
tabled in favor of the lease arrangement.

As I mentioned, we ask that the Medical Center discontinue the
practice of raising the V&S ultrasound procedures as if they are
relevant to the present discussions. It is disconcerting to the
doctors and not applicable as (1) several other physician offices
either perform or plan to perform ultrasound procedures and have
not been subject to Board scrutiny; and (2) in the procedures for
assessing competing financial relationships, the Board expressly
acknowledges that as of May 23, 2001 (well after the ultrasound was
installed at V&S Medical) no services were being offered by any
member of the Medical Staff that were perceived to be competing
financial relationships. It is my understanding that this
statement was included to make it clear that physician-based
ultrasound procedures were excluded.

Thank you for your diligence. I am happy to see that this
matter is being resolved in a noncontentious process. I firmly
believe that both our clients benefit from an amicable solution and
that we are close to reaching one. While I understand the Board's
desire to finally resolve this matter, I hope that they will view

**Confidential**

Alan J. Steinberg, Esquire                                    Page 4


MILLER ALFANO & RASPANTI P.C.

the progress in March as substantial and refrain from taking any action until after Mr. Kabala has returned from his scheduled vacation.

Very truly yours,

JODEEN M. HOBBS

JMH/gh
F:\PBL\JMH\V&S Medical\gh000054.ltr.wpd

**Confidential**