IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* : | |
| DILBAGH SINGH, M.D., : | Civil Action No. 04-186E |
| PAUL KIRSCH, M.D., : | |
| V. RAO NADELLA, M.D., and : | |
| MARTIN JACOBS, M.D., : | The Honorable Judge Cohill |
| : | |
| Relators, : | |
| : | |
| v. : | |
| : | |
| BRADFORD REGIONAL : | |
|  MEDICAL CENTER, : | |
| V & S MEDICAL ASSOCIATES, LLC, : | |
| PETER VACCARO, M.D., : | |
| KAMRAN SALEH, M.D., : | |
| and DOES I through XX, : | |
| : | |
| Defendants. : | |

**REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' JOINT MOTION TO COMPEL**

Defendants Bradford Regional Medical Center ("BRMC"), V&S Medical Associates, LLC ("V&S"), Kamran Saleh, M.D. ("Dr. Saleh"), and Peter Vaccaro, M.D. ("Dr. Vaccaro") (hereafter collectively referred to as "Defendants") jointly offer the following Reply to Plaintiff's Response to Defendants' Joint Motion to Compel.

**I.    DEFENDANTS ARE ENTITLED TO ANSWERS TO THE CATEGORIES OF QUESTIONS COVERED IN THEIR MOTION TO COMPEL.**

On September 4, 2007, Defendants filed a joint motion to compel based upon the Relators' failure to answer certain categories of questions asked of them during their depositions ("Motion to Compel"). The Motion to Compel was accompanied by a Brief in Support, and a group of Exhibits filed separately under seal, attaching relevant deposition pages.[1] On January 22, 2008, the Relators filed their Response to Defendants' Joint Motion to Compel ("Relators'

---

[1] Defendants incorporate their original Motion to Compel, Brief in Support, and Exhibits by reference hereto.

1

Response"). The Relators spend much of their Response (i) misleadingly citing to out-of-context portions of deposition testimony, most of which are irrelevant to the underlying Motion to Compel, and (ii) mischaracterizing the actual relief requested by Defendants and the extent to which the Relators provided sufficient responses. Ultimately, though, the Relators' Response offers no legitimate reasons why Defendants' Motion to Compel should not be granted. Instead, the Relators' Response primarily mischaracterizes the effect of the Court's May 31, 2007 Opinion and Order ("the May 31, 2007 Order"), the relevancy of Defendants' deposition questions, and whether Defendants' Motion to Compel meets the requirements of Local Rule 37.2 ("LR 37.2"). Accordingly, Defendants will respond to each of the Relators' primary arguments.

### A. The Requested Information In The Motion To Compel Is Relevant And Discoverable Under The Court's May 31, 2007 Order.

In their Response, the Relators repeatedly assert that the Defendants are seeking information that is precluded by the May 31, 2007 Order. This is not the case. The May 31, 2007 Order expressly precludes discovery of information about the Relators' *financial relationships* with entities to which they refer patients. In the May 31, 2007 Order, the Court explained that this restriction was based on its belief that BRMC sought to discover evidence that the Relators themselves were engaged in wrongful conduct in their dealings with other medical providers. By contrast, Relators' counsel have now stretched the May 31, 2007 Order well beyond its express language and intent. In their depositions, the Relators were instructed not to answer questions about the existence and nature of other facilities offering diagnostic imaging in the community, the referral patterns and practices of the Relators, the existence and nature of any non-compete agreements to which the Relators are or have been bound, the Relators' knowledge and opinions about the nuclear cardiology equipment at BRMC, the factual information that was

the subject of the Statement of Material Evidence filed with the United States ("the Disclosure Statement"), and the Relators' motivations in bringing this litigation. All of these areas are relevant and none are barred by the May 31, 2007 Order.

1.  Referral Patterns And Practices

In their Motion to Compel, Defendants seek answers to a limited and focused category of questions related to the referral practices of the Relator physicians. These questions in no way suggest that the Relators did anything improper. Rather, they seek to develop facts to bolster the credibility of positions Defendants are asserting regarding their own conduct.[2] Defendants maintain and seek to prove that the Sublease agreement between V&S and BRMC ("the Sublease") was not intended, expected, or understood to obligate referrals to BRMC. Drs. Saleh and Vaccaro have testified that their referral decisions are made on an individual, case-by-case basis, and are based upon all the circumstances existing at the time. See Deposition Transcript of Kamran Saleh, M.D. ("Saleh Tr.") at pp. 17-19, 35-37, 74-75 (Exhibit A); Deposition Transcript of Peter Vaccaro, M.D. ("Vaccaro Tr.") at pp. 19-20 (Exhibit B). Defendants should be permitted to strengthen the credibility of their positions through testimony provided by the Relators, who not only practice medicine in the community like Drs. Saleh and Vaccaro, but also have accused the Defendants of improprieties.

