# EXHIBIT
# C

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2                ERIE DIVISION

3

UNITED STATES OF AMERICA, ex rel. )
4    DILBAGH SINGH, M.D., PAUL KIRSCH, )
     M.D., V. RAO NADELLA, M.D., and  )
5    MARTIN JACOBS, M.D.,             )
                                      )
6              Relators,             )
                                      )    Civil Action
7        vs.                          )    No. 04-186E
                                      )
8    BRADFORD REGIONAL MEDICAL CENTER, )
     V&S MEDICAL ASSOCIATES, LLC,     )
9    PETER VACCARO, M.D., KAMRAN SALEH,)
     M.D., and DOES I through XX,     )
10                                     )
               Defendants.           )
11

12         DEPOSITION OF PAUL B. KIRSCH, M.D.

13           MONDAY, AUGUST 20, 2007

14         Deposition of PAUL B. KIRSCH, M.D., called as a

15   witness by the Defendant Bradford Regional Medical

16   Center, taken pursuant to Notice of Deposition and the

17   Federal Rules of Civil Procedure, by and before Joy A.

18   Hartman, a Court Reporter and Notary Public in and for

19   the Commonwealth of Pennsylvania, at the offices of

20   Stone Law Firm, 1400 Allegheny Building, Pittsburgh,

21   Pennsylvania, commencing at 2:50 p.m. on the day and

22   date above set forth.

23

CONFIDENTIAL

JOHNSON and MIMLESS
(412) 765-0744



CONFIDENTIAL - PROTECTED HEALTH INFORMATION

5

1    assume that you understood the question, and that you

2    answered the question truthfully, and that the

3    information you are giving is complete.

4         If you need to take a break, let me know.  Is

5    this okay with you?

6    A.    Yes, it is.

7    Q.    Now, do you understand the nature of the oath

8    you just took?

9    A.    Yes, I do.

10   Q.    And are you under the influence of any

11   substance that would impair your memory or your

12   ability to testify truthfully today?

13   A.    No, I am not.

14            MR. MULHOLLAND:  Before we get into

15        specific questions, I would like to propose a

16        stipulation, that I would ask Dr. Kirsch the

17        same questions that I asked Dr. Nadella on the

18        deposition just concluded, to which counsel for

19        the Relators interposed objections and

20        instructed Dr. Nadella not to answer.

21           This would be for the purpose of, again,

22        certifying the same questions with respect to

23        Dr. Kirsch to the Court for further review.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

6

1    That would be, of course, other than some

2    questions to which you objected that only had

3    to deal with Singh & Nadella.  I think there

4    were a couple of those.

5        MR. STONE:  I think there may have been a

6    couple.  We would agree that we would have the

7    same objection and the same instruction not to

8    answer the same questions that are being

9    propounded to Dr. Kirsch that were propounded

10   to Dr. Nadella.

11       MR. RYCHCIK:  I would, obviously, like to

12   join in that, as well, because there were some

13   questions that I asked, as well.

14       MR. MULHOLLAND:  And we would, of course,

15   reserve our right to propose those questions

16   again to the extent that the Court ruled that

17   we were able to.

18       MR. STONE:  Agreed.

19       MR. MULHOLLAND:  Thank you.

20   Q.   Dr. Kirsch, just for our records, what is your

21   home address?

22   A.   601 Hedgehog Lane, Bradford, Pennsylvania.

23   Q.   Your home phone number, please?

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

16

1    A.    That's correct.

2    Q.    At one time, did you or Foster Brook employ a

3    Dr. Syed Ali?

4    A.    Yes.

5    Q.    Did you have an agreement with the Medical

6    Center regarding Dr. Ali's practice in your office?

7         MR. STONE:  I'm going to object to the

8         extent that, again, this is getting into an

9         area which involves Dr. Kirsch's business

10        relationships with other entities, which are

11        not the subject of the complaint and are,

12        therefore, irrelevant and the subject of Judge

13        Cohill's prior order.

14        MR. MULHOLLAND:  And you are instructing

15        him not to answer?

16        MR. STONE:  I direct him not to answer.

17        (Question certified for later discussion.)

18   Q.    Then, for the record, let me ask you two other

19   questions regarding that.  Doctor, did you have any

20   agreement with Bradford Regional Medical Center

21   regarding the use of space, facilities, or personnel

22   for Dr. Ali?

