# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, *ex rel.*,<br>DILBAGH SINGH M.D.,<br>PAUL KIRSCH, M.D.,<br>V. RAO NADELLA, M.D., and<br>MARTIN JACOBS, M.D.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRADFORD REGIONAL MEDICAL<br>CENTER, V & S MEDICAL<br>ASSOCIATES, LLC,<br>PETER VACCARO, M.D.,<br>KAMRAN SALEH, M.D., and<br>DOES I through XX,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 04-186 Erie<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## Opinion and Order on Discovery Motions

The hearing on discovery issues originally set for February 12, 2007, has been rescheduled for March 11, 2008 in Erie, Pennsylvania. However, several of the outstanding disputes are capable of resolution without oral argument. The remaining disputed issues will be addressed at March 11, 2008 hearing.

## I. Background

In this case, Dilbagh Singh M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D., commenced this *qui tam* action, on behalf of the United States, pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended. Doctors Singh, Kirsch, Nadella, and Jacobs, who are known as the "Relators," are suing Bradford Regional Medical Center, V&S Medical Associates, LLC, Peter Vaccaro, M.D., and Kamran Saleh, M.D. The Relators allege that Defendants perpetrated a scheme wherein they presented false or fraudulent claims for payment or approval to the United States seeking reimbursement for services rendered to patients unlawfully referred to Defendant Bradford Regional Medical Center. The crux of the case concerns an equipment sublease between Bradford Regional Medical Center and V&S Medical Associates (the "Lease"). Doctors Vaccaro and Saleh are the owners and principals of V&S Medical Associates.

Plaintiffs allege the following relevant facts. Doctors Vaccaro and Saleh, staff physicians at Bradford Regional medical Center ("BRMC"), had a history of referring many of their patients to BRMC for diagnostic nuclear imaging. Doctors Vaccaro and Saleh, through V&S Medical Associates, however invested in their own imaging machine to which they started referring their patients for diagnostic testing. BRMC was not happy with this situation and tried to get Doctors Vaccaro and Saleh to cease their activity. After negotiations, BRMC and Doctors Vaccaro and Saleh eventually entered into the Lease at issue whereby V&S Medical Associates would lease its imaging machine to BRMC. After the Lease was entered into, Doctors Vaccaro and Saleh once again returned to referring most of their patients to BRMC. It appears that Plaintiffs claim that this arrangement is (1) illegal on its face, and (2) that BRMC knowingly intended that their payments to V&S Medical Associates under the lease would act as inducements to Doctors Vaccaro and Saleh to again refer patients to BRMC.

The hearing was scheduled to address (1) Defendants' Joint Motion to Compel four different categories of discovery; (2) an ongoing difference of agreement about whether the Relators can depose defense counsel Daniel Mulholland; and (3) disagreements about the extent of the protective order entered into in this case with regards to what documents, or portions of documents, should be filed under seal.

## II. Joint Motion to Compel

In Defendants' Joint Motion to Compel, they identify four 'areas of inquiry' as subject areas of which they seek to compel deposition testimony and/or documents from the Relators: (1) the Relators' patterns and practices of patient referrals; (2) non-compete agreements to which the Relators have been a party; (3) issues related to the Relators' motivation in filing suit; and (4) the Statement of Material Evidence filed with the United States. (Jt. Motion to Compel, at ¶ 6.)

In large part, these discovery disputes arise out of the parties' differing interpretations of our discovery Order entered on May 31, 2007, in which we denied BRMC's Motion to Compel Relators to Produce Documents and Answer Interrogatories, and BRMC's Motion to Compel Production of Documents by Third-Party Tri-County Diagnostic. (Order, May 31, 2007, Doc. 69.) Neither party's position was unreasonable. Generally, Defendants believe the Order is limited and that the Relators should have filed a motion for protective order rather than refuse to answer deposition questions, while the Relators believe the Order operates as a "law of the case" that the Defendants are deliberately attempting to violate. We are able to resolve the first three 'areas of inquiry' referring to our prior Order as a useful guide.

Initially, we note that Defendants' arguments are very general, almost deliberately avoiding citing to specific examples, especially with regard to why they need the information they seek to compel. Relators have correctly pointed out that Defendants merely submitted numerous deposition pages and expected the Court to sift through these exhibits to discover the relevant portions. Indeed one of the reasons we set oral argument was because of the lack of specificity in Defendants' pleadings. In its Reply Brief, Defendants dispute Relators allegations, but they also attach a new set of Exhibits with additional deposition pages not included on the first go-round. Defendants also now provide the Court with specific citations to the relevant deposition pages. Thus, we are confident at this stage that the discovery disputes here are now clear.

