IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, *ex rel.*
DILBAGH SINGH, M.D.,
PAUL KIRSCH, M.D.,
V. RAO NADELLA, M.D., and
MARTIN JACOBS, M.D.,

                Relators,

v.

BRADFORD REGIONAL
  MEDICAL CENTER,
V & S MEDICAL ASSOCIATES, LLC,
PETER VACCARO, M.D.,
KAMRAN SALEH, M.D.,
and DOES I through XX,

                Defendants.

Civil Action No. 04-186E

## CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF BRADFORD REGIONAL MEDICAL CENTER

    Pursuant to Local Rule 56.1, Defendant Bradford Regional Medical Center ("BRMC"), by its undersigned counsel, hereby submits the following Concise Statement of Material Facts in Support of its Motion for Summary Judgment.

    1.    BRMC is a Pennsylvania non-profit corporation. BRMC owns and operates a hospital in Bradford, Pennsylvania which provides inpatient and outpatient hospital services to the residents of McKean County and surrounding areas. (Relators' Complaint ¶ 12, Docket No. 1.)

    2.    Defendant V&S Medical Associates, LLC ("V&S") is a limited liability company, the members of which are Defendants Kamran Saleh, M.D. ("Dr. Saleh") and Peter Vaccaro, M.D. ("Dr. Vaccaro") (Saleh Deposition, Appendix p. 3-4; Vaccaro Deposition, Appendix p. 16) Drs. Saleh and Vaccaro are physicians specializing in the practice of internal medicine in Bradford and are members of the medical staff of BRMC. (Saleh Deposition, Appendix p. 4-5;

1

Vaccaro Deposition, Appendix p. 16) Drs. Vaccaro and Saleh were previously employed by BRMC. In April 2000, Drs. Vaccaro and Saleh left the employ of BRMC by mutual agreement and formed V&S. (Saleh Deposition, Appendix p. 6).

3. Relators are Dilbagh Singh, M.D., Paul Kirsch, M.D., V. Rao Nadella, M.D., and Martin Jacobs, M.D. Relators are all physicians who practice in Bradford and are or were members of the medical staff of BRMC. (Relators' Complaint ¶ 1, Docket No. 1; Singh Deposition, Appendix p. 21; Kirsch Deposition, Appendix p. 26; Nadella Deposition, Appendix p. 30; Jacobs Deposition, Appendix p. 38.) Drs. Singh and Nadella practice together. The Relators provide the same or similar services to patients as Drs. Saleh and Vaccaro. (Singh Deposition, Appendix p. 22; Kirsch Deposition, Appendix p. 26; Nadella Deposition, Appendix p. 34; Jacobs Deposition, Appendix p. 39.)

4. In 2000, BRMC began to take steps to develop a full-time cardiology program in Bradford. Cardiology services were available in Bradford only one day a week. Patients requiring the services of a cardiologist on any other day would have to travel 90 to 100 miles or more for those services. Not having a full-time cardiology service had an impact on the quality of diagnostics that BRMC could offer to the community, as well as on the quality and type of care that could be provided to patients with acute cardiac problems, high blood pressure and cardiac disease. (BRMC 30(b)(6) Deposition, Appendix p. 45-47; Leonhardt Deposition, Appendix p. 61.)

5. The opportunity to recruit a full-time cardiologist to Bradford would be diminished significantly if key cardiology diagnostic services were offered in the offices of internal medicine physicians, and therefore not available to support the work that the cardiologist would do at the hospital. (BRMC 30(b)(6) Deposition, Appendix p. 46.)

