**12**



## EQUIPMENT SUBLEASE

THIS SUBLEASE dated as of October 1, 2003 by and between V&S Medical Associates, LLC, a limited liability company existing under the laws of the Commonwealth of Pennsylvania (the "Sublessor"), and Bradford Regional Medical Center, a nonprofit corporation existing under the laws of the Commonwealth of Pennsylvania (the "Sublessee").

### WITNESSETH:

WHEREAS, Sublessor leases nuclear cardiology imaging equipment (the "Equipment") from GE Healthcare Financial Services ("GE") pursuant to a Lease dated as of June 6, 2001 between Sublessor and GE (the "GE Lease"); and

WHEREAS, the Equipment is to be subleased to the Sublessee pursuant to the terms of this Sublease.

NOW THEREFORE, intending to be legally bound hereby, the parties hereto agree as follows:

Section 1. Sublease

    (a)    The Sublessor has leased from GE the Equipment listed on Attachment A, which is attached hereto and incorporated by reference herein. The consent of GE to enter into this Sublease has or shall be obtained. If Sublessor has obtained such GE written consent, it is to be attached hereto as Attachment B, which is incorporated herein by reference. If GE's written consent has not yet been obtained, Sublessor shall promptly proceed to obtain such consent.

    (b)    Sublessor hereby subleases the Equipment to Sublessee subject to the terms and conditions of this Sublease. The parties hereto acknowledge and represent for themselves that:

-1-





HOSP 0007683

CONFIDENTIAL

(i)    the Sublease has been executed and delivered by an authorized representative within his or her legal authority; and

(ii)   the Sublease is a legal and binding document enforceable in accordance with its terms.

### Section 2.  Payment and Term

(a)    This Sublease shall commence on October 1, 2003 (the "Commencement Date") and shall remain in effect for five years (the "Term"), except as otherwise provided in this Sublease. There are two potential rental periods within the five-year Term:

(i)    the First Rental Period, which starts on the Commencement Date and concludes on September 30, 2006; and

(ii)   the Second Rental Period, which starts on October 1, 2006 and concludes on September 30, 2008.

(b)    If the UA Venture (as hereinafter defined) is not successfully implemented as is described in Section 13 hereof, the Sublessee agrees to a leasing arrangement with Sublessor beyond the expiration of the GE Lease, such that the entire sublease/lease term will be for a five-year period, as described above. At the end of the five-year Term, the parties shall enter into negotiations to renew this Sublease.

(c)    If the UA Venture is successfully implemented as is further described in Section 13 hereof, this Sublease shall automatically terminate and expire upon such implementation; provided that, if this occurs while the GE Lease is still in effect, the Sublessee shall be responsible for the payment of the rentals due under the GE Lease (as per the UA Venture contracts), such that Sublessor shall not have to make any such payments to GE.

(d)    (i)    During the First Rental Period, the rent shall be $30,200 per month, which consists of: (1) $6,545 for the hard costs of subleasing the Equipment (i.e., a pass through

-2-

HOSP 0007684

CONFIDENTIAL

of the rental due under the GE Lease), and (2) $23,655 per month for all other rights and duties under this Sublease, including, but not limited to, Section 14 hereof; and

(ii) During the Second Rental Period, the rent shall be $26,700 per month, which consists of: (1) $3,045 for the hard costs of leasing the Equipment, and (2) $23,655 for all other rights and duties under this Sublease, including, but not limited to, Section 14 hereof.

(iii) The payments required under (d)(i)(2) and (d)(ii)(2) herein shall cease should, during this Sublease's Term: (1) Sublessor ceases to exist, and (2) Kamren Saleh, M.D. and Peter Vaccaro, M.D. both die. Drs. Saleh and Vaccaro, as Sublessor's owners, are also each bound by Section 14 hereof on an individual basis.

(e) The monthly rental payment is due on the first day of each calendar month beginning with October 1, 2003, provided that, in the event this Sublease commences or terminates prior to a first day of a calendar month, the Sublessee shall pay a pro rata share of the monthly rental in advance.

## Section 3. Warranty and Maintenance

The warranties provided under the GE Lease shall continue as per under the GE Lease, and shall either run directly to the Sublessee or, should they need to remain with Sublessor, be enforced by the Sublessor at the direction of the Sublessee. Sublessor will be responsible for payment for the maintenance of the Equipment. This includes (i) payment of Sublessee's current maintenance agreement with GE through the remainder of the GE Lease term, and (ii) a new or replacement maintenance agreement (of the same coverage and scope as the existing maintenance agreement) once the current maintenance agreement expires if the Sublessee thereafter leases the Equipment pursuant to Section 2(b) hereof.

HOSP 0007685



### Section 4. Equipment Location

Subsequent to the execution of this Sublease, the Equipment will be moved to the Sublessee. The Sublessee will be responsible for the moving of the Equipment, both in terms of all moving costs and the risks to the Equipment associated with the move. In moving the Equipment, Sublessee shall be responsible to leave the space in which the Equipment had been kept in good "broom clean" condition. Sublessee shall repair any damage to Sublessor's premises resulting from the Equipment's removal.

