**38**

Jan-31-03  12:34P                                                                              P.02

The monthly payment has been adjusted to reflect the
change in the Federal Reserve 5 year T-Bill Rate which          8515502-001
was _4.33_ % at the time of commencement of the                 0373- In Serv.8/27/2001
contract. The adjusted monthly payment is
_3months@$0.00 followed by 60months @_
_$6,531.12 ($4,876.12 equipment & $1,655.00 Serv.)_

                                                                Internal Contract Ref. # 8515502
                                                                Internal Order Ref. # 861-107079-
                                                                              890-073400

# MAXISERVICE® SCHEDULE
## DATED AS OF  6/6/01
## TO MASTER LEASE AGREEMENT
## DATED AS OF 6/6/01

This Schedule is executed pursuant to, and incorporates by reference the terms and conditions of, the Master Lease Agreement identified above ("Master Agreement," said Master Agreement and this Schedule being collectively referred to as the "Agreement"). Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Master Agreement. This Schedule constitutes a separate instrument of lease that applies to the leasing of Equipment from GE Healthcare Financial Services ("GE") and the provisions of Support Services mentioned below.

1.    **EQUIPMENT:**  Subject to the terms and conditions of the Agreement, GE agrees to lease the Equipment described below (the "Equipment") to Lessee.

| Number of Units | Site | Model and Type Of Equipment |
|---|---|---|
| 1 | V & S Medical Associates, LLC<br>24 West Washington Ave.<br>Bradford, PA 16701 | GE SMV DSI Nuclear Camera |

2.    **SUPPORT:**  GE will provide "Support" as described in the Support Exhibit attached hereto.

3.    **TERMS AND RENTALS:**

A.    *Term of Schedule:*  63 months.  The Term of this Schedule will commence on the Lease Commencement Date specified in the "Lease, Term and Rent Payments" section of the Master Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

B.    *Advance Charge:*  $6,545.00.  Lessee's payment of the Advance Charge is required upon or before Lessee's execution and return of this Schedule to GE. Subject to payments made or incurred by GE, GE will refund the Advance Charge if this Schedule is terminated in writing before any part of the Equipment is delivered to the site (i) by GE or Lessee as a direct result of the other's breach of a material term or condition of this Schedule or (ii) by mutual agreement. GE will apply the Advance Charge to Lessee's Monthly Charge obligation under this Schedule to the first Monthly Charge.

C.    *Monthly Charge:*  3 months @ $0.00 followed by 60 months @ $6,545.00 ($4,890.00 equipment and $1,655.00 Service) plus any applicable taxes.  Lessee's payment of Monthly Charges to GE will be in accordance with the "Lease, Term and Rent Payments" section of the Master Agreement.

D.    *Monthly Charge Adjustment:*  (Choose One)

☐  Monthly Charge fixed on Date of Signing of Schedule

☒  Monthly Charge fixed on Lease Commencement Date:  On the Lease Commencement Date, the Monthly Charge, as it relates to Equipment, will be adjusted based on the number of

points, plus or minus, as applicable, that the five year Treasury Constant Maturities as of the Lease Commencement Date has changed from 4.64%, which was established based on the five year Treasury Constant Maturities as of the week ending 3/16/01.

4.    **SERVICE WARRANTY/DISCLAIMERS/REMEDIES:**  GE warrants that it will provide the Support specified in the Support Exhibit in a workmanlike manner. For any claim that Support was not performed in a workmanlike manner in accordance with the Support limited warranty in this Section 4, Lessee's sole and exclusive remedy is for GE to re-perform that Support. In view of the Support GE provides under this Schedule, and except for any listed diagnostic imaging accessories product warranties provided by GE, no product warranties are offered under the Agreement; all parts and items are provided AS IS. Any applicable additional warranty disclaimers are specified in the Support Exhibit.

5.    **END OF SUPPORT ANNOUNCEMENT:**  In the event GE makes a general commercial announcement that it will no longer offer Support agreements for an item of Equipment or Equipment component or provide a particular Support feature or option, then upon no less than 12 months' prior written notice to Lessee, GE may, at its option, remove any such item(s) of Equipment, component(s), feature(s), or option(s) from this Schedule, with an appropriate adjustment of charges, without otherwise affecting this Agreement.

6.    **RECORD RETENTION AND ACCESS:**  If GE should be deemed to be a subcontractor subject to the disclosure requirements of 42 USC Section 1395x(v)(1)(1), anything herein to the contrary notwithstanding, until the expiration of four years after the furnishing of services pursuant to this Schedule, upon written request from the Lessee, GE shall make available to the Secretary of the Department of Health and Human Services, the Comptroller General, or any of their duly authorized representatives, this Schedule and the books, documents, and records that are necessary to certify the nature and extent of any costs incurred by the parties under this Schedule. If GE carries out any of the duties

Maxi Sch to Lease                                    Page 1 of 2

                                                                (Rev. 03/18/01)



DEPOSITION
EXHIBIT
Saleh
84033 jah

Confidential
V&S 00329

Jan-31-03 12:34P                                                                              P.03

of this Schedule through a subcontract with a value or cost of $10,000 or more over a 12-month period with a related organization, such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request to the Secretary, the Comptroller General, or to any of their duly authorized representatives, the subcontract and the books, documents, and records of such organization that are necessary to verify the nature and extent of such costs. This clause is included because of the possible application of Section 1861(v)(1)(I) of the Social Security Act; if that section should be found inapplicable to this Schedule under its terms, then this Section shall be deemed not to be part of this Schedule and shall be null and void.

7.    AUTODRAFTING

A.    Lessee hereby authorizes GE to initiate debit entries for Lessee's payment of the charges which are due periodically under this Schedule and the financial institution indicated below to debit with the amounts thereof the account listed below.

Financial Institution Name: _National City Bank of P.A_

Financial Institution Address: _71 Main Street_

City: _Bradford_ State: _PA_ Zip: _16701_

B.    The following information can be provided from Lessee's check so please attach a copy of a voided check:

Account Name: _V & S Medical Associates, LLC_

Nine-digit Financial Institution ID Number: _043000122_

Lessee's Financial Institution Account Number: _549524581_

C.    Lessee further authorizes GE to adjust the dollar amount transferred from Lessee's account to correspond to periodic changes in the payment due, if any, under the terms of this Schedule.

D.    Lessee hereby authorizes GE to automatically debit all current or past due property taxes (if applicable).

E.    Rules and Regulations

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By: _____

Name: _JANET SOBCZAK_

Title: _Transaction Coordinator_

(i)    Lessee understands that due to the difference in timing between the Lease Commencement Date and the booking of this Schedule, the initial debit may be for more than one periodic charge but will not be more than the actual total monthly amounts due at that time.

(ii)   Failure to have adequate funds in Lessee's account shall constitute an event of default under this Schedule.

(iii)  Lessee understands that it will continue to receive an invoice each month as notification of the amount to be debited from its account.

(iv)   Lessee must provide GE with written notice at least 30 days in advance of Lessee's intent to revoke, terminate of modify this authorization or the information contained herein. In the event Lessee revokes or terminates this authorization, Lessee must remit its periodic charges directly to GE at the address specified in the Agreement. Failure to pay the periodic charges on or before the due date shall constitute an event of default under this Schedule.

(v)    If a deduction is made in error, Lessee has the right to be immediately refunded by GE for the amount of the erroneous deduction provided that Lessee provides written notification of the erroneous deduction within 15 days after its account statement is issued or 45 days after the monies are paid to GE.

8.    Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Agreement; (ii) the representations and warranties made by Lessee pursuant to or under the Agreement are true and correct on the date hereof and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

9.    Any modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Early Buy Out Option.

10.   Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: _PETER VACCARO_

Title: _President_

Maxi Sch to Lease                              Page 2 of 2                              (Rev. 03/16/01)

**Confidential**
**V&S 00330**

P.04

MASTER LEASE SCHEDULE EXHIBIT

 **GE Healthcare Financial Services**

### ADDENDUM TO SCHEDULE DATED AS OF 6/6/01
### TO MASTER LEASE AGREEMENT DATED AS OF 6/6/01
### INTERNAL CONTRACT REFERENCE NUMBER 8515502
### INTERNAL ORDER REFERENCE NUMBER 861-107879
### EQUIPMENT DESCRIPTION: GE/SMV DSi Nuclear Camera

### EARLY BUY-OUT OPTION

✖

This Addendum is attached to and made a part of the Schedule identified above. This Addendum sets forth specific terms and conditions in addition to those in the Schedule and the Master Lease Agreement to which the Schedule is attached and amends and supplements that Schedule. Capitalized terms not defined herein shall have the meanings assigned to them in the Schedule or the Master Lease Agreement identified above.

With respect to the Schedule only, the Schedule is amended and supplemented by adding the following Early Buy-Out Option provision:

1.  Provided the Schedule has not already been terminated and Lessee is not in default under the Schedule or any other agreement between Lessee and Lessor, LESSEE MAY, BY WRITTEN NOTICE TO LESSOR, AT LEAST 30 BUT NOT MORE THAN 90 DAYS BEFORE THE "EARLY PURCHASE DATE" SET FORTH BELOW, IRREVOCABLY ELECT TO PURCHASE all (but not less than all) of the Equipment described in the Schedule to which this Addendum is attached for the "FMV Early Option Price" set forth next to the corresponding Early Purchase Date plus all applicable taxes:

    Early Purchase Date                     FMV Early Option Price

    after 60 monthly payments               $58,023.00

    Lessee and Lessor agree that if Lessee acquires any upgrade to or non-severable Improvement of the Equipment and/or in the case of GE Equipment any Licensed Software which increases its productivity or value, then Lessee and Lessor will adjust the FMV Early Option Price to also reflect the upgrade or improvement. If the upgrade is financed by a party other than Lessor or paid for in cash, the value of this upgrade will not be included in determining the FMV Early Option Price.

2.  Lessee's purchase of the Equipment (and in the case of GE Equipment any Operating Documentation and Tools) is on an AS-IS, WHERE-IS basis without recourse or warranty of any kind against or by Lessor.

Early Buy-Out Option

Rev. 3/14/01

Confidential
V&S 00331

Jan-31-03 12:35P                                                                    P.05

**MASTER LEASE SCHEDULE ADDENDUM**

3.  Lessee and Lessor agree and acknowledge that the FMV Early Option Price set forth above is a reasonable prediction of the fair market value of the Equipment at the corresponding Early Purchase Date.

4.  Lessee may only exercise the option to purchase described in **Paragraph 1**, if, at the time of such exercise, no uncured Event of Default exists under this Schedule or under any other Schedule or agreement between Lessee and Lessor.

5.  Notwithstanding anything to the contrary contained herein, Lessee's failure to pay the FMV Early Option Price within the terms of Lessor's Invoice to Lessee for the FMV Early Option Price shall, at Lessor's sole discretion, render this option to purchase and Lessee's exercise of this option to purchase null and void, and Lessee shall have no further option or right to purchase the Equipment.

6.  If Lessee does not exercise this option to purchase within the time provided, or if Lessee's timely exercise of the option to purchase is rendered null and void by Lessee's failure to pay the FMV Early Option Price in a timely manner as provided in **Paragraph 5**, the terms and provisions of the "End-of-Term Options" section of the Master Lease Agreement will govern the expiration of the Schedule.

Lessor:
**GE Healthcare Financial Services,**
**a component of General Electric Company**

_____
Authorized Signature

_____
Title

_____
Date  6/6/01

Lessee:
**V & S Medical Associates, LLC**

_____
Authorized Signature

_____
Title  Partner

_____
Date  6/6/01

**Confidential**
**V&S 00332**

Jan-31-03 12:35P

P.06


**GE Healthcare Financial Services**

## NON-GE EQUIPMENT ADDENDUM
## TO MASTER LEASE AGREEMENT
## DATED AS OF 6/6/01
## MASTERLINE™

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Lease Agreement (the "Agreement") between GE Healthcare Financial Services ("Lessor") and the undersigned lessee ("Lessee") and is incorporated by reference into the Agreement. This Addendum modifies and supplements the Agreement and sets forth additional terms and conditions that apply to Equipment that has not been manufactured by the General Electric Company or its affiliates. This Addendum also applies if the Equipment is used GE Equipment that was acquired by Lessor from Lessee in a sale/leaseback transaction or purchased by Lessor from a third party vendor. Any conflict between this Addendum and the Agreement shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement.

1.    TRANSPORTATION AND RISK OF LOSS:

(a)    The Equipment will be shipped to the site identified in a Schedule by the Supplier of the Equipment. Lessee will inform Lessor of the date the Equipment is delivered within 5 days of such delivery. Any necessary assembly or installation will be described in the Schedule. The Lessee agrees to accept shipment of the Equipment and to cooperate with any assembler to permit the assembler to complete its task without delay.

(b)    The Lessee or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Lessor bear the risk of loss. The use of the term "risk of loss" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

2.    STIPULATED LOSS VALUE: If for any reason any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ("Casualty Occurrences") Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor on the Payment Date (defined below), the sum of (i) the Stipulated Loss Value (see Schedule(s)) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then currently outstanding and due under this Agreement for the affected unit. The "Payment Date" shall be the next rent payment date after the Casualty Occurrence. Upon Payment of all sums due hereunder, the term of this Agreement as to such unit of Equipment shall terminate.

3.    INSURANCE: Lessee agrees at its own expense, to keep the Equipment insured with companies acceptable to Lessor for such amounts and against such hazards as Lessor may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Lessor or its assigns, if any, and liability coverage for personal injuries, death and/or property damages on terms satisfactory to Lessor. General Electric Company and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Lessor's favor, as Lessor's interest may appear. Said Equipment shall be insured for

not less than its Stipulated Loss Value or such other amount as Lessor shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Lessor shall specify. Lessee hereby appoints Lessor as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to the insurance policies. Lessee may not make adjustments with insurers except with Lessor's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Lessor. In the event of damage to or loss, secretion, destruction or theft of the Equipment, whether in whole or in part, Lessee will pay to Lessor the Stipulated Loss Value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except the extent that Lessor receives proceeds of insurance covering such Equipment). Lessor may, at Lessor's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it or (ii) to satisfy any of Lessee's obligations pursuant to this Agreement or a Schedule.