Furthermore, Defendants' request is entirely consistent with the May 31, 2007 Order. Contrary to the Relators' contentions, the Motion to Compel does not seek to discover specific

---

[2] Relators cite to Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 732 (11th Cir. 1984), to support their contention that "[a] district court may deny a motion to compel further deposition questioning when the court determines that the questions are irrelevant." Relators' Response, p. 5. However, that case more specifically stands for the proposition that a line of questioning that is irrelevant for one purpose may nevertheless be relevant for another purpose. The Westrope court was confronted with a defendant's motion to compel the deposition testimony of a second defendant, who had already settled his case. 730 F.2d at 732. The court ruled that while the second defendant's testimony may have become irrelevant to that defendant's case, his testimony remained relevant to the moving defendant's case. Id. In the present litigation, Defendants are not seeking information to establish irrelevant wrongdoing by the Relators, which the Court's Order prohibits, but instead seek evidence to establish facts that support their own defenses.

information about the details of Relators' financial relationships. If, for example, a Relator takes his financial relationship with another entity into consideration when deciding where to refer a patient, Defendants would only seek limited information about the extent that such financial relationships influence Relators' referral patterns and practices. The specific details of the financial relationships would not have to be discovered. By contrast, if that Relator testifies that he makes referral decisions on a case-by-case basis and does not allow his financial relationships to sway his referral decisions, it would help the Defendants establish that it is the normal practice in the Bradford community that referrals are not influenced by financial relationships.

Similarly, insofar as the Relators refer patients to BRMC, their knowledge and opinions about BRMC's current and past nuclear cardiology equipment, including the nuclear camera leased by V&S to BRMC, are relevant, and in no way precluded by the Court's May 31, 2007 Order. See Deposition Transcript of Paul B. Kirsch, M.D. ("Kirsch Tr.") at pp. 88:16-93:12(Exhibit C); Deposition Transcript of Dilbagh Singh, M.D. ("Singh Tr.") at p. 170:8-20, (Exhibit D). This is especially relevant now that Relators have suggested that the equipment was an older model and would not address BRMC's needs. Relators' Response at 3. All of these factors and the information Relators can provide, may be invaluable to strengthening the credibility of Defendants' positions and/or rebut the claims of the Relators.

Relators' counsel further claim in their Response that the Relators were allowed to answer questions about their referral patterns. This is also not correct, and can be refuted by a review of the deposition testimony and the repeated instructions not to answer these questions. See Deposition Transcript of V. Rao Nadella, M.D. ("Nadella Tr.") at pp. 97:17-103:18, 103:22-107:16, 111:21-114:10, 127:18-21, 170:19-171:18, (Exhibit E); Exhibit C, Kirsch Tr., at 20:8-

21:7, 72:12-73:10, 88:16-93:12; Exhibit D, Singh Tr., at 27:10-23, 170:8-20, 171:17-22.[3]  In fact, the arguments, objections, and instructions not to answer were so disruptive during the first Relator deposition, Dr. Nadella's deposition, that the parties entered into a stipulation for the subsequent depositions.  Counsel for both sides stipulated that if a question had been asked in a prior deposition and had been met by an instruction not to answer, the question and instruction would be referred to the Judge as though they had also been a part of each subsequent deposition.  See Exhibit C, Kirsch Tr., at 5:14-6:19; Exhibit D, Singh Tr., at 8:10-10:4; Exhibit F, Jacobs Tr., at pp. 5:11-7:2.

Defendants have been improperly prevented from obtaining relevant, discoverable information needed to properly develop their defenses.  Accordingly, Defendants' Motion to Compel should be granted and Relators should be ordered to answer questions related to their patterns and practices.