23        MR. STONE:  Again, I will object and

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

17

1      instruct him not to answer.

2            (Question certified for later discussion.)

3      Q.   Was there a dispute between you and Bradford

4  Regional Medical Center over the termination of any

5  agreement that you may have had regarding Dr. Ali?

6            MR. STONE:   Again, I will object and

7            instruct him not to answer.

8            (Question certified for later discussion.)

9      Q.   Dr. Kirsch, at the present time, do you

10  consider yourself to be a competitor of Dr. Saleh or

11  Dr. Vaccaro?

12     A.   No.

13     Q.   Is it your understanding that they practice

14  internal medicine in Bradford just as you do?

15     A.   That's correct.

16     Q.   And you don't view yourself as a competitor?

17     A.   No.

18     Q.   Why not?

19     A.   Because I, basically, have a full practice, and

20  I'm as busy as I want to be, and I don't think they

21  take my patients, and I'm not looking to take their

22  patients, so I don't feel there is any competition

23  whatsoever.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

20

1    A.    Hamot Medical Center, Erie, Pennsylvania; St.

2    Vincent's Hospital, Erie, Pennsylvania; University of

3    Pittsburgh Medical Center, Pittsburgh; Buffalo General

4    Hospital, Buffalo, New York; Millard Fillmore

5    Hospital, Buffalo, New York; Strong Memorial Hospital,

6    Rochester, New York; Cleveland Clinic, Cleveland.  I

7    think that is about it.

8    Q.    What criteria, if any, do you use to decide

9    where to refer a patient for nuclear cardiology

10   studies?

11            MR. STONE:  I'm going to object to any

12        further question with regard to Dr. Kirsch's

13        business relationships with any entities as

14        again being irrelevant and subject to Judge

15        Cohill's order.

16            MR. MULHOLLAND:  I wasn't asking for

17        business relationships.  I was asking for

18        criteria that he uses as to where a patient

19        should go.

20            MR. STONE:  Again, it is not relevant to

21        the case because this is about V&S and an

22        illegal arrangement that V&S had with BRMC, and

23        what Dr. Kirsch does is irrelevant to this

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

21

1    case.

2         MR. MULHOLLAND:  And are you instructing

3    him not to answer?

4         MR. STONE:  I am instructing him not to

5    answer.

6         MR. MULHOLLAND:  Will you please mark that

7    as a page to be certified?

8         (Question certified for later discussion.)

9    Q.   Dr. Kirsch, are you a participating physician

10   in the Federal Medicare program?

11   A.   Yes, I am.

12   Q.   Are you a participating physician in the

13   Pennsylvania Medical Assistance program?

14   A.   No, I am not.

15   Q.   Have you ever been a participating physician in

16   the Pennsylvania Medical Assistance?

17   A.   No, I have never been.

18   Q.   Doctor, I'm going to ask that you take a look

19   at the document that was previously introduced and

20   marked as Exhibit 1 at Dr. Nadella's deposition.  This

21   is a copy of the Complaint that was filed in this case

22   by you and the other Relators.

23        MR. RYCHCIK:  The Complaint is actually

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

33

1    Q.    In paragraph 4, you refer to allegedly illegal

2    financial relationships.  Are you referring to the

3    nuclear camera lease in this statement?

4    A.    Yes.

5    Q.    Are you referring to any other financial

6    relationship between the Medical Center and any other

7    doctor in this paragraph?

8    A.    No.

9    Q.    In paragraph 5, you allege that the defendants

10   made false statements to the Government when

11   submitting claims to Medicare.  Can you identify any

12   specific false statement or false claim that was

13   submitted by the Medical Center to Medicare or

14   Medicaid?

15   A.    I have no knowledge of what they submitted.

16   Q.    Let me ask, because I didn't think that you

17   objected to this, Mr. Stone, but in paragraph 11 you

18   refer to a statement of material evidence that you and

19   the Relators filed with the Government when you filed

20   the Complaint.  Have you seen this statement of

21   material evidence?

22   A.    I don't remember.

23   Q.    Do you recall any of the contents of the

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

34

1  statement of material evidence?

2         MR. STONE:  Again, I'm going to object to

3      the extent that you are asking about the

4      communication with the Government.  I instruct

5      him not to answer the question.