### A. The Relators' Patterns and Practices of Patient Referrals

Defendants state that they seek information from Relators that they allege is relevant as "factual support for the defenses they are asserting, and to rebut the allegations being made against them." (Jt. Motion to Compel, at ¶ 5.) Their general argument appears to be that the manner in which Defendants refer patients, as well as Defendants' various arrangements for referrals, are common practices in the Bradford Area. Thus, Defendants argue that Relators' referral patterns and practices, and certain arrangements they have entered into, are necessary and relevant discovery

3

information needed to establish the pattern and practice of patient referrals in the Bradford Community.

The May 31, 2007 Order specifically dealt with BRMC's motion to compel information from Relators regarding any investment interest or financial relationship with facilities to which they refer patients. In the Order, after reviewing BRMC's arguments for granting the motion, we stated:

> It is transparent that BRMC seeks to compel this information in order to argue that the Relators engaged in the same conduct as Defendants did, and thus further argue that either (1) the Relators are opportunistic hypocrites that engaged in the same illegal conduct that Defendants did, or (2) if the Relators conduct is legal, then so is the Defendants. But that is not what is at issue here.

(Order, Doc. 69, at 6.) We noted that what is at issue Defendants' Lease, Defendants' intent regarding the Lease, and the referral practices of Doctors Saleh and Vaccaro. We found that the Relators' relationship with facilities to which they refer patients is not relevant to those issues. Therefore, we Denied "BRMC's motion to compel information regarding Relators' financial relationships with entities to which the refer patients." (Order, Doc. 69, at 7.)

Defendants have latched on to the word "financial" as the limiting term in our Order. Defendants now claim that they are attempting to discover information from Relators concerning everything about the Relators' relationship to facilities to which they refer patients, *except* the financial information. We do not think that distinction is meaningful. To the extent our Order focused on "financial" relationships of the Relators, that was solely based on the fact that BRMC's only sought to compel financial information. However, the reasoning of the Order as set forth above applies even though Defendants claim to not want financial information.

Defendants also assert other arguments to distinguish their present motion to compel from BRMC's prior motion to compel. Defendants argue that "one of the key issues in this case" is whether the lease induced Doctors Vaccaro and Saleh to refer patients to BRMC. (Brief in Support of Jt. Motion to Compel, at 5.) It is clear from the Complaint that the Relators want to show that Doctors Vaccaro and Saleh's pattern of referring patients changed as a result of entering into what Relators allege is an illegal lease. Therefore, counsel for Relators asked Doctors Vaccaro and Saleh

4

about their referral patterns and practices over time. This line of inquiry makes sense for Relators. Defendants, however, use the fact that the Relators reasonably inquired into facts that would substantiate their complaint allegations as "opening the door" to Defendants being permitted to inquire into Relators' referral practices. Defendants do no more that assert this argument without offering a convincing or sufficient argument in support.

It appears that the bulk of Defendants argument breaks down into claiming that Defendants have an absolute right to the requested information (1) to establish what alternatives exist in the community for nuclear cardiology and other diagnostic testing; and (2) to establish the factors that influence physicians in the community to choose one facility over another. (Brief in Support of Jt. Motion to Compel, at 6.) Specifically, Defendants explain that the "extent to which the referral patterns of practitioners [in the Bradford area] are influenced by the rural geography of the Bradford area and the small number of testing facilities within a reasonable driving distance of that area, these referral practices are highly relevant to the Defendants' ability to mount a defense to the Relators' claims." (Id.) Defendants may be correct, however, Defendants do not need testimony from Relators about the Relators' *own* referral patterns to support this information. A review of the deposition testimony taken thus far reveals information about the rural geography of the Bradford area and the number of testing facilities available to doctors in the area. In addition, the above information should already generally be known.

Relators are correct that Defendants were permitted to ask questions regarding "what alternatives exist in the community for nuclear cardiology and other diagnostic testing." (Brief in Support of Jt. Motion to Compel, at 6.) But that is a different issue from whether Defendants are allowed to inquire into how the Relators' refer their own patients, and whether they refer them to entities with which they have a financial relationship. We see no well-founded basis asserted by Defendants as to why they need this information from Relators. Defendants seek the same type of information from Relators that the May 31, 2007 Order stated was irrelevant. We will therefore deny the Joint Motion in this regard.