6. After observing the damage done to neighboring hospitals when members of their medical staffs began to compete against these facilities, the Board of Directors of BRMC adopted a resolution in May 2001 establishing a Policy on Physicians with Competing Financial Interests (the "Policy"). Pursuant to the Policy, physicians who had financial relationships with, or an ownership or investment interest in, any competing health care entity or services that were determined by the Board to have a significant impact on BRMC could be ineligible for appointment or reappointment to the medical staff of BRMC. The resolution also stated that, consistent with legal standards, BRMC will use its best efforts to foster cooperative relationships

with practitioners to facilitate the provision of health care services in the region so that high quality care can be provided in the most cost-effective manner. (BRMC 30(b)(6) Deposition, Appendix p. 44-45; Policy, Appendix p. 73-86.)

7. In June 2001, V&S entered into a lease agreement with General Electric Healthcare Financial Services ("GE") for the lease of an SMV SDI Nuclear Camera (the "GE Equipment"). The GE Equipment was subsequently used by V&S to perform nuclear cardiology diagnostic studies on patients. (Vaccaro Deposition, Appendix p. 17.)

8. Nuclear cardiology is a key portion of any diagnostic cardiology service. To the extent that a key medical practice in the community like V&S had a financial incentive to use its own nuclear cardiology equipment instead of that of BRMC, it would impact the ability of BRMC to recruit a full-time cardiologist to the community. (Leonhardt Deposition, Appendix p. 61.)

9. In December 2001, the Board of BRMC appointed a fact-finding committee to determine if V&S was in violation of the Policy. The Board sought additional information from Drs. Saleh and Vaccaro as part of this effort. (Letters, Appendix p. 88, 90.)

10. In January 2002, Drs. Saleh and Vaccaro, through their legal counsel, objected to the Policy and its application to Drs. Saleh and Vaccaro.

11. Legal counsel for BRMC responded to counsel for Drs. Saleh and Vaccaro in February 2002, and there ensued numerous subsequent exchanges between legal counsel for the parties regarding this dispute. (Saleh Deposition, Appendix p. 7.)

12. In May 2002, the Board of BRMC made a preliminary determination that Drs. Saleh and Vaccaro had significant competing financial interests pursuant to the Policy, and so informed them of that fact. (BRMC 30(b)(6) Deposition, Appendix p. 48; Saleh Deposition, Appendix p. 8; Letter p. 92-93.)

13. In July 2002, BRMC invited Drs. Saleh and Vaccaro, the Relators, and other physicians in the Department of Medicine of the BRMC medical staff to discuss a potential joint venture between BRMC and interested physicians to provide certain diagnostic imaging services (including nuclear cardiology) under arrangements to BRMC (the "Proposed Joint Venture"). BRMC engaged a consulting firm known as Stroudwater Associates ("Stroudwater") to perform an analysis of the Proposed Joint Venture. (BRMC 30(b)(6) Deposition, Appendix p. 49; Outline of Proposal, Appendix p. 95-96.)

14. Between the months of December 2002 and March 2003, several meetings were held between representatives of BRMC and Drs. Saleh and Vaccaro, as well as their respective legal counsel, regarding the possibility of resolving their dispute concerning the Policy. During these meetings, a possible sublease arrangement was also discussed and considered as an option to resolve the dispute while the Proposed Joint Venture was under consideration. (Leonhardt Deposition, Appendix p. 62-63.)

15. On April 16, 2003, BRMC and V&S entered into an agreement (the "Preliminary Agreement") whereby BRMC would sublease the GE Equipment from V&S, and then use the GE Equipment to provide diagnostic tests for patients of BRMC. V&S would, in turn, agree to a covenant not to compete with the provision of nuclear cardiology services by BRMC for the term of the sublease. The Preliminary Agreement allowed BRMC to change or upgrade the equipment at its discretion and also required the parties to continue good faith efforts with respect to the development of the Proposed Joint Venture. (BRMC 30(b)(6) Deposition, Appendix p. 50; Agreement, Appendix p. 97-101.)

16. During the months of April through September 2003, BRMC and V&S negotiated the specific terms of the sublease agreement. (BRMC 30(b)(6) Deposition, Appendix p. 48.)