### Section 5. Equipment Change or Upgrade

(a)     During the term of the GE Lease, the Sublessee will have the ability to change or upgrade the Equipment from GE or to change equipment vendor should either the need or the opportunity for such a change occur, at the Sublessee's discretion. Should the Sublessee make such an equipment or vendor change, such change will be done under two principles: (i) the change will not detrimentally affect the Sublessor under this Sublease's terms (i.e., no higher rental costs or fees, etc.), and (ii) the Sublessor shall materially be in the same position as to the Equipment at the end of the Sublease as the Sublessor now stands to the GE Equipment at the end of this Sublease.

(b)     As to (ii) above, presently the Sublessor will own the GE Equipment at the end of the Sublease. The parties also understand and agree that it may not be in the interest of the Sublessee and/or the Sublessor for changed Equipment (be it by a new vendor or a GE upgrade) to be leased to Sublessor for a new five-year term (i.e., the term of this Sublease). Instead, a shorter lease term or a different lease term (a further upgrading of Equipment with the then current vendor within the stated lease term occurs, with a potential, corresponding revised lease term) may be in the interest of Sublessee and/or Sublessor.

-4-

HOSP 0007686

In accordance with this Section 5, the Sublessee and the Sublessor have a good faith requirement to work through any issues and/or document provisions that require mutual understanding or cooperation with any such changed Equipment.

(c)     Should the change in vendor or equipment result in a lower cost of leasing the Equipment, this lower cost shall be passed through to the Sublessee, and the parties shall amend Section 2 hereof to correspondingly reduce the rental hard costs described under Section 2(d)(i) and 2(d)(ii) hereof.

## Section 6.  Title

No right, title or interest in the Equipment shall pass to Sublessee other than those rights expressly set forth herein. Sublessee shall at all times keep the Equipment free from any legal process and/or encumbrances whatsoever, including but not limited to liens, attachments, levies and executions, and Sublessee shall give Sublessor immediate written notice thereof and shall indemnify Sublessor for any loss caused by the failure of Sublessee to take action as provided herein. Upon reasonable notice to Sublessee, Sublessor shall have the right to enter upon the premises where the Equipment is located for the purpose of confirming its existence, condition, and proper maintenance.

## Section 7.  Representations, Warranties, and Covenants of Sublessee

Sublessee represents, warrants, and/or covenants to Sublessor that:

(a)     the Equipment will be used by Sublessee in the manner for which it was intended, in accordance with all applicable manuals and instructions, and in compliance with all applicable laws and regulations;

(b)     the person executing this Sublease on behalf of Sublessee has been duly authorized and has all required corporate approvals;

-5-

HOSP 0007687

(c)   by entering into this Sublease Sublessee is not in violation of any laws or agreements applicable to Sublessee; and

(d)   Sublessee shall not modify, alter, or add to the Equipment (other than the use of normal operating accessories or controls) without the prior written consent of Sublessor.

Section 8.  Insurance

Sublessee shall, at its cost, keep the Equipment insured by a rated insurance company acceptable to Sublessor, against theft and all risk of loss, destruction, or damage, from every case whatsoever, for not less than the full replacement cost (when new) of the Equipment.  Sublessee will name Sublessor and GE as loss payees and as additional insured parties on Sublessee's property insurance policy.  Sublessee shall ensure that each insurer agrees that it will provide Sublessor and GE with 30 days' prior written notice of any alteration or cancellation of such policy.

Section 9.  Loss or Damage

In the event of loss or destruction of or damage to the Equipment, Sublessee shall notify Sublessor in writing.  If loss, destruction or damage occurs, and is not the fault of the Sublessor, then, at the option of Sublessor, Sublessee shall at Sublessee's expense restore the Equipment to good condition and working order (eligible for manufacturer's certification).  Sublessee's insurance proceeds received by Sublessor with respect to the Equipment shall be applied to reduce any unpaid obligation of Sublessee to Sublessor.

Section 10.  Default and Termination

(a)   Any of the following events or conditions shall constitute an event of default by Sublessee under this Sublease:  (i) Sublessor has not received any rental payment or other payment, in full, within five (5) days after its due date; or (ii) Sublessee becomes insolvent, is

-6-

HOSP 0007688

liquidated or dissolved, stops doing business or assigns its rights or property for the benefit

of creditors; or (iii) a petition is filed by or against Sublessee or any guarantor under any

section or chapter of the United States Bankruptcy Code or any successor or similar law;

or (iv) without Sublessor's consent, Sublessee attempts to sell, transfer, encumber, part

with possession of, or sublet any Equipment; or (v) Sublessee violates any other term of

this Sublease and fails to correct such violation within 30 days after written notice from

Sublessor.

(b)    Sublessor shall be in default if it violates any term of this Agreement or fails to perform any

obligation hereunder.

(c)    This Sublease shall also terminate (i) pursuant to Section 2(c) hereof, and (ii) pursuant to

Section 17(b) hereof.