4.    NET LEASE: THIS AGREEMENT CONSTITUTES A NET LEASE, AND LESSEE'S OBLIGATION TO PAY THE RENTS AND OTHER AMOUNTS DUE HEREUNDER (AND THE CONTINUING EFFECTIVNESS AND ENFORCEABILITY OF THIS AGREEMENT) ARE ABSOLUTE, UNCONDITIONAL, AND INDEPENDENT OBLIGATIONS NOT SUBJECT TO ABATEMENT, DIMINUTION, SUSPENSION, DEFERMENT OR REDUCTION OF, OR OFFSET AGAINST, LESSEE'S OBLIGATIONS HEREUNDER FOR ANY REASON INCLUDING WITHOUT LIMITATION: (i) ANY CLAIMS OF LESSEE AGAINST LESSOR, OR THE MANUFACTURER OR SELLER OF THE EQUIPMENT; (ii) ANY DEFECT IN, DAMAGE TO, OR LOSS OR DESTRUCTION OF ANY UNIT HOWEVER ARISING; OR (iii) ANY INTERFERENCE WITH LESSEE'S USE OF ANY UNIT OR EQUIPMENT BY ANY THIRD PARTY (INCLUDING ANY GOVERNMENTAL BODY) EXCEPT AS EXPRESSLY SET FORTH HEREIN. IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL RENTS AND OTHER AMOUNTS PAYABLE BY LESSEE TO LESSOR HEREUNDER SHALL CONTINUE TO BE PROMPTLY AND UNCONDITIONALLY PAID IN ALL EVENTS.

5.    INDEMNIFICATION: Lessee hereby agrees to indemnify Lessor, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result from Lessor's gross negligence or willful misconduct ("Claims"). This indemnity shall include, but is not limited to, Lessor's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this

Non-GE Equip Add, to Lease                 Page 1 of 2                 (Rev. 03/16/01)

Confidential
V&S 00333

Jan-31-03  12:35P                                                        P.07

Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Lessor's rights, privileges and indemnities contained in this Section 5 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**6.** DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee.

**7.** REMOVAL AND RETURN OF EQUIPMENT:

(a) At the expiration or earlier termination of a Schedule, Lessee will arrange for the removal and return of the Equipment at its expense, including all transportation to a place designated by Lessor within the Continental United States of America. If Lessee makes modifications to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at

Lessee's expense. The Equipment will be returned to Lessor or its assigns on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the Supplier's and, if different, the manufacturer's then prevailing performance specifications for it. All waste material and fluid must be removed from the Equipment and disposed of by Lessee in accordance with the then current waste disposal laws. If the Equipment is not so returned, Lessor, at Lessee's sole expense, may have the Equipment restored to such a condition. If Lessor so requires, the units of Equipment shall be de-installed and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor.

(b) If Lessor so requires, at Lessor's sole discretion, Lessee shall obtain a policy of transit insurance for the return of the Equipment to Lessor in an amount equal to the replacement value of the Equipment. Such transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs of complying with this section.

(c) Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up to date copy of all other documentation pertaining to the Equipment.

(d) All service manuals, blueprints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least 90 days, and not more than 120 days prior to the Agreement termination.

(e) Lessee shall make the Equipment available for Lessor's on-site operational inspection by potential purchasers at least 120 days prior to and continuing up to Agreement termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                              LESSEE:

GE Healthcare Financial Services,                   V & S Medical Associates, LLC
a component of General Electric Company

By: _____                       By: _____

Name: _____                       Name: _____Kamran Saleh_____

Title: _____                       Title: _____President_____

                                                                    (Rev. 03/16/01)

Confidential
V&S 00334

 **GE Healthcare Financial Services**

# GE EQUIPMENT ADDENDUM
## TO MASTER LEASE AGREEMENT
## DATED AS OF 6/6/01
## LEASELINE®/MAXISERVICE™

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Lease Agreement (the "Agreement") between GE Healthcare Financial Services ("Lessor") and the undersigned lessee ("Lessee") and is incorporated by reference into the Lease. This Addendum modifies and supplements the Lease and sets forth additional terms and conditions that apply to Equipment that has been manufactured by the General Electric Company or its affiliates. Any conflict between this Addendum and the Lease shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Lease.

**1.    DELIVERY, TRANSPORTATION AND RISK OF LOSS:** Delivery dates are approximate. Lessor shall not be liable for delays in performance or delivery due to causes beyond its reasonable control. If such a delay occurs, Lessor may extend the performance or delivery date for a period of time equal to the delay. Shipping terms are C.I.F. Lessor's shipping dock pursuant to Section 2-320 of the Uniform Commercial Code. Lessor is responsible for payment of freight and payment or providing for property damage or loss until delivery to Lessee.

**2.    INSURANCE:** Lessor, at its own expense, will maintain Fire and Extended Coverage Insurance on the Equipment (with the exception of Equipment installed in mobile, transportable or relocatable vans or trailers). The proceeds of this insurance in the event of loss or damage will be applied, at Lessor's sole discretion, to the repair or a comparable replacement of the Equipment and/or the payment of some or all of Lessee's monetary obligations under a Schedule. Lessee will be responsible for any loss or damage to the Equipment from any cause not included as part of the above insurance coverage. Lessee agrees to insure any Equipment installed in mobile, relocatable or transportable vans or trailers for such amounts and against such hazards as Lessor might require. Notwithstanding the above insurance coverages, Lessee will be solely responsible for any loss or damage from any cause where such loss or damage is the result of negligence or willful misconduct on the part of anyone other than Lessor or its agents or service contractor.

**3.    FINAL ASSEMBLY, INSTALLATION AND TESTING:**

(a) · Lessee shall be responsible for making the site ready for installation in compliance with Lessor's written specifications. Lessor is responsible for assembling the Equipment and connecting it to electrical outlets provided by Lessee. Lessee shall pay for any employees other than Lessor's whom Lessee uses or Lessor is directed to use for installation or assembly.

(b)    Lessor does not install, test, certify or provide any software license or warranty for products which are not listed in Lessor's price pages at the time of acquisition by Lessee. These products are normally identified by NL or NW series numbers. However, Lessor will pass on to Lessee any manufacturer or dealer

warranty received by Lessor with respect to these products, to the extent such a warranty may be passed on to Lessee.

(c)    Lessee shall provide any government permits and approvals needed for installation and use of the Equipment.

(d)    Lessor will complete final testing using its appropriate performance specifications, instruments and procedures. Lessor will file any required federal and state reports relating to its installation activities.

**4.    SERVICE MATERIAL USE AND DATA ACCESS:**

(a)    In connection with the installation, configuration, maintenance, repair and/or de-installation of the Equipment, Lessor might deliver to Lessee, along with the Equipment or separately, attach to or install on the Equipment, and use, materials that have not been purchased by or licensed to Lessee. Lessee hereby consents (a) to this delivery, storage, attachment, installation and use, (b) to the presence of Lessor's locked cabinet or box on the Lessee's property, and (c) to Lessor's removal of all or any part of this property at any reasonable time, all without charge to Lessor. Lessee shall have no right or title to this property or any license or other right to access, use, or decompile this property. Any access to or use of this property (except in compliance with Lessor's written direction to Lessee to determine Equipment performance on Lessor's behalf) and any decompilation of this property by anyone other than Lessor's personnel is prohibited. Lessee agrees that it will use reasonable efforts to protect this property against damage or loss and to prevent any access to or use or decompilation of this property contrary to this prohibition.

(b)    Lessee agrees to permit Lessor to access data related to the Equipment, to allow Lessor to gather, aggregate, compile, and use Equipment and resource usage data in various ways, including quality initiatives, benchmarking, and reporting services. The data collected by Lessor will be used, during and after the term of this Agreement, in a manner that will maintain patient and customer level confidentiality.

**5.    OPERATIONAL AND BASIC SOFTWARE LIMITED LICENSE:**

(a)    "Licensed Software" means the firmware, software, or data compilations (regardless of the media within which they are recorded, fixed or delivered) identified in the Schedule or provided for the operation, installation, use, de-installation, maintenance, or repair of the Equipment. Licensed Software will also include software for enhancing the operation or functionality of the Equipment, and any other software later provided to Lessee by Lessor for use with the Equipment. Licensed Software that is not stored internally in the Equipment shall include a notice that identifies it as GE proprietary.

GE Equip Add to Lease                Page 1 of 2                (Rev. 03/16/01)

**Confidential
V&S 00335**

Jan-31-03 12:37P                                                              P.09

(b)  Except to the extent further limited by license terms for specific types of Licensed Software, Lessee is hereby granted a limited license to:

(i)  Use and permit its service contractors to use the Licensed Software only on the specific Equipment for which Lessor provided Lessee the Licensed Software at the identified geographic location or in the specific vehicle identified in the Schedule;

(ii)  Make one copy of the Licensed Software in machine-readable form solely for backup purposes. Lessee must reproduce on such copy the copyright notice and any other proprietary notices that were on the original copy.

(iii)  Use the copy of the documentation delivered with the Equipment and having a white cover or label and/or notice that identifies it as "Operating Documentation" ("Operating Documentation") and use the tools or instruments delivered with the Equipment in a container having a white cover or label and/or a notice that identifies them as "Operating Tools" ("Operating Tools") for the sole purpose of Lessee's use of the Licensed Software and Equipment for its intended purpose.

(iv)  Transfer all authorized copies of the Licensed Software, Operating Documentation and Operating Tools to a purchaser of the Equipment who accepts all of the terms, conditions and limitations of this Limited License and any other applicable license terms.

(c)  Except as expressly set out above, Lessee is not granted any other rights or licenses in or under the Licensed Software, Operating Documentation or Operating Tools. By way of example, and without limitation, Lessee is not granted: any ownership rights in the Licensed Software, Operating Documentation or Operating Tools or any media on which the Licensed Software is recorded or fixed; any other rights or licenses under any of Lessor's intellectual property (e.g., patents, copyrights, trademarks, trade secrets, etc.); any right to modify, adapt, translate, rent, lease, loan, resell for profit, distribute, network or create derivative works of any portion of the Licensed Software or Operating Documentation; any right to decompile, reverse engineer, disassemble, or otherwise reduce the Licensed Software to a human-perceivable form; any right to electronically transfer any portion of the Licensed Software over a network; or any right to retain copies of any versions of Licensed Software or Operating Documentation or Operating Tools which are rendered redundant by Licensed Software Lessee receives under the Schedule.

6.  LIMITED WARRANTIES AND DISCLAIMER: Unless otherwise provided in a Schedule, GE Medical Systems provides

specific written warranties applicable to the Equipment and any Licensed Software provided under a Schedule. The applicable warranties are identified in the Schedule and are attached to the Schedule as an exhibit. No warranty is furnished for anything excluded from the warranty form(s) or for Operating Documentation or Operating Tools associated with products. All such items are provided AS IS. EXCEPT AS PROVIDED ABOVE, NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLIES TO ANYTHING PROVIDED BY LESSOR. Lessor may use refurbished parts in new products as long as Lessor uses the same quality control procedures and warranties as for new products.

7.  REMOVAL OF EQUIPMENT:

(a)  At the expiration of a Schedule, and with not less than 30 days prior written notice from Lessee to Lessor, Lessor will remove and arrange for the return of the Equipment at Lessor's expense including all transportation costs, within the Continental United States of America (excluding Hawaii and Alaska). However, if the Equipment consists of magnetic resonance (excluding GE Lunar E-Scan and Artoscan-M), radiation therapy, or positron emission tomography equipment, and any related systems, including, but not limited to, any system for the production of radioactive isotopes, such removal and return, including all costs of transportation, will be at Lessee's expense. In any case, and regardless of the type or nature of the Equipment, the cost of removal and return of the Equipment, including all transportation costs prior to the expiration of the Term of a Schedule will be at Lessee's expense. Lessee may not remove, de-install, or crate the Equipment unless done so through the use of Lessor's authorized representative or other service person reasonably acceptable to Lessor. If Lessee makes modification to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at Lessee's expense.

(b)  The Equipment and any Licensed Software, Operating Documentation and Operating Tools will be returned to Lessor or its assigns, on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with Lessor's then prevailing performance specifications for them. If the Equipment, Licensed Software, Operating Documentation, and Operating Tools are not so returned, Lessor, at its sole expense, may have the Equipment, Licensed Software, Operating Documentation and Operating Tools restored to such a condition.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By:  _____

Name:  ANDY SOBCZAK

Title:  Transaction Coordinator

LESSEE:

V & S Medical Associates, LLC

By:  _____

Name:  Kamran Salah

Title:  President

Confidential
V&S 00336

**39**

03/14/2003 16:01 FAX                                                    ☑001

EXHIBIT

/

KABALA

PENGAD 800-631-6989

HORTY, SPRINGER & MATTERN

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4614 FIFTH AVENUE, PITTSBURGH, PA 15213
TELEPHONE: (412) 687-7677
Facsimile: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE S. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAFENTA
LAUREN M. MASSUCCI
NICHOLAS J. CALADRESE
LEEANNE MITCHELL O'BRIEN
MONICA J. HANSLOVAN
RACHEL E. REMALEY
PHIL P.W. ZARONE

ERIC W. SPRINGER (OF COUNSEL)

CLARA L. MATTERN (1933-1981)

FACSIMILE COVER PAGE

# CONFIDENTIAL

### IMPORTANT NOTICE

*This message is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service. Thank you.*

TO:    **Edward Kabala, Esquire**

NAME OF HOSPITAL/FIRM:    **Fox, Rothschild, O'Brien & Frankel, L.L.P.**
                          **Pittsburgh, PA 15222-3115**

FROM:    **Alan J. Steinberg**

DATE:    **March 14, 2003**

TIME:    **3:01 PM**

NUMBER OF PAGES (Including this Page):  **9**

                         SENT BY:  **Ann Schneider**

NOTES:

**IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION
PLEASE CALL 412-687-7677**

**Confidential**

@002

# HORTY, SPRINGER & MATTERN

## ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

4614 FIFTH AVENUE, PITTSBURGH, PA 15213

TELEPHONE: (412) 687-7677
FACSIMILE: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE S. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAFENTA
LAUREN M. MASSUCCI
NICHOLAS J. CALABRESE
LEEANNE MITCHELL O'BRIEN
MONICA J. HANSLOVAN
RACHEL E. REMALEY
PHILIP W. ZARONE

ERIC W. SPRINGER (OF COUNSEL)
CLARA L. MATTERN (1931-1981)

**CONFIDENTIAL**

**VIA FACSIMILE
AND U.S. MAIL**

March 14, 2003

Jodeen M. Hobbs, Esquire
Miller, Alfano & Raspanti, P.C.
Suite 3402
1818 Market Street
Philadelphia, PA  19103

Re:    Bradford Regional Medical Center/
       Drs. Vaccaro and Saleh

Dear Jodie:

With Ed Kabala on vacation, he asked that we work with you in his absence. As you know, the parties have been negotiating a possible resolution to this matter. By a letter dated March 12, 2003, I sent to Ed the Medical Center's counteroffer of the key points by which the Medical Center would propose to sublease from V&S Medical Associates the equipment under its Lease with GE Healthcare Financial Services. To make sure you have a copy of that letter, I thought it best to fax it to you today. I am also including a copy of my March 11, 2003 letter to Ed, which summarizes the offer from V&S Medical Associates as we understood it.