    2.    <u>Non-competition Covenants</u>

Defendants also request answers to a very limited and precise category of questions regarding the non-compete covenants that the Relators have entered into.  Once again, these questions are not aimed at suggesting that the Relators did anything improper, but rather are to support the credibility of Defendants' positions regarding their own conduct.  The Relators claim that the non-compete covenant ("the Covenant") included in the Sublease, as well as the amount paid to V&S in consideration of it, creates a substantial financial incentive to refer patients.  See Relators' Response., p. 3; Complaint ¶88.  Defendants, on the other hand, contend that the

---

[3] Usually Relators' counsel explicitly instructed the deponent not to answer, however, on a few occasions counsel did so implicitly by referencing previous instructions not to answer.  Questions that were met with an implicit instruction not to answer, regardless of their subject matter, include: Exhibit E, Nadella Tr., at 44:16-45:2, 97:17-103:18, 103:22-107:13; Exhibit C, Kirsch Tr., at 88:16-93:12; Exhibit D, Singh Tr., at 54:18-57:15, 170:8-20, 171:17-22; See Deposition Transcript of Martin David Jacobs, M.D. ("Jacobs Tr.") at pp. 21:9-21, 31:18-33:11 (Exhibit F).

Covenant is comparable to those generally used by similarly situated practitioners in the parties' community, separate from any understanding or expectation for referrals. As stated above, Defendants should be permitted to strengthen the credibility of their positions through various means, including, but not limited to, deposition testimony provided by third-parties such as the Relators. Once again, Defendants' request is entirely consistent with the May 31, 2007 Order, and does not seek to discover any information precluded by it.

As they did in the preceding section, Relators' counsel claim in their Response that Relators were allowed to answer questions about their non-compete covenants. However, this is not correct, as supported by the following references to instructions not to answer. See Exhibit E, Nadella Tr., at p. 115:3-20; Exhibit C, Kirsch Tr., at. pp. 84:12-87:4; Exhibit D, Singh Tr., at pp. 152:8-159:4.[4]

Once again, Relators have been instructed not to answer questions dealing with relevant, discoverable information that may be invaluable to support Defendants' defenses. Therefore, Defendants' Motion to Compel should be granted and the Relators' should be required to answer questions related to non-compete agreements to which they have been a party.

3.  Relators' Motivations

Although the Court's May 31, 2007 Order prevented Defendants from probing into certain information regarding disputes that the Relators may have had with third parties such as government agencies and third-party payors, the May 31, 2007 Order did not preclude questioning into the Relators' motivations for bringing this *qui tam* lawsuit. To the extent that the Relators are seeking to advance their own competitive interests, to use this suit as a weapon

---

[4] The same stipulation discussed in Section I(A)(1) above, also applied to questions about non-compete covenants, meaning that questions asked in earlier depositions, which the Relators were prevented from answering, were also preserved for subsequent depositions. See Exhibit C, Kirsch Tr., at 5:14-6:19; Exhibit D, Singh Tr., at 8:10-10:4; Exhibit F, Jacobs Tr., at 5:11-7:2.

in other disputes they may have with the Defendants, or to punish the Defendants because they want new hospital management, a trier of fact should be able to consider these motives in order to weigh their credibility. Accordingly, these and other inquiries into the motivations of the Relators in filing the suit are relevant and should be answered.

Defendants recognize that the Relators are bringing this *qui tam* litigation on behalf of the Government. Nevertheless, the Relators control the litigation since the Government has declined to intervene, and determine the level of intensity with which it is pursued. Additionally, it is likely that the Relators will be called as fact witnesses should this case proceed to trial. In the event that the Relators' motivations have colored their allegations and the manner in which they are pursuing this litigation, Defendants are entitled to present these issues to a trier of fact to put the entire picture into perspective.

Defendants have identified specific areas of inquiry that might uncover animosity or other biases that would call into question the Realtors' testimony against the Defendants, especially their allegations about the Defendants' intent. Nonetheless, counsel for the Relators repeatedly instructed them not to answer questions exploring these motivations. See Exhibit E, Nadella Tr., at 114:19-115:1, 115:22-116:9, 121:22-122:7, 127:12-16, 128:10-14; Exhibit C, Kirsch Tr., at 16:5-17:7, 52:16-53:17, 58:4-15, 60:4-12; Exhibit D, Singh Tr., at 66:20-67:13, 75:23-77:3, 112:20-115:10; Exhibit F, Jacobs Tr., at 31:18-33:11.[5]

Defendants are already defending themselves against accusations of wrongdoing which they believe to be entirely without merit. They should not be further restricted from exploring