6         MR. MULHOLLAND:  Again, this would be

7      subject to the same stipulation we entered into

8      at the beginning of the deposition.

9         MR. STONE:  That is correct.

10         (Question certified for later discussion.)

11  Q.    Doctor --

12         MR. STONE:  Just so it is also clear, to

13      the extent that you have questions about the

14      facts of the complaint, which is the subject

15      matter of the disclosure statement, I don't

16      have a problem with your asking questions about

17      the underlying subject matter.

18         What I have an objection to is the

19      contents of the disclosure that was provided to

20      the Government.

21  Q.    Dr. Kirsch, do you recall the subject matter of

22  the disclosure made to the Government?

23  A.    Yes.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

52

1    Q.    It is the July 8th letter, yes.  If you could

2    take a look at that, and let me know when you have had

3    a chance to review it?

4    A.    Okay.

5    Q.    Have you seen this document before?

6    A.    Yes.

7    Q.    Do you recall receiving a document with similar

8    identical contents from this from Mr. Leonhardt on or

9    about the date that is on that letter?

10   A.    Yes.

11   Q.    Did you understand it to be his response to

12   your response to his letter?

13   A.    Yes.

14   Q.    Did you read it when you received it?

15   A.    Yes, I did.

16   Q.    Doctor, I can anticipate that this may be

17   subject to an objection, but I want to get it on the

18   record because it is different than questions I asked

19   Dr. Nadella.

20          Do you have any present plans to offer nuclear

21   cardiology or imaging services in either Bradford or

22   Olean in conjunction with Summit Health Care or anyone

23   else?

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

53

1          MR. STONE:  I will object to that as being

2      irrelevant and for the reasons stated

3      previously as not discoverable under Judge

4      Cohill's prior order, and I will direct the

5      witnesses not to answer.

6          (Question certified for later discussion.)

7   Q.   Are Drs. Singh and Nadella and/or Dr. Horsley

8  involved in any planned offering of imaging services

9  by you in Olean or Bradford?

10          MR. STONE:  Again, I will object and

11      instruct the witness not to answer.

12          (Question certified for later discussion.)

13   Q.   Do you have any plans at the present time to

14  share office space or to rent office space from Dr.

15  Singh and Dr. Nadella?

16          MR. STONE:  Again, I will object and

17      direct the witness not to answer.

18          (Question certified for later discussion.)

19   Q.   Do you recall discussions, Doctor, during the

20  2002-2003 time period regarding the proposed joint

21  venture with the medical staff to offer services under

22  arrangements?

23   A.   Yes.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

58

1      A.    Besides all of them?

2      Q.    All of them?

3      A.    Yes.

4      Q.    Aside from the differences of opinion that you

5    have with the hospital that are expressed in this

6    lawsuit, do you have any other dispute with the

7    hospital or members of its Board of Directors?

8      A.    I would love to go into details, but I don't

9    think it is relevant.

10             MR. STONE:  I am going to object to any

11          other disputes that the doctor may or may not

12          have with the hospital.

13             MR. MULHOLLAND:  And instruct him not to

14          answer?

15             MR. STONE:  Yes.

16             (Question certified for later discussion.)

17      Q.    Doctor, in response to the interrogatories that

18    were propounded by the Medical Center, you stated you

19    had a consultant relationship with St. Vincent

20    Hospital; is that correct?

21             MR. STONE:  I'm going to object to that,

22          again, for the same reasons we have previously

23          stated.  Any arrangements that Dr. Kirsch may

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

60

1    refer to Tri-County Diagnostic?

2          MR. STONE:  Objection.  I direct him not

3          to answer.

4    Q.    You stated that you had a problem with the

5    Board of Directors, but you seemed to qualify that

6    statement with respect to George Leonhardt.  Do you

7    have any personal animosity or dispute with George

8    Leonhardt?

9    A.    I don't want to answer that question.  I don't

10   think it pertains to --

11         MR. STONE:  I will object and direct you

12         not to answer.

13         (Question certified for later discussion.)

14         MR. MULHOLLAND:  I don't have any other

15         questions for Dr. Kirsch at this time, again

16         subject to the stipulation we talked about

17         before.

18         MR. RYCHCIK:  If we could take a break, I

19         would appreciate it.

20         MR. STONE:  Five minutes, is that good

21         enough, or do you want a little more?