### B. Non-compete Agreements to Which the Relators Have Been a Party

Our reasoning for denying the Defendants motion to compel Relators' patterns and practices of patient referrals similarly applies to Defendants motion to compel Relators non-compete agreements. We note that Defendants aver that "Relators have contended that a non-compete covenant implicitly requires the party bound by it to refer to the other party." (Brief in Support of Jt. Motion, at 8.) However, Relators respond that they do not make such a contention. (Response, at 16.) Once again it appears that Defendants are trying to discover information to argue that Relators are engaging in the same conduct as Defendants. Perhaps Relators are also guilty of the same conduct, or that Defendants' conduct is as legal as the Relators' conduct, but a fact-finder does not need the Relators' information to determine if Defendants conduct is illegal. In fact, such information would only add confusion by partly shifting the focus of attention to Relators' irrelevant conduct. We will deny this motion to compel also.

### C. Issues Related to the Relators' Motivation in Filing Suit

Defendants state that they want to inquire into how the Relators would gain if Defendants lose this case; the Relators' plans for future diagnostic services; and other questions relating to whether the Relators are simply trying to further their own interests by harming Defendants, or by diverting attention from their own activities. They argue that this information is relevant as it goes to the Relators' credibility.

Even if Relators are entirely incredible, we fail to see how that impacts on whether the Defendants Lease is illegal. The Lease is either a violation of the law, or it is not. The Defendants either intended to illegally benefit from the lease or they did not. Answering these questions does not depend on the Relators' credibility or their motivations in filing suit. Even if Relators filed suit to further their own interests, that does not affect whether the Defendants violated the law. Many *qui tam* plaintiffs are motivated by reasons other than bringing wrongdoers to justice. The government knew that's what it was getting when it allowed citizens to bring these actions.

We note that in an employment discrimination case information about plaintiff's conduct is typically discoverable because it might prove to be relevant as to plaintiff's credibility. However, a defendant in an employment discrimination case will not be permitted to defend against alleged discriminatory conduct by arguing that the plaintiff had engaged in the same kind of alleged discriminatory conduct against others. Such information is not relevant to whether the defendant's conduct was discriminatory. But in a discrimination case, the plaintiff's credibility is often a key issue. The plaintiff is typically making "he said, she said" allegations that the defendant engaged in discriminatory conduct that may or may not be true. The plaintiff is one of the subjects involved in the alleged facts. The jury in that case is entitled to hear information that bears on plaintiff's credibility because if the plaintiff is found to be incredible in some areas, the jury is entitled to infer that the plaintiff is not credible as to allegations of defendant's alleged discriminatory conduct. In other words, Plaintiff's credibility might affect whether an alleged fact is accepted as a true fact.

In contrast, in this *qui tam* case information concerning what Relators would gain if Defendants lose this case, Relators' plans for future diagnostic services, whether the Relators are trying to further their own interests by harming Defendants, or are diverting attention from their own conduct does not make the fact of the Defendants' Lease more or less likely. As already stated, the Relators' conduct has no bearing on the Defendants' intent when entering into the Lease. Accordingly, we will deny the motion to compel in this regard also.

### D. The Statement of Material Evidence Filed with the United States

Finally, the Defendants seek to compel Relators to answer questions as to the factual underpinnings of the Disclosure Statement provided to the Government, or in lieu of asking questions, Defendants seek the actual Disclosure Statement itself.

Here it appears that the Relators have interpreted the May 31, 2007 Order too narrowly. The May 31, 2007 Order regarding this issue can be summarized as follows:

- The Disclosure Statement was prepared in anticipation of litigation and thus falls within the general protection of the Work Product.

- Assuming that the statement is factual work-product (as opposed to opinion work product) it can only be obtained if Defendants show a substantial need for the information and they cannot obtain the substantial equivalent of it without undue hardship.

- Because depositions had not yet been taken, Defendants would have the opportunity to ask Relators about the factual information that was the subject of the Disclosure Statement, and thus the Motion at that time was denied.

Defendants now say the Relators stonewalled during the depositions and thus they need the Statement or permission to ask questions about the Statement at a new deposition. Relators appear to narrowly argue that Defendants are permitted to ask Relators about the factual support of the Disclosure Statement as long as they do not ask what was in the Disclosure Statement. Defendants respond that pursuant to the Order they are permitted to ask the Relators what are the factual statements in the Disclosure Statement. We agree that our Order contemplated that Defendants would be asking Relators directly about the factual statements in the Disclosure Statement.