17. In September 2003, the Board of BRMC received a report from Charles T. Day, CPA, which concluded that the amounts to be paid pursuant to the proposed sublease were reasonable. (BRMC 30(b)(6) Deposition, Appendix p. 51; Day Report, Appendix p. 102-120.)

18. Effective October 1, 2003, BRMC and V&S entered into an Equipment Sublease (the "Sublease") which set forth in more detail the terms of the Preliminary Agreement. The Sublease was for a five-year term and is due to expire on September 30, 2008. The Sublease called for BRMC to pay V&S a pass-through amount equal to the amounts due from V&S to GE for the GE Equipment plus a monthly amount of $23,655 for all other rights under the Sublease, including the covenant not to compete. (Saleh Deposition, Appendix p. 12; Equipment Sublease, Appendix p. 121-140.) Pursuant to the Sublease, revenues from the performance of nuclear cardiology services were retained by BRMC.

19. While negotiations regarding the Sublease were being finalized, BRMC determined to replace the GE Equipment with a new nuclear cardiology camera (the "Phillips Equipment.") Therefore, the GE Equipment was not relocated to BRMC. Accordingly, BRMC and V&S entered into a separate agreement for temporary use of the space and services of V&S

4

by BRMC, also effective October 1, 2003 (the "Space and Services Agreement"). The Space and Services Agreement was memorialized in the form of a written proposal and invoice from V&S, which was approved and executed by BRMC's then Chief Financial Officer. The Space and Services Agreement called for BRMC to pay V&S $2,500 per month for the space where the GE Equipment was located in the offices of V&S, charges for secretarial support, telephone and related services, pass-through charges for supplies used in the performance of nuclear cardiology tests, and a billing fee equal to 10% of the amounts collected for nuclear cardiology services.

20. The Phillips Equipment lease was signed on April 6, 2004 and the Phillips Equipment began to be used at BRMC under the Sublease in lieu of the GE Equipment. (Leonhardt Deposition, Appendix p. 64-65; Master Lease Agreement, Appendix p. 141-154; Letter, Appendix 156.)

21. The Space and Services Agreement continued through June 2004, in order to collect the remaining billing fees and wind down other related administrative matters. (Saleh Deposition, Appendix p. 9-11; V&S Statement, Appendix p. 159-160.)

22. In the spring of 2004, BRMC determined not to go forward with the Proposed Joint Venture in part due to the fact that the Relators refused to participate in it. (Leonhardt Deposition, Appendix p. 66; BRMC 30(b)(6) Deposition, Appendix p. 54-55.) Three of the Relators subsequently invested in a similar joint venture called Tri-County Diagnostic Testing Services, LLC, which offered cardiology diagnostic services in competition with BRMC. (Singh's Responses and Objections to BRMC's First Set of Interrogatories No. 10, Appendix p. 163-167; Nadella's Responses and Objections to BRMC's First Set of Interrogatories No. 10, Appendix p. 168-172; Kirsch's Responses and Objections to BRMC's First Set of Interrogatories No. 10, Appendix p. 173-177.)

23. The buyout of the GE Equipment lease was finally negotiated in December 2004. (Leonhardt Deposition, Appendix p. 64-65; Master Lease Agreement, Appendix p. 141-154.)

24. From January 2005 until the present, the pass-through payments made by BRMC pursuant to the Sublease include the pass-through costs for the Phillips Equipment plus the amortized cost of the buyout of the GE Equipment. The payments for the non-compete covenant remain the same. (BRMC 30(b)(6) Deposition, Appendix p. 52-53; Sublease, Appendix p. 121-140; Letter, Appendix p. 158.)

25.     The amounts paid by BRMC to V&S under the Sublease and the Space and Services Agreement reflect the fair market value of the goods or services exchanged between the parties. (Expert Report of James H. Jordon, Appendix p. 178-261.)