## Section 11.  Remedies

Upon the occurrence of an event of default by the other party, either party may exercise any and/or

all of the following remedies:  (a) terminate this Sublease, and/or (b) pursue any other remedy at

law or in equity.  All rights and remedies hereunder are cumulative and may be enforced separately

or concurrently and from time to time.  The exercise of any one remedy shall not be deemed to be

an election of such remedy or to preclude the exercise of any other remedy.

## Section 12.  Return of Equipment Upon Expiration/Termination

Unless otherwise agreed to by the parties, upon expiration or earlier termination of this Sublease,

Sublessee, at its own expense, shall immediately return the Equipment complete, and in good

working order and condition (normal wear and tear excepted), to Sublessor.  In returning the

Equipment, Sublessee shall re-install and re-calibrate the Equipment and leave the Sublessor's

premises in good "broom clean" condition following such reinstallation.  In the event Sublessee fails

-7-

HOSP 0007689

CONFIDENTIAL

to return the Equipment upon expiration or earlier termination of this Sublease, Sublessor or its designee may enter upon the premises where the Equipment is located, with or without demand or legal process, and peacefully repossess the Equipment, free from all claims by Sublessee and without liability for trespass, conversion, refund, or damages.

## Section 13.  Under Arrangements Venture

(a)     The parties will continue good faith efforts to develop an under arrangements venture (the "UA Venture") pursuant to which other diagnostic facilities, equipment and personnel will be leased by the Sublessee to a physician entity referred to herein as "Physician NewCo," and diagnostic services will be sold by Physician NewCo to the Sublessee. (Working drafts of the UA Venture have been developed by the parties before the date of this Sublease, and are incorporated herein by reference for further information and direction.) If UA Venture terms can be mutually agreed upon by the Sublessee and Sublessor, Sublessor will take the lead in developing and starting up Physician NewCo. Should the UA Venture be implemented (which must include appropriate regulatory approval for the model and Physician NewCo in the form of an Advisory Opinion from the HHS Office of Inspector General), the assumption of the GE Lease and its terms as described in the UA Venture will commence and this Sublease will expire.  See also Section 2(c) hereof regarding rental payments under the GE Lease.

(b)     Sublessor and its accountants have reviewed studies and projections dated April 2, 2003 (the "Initial Study and Projections") developed by Stroudwater Associates ("Stroudwater") concerning revenues to be generated by the UA Venture and Physician NewCo. In the development of Physician NewCo, there will be a time designated by which medical staff physicians are to indicate their interest in participating in Physician NewCo and buying shares in NewCo. (This designated time will be agreed upon by the Sublessee and

-8-

HOSP 0007690

CONFIDENTIAL

Sublessor in advance, as part of the development plan of the UA Venture and V&S Medical Associates.)

(c) At that time, Stroudwater will develop the same studies and projections based upon the data and information known at that time. If the results from those studies and projections after review by knowledgeable individuals selected by Sublessor are such that Sublessor's ownership percentages will generate for Sublessor an amount equal to $26,000 per month plus a reasonable return on any additional invested capital (not less than 8% per annum) for the period between the establishment of Physician NewCo and September 30, 2008, then Sublessor shall join the UA Venture and the provisions of Paragraph 13(a) will apply. If these terms are not satisfied but Sublessor chooses to become a part of the UA Venture, the provisions of Paragraph 13(a) will apply. In all other events, this Sublease shall not expire and will continue pursuant to its stated terms.

Section 14.  Covenants of Sublessor

(a)    (i)    Sublessor shall not (1) acquire, purchase or lease nuclear cardiology imaging equipment for its office or for any office or facility that is within 30 miles of Sublessee, or invest in any office, venture or facility that has such equipment or wishes to obtain such equipment to perform diagnostic procedures within 30 miles of Sublessee, (2) perform diagnostic tests in its office or for any venture or facility that is within 30 miles of Sublessee that competes with the testing to be performed by the Medical Center with the Equipment, for such time as this Sublease is in effect as described in Section 2 hereof.

(ii)    Sublessor hereby agrees that the geographic area covered by this covenant and the period and nature of such restrictions are reasonable and necessary for the protection of the Sublessee, its successors and assigns. If any provision or part

-9-

HOSP 0007691

of Section 14 shall be invalidated, the remainder of Section 14 shall nevertheless continue to be valid and fully enforceable. If any claim of invalidity or unenforceability shall be predicated upon the length of the term of, or the geographical area covered by, any covenant, such provision shall not be deemed invalid or unenforceable but shall be deemed to be modified (so as to be valid and enforceable) to the maximum area and the maximum term or duration as may be determined to be reasonable and equitable.

(iii)   This covenant shall be construed as an agreement independent of any other provision of this Agreement, and the existence of any claim or cause of action of the Sublessor, whether predicated in this Agreement or otherwise, shall not constitute a defense to the enforcement of this covenant by the Sublessee.

(iv)   The Sublessor hereby agrees that a violation of the terms and conditions of this restrictive covenant in the prohibited area herein above specified during the time period specified in this covenant shall result in irreparable and incalculable damage to the Sublessee, and the Sublessor therefore agrees that, if the Sublessor takes any action in violation of this restrictive covenant, the Sublessee shall be entitled to receive injunctive relief restraining the Sublessor in connection with such violation.