From my last conversation with Ed before he went on vacation, it sounds as though there has been a miscommunication or misunderstanding between the parties as to the original key points offered for this subleasing. We think it is best to simply pick up with those key points as they

**Confidential**

Jodeen M. Hobbs, Esquire
March 14, 2003
Page 2

are now described in our March 12 counteroffer. We believe they are fair and provide a good faith offer, particularly considering the following points:

- At the request of Drs. Vaccaro and Saleh, the Medical Center agreed not to have their ultrasound procedures be a part of these resolution discussions. Because of the Medical Center's agreement to that request, the revenues from those procedures will stay entirely with V&S Medical Associates.

- From information provided by Drs. Vaccaro and Saleh, we understand that their total profit from their nuclear camera services is approximately $240,000 annually. By the Medical Center's subleasing proposal, annual rental payments made would total $312,000, with a final profit to V&S Medical Associates of $229,000 annually.

  Most importantly, that is a revenue stream free of all risks. It is not dependent upon the actual volume of services V&S Medical Associates is able to provide in connection with the camera. There will be no employment costs (including benefits) from a technician supporting the services, etc. The subleasing payments will be a known and constant monthly amount. We do believe this combination makes for a generous, good faith offer.

- Both parties have worked hard to see if this matter can be resolved. I believe that has been in the spirit of not only seeing if this dispute can be settled, but, as importantly, whether the parties can work together on an Under Arrangements model venture that can do much good not only for the parties involved, but also for the greater Medical Center community and the City of Bradford and its community.

  Subleasing the GE Lease through the remainder of its term fits in that approach. There is still more than three years left on that Lease term. It is rare for hospitals in this day and fiscal climate to contract for even a three year period on any equipment, product or service.

  Having the sublease expire and fold into an Under Arrangements venture that would involve nuclear, CT, and MRI services also fits in that approach. (This, of course, is based upon a good faith effort by both parties to make the Under Arrangements model work. If it does not, the sublease would stay on its own terms.)

  That is the approach we feel is the best way not only to resolve this particular concern, but also to accomplish all the outcomes both parties have discussed and seek.

HORTY, SPRINGER & MATTERN, P.C.

Confidential

☑004

03/14/2003 16:01 FAX

Jodeen M. Hobbs, Esquire
March 14, 2003
Page 3

With the Board of Directors' meeting on March 26, we informed Ed and your clients that time does not allow this matter to sit while he is on vacation. Thank you for being available to move this forward in Ed's absence. We do need to hear back from you directly in order to work within our limited time frame. I also need to speak with you about a final, related point. The Under Arrangements model last proposed by the Medical Center had V&S Medical Associates being a 40% owner of Physician NewCo, based on the four physicians associated with V&S Medical Associates. I would like to discuss how the concept of those four involved physicians applies to the counteroffer made by the Medical Center. Thank you.

Very truly yours,

Alan J. Steinberg

AJS/avs

Enclosures

cc     George Leonhardt
       Edward Kabala, Esquire

1260H9.01

HORTY, SPRINGER & MATTERN, P.C.

Confidential

03/14/2003 16:02 FAX                                                    ☑005

# HORTY, SPRINGER & MATTERN

## ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

4614 FIFTH AVENUE, PITTSBURGH, PA 15213

TELEPHONE: (412) 687-7677
FACSIMILE: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE S. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAPENTA
LAUREN M. MASSUCCI
NICHOLAS J. CALABRESE
LEEANNE MITCHELL O'BRIEN
MONICA J. HANSLOVAN
RACHEL E. REMALEY
PHILIP W. ZARONE

ERIC W. SPRINGER (OF COUNSEL)
CLARA L. MATTERN (1931-1981)

**CONFIDENTIAL**

**VIA FACSIMILE
& U.S. MAIL**

March 12, 2003

Edward Kabala, Esquire
Fox, Rothschild, O'Brien & Frankel, L.L.P.
625 Liberty Avenue
29th Floor
Pittsburgh, PA 15222-3115

Re:    Bradford Regional Medical Center/
Drs. Saleh and Vaccaro

Dear Ed:

As we discussed yesterday, the following is a description of the key points by which Bradford Regional Medical Center would propose to sublease from V&S Medical Associates the equipment under its Lease with GE Healthcare Financial Services:

(1)    The Equipment would be subleased to the Medical Center for the remaining term of the GE Lease, i.e., until September 2006, at the price of $1,200 a day. As the Medical Center prefers to make payments on a monthly basis, the rental would be $26,000 per month.

As your clients review these figures, I believe it is important to note that, at their prior request, the Medical Center agreed not to include ultrasound testing as a part of these negotiations.

**Confidential**
V&S 01812

Edward Kabala, Esquire
March 12, 2003
Page 2

(2)    The equipment would be moved to the Medical Center. The Medical Center would be
       responsible for the moving of the equipment, both in terms of all moving costs and the
       risks to the equipment associated with the move.

(3)    V&S Medical Associates will be responsible for payment of the maintenance of the
       equipment through the remainder of the GE Lease/Sublease term. This includes payment
       of the current maintenance agreement with GE and a new or replacement maintenance
       agreement once the current maintenance agreement expires.

(4)    The Medical Center will offer employment to the V&S nuclear technician at the Medical
       Center's standard rate and terms for similar technicians at the Medical Center.

(5)    The parties will continue good faith efforts to develop the Under Arrangements ("UA")
       model. If UA model terms can be mutually agreed upon, V&S Medical Associates will
       take the lead in developing and starting up Physician NewCo. Should an UA venture be
       implemented (which must include appropriate regulatory approval for the model and
       Physician NewCo in the form of an Advisory Opinion from the HHS Office of Inspector
       General), the assumption of the Lease and its terms as described in the UA model will
       commence and the Medical Center's Sublease will expire.

(6)    During the term of the GE Lease/Sublease, the Medical Center would like to have the
       ability to change or upgrade the equipment from GE should either the need or the
       opportunity for such a change occur. Should the Medical Center make such an
       equipment change, the change could not detrimentally affect V&S Medical Associates
       under the Sublease terms (i.e., no higher maintenance fees, etc.) The Medical Center and
       V&S Medical Associates would work through any new issues or document provisions
       that require mutual understanding or cooperation with any such new equipment.

       (This is not an idea we discussed at last Saturday's meeting. With the remainder of the
       GE Lease term still well over three years, we realized there might be an opportunity or
       a need for the Medical Center to change or upgrade the equipment. We would like the
       Medical Center to have the opportunity to do that without creating a new or increased
       responsibility upon V&S Medical Associates, be that financial or otherwise.)

                                                          HORTY, SPRINGER & MATTERN, P.C.

Confidential
V&S 01814

☑ 007

03/14/2003 16:02 FAX

Edward Kabala, Esquire
March 12, 2003
Page 3

(7)  (a)   V&S will execute a covenant not to compete, agreeing not to provide the services
           furnished in connection with the Sublease's equipment in its offices or invest in
           any other entity that provides such services during the term of the Sublease.

     (b)   In order to allow the UA venture to move forward, V&S will not provide other
           outpatient diagnostic imaging services in its office or invest in any other entity
           that provides such services while the UA venture is in development and attempted
           start-up.

     (c)   Should the UA venture not be implemented, in the event that V&S considers
           offering CT, MRI or other diagnostic imaging services in its office or investing
           in a facility that provides the same, it must first present the opportunity to the
           Medical Center, which shall have 45 days to present a proposal to give V&S an
           opportunity to participate in a venture with the Medical Center to provide those
           services. If such a proposal is offered, V&S will not offer or invest in the service
           in question unless the proposed venture is not finalized within 120 days. V&S
           also agrees to discuss the possibility of ventures with the Medical Center for other
           non-diagnostic outpatient services prior to pursuing them on its own.

If you have any questions concerning these terms or wish to discuss them further, please give me
a call.

Very truly yours,

Alan J. Steinberg

AJS/dmc

cc:   George Leonhardt

125969 01

HORTY, SPRINGER & MATTERN, P.C.

Confidential

03/14/2003 16:02 FAX

☑008

# HORTY, SPRINGER & MATTERN

## ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

4614 FIFTH AVENUE, PITTSBURGH, PA 15213

TELEPHONE: (412) 687-7677
FACSIMILE: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE S. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAPENTA
LAUREN M. MASSUCCI
NICHOLAS J. CALABRESE
LEEANNE MITCHELL O'BRIEN
MONICA J. HANSLOVAN
RACHEL R. REMALEY
PHILIP W. ZARONE

ERIC W. SPRINGER (OF COUNSEL)
CLARA L. MATTERN (1931-1981)

### CONFIDENTIAL

## VIA FACSIMILE
## AND U.S. MAIL

March 11, 2003

Edward Kabala
Fox, Rothschild, O'Brien & Frankel, L.L.P.
625 Liberty Avenue
29th Floor
Pittsburgh, PA 15222-3115

> Re:   Bradford Regional Medical Center/
>       Drs. Saleh and Vaccaro

Dear Ed:

We thought it would be helpful to provide a summary letter concerning what we understand to be the key points of the proposed subleasing by V&S Medical Associates of the equipment under its Lease with GE Healthcare Financial Services to the Medical Center which we discussed at our meeting on Saturday:

(1)   The equipment would be subleased to the Medical Center for the remaining term of the GE Lease, i.e., until September 2006. Your clients proposed that the Sublease be priced at $1,500 a day. The Medical Center is currently considering this proposal, and we expect to get back to you by no later than this coming Wednesday.

**Confidential**

☑009

Edward Kabala
March 11, 2003
Page 2


(2)    The equipment would be moved to the Medical Center. The Medical Center would be responsible for the moving of the equipment, both in terms of all moving costs and the risks to the equipment associated with the move.

(3)    V&S Medical Associates will be responsible for payment of the maintenance of the equipment through the remainder of the GE Lease/Sublease term. This includes payment of the current maintenance agreement with GE and a new or replacement maintenance agreement once the current maintenance agreement expires.

(4)    The Medical Center will offer employment to the V&S nuclear technician at the Medical Center's standard rate and terms for similar technicians at the Medical Center.

(5)    The same restrictive covenant with which the parties have been working will be applied to this transaction.

(6)    The parties will continue good faith efforts to develop the Under Arrangements ("UA") model. If UA model terms can be mutually agreed upon, V&S Medical Associates will take the lead in developing and starting up Physician NewCo. Should an UA venture be implemented (which must include appropriate regulatory approval for the model and Physician NewCo in the form of an Advisory Opinion from the HHS Office of Inspector General), the assumption of the Lease and its terms as described in the UA model will commence and the Medical Center's Sublease will expire.

We will be back to you directly with the results of our pricing review. If you have any questions or wish to discuss this matter before then, please feel free to give me a call.

Very truly yours,

*Alan*

Alan J. Steinberg

AJS/dsn

cc    George E. Leonhardt

1258H9 0▸

HORTY, SPRINGER & MATTERN, P.C.


**Confidential**

**40**

# FOX • ROTHSCHILD
## O'BRIEN & FRANKEL LLP
ATTORNEYS AT LAW

625 LIBERTY AVENUE • 29TH FLOOR • PITTSBURGH, PA 15222-3115
412-391-1334 • FAX 412-391-6984 • www.frof.com

Edward J. Kabala
Direct Dial   (412) 394-5599
Internet Address   ekabala@frof.com

February 11, 2003

Alan J. Steinberg, Esquire
Horty, Springer & Mattern
4614 Fifth Avenue
Pittsburgh, PA  15213

Re:    Bradford Regional Medical Center
Drs. Saleh and Vaccaro
Our File Number:  63129

Dear Alan:

This will confirm that, in addition to my clients' (Drs. Vaccaro and Saleh and V & S Medical Services) expressions of willingness to continue the discussions for the "under arrangements" model for a nuclear medicine modality with Bradford Regional Medical Center (BRMC), the meeting on February 10 concluded with Drs. Vaccaro and Saleh offering to engage in a leasing arrangement for the nuclear camera operation currently located in their office.

The doctors would develop a proposal for a flat fee under which the camera would be leased to BRMC on a per diem basis. The flat fee would be designed to include all fixed costs, camera lease, space, utilities and certain variable costs such as the technician. There would be a per diem rental for a minimum of three (3) days but for as many as five (5), as BRMC chose. If BRMC chose less than five (5) days, V & S would seek another lessee from outside the BRMC service area for the remaining days or, if the option of BRMC were to take all five (5) days, would assist BRMC in contracting with other parties for any excess capacity.

It is not expected that the per diem would be a mere cost pass through but would be set to provide a fair allocation of the risks and rewards of the arrangement between BRMC and my clients.

formerly Kabala & Geeseman

PENNSYLVANIA • NEW JERSEY • DELAWARE

PI1 806,116 1 02/11/03

DEPOSITION
EXHIBIT
Leonhardt
#2

DEPOSITION
EXHIBIT
Saleh
8-9-07  17  jsn

Confidential
V&S 01628

Alan J. Steinberg, Esquire
February 11, 2003
Page 2

As BRMC refines its "under arrangements" calculations with Mr. Voyvodich, we will work on the lease proposal.

We understand that the advantage to BRMC is that the lease proposal requires less lead time and cost and results in an earlier profit realization to BRMC. I wish to point out that we are not unaware of the time lag to implement the "under arrangements" model, nor of the fact that my clients would continue to get 100% of the profits from the operation while various approvals are being sought; even so, we are providing BRMC the choice of the lease approach.

It would be expected that the hospital would operate the facility in the current location and be responsible for the variable costs not covered by the flat per diem rental and would, in turn, directly or indirectly bill the services provided. My clients have indicated that all of their Nuclear Medicine Studies can be accommodated by a combination of their current camera and those at BRMC.

It would also be anticipated that the term of the arrangement would be sufficient to cover the remaining lease term for the SMV nuclear camera, details of which lease have been shared with you.