---

[5] Three examples of specific lines of inquiry that Defendants have sought to explore are as follows: First, the extent to which any of the Relators were subject to BRMC's Policy on Physicians With Competing Financial Interests. See Exhibit D, Singh Tr., at 75:23-77:3. Second, whether the Relators harbor animosity toward the current leadership of BRMC as a result of their past dealings. See Exhibit E, Nadella Tr., at 127:12-16, 128:10-14; Exhibit C, Kirsch Tr., at 16:5-17:7, 58:4-15, 60:4-12; Exhibit F, Jacobs Tr., at 31:18-33:11. Third, the extent to which the Relators are seeking to advance their own competitive interests, including, but not limited to, their plans to offer diagnostic services in the future. See Exhibit E, Nadella Tr., at 114:19-115:1, 115:22-116:9, 121:22-122:7; Exhibit C, Kirsch Tr., at 52:16-53:17; Exhibit D, Singh Tr., at 66:20-67:13, 112:20-115:10.

what factors may be driving these accusations. Accordingly, Defendants' Motion to Compel should be granted and Relators should be ordered to answer questions related to their motivations for bringing this litigation.

**B.  Defendants Are Entitled To Either Have Their Deposition Questions About The Disclosure Statement Answered Or The Production Of The Disclosure Statement Itself.**

Defendants' Motion to Compel makes two requests of the Court regarding the Relators' Disclosure Statement: first, the Motion asks that the Court compel the Relators to answer deposition questions regarding the factual information that was the subject of the Disclosure Statement, and second, the Motion asks that the Court compel the production of the Disclosure Statement itself.

    1.    <u>Factual Information That Was The Subject Of The Disclosure Statement</u>

With respect to the deposition questions, Defendants are entitled under the express language of the May 31, 2007 Order to "ask Relators directly about the factual information that was the subject of the disclosure to the United States." May 31, 2007 Order at 5. Relators now contend, though, that the Court's May 31, 2007 Order should be construed only to allow Defendants to grope blindly for the factual matter that was mentioned in the Disclosure Statement without knowing what facts were actually disclosed in that Statement. This position borders on the absurd. It is unclear how Defendants should be able to ask about these facts without knowing what facts were the subject of the disclosure.

In their Response, Relators further suggest that Defendants were able to explore this information though deposition questioning. <u>See</u> Relators' Response at 12. However, counsel for the Relators objected to any questions dealing with the factual content of the Disclosure Statement and instructed them not to answer. <u>See</u> Exhibit E, Nadella Tr., at 37:3-43:10, 44:16-

45:2, 45:13-46:11; Exhibit C, Kirsch Tr., at 33:23-34:20; Exhibit D, Singh Tr., at 54:18-57:15; Exhibit F, Jacobs Tr., at 21:9-21.[6]

      2.      <u>Substantial Need For The Disclosure Statement.</u>

With respect to the production of the Disclosure Statement itself, the Relators argue that Defendants failed to use the magic words "substantial need" in their Motion to Compel, and thus should not be permitted to further inquire into the matter. This argument also lacks merit. Defendants' substantial need for the non-privileged portions of the Disclosure Statement should be manifestly apparent. As stated in <u>U.S. *ex rel*. Burns v. A.D. Roe Company</u>, 904 F.Supp. 592, 594 (W.D.Ky. 1995), where the court permitted production of the disclosure statement in a *qui tam* suit:

> Defendant's need for this document is great and its equivalent cannot be obtained by other means. As mentioned earlier, nowhere else can Defendant obtain a more detailed summary of its alleged wrongdoing. Surely nothing could be more vital to Defendant than to be made completely aware of allegations against which it must defend. The statement of material evidence is the best source of this information and nothing can serve as its substitute.

Relators' counsel has chosen to stonewall with respect to questions about the factual information that was the subject matter of the Disclosure Statement. Moreover, some of the Relators testified that they did not recall seeing a copy of the Disclosure Statement. As a result, Defendants have no other recourse than to once again ask the Court to order the Relators to produce a copy of the Disclosure Statement, since there is no other way for the Defendants to determine the critical non-privileged factual information that was the subject of that statement.

---

[6] Once again, the parties stipulated that questions asked in earlier depositions that included an instruction not to answer would be treated as though they were also asked in later depositions. See Exhibit C, Kirsch Tr., at 5:14-6:19; Exhibit D, Singh Tr., at 8:10-10:4; Exhibit F, Jacobs Tr., at 5:11-7:2.

Accordingly, Defendants request that the Court grant their Motion to Compel and order the Relators to answer further questions regarding the Disclosure Statement and/or provide a copy of the Statement to Defendants.