22         MR. RYCHCIK:  I would like ten minutes.

23         (Recess at taken at 3:53 p.m., and

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

72

1    they had had to share with all the other nuclear tests

2    that they had to do.

3      Q.    Back in 2003 in the Bradford area, were there

4    other options available?

5      A.    You have to be more specific when you say

6    Bradford area.

7      Q.    To do a nuclear test?

8      A.    You said the Bradford area?

9      Q.    For the patients who lived in Bradford.

10     A.    Yeah.  Could they go somewhere else for nuclear

11   tests?

12     Q.    Would you routinely refer them somewhere else?

13          MR. STONE:  I'm going to object to any

14          questions regarding what Dr. Kirsch's business

15          relations were with other entities.

16          I have allowed some questioning with

17          regard to his use of the Bradford Regional

18          Medical Center; but, again, I believe his

19          relationship with other entities is irrelevant,

20          and I'm going to instruct him not to answer.

21          MR. RYCHCIK:  And that is fine.  I am not

22          asking him about his business relationships

23          with any entities.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

73

1          I am asking him regarding the options

2      available to him and the decisions that he was

3      able to make historically from the standpoint

4      in 2003 where he referred patients for nuclear

5      camera testing, and I think it is relevant.

6      But --

7          MR. STONE:  I'm going to instruct him not

8      to answer with regard to other facilities.

9          MR. RYCHCIK:  Again, if we could note this

10     page, as well.

11         (Question certified for later discussion.)

12   Q.   I may have asked you this:  Do you recall when

13  the last conversation you had with Dr. Horsley was

14  regarding the sublease or anything related to a

15  potential arrangement between BRMC and V&S?

16   A.   To my recollection, I never discussed the

17  sublease with him.  Once I got a copy of the sublease

18  and once we decided to turn it over to our attorneys,

19  I had no further communication with him or any other

20  physician regarding the information in there.

21   Q.   Do you have any knowledge of any specific false

22  or fraudulent patient claims made by V&S or Drs.

23  Vaccaro and Saleh?

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

84

1        non-compete agreement, I think it is relevant

2        to his personal knowledge of non-compete

3        agreements, but --

4            MR. STONE:  Okay.  I mean, to the extent

5        that you are relating it to his evaluation of

6        the non-compete, I think that is a fair

7        question.

8    A.   Yes.

9    Q.   You say you have been subject to a non-compete

10   agreement in the past?

11   A.   Yes.

12   Q.   Are you presently subject to a non-compete

13   agreement?

14           MR. STONE:  I'm going to object to any

15       further questioning on his current business

16       relationships, because I think now you are

17       getting into a question of what those

18       relationships are; and he is not being offered

19       in this case as an expert on the fair market

20       value of the non-compete.  We don't intend to

21       offer him for that purpose; and, therefore, his

22       opinion about it is not really relevant to this

23       case, and I instruct him not to answer.

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

85

1        MR. RYCHCIK:  It is relevant if he is the

2    one who filed the lawsuit and has made the

3    allegations.  That makes it relevant.

4        MR. STONE:  He doesn't have to be a

5    witness to every fact in the case.  There are

6    certainly other Relators, and there is

7    certainly expert testimony.  Whether your

8    clients have violated the Anti-kickback laws

9    and Stark laws is not dependent on what Dr.

10   Kirsch thinks about it.

11       MR. MULHOLLAND:  For what it is --

12       MR. STONE:  And for that reason, I don't

13   think it is a proper question to get into his

14   own personal experience on non-compete clauses.

15       MR. MULHOLLAND:  From what it is worth,

16   aside from all the other back and forth we have

17   had about these objections, I think you opened

18   the door when you allowed him to answer

19   questions about whether he was a party to a

20   non-compete.

21       That would open the door to any specific

22   questions as to the nature of the non-compete,

23   with whom the non-compete was entered into, and

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

86

1    the terms of the non-compete.

2        MR. STONE:  Well, as you know, Mr.

3    Mulholland, what I have been trying to do is I

4    have been trying to give you some latitude in

5    your questioning to give you an ability to ask

6    questions in context, and at the same time,

7    adhere to Judge Cohill's ruling that the

8    relationships that these Relators have with

9    other entities is not relevant to this case and

10   not discoverable, and so, therefore, I don't

11   think I have waived any objection by allowing

12   him to make a limited response to one question.