Since the Relators refused to answer questions about factual statements in the Disclosure Statement it is now necessary for the Court to review the Disclosure Statement to determine if Defendants should be permitted to re-depose Relators, and/or if Defendants should be provided with a redacted version of the Disclosure Statement, or if some other action is appropriate. Accordingly, we will Order that Relators submit to the Court under seal the Statement of Material Evidence filed with the United States for in camera review prior to the hearing. Such submission is not to be filed on the docket in this case.

### III  Depositions of Defense Counsel

BRMC's Motion to Quash a subpoena to take the deposition of its counsel, Daniel M. Mulholland III, was granted, without prejudice to Relators seeking to depose counsel in the future. (Order, August 28, 2007, Doc. 80.) Because Defendants had not yet asserted an advice of counsel defense, but had left open the possibility that they might, we quashed the Subpoena.

Shortly after the August 28, 2007 Order was entered, Relators filed a Pleading setting forth alternate arguments as to why they should be permitted to depose opposing counsel. Relators'

Pleading was titled as a Response to the Motion to Quash, but in a footnote stated that the Court "may choose to treat this response as a request for reconsideration." Because of that footnote, Defendants filed a Reply to the Response.

Relators argue that the negotiations between BRMC and Doctors Vaccaro and Saleh over the amount to be paid under the Lease are directly relevant to this case as one of the questions in this case is whether the parties illegally negotiated payments as a kickback for referral of patients. Defendants have already identified Alan J. Steinberg, Esquire, a partner in Mr. Mulholland's firm, as a party possessing information concerning nonprivileged communications between the parties on certain issues. Relators argue that Mr. Mulholland was a factual participant in at least one identified meeting concerning negotiations over the amount of the Lease payments and that therefore he undoubtedly has non-privileged information regarding the positions asserted by the parties. This issue requires oral argument, however, we make the following observations so that the parties can properly prepare for presenting their argument.

Given that Mr. Mulholland did participate in a meeting wherein BRMC and Doctors Vaccaro and Saleh discussed payments to be made under the Lease, it appears, on its face, that Defendants might also have thought to identify Mr. Mulholland as a party possessing information concerning nonprivileged communications between the parties on certain issues. We note that Relators only discovered Mr. Mulholland's participation in the meeting in a letter produced during discovery. We thus are not sympathetic to Defendants' argument that Relators have sought Mr. Mulholland's deposition too late. On the other hand, Mr. Mulholland appears to have participated in only this one meeting regarding the Lease. It is likely that his involvement was so limited and inconsequential that Defendants reasonably never considered him to be a person possessing discoverable information. However, we are not convinced by Defendants' argument that because the parties had not yet had a "meeting of the minds" about the amount of the rental payments at the meeting attended by Mr. Mulholland, that the meeting would only "tangentially bear" on the relevant issue of how the lease payments were determined.

9

### IV. Extent of Protective Order, Sealing of Documents

Defendants have routinely filed deposition exhibits in their entirety under seal, as confidential. Relators believe it is a misuse of the Protective Order filed in this case (Doc. 50) to make a blanket designation of an entire deposition as confidential. Relators assert that the Protective Order requires a party to designate only those portions of a deposition that are actually confidential, as confidential. Relators also assert that since Relators objected to blanket designations, pursuant to paragraph 10 of the Protective Order unless Defendants seek a Court Order any blanket designations of entire depositions made by Defendants will cease to have effect. This appears to be correct. All previously designated confidential documents do remain currently sealed and will remain sealed until the Court has had an opportunity to hear the parties positions on this issue.

AND NOW, to-wit, this __3√__ day of March, 2008, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Joint Motion to Compel Relators to Answer Deposition Questions and Produce Documents (Doc. 85) be and hereby is DENIED insofar as Defendants' seek to compel the Relators' patterns and practices of patient referrals; non-compete agreements to which the Relators have been a party; and issues related to the Relators' motivation in filing suit. The Court reserves ruling on Defendants' joint motion as it relates to the Statement of Material Evidence filed with the United States.

IT IS FURTHER ORDERED that counsel for Relators shall submit to the Court in camera a copy of the Statement of Material Evidence filed with the United States no later than March 7, 2008. Said submission shall not be filed on the docket.

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
United States District Court Judge

cc:    Counsel of Record