26.     The Relators have offered no evidence that the amounts paid by BRMC to V&S under the Sublease and the Space and Services Agreement do not reflect the fair market value of the goods or services exchanged between the parties. In fact, their expert witness specifically disclaimed having any opinion as to the fair market value of the Sublease and the Space and Services Agreement. (Barbera Deposition, Appendix p. 70-71; Expert Report of Sal Barbera, Appendix p. 262-267.)

27.     Cost reports submitted to Pennsylvania Medical Assistance do not contain any certification of compliance by BRMC. (Nadella Deposition, Appendix p. 31-32; Medical Assistance Report, Appendix p. 268-271.)

28.     Cost reports to CHAMPUS/Tricare do not contain any certification of compliance by BRMC. (Nadella Deposition, Appendix p. 32-33; CHAMPUS Report, Appendix p. 272-273.)

29.     Medicare institutional uniform claim form UB-92 and its successor, UB-04, used by BRMC to submit claims for payment to Medicare, Medicaid and CHAMPUS/Tricare do not contain any certification by BRMC. (Medicare Transmittal 1104 (November 3, 2006), Appendix p. 274-279)

September 10, 2008                    Respectfully submitted,


                                      _____
                                      Daniel M. Mulholland III
                                      Pennsylvania ID No. 28806

                                      HORTY, SPRINGER & MATTERN, P.C.
                                      4614 Fifth Avenue
                                      Pittsburgh, PA  15213
                                      Phone:  (412) 687-7677
                                      Fax:  (412) 687-7692
                                      dmulholland@hortyspringer.com

                                      Attorney for Defendant
                                      Bradford Regional Medical Center

7

173570.3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DILBAGH SINGH, M.D., PAUL KIRSCH, M.D., V. RAO NADELLA, M.D., and MARTIN JACOBS, M.D., | : : : : : : |
| Relators, | : Civil Action No. 04-186E |
| v. | : : : |
| BRADFORD REGIONAL MEDICAL CENTER, V & S MEDICAL ASSOCIATES, LLC, PETER VACCARO, M.D., KAMRAN SALEH, M.D., and DOES I through XX, | : : : : : : |
| Defendants. | : |

### AFFIDAVIT OF BRADFORD REGIONAL MEDICAL CENTER

Bradford Regional Medical Center, Inc., through its President and Chief Executive Officer, who is duly authorized to make this Affidavit on its behalf, and who is being duly sworn according to law, hereby states that the averments contained in the Concise Statement of Material Facts in Support of Motion for Summary Judgment of Bradford Regional Medical Center are true and correct according to the best of his knowledge, information and belief.

September 9, 2008                    _____
                                      GEORGE LEONHARDT -
                                      BRADFORD REGIONAL MEDICAL CENTER

Sworn and subscribed before me this 9th day of September, 2008.

(SEAL)                               _____
                                      NOTARY PUBLIC

My commission expires: 2/28/2010

```
NOTARIAL SEAL
MARYELLEN TROUTMAN, NOTARY PUBLIC
BRADFORD, McKEAN COUNTY, PA
MY COMMISSION EXPIRES FEBRUARY 24, 2010
```

174235.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date he served the following with a copy of the foregoing Motion for Summary Judgment by e-mail via the Court's ECF system and by first class United States mail, addressed as follows:

        Andrew M. Stone, Esquire
        Allegheny Building, Suite 1400
        429 Grant Street
        Pittsburgh, PA 15219

        G. Mark Simpson, Esquire
        Simpson Law Firm, LLC
        165 North Main Street
        Jonesboro, GA 30236

        Carl J. Rychcik, Esquire
        Fox Rothschild, LLP
        625 Liberty Avenue, 29th Floor
        Pittsburgh, PA 15222

        Paul E. Skirtich, Esquire
        Assistant U.S. Attorney
        Western District of Pennsylvania
        U.S. Post Office & Courthouse
        700 Grant Street, Suite 4000
        Pittsburgh, PA 15219

September 10, 2008

*Daniel M. Mulholland III*
_____
Daniel M. Mulholland III

173570.3