(b)   In order to allow the UA Venture to move forward, Sublessor shall not provide other outpatient diagnostic imaging services in its office or in any office or facility that is within 30 miles of Sublessee, or invest in any office, venture or facility that provides or desires to provide such other outpatient diagnostic imaging services within 30 miles of Sublessee while the UA Venture is in development and attempted start-up. This covenant shall expire as of December 31, 2003 if Physician NewCo has not commenced organization by that date.

-10-

HOSP 0007692

(c)     Should the UA Venture not be implemented, in the event that Sublessor considers offering CT, MRI or other diagnostic imaging services in its office or in any office or facility that is within 30 miles of Sublessee, or investing in any office, venture or facility that provides or desires to provide such services within 30 miles of Sublessee, Sublessor must first present the opportunity to the Sublessee, which shall have 45 days to present a proposal to give Sublessor an opportunity to participate in a venture with the Sublessee to provide those services. If such a proposal is offered, Sublessor will not offer or invest in the service in question unless the proposed venture is not finalized within 120 days. Sublessor also agrees to discuss the possibility of ventures with the Sublessee for other non-diagnostic outpatient services prior to pursuing them on its own.

(d)     So long as the Sublessor meets all of the requirements under this Section 14, and even if the parties are unable to successfully negotiate a joint venture as is described in Section 14(c), the Sublessee's Policy on Physicians with Competing Financial Interests and its Procedures for Assessing Whether Practitioners Have Significant Competing Financial Relationships shall not apply to Sublessor in connection with the services specifically named in this Section 14.

## Section 15.  Assignment

Sublessee may not assign this Sublease or its rights or obligations hereunder without the express written consent of the Sublessor.  Notwithstanding the foregoing, nothing in this Agreement shall preclude Sublessee from entering into contracts with Physician NewCo for the purposes of the UA Venture.

-11-

HOSP 0007693



<u>Section 16.  Confidentiality</u>

The parties shall not disclose information relating to each other's operations or the terms and conditions of this Sublease to any third party other than GE (if requested for subleasing approval), unless both parties have given written consent for the release of information except as required by law or legal process.

<u>Section 17.  Compliance with Law and Standards</u>

(a)     The parties shall comply with all applicable statutes, rules, regulations and standards of any and all applicable governmental authorities and regulatory and accreditation bodies relating to the Equipment.

(b)     If either party reasonably believes that this Sublease violates the law or jeopardizes Sublessor's tax-exempt status, or causes any person to incur any excise tax or other monetary penalty, it shall inform the other party in writing of its belief.  The parties will make a good faith effort to modify the terms of the Sublease to address the situation.  If the parties are not able to do so within 30 days, either party may terminate the Sublease upon written notice to the other party.

<u>Section 18.  Medicare Access to Books and Records</u>

To the extent and only to the extent required by law, until the expiration of four years after the furnishing of the services provided under this Sublease, the parties will make available to the Secretary of the U.S. Department of Health and Human Services, the U.S. Comptroller General, and their representatives, this Sublease and all books, documents, and records necessary to certify the nature and extent of the costs of those services.  If either party carries out its duties through a subcontract worth $10,000 or more over a 12-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller

-12-

HOSP 0007694

General, and their representatives to the related organization's books and records. The party receiving the request will notify the other party immediately of any such request.

## Section 19. Independent Contractors

Sublessor and Sublessee are independent contractors. This Sublease shall not be construed to create a relationship of principal and agent, partnership or joint venture or of any association between the parties other than that of independent contractors.

## Section 20. Indemnification

Each party shall indemnify, defend, and hold the other party harmless from all claims, loss, damage or injury of any kind or character (including, without limitation, attorneys' fees and costs of defense) to any person or property caused by or arising from any act or omission of the indemnifying party, its agents or employees which results in a breach of this Sublease.

## Section 21. Cooperation in the Event of a Claim

(a)     In the event that either party becomes aware of any alleged injury arising out of the care or treatment of any patient provided services with the Equipment, each party has a duty to give the other party notice containing the particulars sufficient to identify the name and address of the allegedly injured person, place and circumstances of the alleged incident and the addresses of the available witnesses.

(b)     Subject to the terms of the respective professional liability and malpractice insurance policies, each of the parties hereto shall cooperate with the other and in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to either of the parties because of injury with respect to which insurance is

-13-

HOSP 0007695

CONFIDENTIAL

afforded, and each of the parties hereto shall attend the hearings and trials and assist in securing evidence and obtaining the attendance of witnesses.


### Section 22.  Strict Performance

No failure by either party to insist upon the strict performance of this Sublease or to exercise a right or remedy shall constitute a waiver.  No waiver of any breach shall affect or alter this Sublease, but each and every term of this Sublease shall continue in full force and effect with respect to any other existing or subsequent breach.


### Section 23.  Entire Agreement

There are no other agreements or understandings, either oral or written, between the parties affecting the Equipment, except as otherwise specifically provided for or referred to herein.