We understand that, whether the ultimate arrangement on the Nuclear Medicine Modality is through this leasing arrangement or an "under arrangements" model, it is the intention of BRMC to do other similar proposals on other modalities. Drs. Vaccaro and Saleh have advised Mr. Leonhardt that they are supportive of these arrangements and would be interested in participating, and herewith reiterate that support and interest.

We further acknowledge that it is the hospital's desire to be assured that Drs. Vaccaro and Saleh are not competing with the hospital for inpatient or hospital based services. Certainly, as this negotiation concludes, we would anticipate that there would be a non-compete by which Drs. Vaccaro and Saleh would commit not to compete in the areas where the hospital has concern.

Obviously, all of these issues have to be worked out but, in view of the approach taken by all the parties at the last couple of meetings, it would seem only a matter of time until these matters are resolved.

Very truly yours

Edward J. Kabala

EJK:dv

FOX • ROTHSCHILD
O'BRIEN & FRANKEL .

PIT 896101 1 02/11/03

Confidential
V&S 01629

02/11/2003 15:42 FAX 412 391 6984          FOX ROTHSCHILD                          🖂 001

```
************************
***    TX REPORT    ***
************************

TRANSMISSION OK

TX/RX NO              4247
CONNECTION TEL             14126877692
SUBADDRESS
CONNECTION ID        Horty Springer
ST. TIME             02/11 15:41
USAGE T              00'51
PGS. SENT               3
RESULT               OK
```

# FOX ✦ ROTHSCHILD
## O'BRIEN & FRANKEL LLP
### ATTORNEYS AT LAW

625 LIBERTY AVENUE, 29TH FLOOR
PITTSBURGH, PA 15222-3115
VOICE: (412) 391-1334
FAX: (412) 391 6984

DATE: FEBRUARY 11, 2003

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>Alan J. Steinberg | COMPANY: | FAX NUMBER:<br>412-687-7692 | PHONE NUMBER: |
|---|---|---|---|
| FROM:<br>Edward J. Kabala | PHONE NUMBER:<br>(412) 394-5599 | EMAIL:<br>ekabala@frof.com | BILLING NUMBER: |
| NUMBER OF PAGES:<br>3 | CHARGE FILE NUMBER: | PRIORITY:<br>REGULAR | LOG NUMBER: |

IF YOU DO NOT RECEIVE ALL OF THE PAGES,
PLEASE CALL (412) 391-1334 AS SOON AS POSSIBLE.
ORIGINAL DOCUMENT WILL NOT FOLLOW BY MAIL

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ FOR YOUR INFORMATION

NOTES/COMMENTS

*Alan Please Review — call me if you need something more.*

Confidential
V&S 01630

**41**

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

25-185505 2

**S T A T E M E N T**

October 2003

| | | |
|---|---|---|
| Rent | | $ 2,500.00 |
| Internet Charges | | 24.00 |
| Secretarial Support | | 1,000.00 |
| Giamuso (Physicist) | | 440.00 |
| Laundry | | 70.00 |
| Telephone | | Pending |
| | | |
| Supplies per test: | | |
| Cardolite tests costs | 14 tests | 288.68 |
| Adenosine tests | 18 tests | 511.56 |
| Hepatobillary | 1 test | 11.40 |
| Whole Body Bone | 3 tests | 34.20 |
| | | |
| Total | | $4,879.84 |

(Above testing does not include medicine. That total will be taken from the receipts as
the medicine is paid at cost by the insurer.)

No receipts as of this date.

**Payment due upon receipt.**

7240.605 - 845 84
7240.750 - 2500.00
7240.655 - 1534.00

Ck # 163855

DEPOSITION
EXHIBIT
Saleh
89-07 30 jan

**Confidential**
**V&S 03154**



**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

S T A T E M E N T

November 2003

| | | |
|---|---|---|
| Rent | | $ 2,500.00 |
| Internet Charges | | 24.00 |
| Secretarial Support | | 800.00 |
| Giamuso (Physicist) | | 440.00 |
| Laundry | | 70.00 |
| Telephone | x 2 months (October and November) | 60.00 |

| Supplies per test: | | |
|---|---|---|
| Cardiolite test costs | 11 tests | 226.82 |
| Adenosine tets | 17 tests | 483.14 |
| Hepatobillary | 1 test | 11.40 |
| Whole Body Bone | 1 test | 11.40 |
| Kidney Scan | 1 test | 10.03 |
| Thyroid Scan | 1 test | 10.03 |

|  | | |
|---|---|---|
| Total | | $ 4,586.82 |

(Above testing supplies do not include medicine. That total will be taken from the receipts as the medicine is paid at cost by the insurer.)

**Payment due upon receipt.**

**Confidential
V&S 03156**

## RECEIPTS

| | | |
|---|---|---|
| Total Receipts | | $ 24,922.31 |
| | | |
| 10% Billing charge for V&S | $ 2492.23 | |
| Medication Receipts | $ 7267.97 | |
| 24% Reading charge for O'Donnell | $ 5981.35 | |
| | | |
| Payment to BRMC on receipts | | $  9,180.76 |
| | | |
| November "Rental" Statement | $ 4586.82 | |
| | | |
| Actual Payment to BRMC | | $   4,593.94 |

Confidential
V&S 03157

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA  16701**
**(814)368-1000**

STATEMENT

December 2003

| | | |
|---|---|---:|
| Rent | | $ 2,500.00 |
| Internet Charges | | 24.00 |
| Secretarial Support | | 1,000.00 |
| Giamuso (Physicist) | | 440.00 |
| Laundry | | 70.00 |
| Telephone | | 30.00 |
| | | |
| | | |
| Supplies per test: | | |
| Cardiolite test costs | 14 tests | 288.68 |
| Adenosine tets | 15 tests | 426.30 |
| Hepatobillary | 1 test | 11.40 |
| Whole Body Bone | 1 test | 11.40 |
| Spect Bone | 1 test | 11.40 |
| Thyroid Scan | 1 test | 10.03 |
| | | |
| Total | | $ 4,823.21 |

(Above testing supplies do not include medicine.  That total will be taken from the receipts as the medicine is paid at cost by the insurer.)

**Payment due upon receipt.**

**Confidential**
**V&S 03158**

## RECEIPTS

Total Receipts                                      $ 27,642.67

| | | |
|---|---|---|
| 10% Billing charge for V&S | $ 2764.27 | |
| Medication Receipts (Nov Med) | $ 6865.11 | |
| 24% Reading charge for O'Donnell | $ 6634.24 | |
| Medication Receipts (Oct Meds) | $ 2238.16 | |

Payment to BRMC on receipts                         $  9140.89

December 2003 statement          $ 4823.21

Actual Payment to BRMC                              $ 4317.68

**Confidential
V&S 03159**

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

STATEMENT

January 2004

| | | |
|---|---|---|
| Rent | | $ 2,500.00 |
| Internet Charges | | 24.00 |
| Secretarial Support | | 1,000.00 |
| Giamuso (Physicist) | | 440.00 |
| Laundry | | 70.00 |
| Telephone | | 30.00 |

| Supplies per test: | | |
|---|---|---|
| Cardiolite test costs | 25 tests | 515.50 |
| Adenosine tets | 29 tests | 824.18 |
| Whole Body Bone | 2 test | 22.80 |
| Spect Bone | 3 test | 34.20 |
| Renal | 1 test | 10.03 |

| | |
|---|---|
| Total | $ 5,470.71 |

(Above testing supplies do not include medicine. That total will be taken from the receipts as the medicine is paid at cost by the insurer.)

**Payment due upon receipt.**

**Confidential
V&S 03160**

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

**S T A T E M E N T**

February 2004

| | | |
|---|---|---:|
| Rent | | $ 2,500.00 |
| Internet Charges | | 24.00 |
| Secretarial Support | | 800.00 |
| Giamuso (Physicist) | | 440.00 |
| Laundry | | 70.00 |
| Telephone | | 30.00 |
| | | |
| Supplies per test: | | |
| Cardiolite test costs | 30 tests | 618.60 |
| Adenosine tets | 26 tests | 738.92 |
| Spect Bone | 1 test | 11.40 |
| Renal | 1 test | 10.03 |
| Total | | $ 5242.95 |

(Above testing supplies do not include medicine. That total will be taken from the receipts as the medicine is paid at cost by the insurer.)

**Payment due upon receipt.**

Confidential
V&S 03161

## RECEIPTS

Total Receipts                                          $ 42438.38

    10% Billing charge for V&S              $   4243.84
    Medication Receipts (Feb Meds)          $   6599.06
    Medication Receipts (Jan Meds)          $   6543.07
    Medication Receipts (Dec Meds)          $    947.08
    24% Reading charge for O'Donnell        $ 10185.21
    Medication Receipts (Nov Meds)          $   1024.84

Payment to BRMC on receipts                            $   12895.28


February 2004 statement              $ 5242.95

Actual Payment to BRMC                                 $    7652.33

**Confidential**
**V&S 03162**

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA  16701**
**(814)368-1000**

## STATEMENT

March 2004

| | |
|---|---:|
| Rent | $ 2,500.00 |
| Secretarial Support | 1,000.00 |
| Giamuso (Physicist) | 462.00 |
| Laundry | 45.00 |
| Telephone | 30.00 |
| | |
| Total | $ 4,037.00 |

(Above testing supplies do not include medicine.  That total will be taken from the receipts as the medicine is paid at cost by the insurer.)

**Payment due upon receipt.**

Confidential
V&S 03163

# RECEIPTS

Total Receipts                                              $ 29268.31

  10% Billing Charge for V&S          $   2926.83
  24% O'Donnell Charge                $   7024.39
  Medication Receipts (Feb Meds)      $   6529.83
  Medication Receipts (Jan Meds)      $   2034.89
  Medication Receipts (Dec Meds)      $
  Medication Receipts (Nov Meds)      $

Payment to BRMC on receipts                          $   10752.37

  March 2004 statement               $  4037.00

Actual Payment to BRMC                               $    6715.37

Confidential
V&S 03164

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

S T A T E M E N T

April 2004

| | |
|---|---|
| Rent | $ 2,500.00 |
| Secretarial Support | 1,000.00 |
| Total | $ 3,500.00 |

**Payment due upon receipt.**

**Confidential**
**V&S 03165**

## RECEIPTS

Total Receipts                                        $ 8173.29

    10% Billing Charge for V&S          $  817.33
    24% O'Donnell Charge               $1961.59
    Medication Receipts (Feb Meds)     $1807.47
    Medication Receipts (Jan Meds)     $ 570.45
    Medication Receipts (Dec Meds)     $
    Medication Receipts (Nov Meds)     $

Payment to BRMC on receipts                      $   3016.45


  April 2004 statement            $ 3500.00

Payment due from BRMC                            $    483.55

**Please remit payment upon receipt.**

**Confidential**
**V&S 03166**

**V&S MEDICAL ASSOCIATES**
**24 WEST WASHINGTON STREET**
**BRADFORD, PA 16701**
**(814)368-1000**

**S T A T E M E N T**

May 2004

Rent                                             $ 2,500.00
Secretarial Support                                 1,000.00

     Total                                 $ 3,500.00

**Payment due upon receipt.**

**Confidential**
**V&S 03167**

V&S MEDICAL ASSOCIATES
24 WEST WASHINGTON STREET
BRADFORD, PA 16701
(814)368-1000


STATEMENT


June 2004

Rent                                                $ 2,500.00
    No secretarial support fee

        Total                                       $ 2,500.00


Payment due upon receipt.

Confidential
V&S 03168

# RECEIPTS

Total Receipts                                          $ 30755.70

| | |
|---|---|
| 10% Billing Charge for V&S | $ 3075.57 |
| 24% O'Donnell Charge | $ 7381.37 |
| Medication Receipts (Feb Meds) | $  178.00 |
| Medication Receipts (Jan Meds) | $ 7338.34 |
| Medication Receipts (Dec Meds) | $  644.00 |
| Medication Receipts (Nov Meds) | $ 1231.81 |

Payment to BRMC on receipts                            $ 10863.97

| | |
|---|---|
| January 2004 Statement | $5470.71 |
| April 2004 Statement Not Paid | $  483.55 |
| May 2004 statement | $3500.00 |
| June 2004 statement | $2500.00 |

Payment due from BRMC                                   $   1090.29

Confidential
V&S 03169

7:55 AM
08/09/07

# V & S MEDICAL ASSOCIATES LLC
## Vendor QuickReport
### November 7, 2003 through July 31, 2004

| Type | Date | Num | Memo | Account | Clr | Split | Amount |
|------|------|-----|------|---------|-----|-------|--------|
| **BRMC** | | | | | | | |
| Check | 11/7/2003 | 4316 | | 1000 · Checking | X | 8000 · Medi... | -4.70 |
| Check | 12/2/2003 | 4357 | | 1000 · Checking | X | 6990 · Misce... | -4,593.94 Nov. |
| Check | 1/7/2004 | 4442 | | 1000 · Checking | X | 6300 · Profe... | -4,317.68 Dec |
| Check | 2/10/2004 | 4522 | January | 1000 · Checking | X | 6990 · Misce... | -4,273.51 Jan. |
| Check | 2/10/2004 | 4549 | Dr. Vaccaro | 1000 · Checking | X | 8000 · Medi... | -69.40 |
| Check | 2/25/2004 | 4587 | 4299372 | 1000 · Checking | X | 8000 · Medi... | -94.90 |
| Check | 3/12/2004 | 4633 | Feb,04 | 1000 · Checking | X | 6300 · Profe... | -7,652.33 Feb |
| Check | 4/7/2004 | 4678 | March | 1000 · Checking | X | 6300 · Profe... | -6,715.37 March |
| Check | 5/7/2004 | 1017 | 4389510 | 1001 · North Wes... | X | 8000 · Medi... | -27.85 |
| Check | 5/13/2004 | 1041 | 4399033 | 1001 · North Wes... | X | 8000 · Medi... | -13.70 |
| Check | 5/14/2004 | 1050 | Saleh & Va... | 1001 · North Wes... | X | 6990 · Misce... | -30.65 |
| Check | 7/16/2004 | 1170 | Cafeteria c... | 1001 · North Wes... | X | 6410 · Meals... | -16.18 |
| Check | 7/20/2004 | 1185 | | 1001 · North Wes... | X | 8000 · Medi... | -2,304.30 |
| Check | 7/22/2004 | 1187 | | 1001 · North Wes... | X | 8000 · Medi... | -158.71 |

Confidential
V&S 03170

**42**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| DILBAGH SINGH, M.D., PAUL KIRSCH, M.D., | : | |
| V. RAO NADELLA, M.D., and | : | **Civil Action No. 04-186E** |
| MARTIN JACOBS, M.D., | : | |
| | : | **Honorable Maurice B. Cohill, Jr.** |
| Relators, | : | |
| | : | |
| v. | : | |
| | : | |
| BRADFORD REGIONAL MEDICAL CENTER, | : | |
| V&S MEDICAL ASSOCIATES, LLC, | : | |
| PETER VACCARO, M.D., | : | |
| KAMRAN SALEH, M.D., | : | |
| and DOES I through XX, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS V&S MEDICAL ASSOCIATES, LLC, PETER VACCARO, M.D. and KAMRAN SALEH, M.D.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES

Defendants V&S Medical Associates, LLC ("V&S"), Peter Vaccaro, M.D. ("Vaccaro"), and

Kamran Saleh, M.D. ("Saleh") (collectively, the "V&S Defendants"), through their undersigned

attorneys, serve the following Objections and Responses to Plaintiffs' First Interrogatories pursuant

to Rule 33 of the Federal Rules of Civil Procedure.