## II. THE MOTION TO COMPEL COMPLIES WITH LOCAL RULE 37.2.

Relators repeatedly complain in their Response that the Defendants have not complied with LR 37.2, which requires discovery motions to include "a verbatim recitation of each interrogatory, request, answer, response or objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion." This contention is incorrect on several levels.

First, LR 37.2 only specifically addresses interrogatories and requests, not depositions. Second, to the extent that LR 37.2 can be construed to apply to motions to compel answers to deposition questions, Defendants have fully complied with the requirements of the Rule.

On August 31, 2007, Defendants filed a Motion for leave to file the exhibits referred to in Defendants' Motion to Compel under seal (Dkt. No. 88). After the Court entered an order granting Defendants' Motion for Leave (Dkt. No. 93), the exhibits were filed on September 6, 2007. The excerpts that were filed constitute "the actual discovery document which is the subject of the motion" and constitute a verbatim list of disputed questions. The Defendants' Motion to Compel thus meets the requirements of LR 37.2.

The policy behind demanding a "verbatim recitation" like that in LR 37.2, is expressed in Coleman v. Blockbuster, Inc., 238 F.R.D. 167, 170 (E.D.Pa. 2006), which addressed a similarly worded rule in the Eastern District. There, the court stated that the purpose of such a rule is "to force parties to bring into sharp focus the particular discovery disputes that they want a court to resolve." Defendants' Motion to Compel and the exhibits filed therewith do just that. In another

case, the Eastern District held that attaching disputed interrogatories and document production requests as exhibits satisfies a "verbatim" requirement similar to that in LR 37.2. Grinder v. Keystone Health Plan Central, Inc., 2004 WL 902367, *4 (E.D.Pa. 2004).

Courts have further permitted the grouping of refused questions by category for the purpose of a motion to compel, rather than repeating each and every one. See GSI Group, Inc. v. Sukup Mfg. Co., 2007 WL 4556703, *2 (C.D.Ill. 2007). Furthermore, the moving party can also provide additional detail to its motion to compel in its reply to the response to the motion. Id. Therefore, while Defendants fully complied with LR 37.2 in their original Motion to Compel, the detailed listing of the disputed questions that Defendants have included in the current Reply removes any purported doubt as to the areas of inquiry that are in controversy.

In addition, if the Court grants the present motion to compel, Defendants should be permitted to ask reasonable follow-up questions in the contested categories. Courts routinely incorporate into their orders a recognition that where specific questions in a deposition have been asked and refused, follow-up questions to those already asked may be necessary. See Alexander v. F.B.I., 186 F.R.D. 128, 134 (D.D.C. 1998) (granting leave to re-depose witness regarding what document searches were done, and allowing reasonable follow-up questions on his knowledge of the search); Boyd v. Univ. of Md. Med. Sys., 173 F.R.D. 143, 149 (D.Md. 1997) (ordering that questions improperly refused by deponent must be answered, along with "any reasonable follow up questions"); Sequa Corp. v. Gelmin, 1993 WL 212797, *1 (S.D.N.Y. 1993) (directing deponent to answer previously refused questions, along with "reasonable follow-up questions").

Accordingly, for all the reasons set forth above, Defendants have fully complied with LR 37.2 and are entitled to the relief requested in their Motion to Compel.

### III. RELATORS HAVE MISCHARACTERIZED THE FACTS OF THE CASE IN THEIR RESPONSE.

Although the only issue before the Court on this Motion to Compel is whether the Relators should be compelled to answer certain categories of deposition questions, Relators devote several pages at the outset of their Response summarizing what they claim to be the "factual background" of the case. This summary is not only unnecessary to the present dispute, it is also frequently inaccurate. Relators cite to a number of statements made by the Defendants during their depositions out of context in an effort to mischaracterize the actions and motives of the Defendants. The description of the case contained in the Relators' Response is at times so misleading that Defendants are compelled to briefly set the record straight in terms of what was actually said during their depositions.

First, Relators suggest that BRMC tried to pressure V&S out of the nuclear cardiology business through its Policy on Physicians With Competing Financial Interests, in order to extract referrals from Drs. Saleh and Vaccaro for nuclear cardiology tests. Relators' Response at 2. However, George Leonhardt, the President and CEO of BRMC, explained during his deposition that the purpose of that Policy, and BRMC's actions thereunder, was to ensure that the community served by BRMC would have access to needed medical services, especially cardiology services, which were not available in Bradford at the time. See Deposition Transcript of Corporate Designee of Bradford Regional Medical Center ("BRMC Tr.") at pp.84-85 (Exhibit G). Mr. Leonhardt went on to explain how the performance of nuclear cardiology tests by V&S would hurt BRMC's ability to upgrade the cardiology services available to people in Bradford. Exhibit G, BRMC Tr., at 96-97.