13       We will again assert that these questions

14   about his relationships with other entities are

15   not relevant to this case, and I'm going to

16   instruct him not to answer.

17       MR. MULHOLLAND:  We would take exception

18   with that; but without belaboring the point, I

19   think we can go on.

20       MR. RYCHCIK:  So is it correct that you

21   are instructing him not to answer the

22   particulars of any non-compete agreements he

23   has been a party to?

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

87

1          MR. STONE:  That's correct.

2          MR. RYCHCIK:  Again, if you can note this

3      page, and we will reserve our rights to raise

4      this with the Judge.

5          (Question certified for later discussion.)

6          MR. RYCHCIK:  Again, reserving our right

7      to go into additional matters, the questions

8      that I have are already ones that you have

9      already objected to.

10          While I vehemently disagree with the

11      stance that you have taken, I will reserve that

12      for another day, and we can go from there.

13          MR. MULHOLLAND:  I just have a couple of

14      follow-up questions based on Mr. Rychcik's

15      questions.

16                    - - -

17              FURTHER EXAMINATION

18  BY MR. MULHOLLAND:

19    Q.    Doctor, are you aware that there is more than

20  one nuclear camera at Bradford Regional Medical Center

21  presently?

22    A.    I believe there is two.

23    Q.    Are you aware that one of the two is currently

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

88

1    subject to the sublease which you challenged in this

2    lawsuit?

3        A.    I have no knowledge of that.

4        Q.    Are you aware that there is a Philips camera,

5    or a camera manufactured by Philips at the hospital?

6        A.    I don't know who manufactured the cameras.  I

7    know there are two cameras, because they have two

8    rooms that they can use.

9        Q.    When you refer patients to the Medical Center

10   for nuclear cardiology testing, do you ever specify

11   which camera should be used for the patients?

12       A.    No.

13       Q.    Do you have a preference as to which camera

14   should be used by the patients?

15       A.    No.

16       Q.    Do you believe that the hospital cameras are at

17   least functionally equivalent to the camera used by

18   Tri-County?

19            MR. STONE:  I'm going to object to the

20            question.  To the extent that this is about Dr.

21            Kirsch's decision on how to refer particular

22            patients for particular tests, it is irrelevant

23            to this case, and I don't think that -- again,

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

89

1       I'm going to instruct him not to answer based

2       on Judge Cohill's prior ruling.

3              MR. MULHOLLAND:  I was asking for his

4       opinion about whether the equipment is

5       functionally equivalent, not about his

6       referrals, nor about his business relationships

7       with Tri-County; and I think it is also

8       relevant to the extent that the Relators would

9       ever challenge any camera that is currently

10      subject to the sublease as to whether or not it

11      is functionally equivalent to other

12      alternatives that they have.

13             For the reasons we have discussed, as well

14      as for the reasons I have just stated, I think

15      it is a very relevant question and not subject

16      to the Judge's order.

17             MR. STONE:  Again, what Dr. Kirsch does in

18      a particular case in terms of referring a

19      patient for a particular test?  I don't

20      understand what it has to do with the case.

21             MR. MULHOLLAND:  I didn't ask what he uses

22      to decide where to send a patient.  I asked if

23      in his opinion the equipment was functionally

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

90

1   equivalent to the equipment used by Tri-County.

2       MR. STONE:  Well, how would he know that?

3       MR. MULHOLLAND:  He is a doctor.  I would

4   hope he knows what equipment is used for his

5   patients.

6       MR. STONE:  He is not the person

7   administering the test.  He has already

8   testified he doesn't specify which camera is to

9   be used.  He already said he refers the patient

10  to the nuclear imaging department or whatever

11  for a test.

12      MR. MULHOLLAND:  Again, subject to the

13  court reporter marking this page for

14  certification to the Court, I am --

15      MR. RYCHCIK:  Again, I don't know if Andy

16  is understanding.  You are not asking -- you

17  are not comparing the two pieces of equipment

18  at the hospital.

19      MR. MULHOLLAND:  No.  I am comparing the

20  hospital's equipment to Tri-County's.  You are

21  still objecting to that?

22      MR. STONE:  Again, this isn't about the

23  quality of the equipment.  This is about the

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

91

1     sublease arrangement between V&S and the

2     hospital.