### Section 24.  Invalidity or Unenforceability of Particular Provisions

The invalidity or unenforceability of any particular provision of this Sublease shall not affect the other provisions hereof.  This Sublease shall be construed in all respects as if such invalid or unenforceable provisions were omitted.


### Section 25.  Governing Law

This Sublease shall be enforced and governed by and in accordance with the laws of Pennsylvania.


### Section 26.  No Third-Party Rights

Nothing in this Sublease shall be construed as creating or giving rise to any rights in any third parties or any persons other than the parties hereto, except for GE.

-14-

HOSP 0007696

Section 27.  Force Majeure

If either party shall be delayed or prevented from the performance of any act required by this Sublease by reason of acts of God, strikes, lockouts, labor troubles, inability to procure materials, restrictive governmental laws, or regulations or other cause, without fault and beyond the reasonable control of the party obligated (financial inability excepted), performance of such act shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

Section 28.  Amendments

This Sublease may be amended at any time by mutual written agreement of the parties.

Section 29.  Notices

Any notice, demand, or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when personally delivered or mailed by prepaid certified mail, return receipt requested, overnight carrier or personal delivery addressed as follows:

SUBLESSEE:

Bradford Regional Medical Center
116 Interstate Parkway
Bradford, PA  16701-0218
Attn:  Chief Executive Officer

SUBLESSOR:

V&S Medical Associates
24 West Washington Street
Bradford, PA  16701
Attn:  President

or to such other address or facsimile number and to the attention of such other person(s) or officer(s) as either party may designate by written notice.

-15-

HOSP 0007697

Section 30.  Successors in Interest

Each and all of the terms and conditions of this Sublease shall inure to the benefit of and shall be binding upon the successors in interest of the parties.

Section 31.  Contract Interpretation

Each party hereto acknowledges that it has had ample opportunity to review and comment on this Sublease.  This Sublease shall be read and interpreted according to its plain meaning and an ambiguity shall not be construed against either party.  The headings contained herein are for reference only and are not a part of this Sublease and shall not be used in connection with the interpretation of this Sublease.

-16-

HOSP 0007698

IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the date first written above.

WITNESS/ATTEST:                        **BRADFORD REGIONAL**
                                       **MEDICAL CENTER**


By: _____
    George Leonhardt
    President & Chief Executive Officer


WITNESS/ATTEST:                        **V&S MEDICAL ASSOCIATES, LLC**


By: _____ 9/22/03
    Kamren Saleh, M.D.


By: _____ 9/22/03 ·
    Peter Vaccaro, M.D.


Kamren Saleh, M.D. and Peter Vaccaro, M.D., as individuals residing in the Commonwealth of Pennsylvania, also agree to be bound by the terms and conditions of Section 14 of this Sublease.


_____ 9/22/03
Witness                                Kamren Saleh, M.D.


_____ M.S. 9/22/03·
Witness                                Peter Vaccaro, M.D.


-17-

HOSP 0007699

# ATTACHMENT A

## DESCRIPTION OF EQUIPMENT

General Electric SMV DSI Nuclear Camera

HOSP 0007700

**ATTACHMENT B**

**GE'S CONSENT LETTER**



To be provided.

-19-

HOSP 0007701

**13**

Page 1

From:       Glen Washington
To:         Leonhardt, George
Date:       3/14/01 10:03AM
Subject:    Nuclear Medicine Percentages

Nulear Medicine Revenues are 20% of Total Radiology Revenues.  The percentage is the same for outpatient revenues.  Annnual Gross Nuc. Med reveunes are approximately $2,798,578.  Annual Outpatient Nuc Med Gross revenues are approx.  $2,274,094.

I'm still working on  Jamil, and V&S percentages.

Glen

*CONFIDENTIAL*

DEPOSITION
EXHIBIT
Leonhardt
# 10

HOSP 0004401

| From: | Glen Washington |
|---|---|
| To: | Leonhardt, George |
| Date: | 3/14/01 10:24AM |
| Subject: | Nuclear Medicine percentages |

V, S, and J order 42.5% of our Nuclear Studies.  In a year's time:



| V: | 465 |
|---|---|
| S: | 525 |
| J: | 399 |
| Total | 1389 |

They have enough to pay for a machine.  A rule of thumb is they need to be able to do 3 per day.

Glen

HOSP 0004402





**BRADFORD REGIONAL**
**MEDICAL**
**CENTER**

| | |
|---|---|
| From: | Bob Fisher |
| To: | George Leonhardt |
| Date: | 5/29/01 11:17AM |
| Subject: | Nuc med revenue |

*DEDICATED TO IMPROVING THE HEALTH OF OUR COMMUNITY*

I did put this in a folder. I checked our payments.

Based on our payor mix, our average payment for the cardiac testing is $484. Medicare pays $353, BC indem. $594 and mged $508.