### I. GENERAL OBJECTIONS

The V&S Defendants hereby incorporate by reference, as if set forth fully therein, each of the

following general objections to each separate paragraph of Plaintiffs' First Interrogatories

("Interrogatories").

1.    The V&S Defendants object to producing any information or documents in response

to the Interrogatories that are protected by the attorney-client privilege, work-product doctrine, joint-

2.      Identify, by citation to specific statutory or regulatory provisions, all Stark Law exceptions that you contend may apply in this case, as asserted in paragraph 122 of your answer to Plaintiffs' complaint.

**RESPONSE:**

The V&S Defendants object to this Interrogatory on the basis that both discovery and the V&S Defendants' investigation are ongoing. The V&S Defendants further object to this Interrogatory to the extent that it seeks the mental impressions, conclusions, opinions and/or legal theories of counsel for the V&S Defendants. Without waving these specific objections, or any of the general objections set forth above, the V&S Defendants again state that they have not violated the Stark Law. The lease agreement (the "Lease") between V&S and Bradford Regional Medical Center, Inc. ("BRMC") does not constitute a "financial relationship" as defined under the Stark Law. However, even to the extent that the Lease is determined to constitute a financial relationship between V&S and BRMC under the Stark Law, the Lease would fall under the exception for indirect compensation arrangements as set forth in 42 C.F.R. § 411.357(p). If the Lease is determined to be a financial relationship between BRMC and Dr. Vaccaro and/or Dr. Saleh, the Lease would fall under the exception for equipment rental as set forth in 42 U.S.C. § 1395nn(e)(1)(B) and 42 C.F.R. § 411.357(b).

6

3.    Identify, by citation to specific statutory or regulatory provisions, all Anti-Kickback safe-harbor exceptions that you contend apply in this case, as asserted in paragraph 120 of your answer to Plaintiffs' complaint.

**RESPONSE:**

The V&S Defendants object to this Interrogatory on the basis that both discovery and the V&S Defendants' investigation are ongoing. The V&S Defendants further object to this Interrogatory to the extent that it seeks the mental impressions, conclusions, opinions and/or legal theories of counsel for the V&S Defendants. Without waving these specific objections, or any of the general objections set forth above, the V&S Defendants again state that they have not violated the Anti-Kickback Statute. Any and all payments made by BRMC to V&S under the Lease are not "remuneration" as defined under the Anti-Kickback Statue, but instead fall under the safe harbor for equipment rental stated in 42 C.F.R. § 1001.952(c).

7

## VERIFICATION

I verify that the responses set forth in the foregoing Defendants V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Objections and Responses to Plaintiffs' First Interrogatories are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of relating to unsworn falsification to authorities.

Date: _____2/21/07 .____, 2007

Kamran Saleh, M.D.

**43**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, *ex rel.*,      :
DILBAGH SINGH, M.D.,                        :
PAUL KIRSCH, M.D.,                          :
V. RAO NADELLA, M.D., and                   :
MARTIN JACOBS, M.D.,                        :
                                            :
                                            :
                   Relators,                :
                                            :
        v.                                   :         Civil Action No. 04-186E
                                            :
BRADFORD REGIONAL                           :
  MEDICAL CENTER,                           :
V & S MEDICAL ASSOCIATES, LLC,              :
PETER VACCARO, M.D.,                        :
KAMRAN SALEH, M.D.,                         :
and DOES I through XX,                      :
                                            :
                   Defendants.              :
                                            :
                                            :

RESPONSES TO RELATORS' FIRST SET
OF INTERROGATORIES
TO BRADFORD REGIONAL MEDICAL CENTER

The Defendant Bradford Regional Medical Center, Inc. ("BRMC"), through its undersigned
counsel, responds as follows to the Relators' First Set of Interrogatories:

I.     GENERAL OBJECTIONS

A.     Defendant BRMC objects generally to each Interrogatory to the extent that it seeks
       information that:  (1) was prepared in anticipation of litigation or for trial by or for
       Defendant's attorneys; (2) constitutes the work product of the Defendant's attorneys;
       (3) constitutes confidential communications between the Defendant and its attorneys;
       (4) is otherwise privileged according to law, including but not limited to the

159829.1
February 7, 2007

2.  Identify, by citation to specific statutory or regulatory provisions, all Stark Law exceptions that BRMC contends apply in this case, as asserted in paragraph 115 of BRMC's answer to Plaintiffs' complaint.

Response:

BRMC has not violated the Stark Law. Moreover, the equipment lease between BRMC and V & S does not constitute a "financial relationship" as that term is defined in the Stark Law. However, to the extent that the Court would find that said lease is a financial relationship between V & S and BRMC covered by the Stark Law, said lease would fit within the exception for indirect compensation arrangements set forth in 42 C.F.R. § 411.357(p), or, if the Court would find that said lease does constitute a financial relationship between BRMC and either Dr. Vaccaro or Dr. Saleh, or both of them, said lease would fit within the exception for equipment rental set forth in 42 U.S.C. § 1395nn(e)(1)(B) and 42 C.F.R. § 411.357(b).

3.    Identify, by citation to specific statutory or regulatory provisions, all Anti-Kickback safe-harbor exceptions that BRMC contends apply in this case, as asserted in paragraph 114 of BRMC's answer to Plaintiffs' complaint.

Response:

BRMC has not violated the Anti-Kickback Statute. Payments made by BRMC to V & S under the equipment lease do not constitute "remuneration" as that term is defined in the Anti-Kickback Statute by virtue of the safe harbor for equipment rental set forth at 42 C.F.R. § 1001.952(b).

## AFFIDAVIT

State of Pennsylvania      :
     :
     :
     :     ss.
     :
County of McKean      :
     :

George Leonhardt, being duly sworn upon his oath, deposes and says:

I am the President of Bradford Regional Medical Center ("the Hospital"), Defendant in the above-entitled action and I am authorized to act on behalf of the Hospital. I have read the interrogatories served upon the Hospital by Plaintiffs. The foregoing answers to those interrogatories are true according to the best of my knowledge, information, and belief.

George Leonhardt

Subscribed and sworn to be before me a Notary Public for the State of Pennsylvania, this ___7___ day of February 2007.

[seal]

My commission expires:

NOTARIAL SEAL
CINDY A. MCGUIRE, NOTARY PUBLIC
CITY OF BRADFORD, MCKEAN COUNTY
MY COMMISSION EXPIRES MARCH 11, 2007

**44**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, *ex rel.* | : |
| **DILBAGH SINGH, M.D.,** | : |
| **PAUL KIRSCH, M.D.,** | : |
| **V. RAO NADELLA, M.D., and** | : |
| **MARTIN JACOBS, M.D.,** | : |
|  | : |
| **Relators,** | : |
|  | : |
| **v.** | : **Civil Action No. 04-186E** |
|  | : |
| **BRADFORD REGIONAL** | : |
| **MEDICAL CENTER,** | : |
| **V & S MEDICAL ASSOCIATES, LLC,** | : |
| **PETER VACCARO, M.D.,** | : |
| **KAMRAN SALEH, M.D.,** | : |
| **and DOES I through XX,** | : |
|  | : |
| **Defendants.** | : |
|  | : |

### RESPONSES TO RELATORS' SECOND SET
### OF INTERROGATORIES
### TO BRADFORD REGIONAL MEDICAL CENTER

Defendant Bradford Regional Medical Center, Inc. ("BRMC"), through its undersigned

counsel, responds as follows to the Relators' Second Set of Interrogatories:

### GENERAL OBJECTIONS

A.    BRMC objects generally to each Interrogatory to the extent that it seeks

information that: (1) was prepared in anticipation of litigation or for trial by or

for Defendant's attorneys; (2) constitutes the work product of the Defendant's

attorneys; (3) constitutes confidential communications between the Defendant and

its attorneys; (4) is otherwise privileged according to law, including but not

1

limited to the Pennsylvania Peer Review Protection Act; or (5) is beyond the scope of discovery permitted by the Federal Rules of Civil Procedure.

B.    BRMC objects generally to the "Instructions and Definitions" accompanying Relators' Interrogatories to the extent that they seek discovery beyond the scope permitted by, or contrary to, the Federal Rules of Civil Procedure, the Local Rules of Court or any order of this Court.

## Interrogatories

**1.    With respect to each claim identified on Exhibits 1, 3, 5, 7 and 9 attached to the First Request for Admissions, please identify the amount of payment received from Medicare for such claim.**

**Response:**

Objection. This Interrogatory is vague, overly broad and unduly burdensome. Subject to this objection, the amount of payment received from Medicare for claims listed on Exhibits 3, 5 and 7 are included in the enclosed CD, either by a check mark indicating that the amount listed under the "reimbursement" column was the amount received, or by a handwritten entry of the amount received was different than the amount listed under the "reimbursement" column. Information with respect to Exhibits 1 and 9 will be provided in a supplemental response.    The information contained on the enclosed CD has been designated "CONFIDENTIAL" and "PROTECTED HEALTH INFORMATION."

**2.    With respect to each claim identified on Exhibits 2, 4, 6, 8 and 10 attached to the First Request for Admissions, please identify the amount of payment received from Medicaid for such claim.**

**Response:**

Objection. This Interrogatory is vague, overly broad and unduly burdensome. Subject to this objection, the amount of payment received from Medicaid for claims listed on Exhibits 2, 4 and 6 are included in the enclosed CD, either by a check mark indicating that the amount listed under the "reimbursement" column was the amount received, or by a handwritten entry of the amount received was different than the amount listed under the "reimbursement" column. Information with respect to Exhibits 8 and 10 will be provided

2

in a supplemental response. The information contained on the enclosed CD has been designated "CONFIDENTIAL" and "PROTECTED HEALTH INFORMATION."

**3.    Please identify, by name and UPIN, each physician identified in the "PHYSICIAN" column of Exhibits 1 through 10 attached to the First Request for Admissions.**

**Response:**

A CD containing the BRMC MIS Provider Dictionary, which lists all providers on BRMC's medical staff and the initials used in BRMC's information system to refer to them, along with each provider's UPIN, is attached and is provided in response to this Interrogatory.    The information on said CD is designated "CONFIDENTIAL – COUNSEL ONLY."

**4.    If you have denied, in whole or in part, any of the requests in the First Request for Admissions, please state in detail each basis for each such denial. If the denial relates to a specific claim or claims, identify each such claim and state the basis for such denial. If the denial is partial, please state the extent to which the request is admitted.**

**Response:**

The Requests for Admissions which were denied were denied for the following reasons: The "physician" columns on the exhibits which were the subjects of the Requests for Admissions were derived from the entry on Line 82 on the UB-92/HCFA 1450 form for claims submitted by BRMC. For inpatient services, the instruction Line 82 on the UB-92/HCFA 1450 form identifies "the clinician primarily responsible for the care of the patient from the beginning of the hospital episode. For SNF services, i.e., swing bed, the attending physician is the practitioner who certifies the SNF plan of care. For Outpatient and Other Part B services, Line 82 on the UB-92/HCFA 1450 form identifies the physician that requested the surgery, therapy, diagnostic tests or other services." Medicare    Hospital    Manual,    Pub.    10,    section    460,    page    4-552.12 http://www.cms.hhs.gov/Manuals/PBM/list.asp. These instructions are consistent with instructions received from BRMC's Medicare intermediary, which instructions are followed when BRMC submits claims using the UB-92/HCFA 1450 form. Therefore,

3

BRMC cannot admit either that any or all of the physicians listed on the forms were the "referring" physicians, within the generic meaning of the word "referring," or whether any or all of said physicians made a "referral" as that term is used in the Physician Self-Referral Statute, the Anti-kickback Statute or the regulations thereunder.

September 4, 2007                    Respectfully submitted,

                                     Daniel M. Mulholland III
                                     Pennsylvania ID No. 28806
                                     HORTY, SPRINGER & MATTERN, P.C.
                                     4614 Fifth Avenue
                                     Pittsburgh, PA 15213
                                     Phone: (412) 687-7677
                                     Fax: (412) 687-7692
                                     dmulholland@hortyspringer.com
                                     Attorneys for Defendant

4

## **AFFIDAVIT**

| | | |
|---|---|---|
| | : | |
| **State of Pennsylvania** | : | |
| | : | |
| | : | **ss.** |
| | : | |
| **County of McKean** | : | |
| | : | |

George Leonhardt, being duly sworn upon his oath, deposes and says:

I am the President of Bradford Regional Medical Center (the "Hospital"), Defendant in the above-entitled action, and I am authorized to act on behalf of the Hospital. I have read the Interrogatories served upon the Hospital by Plaintiffs. The foregoing answers to those Interrogatories are true according to the best of my knowledge, information, and belief.

George Leonhardt

Subscribed and sworn to be before me, a Notary Public for the State of Pennsylvania, this _3/st_ day of August 2007.