Second, the Defendants testified that the purpose of the Sublease was not simply for BRMC to acquire a piece of nuclear camera equipment. However, contrary to the Relators'

12

insinuation that another purpose was to induce the referral of patients to BRMC by Drs. Saleh and Vaccaro, the Defendants vigorously denied this when deposed. Exhibit G, BRMC Tr., at 146; Exhibit A, Saleh Tr., at 104. Mr. Leonhardt testified that from BRMC's perspective another purpose of the Sublease was to give BRMC a level field to compete on so that referral decisions would be made based on quality and the level of service BRMC could provide to patients. Exhibit G, BRMC Tr., at 142. Dr. Saleh testified that another purpose of the Sublease was to provide a legal opportunity to end an ongoing dispute with BRMC as to whether Drs. Saleh and Vaccaro would be subject to BRMC's Policy on Physicians With Competing Financial Interests. Exhibit A, Saleh Tr., at 83-84.

Third, Relators now contend that the GE camera that was the subject of the Sublease was an older model that would not address BRMC's needs. However, Relators conveniently exclude the testimony of the Defendants, including Mr. Leonhardt, that while the GE camera remained a usable piece of equipment, the Sublease nevertheless expressly contemplated the possibility of upgrading the GE camera to newer equipment. Exhibit G, BRMC Tr., at 139-140, 143. This, in fact, was exactly what occurred, and the GE equipment was upgraded within the first year of the Sublease to a newer piece of equipment. Exhibit G, BRMC Tr., at 185-86.

Fourth, other testimony by Mr. Leonhardt that was conveniently omitted from the Relators' Response gives lie to Relators' notion that the amount of the lease payments under the Sublease took into account the nuclear cardiology referrals that Drs. Saleh and Vaccaro might make to BRMC. To the contrary, in his deposition, Mr. Leonhardt enumerated the actual factors that BRMC considered when calculating the appropriate payment amounts under the Sublease. Exhibit G, BRMC Tr., at 150. None of these factors took referrals into account.

Finally, Relators misleadingly state that the equipment that was the subject of the Sublease was never moved to BRMC and that BRMC made additional payments to V&S, including costs associated with housing the camera in V&S' offices and billing for tests performed, that were not reflected in writings between the parties. Relators' Response at 4. In reality, what Relators describe in their Response was a period of only several months at the beginning of the Sublease when there was an unexpected delay in getting the new upgraded equipment installed at BRMC. Furthermore, the terms of these unanticipated costs and charges were set forth in writings signed by the parties, and the charges stopped after the new equipment was installed and operating at BRMC.

Defendants reserve their right to more fully assert the factual background of this case and correct any further mischaracterizations at an appropriate time.

## IV. CONCLUSION

For all the reasons set forth above, as well as in Defendants' original Motion to Compel and Supporting Brief, Defendants respectfully request that the Court grant their Joint Motion to Compel.

Respectfully submitted,

February 5, 2008

/s/ Carl J. Rychcik
Carl J. Rychcik
PA. I.D. # 73754
FOX ROTHSCHILD LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, Pa 15222
Phone: (412) 394-5549
crychcik@foxrothschild.com

Attorneys for Defendants
V&S Medical Associates, LLC
Peter Vaccaro, M.D.
Kamran Saleh, M.D.

/s/ Daniel M. Mulholland III
Daniel M. Mulholland, III
PA. I.D. #28806
HORTY, SPRINGER & MATTERN, P.C.
4614 Fifth Avenue
Pittsburgh, PA  15213
Phone:  (412) 687-7677
Fax:  (412) 687-7692
dmulholland@hortyspringer.com

Attorneys for Defendant
Bradford Regional Medical Center

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date he served the following with a copy of the foregoing Reply to Plaintiff's Response to Defendants' Joint Motion to Compel by e-mail via the Court's ECF system and by first class United States mail, addressed as follows:

Andrew M. Stone
Allegheny Building, Suite 1400
429 Grant Street
Pittsburgh, PA  15219

G. Mark Simpson
Simpson Law Firm, LLC
165 North Main Street
Jonesboro, GA  30236

Paul E. Skirtich
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA  15219

February 5, 2008                                    /s/ Daniel M. Mulholland III
                                                     Daniel M. Mulholland, III, Esquire