3          MR. RYCHCIK:  And the options in the

4     community are certainly relevant, and the

5     testimony of a referring physician in a small

6     community as to what options are available and

7     the equivalency of the various pieces of

8     equipment are totally relevant.

9          MR. STONE:  And what exception to Stark

10    would that be?

11         MR. RYCHCIK:  From the standpoint of

12    offering what options are available to Drs.

13    Vaccaro and Saleh to understand the full

14    picture of what those options are is relevant

15    to this case.

16         MR. STONE:  Is that a defense to a Stark

17    violation?

18         MR. MULHOLLAND:  It may well be a defense

19    to the other allegations you have filed in the

20    Complaint that we made knowing false claims to

21    Medicare and that the predicate, according to

22    your theory in the case, with which we

23    disagree, it is not only a Stark violation but

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

92

1    an Anti-kickback violation.

2         Now, if you are going to instruct him not

3    to answer, I think it is late in the day, and

4    we don't need to go into it any further, other

5    than to reserve our right to take it up with

6    Judge Cohill.

7         MR. STONE:  I don't think it serves any

8    purpose to go into Dr. Kirsch's decisions about

9    where he refers his nuclear imaging patients or

10   how he makes those referrals.  This is about

11   how Dr. Vaccaro and Dr. Saleh make their

12   referrals.

13        To the extent that you are trying to focus

14   this on Dr. Kirsch, I would object under the

15   order that Judge Cohill has already signed in

16   this case which admonished the Defendants not

17   to refocus this case onto the Plaintiffs and

18   try to punish them for bringing this case, and

19   that is exactly what I see this line of

20   questioning doing.

21        MR. MULHOLLAND:  No.  We are not trying to

22   punish them.

23        MR. STONE:  Every time I let you ask a

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

93

1       question that you think is in a gray area or

2       perhaps not a gray area, then you say, I've

3       opened the door.  Well, I'm not going to let

4       you open the door, because the next thing you

5       are going to say is, we can ask the next series

6       of questions based on the previous answer that

7       you've allowed, and I'm not going to let you do

8       that.

9            MR. MULHOLLAND:  Then why don't we take it

10      up with the Judge?  There is no use in

11      belaboring the point.

12           MR. STONE:  Okay.

13           (Question certified for later discussion.)

14   Q.   Let me ask you a different question, Dr.

15 Kirsch:  During your responses to Mr. Rychcik's

16 questions, I believe you said that you ceased having

17 any communications with Dr. Horsley after you turned

18 the matter over to your attorneys.  Do you recall

19 something to that effect?  Is that -- yes?

20   A.   Communications meaning what?

21   Q.   Well, you were responding to a question to Mr.

22 Rychcik at the time, and you said, I believe -- and

23 correct me if I am wrong -- you don't recall any

CONFIDENTIAL - PROTECTED HEALTH INFORMATION

97

C E R T I F I C A T E

COMMONWEALTH OF PENNSYLVANIA    :
                                :  SS.:
COUNTY OF ALLEGHENY             :

        I, Joy A. Hartman, a Notary Public in and for
the Commonwealth of Pennsylvania, do hereby certify
that before me personally appeared PAUL B. KIRSCH,
M.D., the witness herein, who then was by me first
duly cautioned and sworn to testify the truth, the
whole truth and nothing but the truth in the taking of
his oral deposition in the cause aforesaid; that the
testimony then given by him as above set forth was
reduced to stenotypy by me, in the presence of said
witness, and afterwards transcribed by computer-aided
transcription under my direction.

        I do further certify that this deposition was
taken at the time and place specified in the foregoing
caption, and signature was not waived.

        I do further certify that I am not a relative
of or counsel or attorney for any party hereto, nor am
I otherwise interested in the event of this action.

        IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my seal of office at Pittsburgh,
Pennsylvania, on this 23rd day of August, 2007.

        The foregoing certification does not apply to
any reproduction of this transcript in any respect
unless under the direct control and/or direction of
the certifying reporter.


_____

Joy A. Hartman, Notary Public
in and for the Commonwealth of
Pennsylvania

My commission expires May 9, 2010.

Commonwealth of Pennsylvania
NOTARIAL SEAL
JOY A. HARTMAN, Notary Public
City of Pittsburgh, County of Allegheny
My Commission Expires May 9, 2010