CONFIDENTIAL

116 Interstate Parkway • P.O. Box 0218 • Bradford, Pennsylvania • 16701-0218 • (814) 368-4143 • www.brmc.com

HOSP 0004403

From:       Glen Washington
To:         Leonhardt, George
Date:       5/30/01 9:31AM
Subject:    Nuclear Medicine Stats

George,

Annual volumes for V, S, J:

V:       465
S:       525
J:       399
_____
Total:   1389


Total Nuclear Cardiology Exams:

Inpt:    202
Outpt:   1203
_____
Total:   1405


Glen


CC:          Washington, Glen

CONFIDENTIAL

HOSP 0004399

**14**

**BRADFORD REGIONAL MEDICAL CENTER**
Bradford, Pennsylvania

M E M O R A N D U M

TO:        Kamran Saleh, MD
           Peter Vaccaro, MD

FROM:      George E. Leonhardt,
           President/CEO

DATE:      March 25, 2003

RE:        **MRI AND CT INFORMATION**


You asked two questions regarding MRI & CT. The first was your current volumes and how you compared to others on the staff. For the Calendar Year ended December 31, Dr. Vaccaro referred 622 CT exams. This is the second highest number. Dr. Saleh referred 333 exams, which ranks third. Combined this makes up 10% of CT exams. For MRI, Dr. Saleh referred 205 exams, which is the largest number. Dr. Vaccaro referred 179 exams, which is second. Combined, this represents 11% of total MRI volume.

The second question you asked related to our estimates of Physician Company profit from MRI & CT at the time an Under Arrangements Contract would go into place. At volumes for the year ended June 30, 2002, those services would generate approximately $500,000 in profit for the Physician Company. Volumes have increased in these services. By the end of the week, we will have completed an Under Arrangements Analysis for MRI and CT in the same format as Nuclear Medicine, including a Sensitivity Analysis.


GEL:cr


DEPOSITION
EXHIBIT
Leonhardt
# 12

HOSP 0004278

**15**

CONFIDENTIAL Top 15 Referral Sources Jan 1, 2002 to Dec. 31, 2002

| CT | MRI | NM |
|---|---|---|
| 1. Soni | 1. Saleh | 1. Jamil |
| 2. Vaccaro | 2. Vaccaro | 2. Ali |
| 3. Saleh | 3. Magno | 3. Kirsch |
| 4. Breznik | 4. Bhayani | 4. Vaccaro |
| 5. Marrero | 5. ~~Soni~~ Joher | 5. Aziz |
| 6. Szczupak | 6. Soni | 6. Magno |
| 7. Gonzales | 7. ~~Aziz~~ Owens | 7. Soni |
| 8. Adams | 8. Aziz | 8. Saleh |
| 9. Jamil | 9. Jacobs | 9. Jacobs |
| 10. Lau | 10. Jamil | 10. Roumani |
| 11. Jacobs | 11. Burd | 11. Nadella |
| 12. Kirsch | 12. Staph | 12. Marrero |
| 13. Owens | 13. ~~Furman~~ Nadella | 13. Owens |
| 14. Magno | 14. Furman | 14. Burd |
| 15. Godfrey | 15. ~~Singh~~ Breznik | 15. Singh |

Partners (Pure Number Rank)

Vaccaro, Saleh, Jamil, ~~Magno~~, Jacobs, ~~Aziz~~, Kirsch, ~~Marrero~~, ~~Owens~~, Bhayani, Gonzales, Nadella, Burd, Roumani, Lau, Taharra, Singh

DEPOSITION
EXHIBIT
Leonhardt
#13

HOSP 0004254

**16**

→ 4/8/64

George

**BRADFORD REGIONAL MEDICAL CENTER**
**Bradford, Pennsylvania**

CONFIDENTIAL

**TOP 15 REFERRAL SOURCES - 1-01-03 TO 12-31-03**

| CT | | MRI | | NM | |
|---|---|---|---|---|---|
| 1. Vaccaro | 9.60% | 1. Other | 11.82% | 1. Ali | 12.14% |
| 2. Tahara | 5.93% | 2. Vaccaro | 9.56% | 2. Kirsch | 8.71% |
| 3. Jamil | 5.66% | 3. Magno | 7.20% | 3. Jamil | 8.19% |
| 4. Kirsch | 5.24% | 4. Bhayani | 6.77% | 4. Other | 7.01% |
| 5. Jacobs | 4.30% | 5. Johe | 5.86% | 5. Aziz | 6.09% |
| 6. Breznik | 3.98% | 6. Burd | 5.81% | 6. Vaccaro | 6.05% |
| 7. Saleh | 3.87% | 7. Saleh | 5.00% | 7. Burd | 4.57% |
| 8. Szczupak | 3.77% | 8. Jacobs | 5.00% | 8. Owens | 4.02% |
| 9. Gonzalez | 3.76% | 9. Jamil | 4.85% | 9. Magno | 3.36% |
| 10. Other | 3.60% | 10. Owens | 3.46% | 10. Jacobs | 3.32% |
| 11. Catton | 3.26% | 11. Furhman | 2.50% | 11. Saleh | 2.88% |
| 12. Soni | 3.24% | 12. Nadella | 2.50% | 12. Roumani | 2.69% |
| 13. Owens | 3.20% | 13. Roumani | 2.40% | 13. Johe | 1.92% |
| 14. Nadella | 2.65% | 14. Ali | 2.11% | 14. Nadella | 1.92% |
| 15. Sadekni | 2.63% | 15. Aziz | 2.07% | 15. Khan | 1.84% |