[seal]

My commission expires: _7/24/2010_

NOTARIAL SEAL
MARYELLEN TROUTMAN, NOTARY PUBLIC
BRADFORD, McKEAN COUNTY, PA
MY COMMISSION EXPIRES FEBRUARY 24, 2010

165760.1
August 30, 2007

**45**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| DILBAGH SINGH, M.D., | : | |
| PAUL KIRSCH, M.D., | : | |
| V. RAO NADELLA, M.D., and | : | |
| MARTIN JACOBS, M.D., | : | |
| | : | |
| Relators, | : | |
| | : | |
| v. | : | Civil Action No. 04-186E |
| | : | |
| BRADFORD REGIONAL | : | |
|  MEDICAL CENTER, | : | |
| V & S MEDICAL ASSOCIATES, LLC, | : | |
| PETER VACCARO, M.D., | : | |
| KAMRAN SALEH, M.D., | : | |
| and DOES I through XX, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## RESPONSES TO RELATORS'
## SECOND REQUEST FOR ADMISSIONS TO
## BRADFORD REGIONAL MEDICAL CENTER

The Defendant Bradford Regional Medical Center, Inc. ("BRMC"), through its undersigned counsel, responds as follows to the Relators' Second Request for Admissions:

## REQUEST FOR ADMISSION NO. 1

With respect to Exhibits A and B attached hereto, please admit (i) that each line item on such exhibits identifies a claim submitted by BRMC to Medicare; (ii) that the column entitled "ATTEND" identifies the physician listed by BRMC in Box 82 of the claim form for the corresponding claim; (iii) that the column entitled "OTHER" identifies the physician listed by BRMC in Box 83 of the claim form for the corresponding claim; (iv) that, in the columns entitled "ATTEND" and "OTHER," Vaccaro is identified as F84602 and Saleh identified as F90399; (v) that the column "AMT PAID" identifies the amount paid to BRMC by Medicare for the

1

corresponding claim; and (vi) that Exhibit A identifies outpatient claims submitted to Medicare Part B and Exhibit B identifies inpatient claims submitted to Medicare Part A.

## RESPONSE

Based on the representation by Relators' counsel to counsel for BRMC that Exhibits A and B are copies of claims information received from the Medicare contractor processing BRMC's claims, it is admitted (i) that each line item on such exhibits identifies a claim submitted by BRMC to Medicare; (ii) that, for entries dated prior to March 1, 2007, the column entitled "ATTEND" identifies the physician listed by BRMC in Box 82 of the claim form for the corresponding claim; (iii) that, for entries dated prior to March 1, 2007, the column entitled "OTHER" identifies the physician listed by BRMC in Box 83 of the claim form for the corresponding claim; (iv) that, in the columns entitled "ATTEND" and "OTHER," Vaccaro is identified as F84602 and Saleh identified as F90399; (v) that the column "AMT PAID" identifies the amount paid to BRMC by Medicare for the corresponding claim; and (vi) that Exhibit A identifies outpatient claims submitted to Medicare Part B and Exhibit B identifies inpatient claims submitted to Medicare Part A. For entries dated on or after March 1, 2007, items (ii) and (iii) are denied.

## REQUEST FOR ADMISSION NO. 2

With respect to each of the claims identified on Exhibit A, please admit that the physician identified in the column entitled "ATTEND" made a "referral" as defined above.

## RESPONSE

BRMC cannot admit or deny this request. To verify that the physician identified in said column made a "referral" as defined in the Request for Admission would require BRMC personnel to review each of the 22,763 claim forms identified on said Exhibit, which are electronically stored. It is estimated that this would take approximately 380 hours, which would constitute an undue burden and cost. Furthermore, information about claims prior to March 1, 2005 is electronically stored in archive form from BRMC's previous information system and would require additional costs and time to access. BRMC further objects to this Request for Admission on the grounds that it is unduly burdensome.

170646.1

**REQUEST FOR ADMISSION NO. 3**

With respect to each of the claims identified on Exhibit A, please admit that the physician identified in the column entitled "OTHER" made a "referral" as defined above.

**RESPONSE**

Denied. As stated above in BRMC's response to Request for Admission No. 1, the column entitled "OTHER" identifies the physician listed by BRMC in Box 83 of the claim form for the corresponding claim. In accordance with procedures followed by BRMC personnel, the physicians listed in Box 83 are not the physicians who ordered a test or procedure. Rather, Box 83 is used to list physicians who are to get a copy of a test report.

**REQUEST FOR ADMISSION NO. 4**

With respect to each of the claims identified on Exhibit B, please admit that the physician identified in the column entitled "ATTEND" made a "referral" as defined above.

**RESPONSE**

BRMC cannot admit or deny this request. To verify that the physician identified in said column made a "referral" as defined in the Request for Admission would require BRMC personnel to review each of the 1,367 claim forms identified on said Exhibit, which are electronically stored. It is estimated that this would take approximately 91 hours, which would constitute an undue burden and cost. Furthermore, information about claims prior to March 1, 2005 is electronically stored in archive form from BRMC's previous information system and would require additional costs and time to access. BRMC further objects to this Request for Admission on the grounds that it is unduly burdensome.

**REQUEST FOR ADMISSION NO. 5**

With respect to each of the claims identified on Exhibit B, please admit that the physician identified in the column entitled "OTHER" made a "referral" as defined above.

170646.1

**RESPONSE**

Denied. There were 10 entries in the column "OTHER" on Exhibit B. Based on the physician numbers on said Exhibit, BRMC believes that these physicians were either psychiatrists or surgeons who consulted regarding the patient's care after the patient had been admitted to the hospital as an inpatient. Therefore, these physicians did not make a "referral" as that term is defined in the Requests for Production.

March 31, 2008                        Respectfully submitted,

                                      *Daniel M Mulholland III*

                                      Daniel M. Mulholland III
                                      Pennsylvania ID No. 28806
                                      HORTY, SPRINGER & MATTERN, P.C.
                                      4614 Fifth Avenue
                                      Pittsburgh, PA 15213
                                      Phone: (412) 687-7677
                                      Fax: (412) 687-7692
                                      dmulholland@hortyspinger.com
                                      Attorneys for
                                      Bradford Regional Medical Center

170646.1

## AFFIDAVIT

|                                    |   |      |
|------------------------------------|---|------|
| **Commonwealth of Pennsylvania**   | : |      |
|                                    | : | **ss.** |
| **County of Allegheny**            | : |      |

George Leonhardt, being duly sworn upon his oath, deposes and says:

I am the President of Bradford Regional Medical Center ("BRMC"), Defendant in the above-entitled action, and I am authorized to act on behalf of BRMC. I have read the request for admissions served upon BRMC by Relators. The foregoing responses to those admissions are true according to the best of my knowledge, information, and belief.

_____
George Leonhardt

Subscribed and sworn before me, a Notary Public for the Commonwealth of Pennsylvania, this 31st day of March 2008.

[seal]

_____

My commission expires: _____4-4-2011_____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa A. Hertzer, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires April 4, 2011
Member, Pennsylvania Association of Notaries

170646.1

**46**

## OUTPATIENT HOSPITAL CLAIMS

| HIC | DCN | COV FROM | COV THRU | BT | RCVD DATE | ATTEND | OTHER | PAID DATE | AMT PAID |
|---|---|---|---|---|---|---|---|---|---|
| | | 4/4/2006 | 4/4/2006 | 131 | 10/8/2007 | A64032 | F84602 | 10/22/2007 | $220.63 |
| | | 7/19/2007 | 7/19/2007 | 131 | 7/26/2007 | A83001 | F84602 | 8/9/2007 | $187.58 |
| | | 7/3/2007 | 7/3/2007 | 131 | 7/9/2007 | A83001 | F84602 | 7/23/2007 | $353.28 |
| | | 4/11/2005 | 4/11/2005 | 131 | 4/19/2005 | A83525 | F84602 | 5/3/2005 | $178.06 |
| | | 8/23/2007 | 8/23/2007 | 131 | 8/27/2007 | A83525 | F90399 | 9/10/2007 | $13.86 |
| | | 9/9/2005 | 9/9/2005 | 131 | 10/25/2005 | A83525 | F90399 | 11/8/2005 | $147.39 |
| | | 9/9/2005 | 9/9/2005 | 130 | 11/7/2005 | A83525 | F90399 | 11/9/2005 | $0.00 |
| | | 2/8/2007 | 2/8/2007 | 131 | 2/12/2007 | A83525 | F84602 | 2/26/2007 | $22.04 |
| | | 2/7/2006 | 2/7/2006 | 131 | 2/23/2006 | B21841 | F84602 | 3/9/2006 | $85.03 |
| | | 5/12/2006 | 5/12/2006 | 131 | 5/16/2006 | B29707 | F84602 | 5/30/2006 | $127.49 |
| | | 10/4/2007 | 10/4/2007 | 131 | 10/8/2007 | B34081 | F84602 | 10/22/2007 | $71.22 |
| | | 10/25/2006 | 10/25/2006 | 131 | 11/3/2006 | B34081 | F90399 | 11/17/2006 | $418.40 |
| | | 9/24/2007 | 9/24/2007 | 131 | 9/28/2007 | B34081 | F90399 | 10/12/2007 | $66.68 |
| | | 4/17/2007 | 4/17/2007 | 131 | 4/23/2007 | B40910 | F90399 | 5/7/2007 | $21.52 |
| | | 3/6/2007 | 3/6/2007 | 131 | 3/28/2007 | B69806 | F90399 | 4/11/2007 | $57.02 |
| | | 9/18/2007 | 9/18/2007 | 131 | 9/24/2007 | B70982 | F84602 | 10/11/2007 | $347.85 |
| | | 8/14/2007 | 8/14/2007 | 131 | 8/20/2007 | B70982 | F84602 | 9/4/2007 | $28.70 |
| | | 7/12/2005 | 7/12/2005 | 131 | 7/18/2005 | B70982 | F90399 | 8/1/2005 | $37.34 |
| | | 6/28/2007 | 6/28/2007 | 131 | 7/2/2007 | B70982 | F84602 | 7/16/2007 | $38.94 |
| | | 9/20/2007 | 9/20/2007 | 131 | 9/27/2007 | B70982 | F84602 | 10/11/2007 | $28.70 |
| | | 9/7/2007 | 9/7/2007 | 131 | 9/21/2007 | B70982 | F84602 | 10/5/2007 | $31.33 |
| | | 9/7/2007 | 9/7/2007 | 131 | 9/21/2007 | B70982 | F84602 | 10/5/2007 | $31.33 |
| | | 5/22/2007 | 5/22/2007 | 131 | 5/8/2007 | B70982 | F84602 | 5/22/2007 | $132.45 |
| | | 9/5/2007 | 9/5/2007 | 131 | 9/12/2007 | B70982 | F84602 | 10/5/2007 | $0.00 |
| | | 9/5/2007 | 9/5/2007 | 130 | 9/10/2007 | B70982 | F84602 | 9/11/2007 | $0.00 |
| | | 9/5/2007 | 9/5/2007 | 131 | 9/21/2007 | B70982 | F84602 | 9/25/2007 | $0.00 |
| | | 9/17/2007 | 9/17/2007 | 131 | 10/3/2007 | B70982 | F84602 | 9/17/2007 | $28.70 |
| | | 9/17/2007 | 9/17/2007 | 131 | 9/21/2007 | B70982 | F84602 | 10/17/2007 | $42.61 |
| | | 6/28/2007 | 6/28/2007 | 131 | 7/22/2007 | B70982 | F84602 | 7/16/2007 | $8.79 |
| | | 8/23/2007 | 8/23/2007 | 131 | 8/27/2007 | B70982 | F84602 | 9/10/2007 | $59.87 |
| | | 11/13/2006 | 11/13/2006 | 131 | 11/17/2006 | B70982 | F84602 | 12/12/2006 | $40.63 |
| | | 9/4/2007 | 9/4/2007 | 131 | 9/10/2007 | B70982 | F84602 | 9/24/2007 | $25.70 |
| | | 1/5/2006 | 1/5/2006 | 131 | 1/12/2006 | B70982 | F84602 | 1/26/2006 | |
| | | 5/10/2006 | 5/10/2006 | 131 | 5/15/2006 | B70982 | F90399 | 5/30/2006 | $52.48 |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 181 | | | 10/31/2003 | 10/31/2003 | 140 | 11/5/2003 | F84602 | | 11/6/2003 | $0.00 |
| 182 | | | 10/31/2003 | 10/31/2003 | 141 | 11/5/2003 | F84602 | | 1/13/2004 | $63.68 |
| 183 | | | 1/23/2004 | 1/23/2004 | 131 | 1/27/2004 | F84602 | | 2/10/2004 | $0.00 |
| 184 | | | 3/18/2005 | 3/18/2005 | 131 | 3/24/2005 | F84602 | | 4/7/2005 | $13.86 |
| 185 | | | 2/16/2005 | 2/16/2005 | 131 | 5/20/2005 | F84602 | | 5/23/2005 | $0.00 |
| 186 | | | 4/13/2004 | 4/15/2004 | 131 | 4/20/2004 | F84602 | | 5/4/2004 | $93.76 |
| 187 | | | 5/13/2004 | 5/13/2004 | 141 | 5/17/2004 | F84602 | | 5/31/2004 | $39.94 |
| 188 | | | 6/23/2004 | 6/23/2004 | 131 | 6/28/2004 | F84602 | | 7/12/2004 | $38.08 |
| 189 | | | 7/7/2004 | 7/7/2004 | 141 | 7/12/2004 | F84602 | | 7/26/2004 | $26.81 |
| 190 | | | 7/21/2004 | 7/21/2004 | 141 | 7/27/2004 | F84602 | | 8/10/2004 | $8.97 |
| 191 | | | 7/28/2004 | 7/28/2004 | 141 | 8/2/2004 | F84602 | | 8/16/2004 | $8.97 |
| 192 | | | 1/7/2005 | 1/7/2005 | 131 | 12/2/2004 | F84602 | | 12/5/2005 | $0.00 |
| 193 | | | 10/25/2004 | 10/25/2004 | 131 | 10/29/2004 | F84602 | | 11/12/2004 | $200.50 |
| 194 | | | 4/21/2006 | 4/21/2006 | 131 | 4/25/2006 | F84602 | | 5/9/2006 | $8.49 |
| 195 | | | 1/30/2007 | 1/30/2007 | 131 | 2/5/2007 | F84602 | F90399 | 2/19/2007 | $53.44 |
| 196 | | | 9/4/2003 | 9/4/2003 | 132 | 11/10/2007 | F84602 | | 11/24/2003 | $58.11 |
| 197 | | | 9/4/2003 | 9/7/2003 | 130 | 10/8/2003 | F84602 | | 10/10/2003 | $0.00 |
| 198 | | | 12/29/2004 | 12/29/2004 | 132 | 1/3/2005 | F84602 | | 1/17/2005 | $80.02 |
| 199 | | | 1/4/2005 | 1/28/2005 | 133 | 2/3/2005 | F84602 | | 2/17/2005 | $447.87 |
| 200 | | | 10/27/2003 | 10/27/2003 | 131 | 11/4/2003 | F84602 | | 11/18/2003 | $137.01 |
| 201 | | | 11/14/2003 | 11/14/2003 | 141 | 11/18/2003 | F84602 | | 12/2/2003 | $81.51 |
| 202 | | | 2/20/2004 | 2/20/2004 | 131 | 2/24/2004 | F84602 | | 3/9/2004 | $54.71 |
| 203 | | | 6/10/2004 | 6/11/2004 | 131 | 6/23/2004 | F84602 | | 7/7/2004 | $418.77 |
| 204 | | | 10/3/2003 | 10/3/2003 | 131 | 10/7/2003 | F84602 | | 10/21/2003 | $31.33 |
| 205 | | | 4/7/2004 | 4/7/2004 | 141 | 4/20/2004 | F84602 | | 5/4/2004 | $47.40 |
| 206 | | | 4/19/2004 | 4/19/2004 | 131 | 4/23/2004 | F84602 | | 5/7/2004 | $64.86 |
| 207 | | | 4/20/2004 | 4/20/2004 | 131 | 4/26/2004 | F84602 | | 5/10/2004 | $19.22 |
| 208 | | | 7/26/2004 | 7/26/2004 | 131 | 7/30/2004 | F84602 | | 8/13/2004 | $45.91 |
| 209 | | | 10/25/2004 | 10/25/2004 | 131 | 10/29/2004 | F84602 | | 11/12/2004 | $30.48 |
| 210 | | | 1/26/2005 | 1/26/2005 | 131 | 2/1/2005 | F84602 | | 2/15/2005 | $45.91 |
| 211 | | | 6/1/2005 | 6/1/2005 | 131 | 6/7/2005 | F84602 | | 6/21/2005 | $80.24 |
| 212 | | | 11/1/2005 | 11/1/2005 | 131 | 11/7/2005 | F84602 | | 11/21/2005 | $42.77 |
| 213 | | | 1/27/2006 | 1/27/2006 | 131 | 2/2/2006 | F84602 | | 2/17/2006 | $42.77 |
| 214 | | | 5/1/2006 | 5/1/2006 | 130 | 5/5/2006 | F84602 | | 5/11/2006 | $0.00 |
| 215 | | | 1/13/2004 | 1/13/2004 | 131 | 1/19/2004 | F84602 | | 2/2/2004 | $30.58 |
| 216 | | | 7/13/2004 | 7/13/2004 | 131 | 7/19/2004 | F84602 | | 8/2/2004 | $75.56 |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 14185 | 1 | | 6/16/2005 | 6/16/2005 | 131 | 6/22/2005 | F90399 | | 7/6/2005 | $252.24 |
| 14186 | 1 | | 10/6/2003 | 10/6/2003 | 130 | 11/5/2003 | F90399 | | 11/6/2003 | $0.00 |
| 14187 | 1 | | 10/6/2003 | 10/6/2003 | 133 | 11/5/2003 | F90399 | | 11/19/2003 | $16.87 |
| 14188 | 1 | | 4/7/2004 | 4/7/2004 | 134 | 4/13/2004 | F90399 | | 4/27/2004 | $43.74 |
| 14189 | 1 | | 4/30/2003 | 4/30/2003 | 131 | 2/11/2004 | F90399 | | 2/25/2004 | $60.90 |
| 14190 | 1 | | 1/7/2004 | 1/7/2004 | 131 | 1/15/2004 | F90399 | | 1/29/2004 | $3.14 |
| 14191 | 1 | | 2/4/2004 | 2/4/2004 | 131 | 2/9/2004 | F90399 | | 2/23/2004 | $142.15 |
| 14192 | | | 3/30/2004 | 3/30/2004 | 131 | 4/5/2004 | F90399 | | 4/19/2004 | $60.11 |
| 14193 | | | 4/21/2004 | 4/21/2004 | 131 | 4/26/2004 | F90399 | | 5/10/2004 | $9.31 |
| 14194 | | | 6/4/2004 | 6/4/2004 | 131 | 6/8/2004 | F90399 | | 6/22/2004 | $27.06 |
| 14195 | | | 8/9/2004 | 8/9/2004 | 131 | 8/13/2004 | F90399 | | 8/27/2004 | $46.55 |
| 14196 | | | 12/16/2004 | 12/30/2004 | 132 | 1/3/2005 | F90399 | | 1/17/2005 | $176.17 |
| 14197 | | | 10/10/2005 | 10/10/2005 | 131 | 10/17/2005 | F90399 | | 10/31/2005 | $5.49 |
| 14198 | | | 10/29/2003 | 10/29/2003 | 141 | 11/4/2003 | F90399 | | 11/5/2003 | $0.00 |
| 14199 | | | 10/29/2003 | 10/29/2003 | 141 | 11/4/2003 | F90399 | | 1/12/2004 | $34.43 |
| 14200 | | | 1/6/2004 | 1/6/2004 | 131 | 1/12/2004 | F90399 | | 1/26/2004 | $0.00 |
| 14201 | | | 1/28/2004 | 1/28/2004 | 141 | 2/9/2004 | F90399 | | 2/23/2004 | $42.33 |
| 14202 | | | 2/4/2004 | 2/4/2004 | 141 | 2/10/2004 | F90399 | | 2/10/2004 | $0.00 |
| 14203 | | | 4/27/2004 | 4/27/2004 | 141 | 5/4/2004 | F90399 | | 2/24/2004 | $47.40 |
| 14204 | | | 7/27/2004 | 7/27/2004 | 141 | 8/2/2004 | F90399 | | 5/18/2004 | $42.12 |
| 14205 | | | 10/26/2004 | 10/27/2004 | 141 | 11/2/2004 | F90399 | | 8/16/2004 | $23.57 |
| 14206 | | | 12/21/2004 | 12/21/2004 | 141 | 12/27/2004 | F90399 | | 11/16/2004 | $56.94 |
| 14207 | | | 2/15/2005 | 2/15/2005 | 141 | 3/2/2005 | F90399 | | 1/10/2005 | $42.33 |
| 14208 | | | 2/28/2005 | 2/28/2005 | 141 | 3/1/2005 | F90399 | | 3/16/2005 | $42.12 |
| 14209 | | | 4/29/2005 | 4/29/2005 | 131 | 5/6/2005 | F90399 | | 3/15/2005 | $47.78 |
| 14210 | | | 7/5/2005 | 7/5/2005 | 131 | 7/21/2005 | F90399 | | 5/19/2005 | $45.12 |
| 14211 | | | 9/8/2005 | 9/8/2005 | 131 | 10/20/2005 | F90399 | | 8/4/2005 | $45.12 |
| 14212 | | | 11/11/2005 | 11/11/2005 | 131 | 11/21/2005 | F90399 | | 11/3/2005 | $52.98 |
| 14213 | | | 3/17/2006 | 3/17/2006 | 131 | 3/21/2006 | F90399 | | 12/5/2005 | $42.12 |
| 14214 | | | 3/22/2006 | 3/22/2006 | 131 | 3/27/2006 | F90399 | | 4/4/2006 | $3.14 |
| 14215 | | | 7/11/2006 | 7/11/2006 | 131 | 7/17/2006 | F90399 | | 4/10/2006 | $29.82 |
| 14216 | | | 7/11/2006 | 7/11/2006 | 130 | 7/17/2006 | F90399 | | 7/18/2006 | $0.00 |
| 14217 | | | 7/11/2006 | 7/11/2006 | 131 | 7/19/2006 | F90399 | | 7/18/2006 | $0.00 |
| 14218 | | | 7/11/2006 | 7/11/2006 | 131 | 7/24/2006 | F90399 | | 8/2/2006 | $45.12 |
| 14219 | | | 7/18/2006 | 7/18/2006 | 131 | 7/24/2006 | F90399 | | 8/7/2006 | $3.14 |
| 14220 | | | 10/24/2006 | 10/24/2006 | 131 | 10/30/2006 | F90399 | | 11/13/2006 | $42.33 |