DEPOSITION
EXHIBIT
_Leonhardt_
#14

HOSP 0004109

| PHYSICIAN | TOTAL NUCLEAR MEDICINE | | | |
|---|---|---|---|---|
| Ali | 329 | | | 12.14% |
| Kirsch | 236 | | | 8.71% |
| Jamil | 222 | | | 8.19% |
| Other | 190 | | | 7.01% |
| Aziz | 165 | | | 6.09% |
| Vaccaro | 164 | | | 6.05% |
| Burd | 124 | | | 4.57% |
| Owens | 109 | | | 4.02% |
| Magno | 91 | | | 3.36% |
| Jacobs | 90 | | | 3.32% |
| Saleh | 78 | | | 2.88% |
| Roumani | 73 | | | 2.69% |
| Johe | 52 | | | 1.92% |
| Nadella | 52 | | | 1.92% |
| Khan | 50 | | | 1.84% |
| Gonzalez | 50 | | | |
| Godfrey | 49 | | | |
| Deforno | 48 | | | |
| Bhayani | 48 | | | |
| Singh | 44 | | | |
| Zibilich | 43 | | | |
| Marrero | 40 | | | |
| Soni | 39 | | | |
| Hipolito | 38 | | | |
| Smith | 34 | | | |
| Graham | 29 | | | |
| D'Amico | 27 | | | |
| Tahara | 23 | | | |
| Herbert | 21 | | | |
| Case | 20 | | | |
| Rettger | 19 | | | |
| Petrella | 11 | | | |
| Terhaar | 10 | | | |
| Bowman | 9 | | | |
| Shelley | 7 | | | |
| Sicher | 6 | | | |
| Furr | 6 | | | |
| Barke | 6 | | | |
| Tronetti | 6 | | | |
| Demjanenko | 6 | | | |
| Szczupak | 6 | | | |
| Breznik | 5 | | | |
| Lau | 5 | | | |
| Akhtar | 4 | | | |
| Nayak | 4 | | | |
| Sosic | 3 | | | |
| Horsley | 3 | | | |
| Trageser | 3 | | | |
| Mecca | 3 | | | |
| Pradhan | 2 | | | |



CONFIDENTIAL

HOSP 0004110

| No name | 2 | | | |
|---------|---|---|---|---|
| Frances | 1 | | | |
| Storch | 1 | | | |
| Hennessy | 1 | | | |
| Gupta | 1 | | | |
| Sadekni | 1 | | | |
| Allison | 1 | | | |
| Javed | 1 | | | |
| | | | | |
| TOTAL NM | 2711 | | | |



HOSP 0004111

| PHYSICIAN | TOTAL MRI | | |
|---|---|---|---|
| Other | 246 | | 11.82% |
| Vaccaro | 199 | | 9.56% |
| Magno | 150 | | 7.20% |
| Bhayani | 141 | | 6.77% |
| Johe | 122 | | 5.86% |
| Burd | 121 | | 5.81% |
| Saleh | 104 | | 5.00% |
| Jacobs | 104 | | 5.00% |
| Jamil | 101 | | 4.85% |
| Owens | 72 | | 3.46% |
| Furhman | 52 | | 2.50% |
| Nadella | 52 | | 2.50% |
| Roumani | 50 | | 2.40% |
| Ali | 44 | | 2.11% |
| Aziz | 43 | | 2.07% |
| Khan | 40 | | |
| Kirsch | 40 | | |
| Terhaar | 39 | | |
| Singh | 35 | | |
| Stathopoulos | 27 | | |
| Herbert | 25 | | |
| Szczupak | 24 | | |
| Soni | 19 | | |
| Pradhan | 16 | | |
| Breznik | 16 | | |
| Marrero | 16 | | |
| Bowman | 15 | | |
| Rettger | 14 | | |
| Zibilich | 13 | | |
| Gonzalez | 12 | | |
| Allison | 11 | | |
| Tahara | 11 | | |
| Deforno | 9 | | |
| Politico | 9 | | |
| Lau | 9 | | |
| Nayak | 9 | | |
| Akhtar | 8 | | |
| Godfrey | 6 | | |
| Case | 6 | | |
| Catton | 6 | | |
| Smith | 6 | | |
| Magoun | 6 | | |
| Shelley | 6 | | |
| Sosic | 4 | | |
| No name | 4 | | |
| Barke | 3 | | |
| Gupta | 3 | | |
| Clark | 2 | | |
| Freeman | 2 | | |
| Laroche | 2 | | |



CONFIDENTIAL

HOSP 0004112

| | | | |
|---|---|---|---|
| Scanlon | 1 | | |
| D'Amico | 1 | | |
| Epstein | 1 | | |
| Hipolito | 1 | | |
| Irwin | 1 | | |
| Graham | 1 | | |
| Slimmer | 1 | | |
| Foksteun | 1 | | |
| | | | |
| TOTAL | 2082 | | |