**47**

## INPATIENT HOSPITAL CLAIMS

| HIC | DCN | COV FROM | COV THRU | BT | RCVD DATE | ATTEND | OTHER | PAID DATE | AMT PAID |
|---|---|---|---|---|---|---|---|---|---|
| | | 5/15/2004 | 5/16/2004 | 111 | 5/20/2004 | F84602 | | 6/3/2004 | $1,651.18 |
| | | 8/23/2004 | 8/23/2004 | 111 | 9/2/2004 | F84602 | | 9/16/2004 | $3,041.38 |
| | | 2/21/2006 | 2/24/2006 | 111 | 3/2/2006 | F84602 | | 3/16/2006 | $3,423.77 |
| | | 1/2/2004 | 1/17/2004 | 111 | 1/15/2004 | F84602 | | 1/29/2004 | $3,098.73 |
| | | 1/1/2005 | 1/5/2005 | 111 | 1/10/2005 | F84602 | | 1/24/2005 | $5,132.10 |
| | | 9/26/2003 | 10/9/2003 | 111 | 10/14/2003 | F84602 | | 10/28/2003 | $6,870.43 |
| | | 5/12/2004 | 5/19/2004 | 111 | 5/24/2004 | F84602 | | 6/7/2004 | $3,522.10 |
| | | 5/29/2006 | 5/31/2006 | 111 | 6/6/2006 | F84602 | | 6/20/2006 | $1,938.06 |
| | | 8/10/2006 | 8/11/2006 | 111 | 8/16/2006 | F84602 | | 8/30/2006 | $3,229.11 |
| | | 3/8/2007 | 3/12/2007 | 111 | 3/19/2007 | F84602 | | 4/2/2007 | $2,551.85 |
| | | 5/14/2007 | 5/20/2007 | 111 | 5/29/2007 | F84602 | | 6/12/2007 | $5,239.93 |
| | | 10/4/2005 | 10/5/2005 | 111 | 10/11/2005 | F84602 | C32731 | 10/25/2005 | $2,000.39 |
| | | 12/15/2004 | 12/20/2004 | 111 | 1/18/2005 | F84602 | | 1/19/2005 | $0.00 |
| | | 12/15/2004 | 12/20/2004 | 111 | 1/20/2005 | F84602 | | 2/3/2005 | $3,965.52 |
| | | 9/30/2004 | 10/4/2004 | 111 | 12/23/2004 | F84602 | | 1/6/2005 | $3,458.87 |
| | | 4/30/2006 | 5/4/2006 | 111 | 5/11/2006 | F84602 | | 5/25/2006 | $5,283.20 |
| | | 11/29/2004 | 12/1/2004 | 111 | 12/9/2004 | F84602 | | 12/23/2004 | $3,175.08 |
| | | 7/28/2005 | 7/29/2005 | 111 | 8/15/2005 | F84602 | | 8/29/2005 | $1,875.35 |
| | | 3/18/2005 | 3/18/2005 | 111 | 3/24/2005 | F84602 | | 4/7/2005 | $2,860.06 |
| | | 7/6/2004 | 7/8/2004 | 111 | 7/12/2004 | F84602 | | 7/26/2004 | $1,756.67 |
| | | 10/3/2003 | 10/8/2003 | 110 | 10/14/2003 | F84602 | | 10/16/2003 | $0.00 |
| | | 10/3/2003 | 10/8/2003 | 111 | 11/13/2003 | F84602 | | 11/28/2003 | $3,058.11 |
| | | 6/4/2004 | 6/9/2004 | 111 | 6/14/2004 | F84602 | | 6/28/2004 | $3,085.63 |
| | | 6/18/2004 | 6/30/2004 | 111 | 7/6/2004 | F84602 | | 7/20/2004 | $3,961.63 |
| | | 3/6/2005 | 3/15/2005 | 111 | 3/23/2005 | F84602 | | 4/6/2005 | $3,577.47 |
| | | 1/4/2007 | 1/8/2007 | 111 | 1/12/2007 | F84602 | | 1/26/2007 | $4,828.04 |
| | | 1/20/2004 | 1/21/2004 | 111 | 1/27/2004 | F84602 | | 2/10/2004 | $2,151.35 |
| | | 1/14/2007 | 1/23/2007 | 111 | 1/29/2007 | F84602 | | 2/12/2007 | $4,891.98 |
| | | 2/5/2006 | 2/6/2006 | 111 | 2/13/2006 | F84602 | | 2/27/2006 | $2,146.94 |
| | | 5/21/2004 | 5/27/2004 | 111 | 6/1/2004 | F84602 | | 6/15/2004 | $3,713.80 |
| | | 9/13/2005 | 9/21/2005 | 111 | 9/28/2005 | F84602 | | 10/12/2005 | $6,982.25 |
| | | 5/17/2007 | 5/21/2007 | 111 | 5/29/2007 | F84602 | | 6/12/2007 | $9,025.60 |
| | | 5/8/2005 | 5/11/2005 | 111 | 5/17/2005 | F84602 | | 5/31/2005 | $4,220.10 |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 686 | | | 9/15/2005 | 9/20/2005 | 111 | 9/26/2005 | F90399 | | 10/10/2005 | $3,577.47 |
| 687 | | | 1/12/2004 | 1/20/2004 | 111 | 2/24/2004 | F90399 | | 3/9/2004 | $4,243.63 |
| 688 | | | 6/27/2004 | 7/1/2004 | 111 | 7/7/2004 | F90399 | | 7/21/2004 | $3,985.37 |
| 689 | | | 8/30/2004 | 9/3/2004 | 111 | 9/9/2004 | F90399 | | 9/23/2004 | $6,662.56 |
| 690 | | | 3/5/2007 | 3/8/2007 | 111 | 3/15/2007 | F90399 | | 3/29/2007 | $4,783.17 |
| 691 | | | 3/15/2007 | 3/22/2007 | 111 | 4/3/2007 | F90399 | | 4/17/2007 | $5,775.17 |
| 692 | | | 1/20/2004 | 1/24/2004 | 110 | 1/28/2004 | F90399 | | 1/29/2004 | $0.00 |
| 693 | | | 1/20/2004 | 1/24/2004 | 110 | 3/11/2004 | F90399 | | 3/12/2004 | $0.00 |
| 694 | | | 1/20/2004 | 1/24/2004 | 110 | 3/16/2004 | F90399 | | 3/17/2004 | $0.00 |
| 695 | | | 10/23/2004 | 10/25/2004 | 110 | 10/29/2004 | F90399 | | 11/12/2004 | $1,911.35 |
| 696 | | | 7/15/2004 | 7/15/2004 | 111 | 7/19/2004 | F90399 | | 8/2/2004 | $2,687.75 |
| 697 | | | 2/2/2004 | 2/4/2004 | 111 | 2/9/2004 | F90399 | | 2/23/2004 | $2,928.19 |
| 698 | | | 3/18/2007 | 3/19/2007 | 111 | 3/23/2007 | F90399 | | 4/6/2007 | $3,682.66 |
| 699 | | | 9/9/2003 | 9/16/2003 | 110 | 10/14/2003 | F90399 | | 10/17/2003 | $0.00 |
| 700 | | | 9/9/2003 | 9/16/2003 | 110 | 12/3/2003 | F90399 | | 12/8/2003 | $0.00 |
| 701 | | | 9/9/2003 | 9/16/2003 | 111 | 12/31/2003 | F90399 | | 1/14/2004 | $5,949.37 |
| 702 | | | 3/19/2006 | 3/23/2006 | 111 | 4/27/2006 | F90399 | | 5/26/2006 | $0.00 |
| 703 | | | 3/19/2006 | 3/23/2006 | 111 | 7/21/2006 | F90399 | | 8/10/2006 | $7,614.50 |
| 704 | | | 12/16/2005 | 12/16/2005 | 111 | 1/27/2006 | F90399 | | 1/30/2006 | $0.00 |
| 705 | | | 12/16/2005 | 12/16/2005 | 111 | 1/31/2006 | F90399 | | 2/14/2006 | $2,577.14 |
| 706 | | | 11/11/2005 | 11/15/2005 | 111 | 11/21/2005 | F90399 | | 12/5/2005 | $4,181.11 |
| 707 | | | 9/17/2004 | 9/18/2004 | 111 | 9/22/2004 | F90399 | | 10/6/2004 | $1,636.37 |
| 708 | | | 12/4/2006 | 12/7/2006 | 111 | 12/11/2006 | F90399 | | 12/26/2006 | $1,856.84 |
| 709 | | | 12/18/2006 | 12/19/2006 | 111 | 12/26/2006 | F90399 | | 12/27/2006 | $0.00 |
| 710 | | | 12/18/2006 | 12/19/2006 | 111 | 12/27/2006 | F90399 | | 1/10/2007 | $3,061.33 |
| 711 | | | 11/12/2004 | 11/17/2004 | 111 | 11/22/2004 | F90399 | | 12/6/2004 | $3,508.76 |
| 712 | | | 6/28/2006 | 6/30/2006 | 111 | 7/7/2006 | F90399 | | 7/21/2006 | $3,035.31 |
| 713 | | | 1/18/2007 | 1/21/2007 | 111 | 1/25/2007 | F90399 | | 2/8/2007 | $5,820.04 |
| 714 | | | 6/2/2007 | 6/4/2007 | 111 | 6/8/2007 | F90399 | | 6/22/2007 | $3,986.24 |
| 715 | | | 4/30/2004 | 5/10/2004 | 111 | 5/14/2004 | F90399 | | 5/28/2004 | $4,245.47 |
| 716 | | | 6/10/2004 | 6/17/2004 | 111 | 6/22/2004 | F90399 | | 7/6/2004 | $2,986.49 |
| 717 | | | 9/17/2007 | 9/19/2007 | 111 | 9/27/2007 | F90399 | | 10/11/2007 | $4,007.35 |
| 718 | | | 3/11/2006 | 3/16/2006 | 111 | 3/21/2006 | F90399 | | 4/4/2006 | $2,830.76 |
| 719 | | | 10/22/2004 | 10/25/2004 | 111 | 10/29/2004 | F90399 | | 11/12/2004 | $3,279.57 |
| 720 | | | 9/16/2005 | 9/20/2005 | 111 | 9/26/2005 | F90399 | | 10/10/2005 | $2,814.33 |
| 721 | | | 10/2/2003 | 10/6/2003 | 111 | 10/10/2003 | F90399 | | 10/24/2003 | $3,675.98 |