HOSP 0004113

| PHYSICIAN | TOTAL CT | | |
|---|---|---|---|
| Vaccaro | 675 | | 9.60% |
| Tahara | 417 | | 5.93% |
| Jamil | 398 | | 5.66% |
| Kirsch | 368 | | 5.24% |
| Jacobs | 302 | | 4.30% |
| Breznik | 280 | | 3.98% |
| Saleh | 272 | | 3.87% |
| Szczupak | 265 | | 3.77% |
| Gonzalez | 264 | | 3.76% |
| Other | 253 | | 3.60% |
| Catton | 229 | | 3.26% |
| Soni | 228 | | 3.24% |
| Owens | 225 | | 3.20% |
| Nadella | 186 | | 2.65% |
| Sadekni | 185 | | 2.63% |
| Magno | 183 | | |
| Roumani | 164 | | |
| Marrero | 158 | | |
| Lau | 155 | | |
| Khan | 154 | | |
| Graham | 143 | | |
| Aziz | 142 | | |
| Ali | 142 | | |
| Burd | 136 | | |
| Singh | 132 | | |
| Case | 109 | | |
| Sosic | 102 | | |
| Godfrey | 99 | | |
| No name | 74 | | |
| Irwin | 69 | | |
| Pradhan | 49 | | |
| Akhtar | 49 | | |
| Deforno | 46 | | |
| Gupta | 42 | | |
| Magoun | 37 | | |
| Nayak | 37 | | |
| Adams | 29 | | |
| Horsley | 28 | | |
| Tronetti | 26 | | |
| Stathpoulos | 19 | | |
| Slimmer | 18 | | |
| Laroche | 16 | | |
| Johe | 15 | | |
| Nurbhai | 15 | | |
| Bowman | 13 | | |
| Rahman | 11 | | |
| Rettger | 11 | | |
| Bhayani | 11 | | |
| Ziblich | 8 | | |
| Herbert | 5 | | |



CONFIDENTIAL

HOSP 0004114

| | | | |
|---|---|---|---|
| Maljovec | 4 | | |
| Shelley | 4 | | |
| Terhaar | 3 | | |
| Barke | 3 | | |
| Lu | 3 | | |
| Al Humadi | 2 | | |
| Clark | 2 | | |
| Demjanenko | 2 | | |
| Asar | 2 | | |
| Uscinski | 2 | | |
| Freeman | 2 | | |
| Deboy | 1 | | |
| Smith | 1 | | |
| Frances | 1 | | |
| Politico | 1 | | |
| Javed | 1 | | |
| | | | |
| | | | |
| TOTAL | 7028 | | |



HOSP 0004115

**17**

**From:**      George Leonhardt
**To:**        Tim Brown
**Date:**      8/31/04 1:18PM
**Subject:**      Nuclear Medicine Volumes & Referrals

Could tou provide me with 18 months Nuclear Medicine volumes by referring Physician? Pleasr include August of this year.
  Thanks .
George

**CC:**        Glen Washington

CONFIDENTIAL

Name

None is just a choice if the pt. doesn't have another physician to send copies to or do the test.

DEPOSITION
EXHIBIT
Leonhardt
#15

HOSP 0003867



**NUCLEAR MEDICINE TOTALS**

| DATE | EXAMS | PTS | VS&J EXAMS | ALI | AZZIZ, S&N | Kirsch |
|------|-------|-----|-----------|-----|-----------|--------|
| 1/03 | 199 | 146 | 25 | 28 | 23 | 16 |
| 2/03 | 218 | 155 | 26 | 33 | 18 | 14 |
| 3/03 | 253 | 170 | 23 | 54 | 35 | 16 |
| 4/03 | 232 | 163 | 14 | 31 | 25 | 36 |
| 5/03 | 358 | 252 | 20 | 37 | 25 | 21 |
| 6/03 | 353 | 247 | 36 | 38 | 22 | 12 |
| 7/03 | 352 | 254 | 39 | 22 | 29 | 20 |
| 8/03 | 342 | 246 | 49 | 32 | 27 | 16 |
| 9/03 | 320 | 228 | 25 | 35 | 25 | 14 |
| 10/03 | 360 | 254 | 38 | 35 | 33 | 9 |
| 11/03 | 330 | 238 | 39 | 29 | 34 | 14 |
| 12/03 | 332 | 252 | 38 | 28 | 19 | 24 |
| 1/04 | 322 | 248 | 35 | 23 | 25 | 29 |
| 2/04 | 328 | 234 | 35 | 21 | 36 | 16 |
| **3/04** | **526** | **358** | **93** | 11 | 48 | 22 |
| 4/04 | 484 | 330 | 76 | 18 | 25 | 26 |
| 5/04 | 434 | 302 | 87 | 20 | 25 | 12 |
| 6/04 | 360 | 262 | 76 | 13 | 3 (-Azziz) | 5 |
| 7/04 | 392 | 276 | 77 | 23 | 8 | 11 |
| 8/04 | 394 | 284 | 64 | 7 | 1 | 22 |

HOSP 0003868