**48**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.*,<br>DILBAGH SINGH, M.D.,<br>PAUL KIRSCH, M.D.,<br>V. RAO NADELLA, M.D., and<br>MARTIN JACOBS, M.D., | : : : : : : | |
| Relators, | : : | |
| v. | : : | Civil Action No. 04-186E |
| BRADFORD REGIONAL<br> MEDICAL CENTER,<br>V & S MEDICAL ASSOCIATES, LLC,<br>PETER VACCARO, M.D.,<br>KAMRAN SALEH, M.D.,<br>and DOES I through XX, | : : : : : : : | |
| Defendants. | : : | |

## RESPONSES TO RELATORS' THIRD SET
## OF INTERROGATORIES
## TO BRADFORD REGIONAL MEDICAL CENTER

Bradford Regional Medical Center, Inc. ("BRMC"), through its undersigned counsel, responds as follows to the Relators' Third Set of Interrogatories:

## I.    GENERAL OBJECTIONS

A.    BRMC objects generally to each Interrogatory to the extent that it seeks information that: (1) was prepared in anticipation of litigation or for trial by or for BRMC's attorneys; (2) constitutes the work product of BRMC's attorneys; (3) constitutes confidential communications between BRMC and its attorneys; (4) is otherwise privileged according to law; or (5) is beyond the scope of discovery permitted by the Federal Rules of Civil Procedure.

1

170644.1

B.    BRMC objects generally to the "Instructions and Definitions" accompanying Relators' Interrogatories to the extent that they seek discovery beyond the scope permitted by, or contrary to, the Federal Rules of Civil Procedure, the Local Rules of Court or any order of this Court.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1.

If you have denied, in whole or in part, Request for Admissions No. 1, then (i) identify each claim to which the denial applies; and (ii) state in detail the basis for the denial as to each such claim.

### RESPONSE:

(i) All entries dated on or after March 1, 2007. (ii) As of March 1, 2007, BRMC utilized the new UB04 claims form which contained different line items, numbering and instructions.

### INTERROGATORY NO. 2.

If you have denied, in whole or in part, Request for Admissions Nos. 2, 3, 4, or 5, then (i) identify each claim to which the denial applies; (ii) state in detail the basis for the denial as to each such claim; (iii) state the reason why each physician was identified in Box 82 or 83 of the claim form; and (iv) identify any physician who made a "referral" with respect to such claim.

### RESPONSE:

BRMC objects to this Interrogatory on the grounds that it is unduly burdensome. To verify that each physician identified in the exhibits attached to the Requests for Admissions made a "referral" as defined in said Requests would require BRMC personnel to review each of the claim forms identified on said exhibits, which are electronically stored. It is estimated that this would take approximately 471 hours, which would constitute an undue burden and cost. Furthermore, information about claims prior to March 1, 2005 is electronically stored in archive form from BRMC's previous information system and would require additional costs and time to access.

170644.1

## INTERROGATORY NO. 3.

Please identify all payments made to V&S, Vaccaro, or Saleh, from January 1, 2003 to the present, including but not limited to (i) any payments made under the Equipment Sublease; (ii) any payments relating to the storage of the nuclear camera at V&S's office following the execution of the Equipment Sublease; (iii) any payments for administrative or other personnel following the execution of the Equipment Sublease; (iv) any billing fees in connection with the use of the nuclear camera while at V&S's office; and (v) any payments under any medical directorship, consulting agreement, or other arrangement. For purposes of this interrogatory, "payment" includes any amount deducted by V&S, Vaccaro, or Saleh when calculating amounts due to BRMC. In identifying each such payment, please provide (i) the date and amount of each payment; (ii) the person or entity to whom the payment was made; and (iii) the reason for each such payment.

## RESPONSE:

Information responsive to this interrogatory is contained in the documents produced in response to Request No. 3 in Relators' Second Request for Production of Documents.

## INTERROGATORY NO. 4.

Please identify all payments made to third parties on behalf of V&S, Vaccaro, or Saleh, including but not limited to any payments made in connection with the early termination of V&S's lease of the nuclear camera. In identifying each such payment, please provide (i) the date and amount of each payment; (ii) the person or entity to whom the payment was made; and (iii) the reason for each such payment.

## RESPONSE:

No payments were made by BRMC to third parties on behalf of V&S, Vaccaro, or Saleh.

## INTERROGATORY NO. 5. (also numbered "4" in Interrogatories)

Please identify every written document that you contend satisfies the requirement of a written agreement under any Stark exception or Anti-Kickback safe harbor that you contend applies.

170644.1

**RESPONSE:**

Subject to and reserving the other defenses that have been asserted by BRMC, the Equipment
Sublease appended to the Relators' Complaint in this action and the documents produced pursuant
to Request No. 5 in Relators' Second Request for Production of Documents, including but not
limited to the letter from V&S to BRMC dated October 3, 2003, the October 2003 invoice from
V&S to BRMC, and subsequent invoices and checks, as well as other documents previously
produced, satisfy any requirement of a written agreement under any Stark exception or Anti-
Kickback safe harbor that may be applicable.

March 31, 2008                          Respectfully submitted,

                                        Daniel M. Mulholland III
                                        Pennsylvania ID No. 28806
                                        HORTY, SPRINGER & MATTERN, P.C.
                                        4614 Fifth Avenue
                                        Pittsburgh, PA  15213
                                        Phone: (412) 687-7677
                                        Fax: (412) 687-7692
                                        dmulholland@hortyspringer.com

                                        Attorneys for Defendant
                                        Bradford Regional Medical Center

4                                                       170644.1

## AFFIDAVIT

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania** | : | |
| | : | |
| | : | **ss.** |
| | : | |
| **County of Allegheny** | : | |
| | : | |

George Leonhardt, being duly sworn upon his oath, deposes and says:

I am the President of Bradford Regional Medical Center ("BRMC"), Defendant in the above-entitled action, and I am authorized to act on behalf of BRMC. I have read the interrogatories served upon BRMC by Relators. The foregoing answers to those interrogatories are true according to the best of my knowledge, information, and belief.


_____
George Leonhardt


Subscribed and sworn before me, a Notary Public for the Commonwealth of Pennsylvania, this 31st day of March 2008.


[seal]


_____

My commission expires: _4-4-2011_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa A. Hertzer, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires April 4, 2011
Member, Pennsylvania Association of Notaries

170644.1

**49**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| DILBAGH SINGH, M.D., | : | |
| PAUL KIRSCH, M.D., | : | |
| V. RAO NADELLA, M.D., and | : | |
| MARTIN JACOBS, M.D., | : | |
| | : | |
| Relators, | : | |
| | : | |
| v. | : | Civil Action No. 04-186E |
| | : | |
| BRADFORD REGIONAL | : | |
| MEDICAL CENTER, | : | |
| V & S MEDICAL ASSOCIATES, LLC, | : | |
| PETER VACCARO, M.D., | : | |
| KAMRAN SALEH, M.D., | : | |
| and DOES I through XX, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## RESPONSES TO RELATORS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO BRADFORD REGIONAL MEDICAL CENTER

Defendant Bradford Regional Medical Center, Inc. ("BRMC"), through its undersigned counsel, responds as follows to the Relators' Second Request for Production of Documents:

### I.    GENERAL OBJECTIONS

The following General Objections apply to each Request and are hereby incorporated by reference into each answer set forth below: BRMC objects generally to each Request to the extent that it seeks information that: (1) constitutes the work product of BRMC's attorneys; (2) constitutes confidential communications between BRMC and its attorneys; (3) is otherwise privileged according to law; (4) is overbroad, irrelevant, burdensome or without any definition of a time period; or (5) is not subject to discovery pursuant to the Federal Rules of Civil Procedure. In addition, BRMC objects to the Definitions and Instructions accompanying said request, to the

1

170645.1

extent that the same are contrary to the Federal Rules of Civil Procedure or seek discovery of information not subject to discovery under the Federal Rules of Civil Procedure. BRMC will make a good faith effort to locate and provide relevant documents. Without waiving any objection, the following Responses and appended documents are provided. BRMC reserves the right to supplement this Response in the event that other responsive documents are located.

## REQUESTS

### REQUEST NO. 1

With respect to each claim identified in your response to Interrogatory No. 1, all claim forms or other documents evidencing the submission of such claim to Medicare.

### RESPONSE:

Objection. This Request is overly broad and unduly burdensome, for the reasons stated in BRMC's responses to Requests for Admission. Subject to said objection, BRMC has produced with this Response a copy of the UB-04 claims form and information about the line item numbering on said form, which was the basis of its partial denial of Request for Admission No. 1 which was referred to in Interrogatory No. 1. See HOSP0011562-0011563.

### REQUEST NO. 2

With respect to each claim identified in your response to Interrogatory No. 2, (i) all documents identifying any physician who made a "referral," (ii) all documents forming the basis for BRMC's identification of any physician in Box 82 or 83 of the claim form, and (iii) all claim forms or other documents evidencing the submission of such claim to Medicare.

### RESPONSE:

Objection. This Request is vague, overly broad and unduly burdensome for the reasons stated in BRMC's responses to Requests for Admission 2 through 5 and Interrogatory No. 2, which are incorporated by reference herein.

170645.1

## REQUEST NO. 3

With respect to all payments identified in response to Interrogatory No. 3 or 4, all invoices, bills, checks or other documents evidencing such payment or request for payment.

## RESPONSE:

Documents that are in BRMC's possession, custody, or control that are responsive to this Request have been produced with this Response. See HOSP0011322 to HOSP0011560.

## REQUEST NO. 4

All policies and procedures relating to the identification of physicians in Box 82 and 83 of any claim form.

## RESPONSE:

Documents that are in BRMC's possession, custody, or control that are responsive to this Request have been produced with this Response. See HOSP0011320 to HOSP0011321, and HOSP0011561.

## REQUEST NO. 5

All documents identified in response to Interrogatory No. 4.

## RESPONSE:

With respect to the first Interrogatory marked "Number 4," there are no responsive documents. With respect to the second Interrogatory marked "Number 4," documents that are in BRMC's possession, custody, or control that are responsive to this Request have been produced. See response to Request No. 2 above, as well as documents previously produced in response to Relators' First Request for Productions of Documents.

170645.1

March 31, 2008                        Respectfully submitted,


                                      Daniel M. Mulholland III
                                      Pennsylvania ID No. 28806
                                      HORTY, SPRINGER & MATTERN, P.C.
                                      4614 Fifth Avenue
                                      Pittsburgh, PA 15213
                                      Phone: (412) 687-7677
                                      Fax: (412) 687-7692
                                      dmulholland@hortyspringer.com

                                      Attorneys for Defendant
                                      Bradford Regional Medical Center

170645.1