**50**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| DILBAGH SINGH, M.D., PAUL KIRSCH, M.D., | ) | |
| V. RAO NADELLA, M.D., and | ) | |
| MARTIN JACOBS, M.D., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 04-186-E |
| | ) | |
| v. | ) | JUDGE COHILL |
| | ) | |
| | ) | |
| BRADFORD REGIONAL MEDICAL CENTER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF G. MARK SIMPSON

1.

My name is G. Mark Simpson. I am over the age of 21 and competent to give this declaration. I am one of the attorneys for Relators in the above-styled action.

2.

Attached to this declaration are copies of documents produced by Defendants in response to discovery requests in this action. Each of these documents is stamped with a Bates number, beginning either with "HOSP" or "V&S." Documents with a Bates number beginning with "HOSP" were produced by Defendant Bradford Regional Medical Center. Documents with a Bates number beginning with "V&S" were produced by Defendants V&S Medical Associates, Peter Vaccaro, M.D., and Kamran Saleh, M.D.

3.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Atlanta, Georgia this 9th day of September, 2008.

G. Mark Simpson

MASTER LEASE SCHEDULE EXHIBIT



### GE Healthcare Financial Services

**ADDENDUM TO SCHEDULE DATED AS OF 6/6/01**
**TO MASTER LEASE AGREEMENT DATED AS OF 6/6/01**
**INTERNAL CONTRACT REFERENCE NUMBER 8515502**
**INTERNAL ORDER REFERENCE NUMBER 861-107879**
**EQUIPMENT DESCRIPTION: GE/SMV DSi Nuclear Camera**

**EARLY BUY-OUT OPTION**

This Addendum is attached to and made a part of the Schedule identified above. This Addendum sets forth specific terms and conditions in addition to those in the Schedule and the Master Lease Agreement to which the Schedule is attached and amends and supplements that Schedule. Capitalized terms not defined herein shall have the meanings assigned to them in the Schedule or the Master Lease Agreement identified above.

With respect to the Schedule only, the Schedule is amended and supplemented by adding the following Early Buy-Out Option provision:

1.  Provided the Schedule has not already been terminated and Lessee is not in default under the Schedule or any other agreement between Lessee and Lessor, LESSEE MAY, BY WRITTEN NOTICE TO LESSOR, AT LEAST 30 BUT NOT MORE THAN 90 DAYS BEFORE THE "EARLY PURCHASE DATE" SET FORTH BELOW, IRREVOCABLY ELECT TO PURCHASE all (but not less than all) of the Equipment described in the Schedule to which this Addendum is attached for the "FMV Early Option Price" set forth next to the corresponding Early Purchase Date plus all applicable taxes:

    | Early Purchase Date | FMV Early Option Price |
    | --- | --- |
    | after 60 monthly payments | $56,023.00 |

    Lessee and Lessor agree that if Lessee acquires any upgrade to or non-severable improvement of the Equipment and/or in the case of GE Equipment any Licensed Software which increases its productivity or value, then Lessee and Lessor will adjust the FMV Early Option Price to also reflect the upgrade or improvement. If the upgrade is financed by a party other than Lessor or paid for in cash, the value of this upgrade will not be included in determining the FMV Early Option Price.

2.  Lessee's purchase of the Equipment (and in the case of GE Equipment any Operating Documentation and Tools) is on an AS-IS, WHERE-IS basis without recourse or warranty of any kind against or by Lessor.

Early Buy-Out Option

Page 1 of 2

Rev. 3/14/01

**Confidential**
**V&S 00369**

 **GE Healthcare Financial Services**

Date:        September 5, 2001

Attention:   Accounts Payable

Reference:   GE Healthcare Financial Services Financing Transaction

**Equipment:  GE SMV DSI Nuclear Camera.**
**Account #:   8515502      FDO#: 890-073400**

Thank you for allowing GE Healthcare Financial Services to help you with your financing needs.

The monthly payment for your lease has been calculated due to a change in the T-Note rate from 4.64 % to 4.53 % at the time of your equipment installation. Therefore, your monthly payment has been recalculated and is now: 3 months @ $ 0.00 followed by 60 months @ $ 6,531.12 ($ 4,876.12 equipment and $ 1,655.00 Service) plus any applicable taxes.

A copy of your fully executed contract and monthly invoices will follow.

GE Healthcare Financial Services

**Confidential**
**V&S 00370**

MASTER LEASE SCHEDULE ADDENDUM

3.  Lessee and Lessor agree and acknowledge that the FMV Early Option Price set forth above is a reasonable prediction of the fair market value of the Equipment at the corresponding Early Purchase Date.

4.  Lessee may only exercise the option to purchase described in **Paragraph 1**, if, at the time of such exercise, no uncured Event of Default exists under this Schedule or under any other Schedule or agreement between Lessee and Lessor.

5.  Notwithstanding anything to the contrary contained herein, Lessee's failure to pay the FMV Early Option Price within the terms of Lessor's invoice to Lessee for the FMV Early Option Price shall, at Lessor's sole discretion, render this option to purchase and Lessee's exercise of this option to purchase null and void, and Lessee shall have no further option or right to purchase the Equipment.

6.  If Lessee does not exercise this option to purchase within the time provided, or if Lessee's timely exercise of the option to purchase is rendered null and void by Lessee's failure to pay the FMV Early Option Price in a timely manner as provided in **Paragraph 5**, the terms and provisions of the "End-of-Term Options" section of the Master Lease Agreement will govern the expiration of the Schedule.

Lessor:
**GE Healthcare Financial Services,**
**a component of General Electric Company**

Authorized Signature

_Transaction Coordinator_
Title

_6/6/01_
Date

Lessee:
**V & S Medical Associates, LLC**

Authorized Signature

_Partner_
Title

_6/6/01_
Date

Confidential
V&S 00371

**GE Healthcare Financial Services**

# NON-GE EQUIPMENT ADDENDUM
# TO MASTER LEASE AGREEMENT
# DATED AS OF 6/6/01
# MASTERLINE™

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Lease Agreement (the "Agreement") between GE Healthcare Financial Services ("Lessor") and the undersigned lessee ("Lessee") and is incorporated by reference into the Agreement. This Addendum modifies and supplements the Agreement and sets forth additional terms and conditions that apply to Equipment that has not been manufactured by the General Electric Company or its affiliates. This Addendum also applies if the Equipment is used GE Equipment that was acquired by Lessor from Lessee in a sale/leaseback transaction or purchased by Lessor from a third party vendor. Any conflict between this Addendum and the Agreement shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement.

1.    TRANSPORTATION AND RISK OF LOSS:

(a)    The Equipment will be shipped to the site identified in a Schedule by the Supplier of the Equipment. Lessee will inform Lessor of the date the Equipment is delivered within 5 days of such delivery. Any necessary assembly or installation will be described in the Schedule. The Lessee agrees to accept shipment of the Equipment and to cooperate with any assembler to permit the assembler to complete its task without delay.

(b)    The Lessee or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Lessor bear the risk of loss. The use of the term "risk of loss" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

2.    STIPULATED LOSS VALUE: If for any reason any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ("Casualty Occurrences") Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor on the Payment Date (defined below), the sum of (i) the Stipulated Loss Value (see Schedule(s)) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then currently outstanding and due under this Agreement for the affected unit. The "Payment Date" shall be the next rent payment date after the Casualty Occurrence. Upon Payment of all sums due hereunder, the term of this Agreement as to such unit of Equipment shall terminate.

3.    INSURANCE: Lessee agrees at its own expense, to keep the Equipment insured with companies acceptable to Lessor for such amounts and against such hazards as Lessor may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Lessor or its assigns, if any, and liability coverage for personal injuries, death and/or property damages on terms satisfactory to Lessor. General Electric Company and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Lessor's favor, as Lessor's interest may appear. Said Equipment shall be insured for

not less than its Stipulated Loss Value or such other amount as Lessor shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Lessor shall specify. Lessee hereby appoints Lessor as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to the insurance policies. Lessee may not make adjustments with insurers except with Lessor's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Lessor. In the event of damage to or loss, secretion, destruction or theft of the Equipment, or any portion of the Equipment, whether in whole or in part, Lessee will pay to Lessor the Stipulated Loss Value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except the extent that Lessor receives proceeds of insurance covering such Equipment). Lessor may, at Lessor's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it or (ii) to satisfy any of Lessee's obligations pursuant to this Agreement or a Schedule.

4.    NET LEASE: THIS AGREEMENT CONSTITUTES A NET LEASE, AND LESSEE'S OBLIGATION TO PAY THE RENTS AND OTHER AMOUNTS DUE HEREUNDER (AND THE CONTINUING EFFECTIVENESS AND ENFORCEABILITY OF THIS AGREEMENT) ARE ABSOLUTE, UNCONDITIONAL AND INDEPENDENT OBLIGATIONS NOT SUBJECT TO ABATEMENT, DIMINUTION, SUSPENSION, DEFERMENT OR REDUCTION OF, OR OFFSET AGAINST, LESSEE'S OBLIGATIONS HEREUNDER FOR ANY REASON INCLUDING WITHOUT LIMITATION: (i) ANY CLAIMS OF LESSEE AGAINST LESSOR, OR THE MANUFACTURER OR SELLER OF THE EQUIPMENT; (ii) ANY DEFECT IN, DAMAGE TO, OR LOSS OR DESTRUCTION OF ANY UNIT HOWEVER ARISING; OR (iii) ANY INTERFERENCE WITH LESSEE'S USE OF ANY UNIT OR EQUIPMENT BY ANY THIRD PARTY (INCLUDING ANY GOVERNMENTAL BODY) EXCEPT AS EXPRESSLY SET FORTH HEREIN. IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL RENTS AND OTHER AMOUNTS PAYABLE BY LESSEE TO LESSOR HEREUNDER SHALL CONTINUE TO BE PROMPTLY AND UNCONDITIONALLY PAID IN ALL EVENTS.

5.    INDEMNIFICATION: Lessee hereby agrees to indemnify Lessor, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result from Lessor's gross negligence or willful misconduct ("Claims"). This indemnity shall include, but is not limited to, Lessor's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this

(Rev. 03/16/01)

Confidential
V&S 00372

Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Lessor's rights, privileges and indemnities contained in this Section 5 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

6.    DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee.

7.    REMOVAL AND RETURN OF EQUIPMENT:

(a)    At the expiration or earlier termination of a Schedule, Lessee will arrange for the removal and return of the Equipment at its expense, including all transportation to a place designated by Lessor within the Continental United States of America. If Lessee makes modifications to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at

Lessee's expense. The Equipment will be returned to Lessor or its assigns on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the Supplier's and, if different, the manufacturer's then prevailing performance specifications for it. All waste material and fluid must be removed from the Equipment and disposed of by Lessee in accordance with the then current waste disposal laws. If the Equipment is not so returned, Lessor, at Lessee's sole expense, may have the Equipment restored to such a condition. If Lessor so requires, the units of Equipment shall be de-installed and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor.

(b)    If Lessor so requires, at Lessor's sole discretion, Lessee shall obtain a policy of transit insurance for the return of the Equipment to Lessor in an amount equal to the replacement value of the Equipment. Such transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs of complying with this section.

(c)    Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up to date copy of all other documentation pertaining to the Equipment.

(d)    All service manuals, blueprints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least 90 days, and not more than 120 days prior to the Agreement termination.

(e)    Lessee shall make the Equipment available for Lessor's on-site operational inspection by potential purchasers at least 120 days prior to and continuing up to Agreement termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By: _____

Name: _____

Title: _____

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: _____

Title: _____

Confidential
V&S 00373

(b)   Except to the extent further limited by license terms for specific types of Licensed Software, Lessee is hereby granted a limited license to:

(i)   Use and permit its service contractors to use the Licensed Software only on the specific Equipment for which Lessor provided Lessee the Licensed Software at the identified geographic location or in the specific vehicle identified in the Schedule;

(ii)   Make one copy of the Licensed Software in machine-readable form solely for backup purposes. Lessee must reproduce on such copy the copyright notice and any other proprietary notices that were on the original copy.

(iii)   Use the copy of the documentation delivered with the Equipment and having a white cover or label and/or notice that identifies it as "Operating Documentation" ("Operating Documentation") and use the tools or instruments delivered with the Equipment in a container having a white cover or label and/or a notice that identifies them as "Operating Tools" ("Operating Tools") for the sole purpose of Lessee's use of the Licensed Software and Equipment for its intended purpose.

(iv)   Transfer all authorized copies of the Licensed Software, Operating Documentation and Operating Tools to a purchaser of the Equipment who accepts all of the terms, conditions and limitations of this Limited License and any other applicable license terms.

(c)   Except as expressly set out above, Lessee is not granted any other rights or licenses in or under the Licensed Software, Operating Documentation or Operating Tools. By way of example, and without limitation, Lessee is not granted: any ownership rights in the Licensed Software, Operating Documentation or Operating Tools or any media on which the Licensed Software is recorded or fixed; any other rights or licenses under any of Lessor's intellectual property (e.g., patents, copyrights, trademarks, trade secrets, etc.); any right to modify, adapt, translate, rent, lease, loan, resell for profit, distribute, network or create derivative works of any portion of the Licensed Software or Operating Documentation; any right to decompile, reverse engineer, disassemble, or otherwise reduce the Licensed Software to a human-perceivable form; any right to electronically transfer any portion of the Licensed Software over a network; or any right to retain copies of any versions or Licensed Software or Operating Documentation or Operating Tools which are rendered redundant by Licensed Software Lessee receives under the Schedule.

6.   LIMITED WARRANTIES AND DISCLAIMER:   Unless otherwise provided in a Schedule, GE Medical Systems provides

specific written warranties applicable to the Equipment and any Licensed Software provided under a Schedule. The applicable warranties are identified in the Schedule and are attached to the Schedule as an exhibit. No warranty is furnished for anything excluded from the warranty form(s) or for Operating Documentation or Operating Tools associated with products. All such items are provided AS IS. EXCEPT AS PROVIDED ABOVE, NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLIES TO ANYTHING PROVIDED BY LESSOR. Lessor may use refurbished parts in new products as long as Lessor uses the same quality control procedures and warranties as for new products.

7.   REMOVAL OF EQUIPMENT:

(a)   At the expiration of a Schedule, and with not less than 30 days prior written notice from Lessee to Lessor, Lessor will remove and arrange for the return of the Equipment at Lessor's expense including all transportation costs, within the Continental United States of America (excluding Hawaii and Alaska). However, if the Equipment consists of magnetic resonance (excluding GE Lunar E-Scan and Artoscan-M), radiation therapy, or positron emission tomography equipment, and any related systems, including, but not limited to, any system for the production of radioactive isotopes, such removal and return, including all costs of transportation, will be at Lessee's expense. In any case, and regardless of the type or nature of the Equipment, the cost of removal and return of the Equipment, including all transportation costs prior to the expiration of the Term of a Schedule will be at Lessee's expense. Lessee may not remove, de-install, or crate the Equipment unless done so through the use of Lessor's authorized representative or other service person reasonably acceptable to Lessor. If Lessee makes modification to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at Lessee's expense.

(b)   The Equipment and any Licensed Software, Operating Documentation and Operating Tools will be returned to Lessor or its assigns, on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with Lessor's then prevailing performance specifications for them. If the Equipment, Licensed Software, Operating Documentation, and Operating Tools are not so returned, Lessor, at its sole expense, may have the Equipment, Licensed Software, Operating Documentation and Operating Tools restored to such a condition.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By: _____

Name: __JANET SOBCZAK__

Title: __Transaction Coordinator__

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: __Kamran Saleh__

Title: __President__

(Rev. 03/16/01)

Confidential
V&S 00374



**GE Healthcare Financial Services**

## GUARANTY

THIS GUARANTY is executed as of the _____ day of _____, _____.

### 1. GUARANTY

As an inducement to GE Healthcare Financial Services, a component of General Electric Company (hereinafter referred to as "Company"), and its affiliates, or any of them, to supply goods, equipment or services upon credit or consignment, or to provide financial assistance to **V & S Medical Associates, LLC** (hereinafter referred to as the "Customer"), and in consideration of Company, in its discretion, entering into any one or more such transactions, the undersigned does hereby guarantee the punctual payment and prompt performance of any and all indebtedness, liability, or obligation of any kind that Customer may now owe or that it may at any time hereafter owe to Company, whether such indebtedness or obligation arises from or is evidenced by any note, draft, check or other instrument or is based upon contract or open account or otherwise (the "Obligations"). The undersigned does hereby agree to pay reasonable attorney's fees and all other costs and expenses that may be incurred by Company in the enforcement of this Guaranty.

The undersigned agrees that nothing herein shall be deemed to render this Guaranty in any way conditional, or to require Company first to seek or exhaust any remedy against Customer, its successors or assigns, or any other person obligated or liable under any instrument, contract, open account, or other form of Obligation, and it is agreed that Company may, upon default of Customer, or at any time thereafter, make demand upon and receive payment of any sum or performance of any covenant or agreement hereunder guaranteed by the undersigned, with or without notice or demand for payment or performance by Customer, its successors or assigns, or any other person.

### 2. WAIVER OF NOTICE

The undersigned hereby expressly waives notice of each and every one of the following:

(a)  Acceptance of this Guaranty by Company;

(b)  Any Obligation incurred or owing on the part of Customer to Company;

Guaranty

Rev. 3/14/01

Confidential
V&S 00375

GUARANTY

(c) Default by Customer with respect to any Obligation owing to Company;

(d) Presentment, protest and demand, and notice of protest, demand, and dishonor, or any of them, with respect to any note or other instrument to which the Customer may be a party or as to which it may be obligated;

(e) Notice of adverse change in Customer's financial condition;

(f) Notice of any other fact that might materially increase the risk of the undersigned; and

(g) Company's first foreclosing, proceeding against, or exhausting any collateral or security for any Obligation before requiring the undersigned to pay the full amount of the liability hereby created.

3. MODIFICATION OF OBLIGATIONS

The undersigned expressly agrees to remain bound under this Guaranty notwithstanding any of the following acts by Company:

(a) The extension of time of performance to, the granting of any other indulgence to, or any other modification of any Obligation of, Customer.

(b) The acceptance, alteration, or release of any security, whether provided by Customer or any other person.

4. NATURE, SCOPE, AND DURATION OF GUARANTY

This Guaranty is unlimited in amount and shall continue from this date until revoked as provided below in this Section 4. This is a continuing, indivisible, and cumulative guaranty of each and every debt or Obligation incurred by or owing from Customer to Company either at the date hereof or at any time hereafter during the term of this Guaranty. The undersigned may at any time revoke this Guaranty to be effective 10 days from the receipt of notice of revocation sent by the undersigned, by registered mail, to GENERAL ELECTRIC COMPANY, c/o GE Healthcare Financial Services, P.O. Box 414, W-490, Milwaukee, WI 53201-0414, Attn: Risk Analyst. In the event of the death or incompetency of the undersigned, this Guaranty shall continue in effect for 6 weeks from the date of such death or incompetency unless Company sooner receives written notice thereof, in which case revocation shall be effective as of the date of receipt of such written notice. Revocation shall in no way terminate or otherwise affect (a) any liability or obligation of the undersigned existing on or prior to the effective date of such revocation or (b) any liability or obligation of the undersigned arising after the effective date of such revocation with respect to any Obligation incurred on or before the effective date of such revocation, including,

Confidential
V&S 00376

GUARANTY

without limitation, unfulfilled orders or other contracts existing on the effective date and completed in due course thereafter or cancelled or terminated by either Company or Customer.

## 5. WAIVER BY COMPANY

The failure of Company to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or of the right thereafter to enforce the same.

## 6. WAIVER BY CUSTOMER AND COMPANY

To the extent permitted by law, the undersigned and Company agree to, and do, waive trial by jury in any action, proceeding, or counterclaim brought by either the undersigned or Company against the other on any matters whatsoever arising out of or in any way connected with this Guaranty or any claim of damage resulting from any act or omission of the undersigned or Company or either of them in any way connected with this Guaranty.

## 7. LIABILITY OF CO-GUARANTORS

If more than one party signs this instrument as the undersigned, all obligations and liabilities created by this instrument shall be the joint and several obligation and liability of each of such parties.    Each undersigned party shall continue independently to be bound by this instrument notwithstanding any compromise, settlement, or release entered into with any one or more of the other undersigned parties hereunto.

## 8. APPLICABLE LAW

This Guaranty and its interpretation and application shall in all respects be governed by the law of the State of Pennsylvania.

## 9. ENTIRE AGREEMENT

This instrument contains the entire and only agreement between the undersigned and Company with respect to the guaranty of debts and Obligations of Customer by the undersigned, and any representation, promise, condition, or understanding in connection therewith that is not expressed in this instrument shall not be binding on Company or upon the undersigned, all prior collateral understandings and agreements concerning such Guaranty having been superseded by this instrument. The provisions of this instrument shall not be changed or discharged except by a written instrument signed by an authorized representative of Company and by the undersigned and may be terminated only in accordance with the provisions of Section 4.

Guaranty

Rev. 3/14/01

Confidential
V&S 00377

GUARANTY

Signed and sealed by the parties hereto as of the date and year first above written.

Peter Vaccaro

_Aaliaua Emay_
Witness

_PAVaccaro_
Signature of Guarantor

_PETER VACCARO._
Print Name

_President_
Title (if not individual)

_____ T. Bradford PA
Guarantor's Address

█████████    ████████
Social Security # / Federal Tax ID #

Guaranty

Page 4 of 4                                    Rev. 3/14/01

Confidential
V&S 00378

The monthly payment has been adjusted to reflect the change in the Federal Reserve 5 year T-Bill Rate which was _4.53_ % at the time of commencement of the contract. The adjusted monthly payment is:
*3 months @ $0.00 followed by 60 months @ $6,531.12 ($4,876.12 equipment & $1,655.00 service)*

8515502-001
0373- In Serv.8/27/2001

Internal Contract Ref. # 8515502
Internal Order Ref. # ~~861-107079~~
890-073400

# MAXISERVICE® SCHEDULE
## DATED AS OF _6/6/01_
## TO MASTER LEASE AGREEMENT
## DATED AS OF 6/6/01

This Schedule is executed pursuant to, and incorporates by reference the terms and conditions of, the Master Lease Agreement identified above ("Master Agreement," said Master Agreement and this Schedule being collectively referred to as the "Agreement"). Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Master Agreement. This Schedule constitutes a separate instrument of lease that applies to the leasing of Equipment from GE Healthcare Financial Services ("GE") and the provisions of Support Services mentioned below.

**1.    EQUIPMENT:** Subject to the terms and conditions of the Agreement, GE agrees to lease the Equipment described below (the "Equipment") to Lessee.

| Number of Units | Site | Model and Type of Equipment |
|---|---|---|
| 1 | V & S Medical Associates, LLC<br>24 West Washington Ave.<br>Bradford, PA  16701 | GE SMV DSI Nuclear Camera |

**2.    SUPPORT:** GE will provide "Support" as described in the Support Exhibit attached hereto.

**3.    TERMS AND RENTALS:**

**A.    Term of Schedule:** 63 months. The Term of this Schedule will commence on the Lease Commencement Date specified in the "Lease, Term and Rent Payments" section of the Master Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

**B.    Advance Charge:** $6,545.00. Lessee's payment of the Advance Charge is required upon or before Lessee's execution and return of this Schedule to GE. Subject to payments made or incurred by GE, GE will refund the Advance Charge if this Schedule is terminated in writing before any part of the Equipment is delivered to the site (i) by GE or Lessee as a direct result of the other's breach of a material term or condition of this Schedule or (ii) by mutual agreement. GE will apply the Advance Charge to Lessee's Monthly Charge obligation under this Schedule to the first Monthly Charge.

**C.    Monthly Charge:** 3 months @ $0.00 followed by 60 months @ $6,545.00 ($4,890.00 equipment and $1,655.00 Service) plus any applicable taxes. Lessee's payment of Monthly Charges to GE will be in accordance with the "Lease, Term and Rent Payments" section of the Master Agreement.

**D.    Monthly Charge Adjustment:** *(Choose One)*

☐   Monthly Charge fixed on Date of Signing of Schedule

☒   Monthly Charge fixed on Lease Commencement Date: On the Lease Commencement Date, the Monthly Charge, as it relates to Equipment, will be adjusted based on the number of

points, plus or minus, as applicable, that the five year Treasury Constant Maturities as of the Lease Commencement Date has changed from 4.64%, which was established based on the five year Treasury Constant Maturities as of the week ending 3/16/01.

**4.    SERVICE WARRANTY/DISCLAIMERS/REMEDIES:** GE warrants that it will provide the Support specified in the Support Exhibit in a workmanlike manner. For any claim that Support not performed in a workmanlike manner in accordance with the Support limited warranty in this Section 4, Lessee's sole and exclusive remedy is for GE to re-perform that Support. In view of the Support GE provides under this Schedule, and except for any listed diagnostic imaging accessories product warranties provided by GE, no product warranties are offered under the Agreement: all parts and items are provided AS IS. Any applicable additional warranty disclaimers are specified in the Support Exhibit.

**5.    END OF SUPPORT ANNOUNCEMENT:** In the event GE makes a general commercial announcement that it will no longer offer Support agreements for an item of Equipment or Equipment component or provide a particular Support feature or option, then upon no less than 12 months' prior written notice to Lessee, GE may, at its option, remove any such item(s) of Equipment, component(s), feature(s), or option(s) from this Schedule, with an appropriate adjustment of charges, without otherwise affecting this Agreement.

**6.    RECORD RETENTION AND ACCESS:** If GE should be deemed to be a subcontractor subject to the disclosure requirements of 42 USC Section 1395x(v)(1)(1), anything herein to the contrary notwithstanding, until the expiration of four years after the furnishing of services pursuant to this Schedule, upon written request from the Lessee, GE shall make available to the Secretary of the Department of Health and Human Services, the Comptroller General, or any of their duly authorized representatives, this Schedule and the books, documents, and records that are necessary to certify the nature and extent of any costs incurred by the parties under this Schedule. If GE carries out any of the duties

Confidential
V&S 00379

of this Schedule through a subcontract with a value or cost of $10,000 or more over a 12-month period with a related organization, such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request to the Secretary, the Comptroller General, or to any of their duly authorized representatives, the subcontract and the books, documents, and records of such organization that are necessary to verify the nature and extent of such costs. This clause is included because of the possible application of Section 1861(v)(1)(I) of the Social Security Act; if that section should be found inapplicable to this Schedule under its terms, then this Section shall be deemed not to be part of this Schedule and shall be null and void.

7.    AUTODRAFTING

A.    Lessee hereby authorizes GE to initiate debit entries for Lessee's payment of the charges which are due periodically under this Schedule and the financial institution indicated below to debit with the amounts thereof the account listed below.

Financial Institution Name: _National City Bank of P.A_

Financial Institution Address: _71 Main Street_

City: _Bradford_    State: _PA_   Zip: _16701_

B.    The following information can be provided from Lessee's check so please attach a copy of a voided check:

Account Name: _V&S Medical Associates, LLC_

Nine-digit Financial Institution ID Number: _043000122_

Lessee's Financial Institution Account Number: _5495 2458_

C.    Lessee further authorizes GE to adjust the dollar amount transferred from Lessee's account to correspond to periodic changes in the payment due, if any, under the terms of this Schedule.

D.    Lessee hereby authorizes GE to automatically debit all current or past due property taxes (if applicable).

E.    Rules and Regulations

(i)    Lessee understands that due to the difference in timing between the Lease Commencement Date and the booking of this Schedule, the initial debit may be for more than one periodic charge but will not be more than the actual total monthly amounts due at that time.

(ii)    Failure to have adequate funds in Lessee's account shall constitute an event of default under this Schedule.

(iii)    Lessee understands that it will continue to receive an invoice each month as notification of the amount to be debited from its account.

(iv)    Lessee must provide GE with written notice at least 30 days in advance of Lessee's intent to revoke, terminate of modify this authorization of the information contained herein. In the event Lessee revokes or terminates this authorization, Lessee must remit its periodic charges directly to GE at the address specified in the Agreement. Failure to pay the periodic charges on or before the due date shall constitute an event of default under this Schedule.

(v)    If a deduction is made in error, Lessee has the right to be immediately refunded by GE for the amount of the erroneous deduction provided that Lessee provides written notification of the erroneous deduction within 15 days after its account statement is issued or 45 days after the monies are paid to GE.

8.    Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Agreement; (ii) the representations and warranties made by Lessee pursuant to or under the Agreement are true and correct on the date hereof and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

9.    Any modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Early Buy Out Option.

10.    Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By: _(signature)_

Name: _JANET SOBCZAK_

Title: _Transaction Coordinator_

LESSEE:

V & S Medical Associates, LLC

By: _(signature)_

Name: _PETER VACCARO_

Title: _President_

Confidential
V&S 00380

 *GE Healthcare Financial Services*

| Contract Number | | FDO/Order # | Due Date |
|---|---|---|---|
| 8515502 Adv Rent $6,545.00 Doc Fee $250.00 | | 861-107879 | Upon Receipt |
| | | Current Due | Total Due |
| | | $6795.00 | $6795.00 |

V & S Medical Associates, LLC
24 West Washington Ave.
Bradford, PA 16701

Make checks payable and remit to:
GENERAL ELECTRIC COMPANY
20225 Water Tower Blvd., Suite 200
Brookfield, WI 53045
ATTENTION: Stacey Danner

To ensure proper credit—detach along dotted line and return upper portion with payment.     Please do not staple or fold.

---

**V & S MEDICAL ASSOCIATES, LLC.**
24 W WASHINGTON ST
BRADFORD, PA 16701

1841
8-12/430 044

Pay to the Order of ~~GE heathcare Financial Services~~                    $ 6795 00

~~six Thousand seven hundred & ninety five~~ 00/100                          Dollars

**NationalCity.**
National City Bank of Pennsylvania
Pittsburgh, Pennsylvania

For _____          _Adriana Vaccar_

⑈00 1841⑈ ⑈043000122⑈ 549524581⑈

Confidential
V&S 00381

If you have any questions, please do not hesitate to contact me at (262)798-**4577**

Sincerely,

*Janet Sobczak*

**Janet Sobczak**
Transaction Coordinator

Encl.

Cover letter GE True Lease with Service

**Confidential**
**V&S 00382**

 **GE Healthcare Financial Services**

June 6, 2001

Ms. Sue Pascarella
V & S Medical Associates
24 West Washington Ave.
Bradford, PA 16701

RE:  True Lease Documents

Dear Ms Pascarella,

Thank you for choosing to do business with GE Healthcare Financial Services. I have enclosed the following lease documents for your review. Please feel free to use the boxes next to each item as a checklist before returning the documents.

- ☑ One (1) Master Lease Agreement
- ☑ One (1) GE Equipment Addendum to the Master Lease Agreement
- ☑ One (1) Non-GE Equipment Addendum to the Master Lease Agreement; this document is not needed for this transaction, but is included with your initial package so that GE may keep your signed document on file for future transactions
- ☑ One (1) Maxiservice Schedule to the Master Lease Agreement
- ☑ One (1) Early Buy Out Addendum
- ☑ Invoice for advance rent payment & Documentation Fees
- ☑ Landlord/Mortgagee Waiver; please forward to the appropriate party for signatures
- ☑ Two (2) Personal Guarantees

There are various items that we need returned with your documents above. A checklist is included below for your convenience.

- ☑ Voided check copy -- this is used to set up your autodrafting on your account.
- ☑ Completion of page two of the Maxiservice Schedule with your bank account data for autodrafting.
- ☑ Advance rent & Doc fees payment per the invoice listed above is due with the return of these documents

The Support Exhibit will follow shortly.

Do not fill in the "dated as of" dates on the **first pages** of each document. We (GE) will fill in these dates, based on the final signature dates.

I have enclosed a pre-paid Federal Express envelope for your convenience. Please forward the **original** signed documents to my attention at the following address:

GE Healthcare Financial Services
ATTENTION: **Janet Sobczak**
20225 Water Tower Blvd., Suite 300
Brookfield, WI 53045

Cover letter GE True Lease with Service

**Confidential**
**V&S 00383**

**GE Healthcare Financial Services**

# MASTER LEASE AGREEMENT

dated as of 6/5/01

THIS MASTER LEASE AGREEMENT is between GE Healthcare Financial Services, a component of General Electric Company (together with its successors and assigns, if any, "Lessor") and the undersigned lessee ("Lessee"). Lessor has a mailing address at P.O. Box 414, W-490, Milwaukee, WI 53201-0414. Lessee is a Corporation organized and existing under the laws of the State of Pennsylvania. Lessee's mailing address and chief place of business is 24 West Washington Ave., Bradford, PA 16701. This Agreement contains the general terms that apply to the leasing of Equipment (defined below) from Lessor to Lessee. Additional terms that apply to the Equipment shall be contained on a schedule ("Schedule") and in the GE Equipment Addendum or the Non-GE Equipment Addendum, as the case may be.

## 1.  LEASE, TERM AND RENT PAYMENTS:

(a)    Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, all units of equipment and other property described in the Schedule(s), and all accessories, upgrades, additions, substitutions, replacement parts and tools (together thereto ("Equipment") described in any Schedule signed by both parties.

(b)    This Master Lease Agreement shall be effective as of the date stated above and, unless sooner terminated by Lessor as hereinafter provided, shall continue until all of Lessee's obligations hereunder or under any Schedule(s) are fulfilled. The term of each Schedule is as specified in the Schedule and commences upon the Lease Commencement Date (defined in subparagraph (c) below). In the event of a conflict between provisions of this Agreement and a Schedule, the provisions of the Schedule shall control.

(c)    The rent payable for the Equipment and Lessee's right to use the Equipment shall begin on (A) in the case of GE Equipment, the earlier of (i) five days after the date the Lessee is notified the Equipment has been assembled and is operating in accordance with the manufacturer's published performance specifications or (ii) the date the Lessee first uses the Equipment or (B) in the case of Non-GE Equipment, the date when Lessee has accepted the Equipment under a certificate of acceptance ("Lease Commencement Date"). However, if the GE Equipment's installation and availability for first use is delayed for any reason for which the Lessor is not responsible, the GE Equipment's availability for first use may, at Lessor's discretion, be declared to be 30 days after the date the GE Equipment is delivered.

(d)    Lessee shall pay rent to Lessor at its address stated above, except as otherwise directed by Lessor. Rent payments shall be in the amount set forth in the applicable Schedule and are due in advance beginning on the Lease Commencement Date and on the same day of each consecutive month thereafter. If any advance rent or advance charge (as stated in the Schedule) is payable, it shall be due when the Lessee signs the Schedule and shall be applied in the manner set forth under such Schedule. In no event shall any advance rent or advance charge or any other rent payments be refunded to Lessee. If rent is not paid within ten days of its due date, Lessee agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any. All other payments received by Lessor shall first be applied to any accrued late

charge(s) and other monies due Lessor hereunder and then to any unpaid rents.

## 2.    RENT ADJUSTMENT:

(a)    If, solely as a result of Congressional enactment of any law (including, without limitation, any modification of, or amendment or addition to, the Internal Revenue Code of 1986, as amended, ("Code")), the maximum effective corporate income tax rate (exclusive of any minimum tax rate) for calendar-year taxpayers ("Effective Rate") is higher than 35% for any year during the lease term, then Lessor shall have the right to increase such rent payments by, at Lessor's option, (i) requiring payment of a single additional sum, or (ii) increasing the amount of the rent for the remaining term. The additional sum shall be equal to the product of (i) the Effective Rate (expressed as a decimal) for such year less .35 (or, in the event that any adjustment has been made hereunder for any previous year, the Effective Rate (expressed as a decimal) used in calculating the next previous adjustment) times (ii) the present value of the aggregate rents remaining under a Schedule discounted at 6%, divided by (iii) the difference between the new Effective Rate (expressed as a decimal) and one (1).  If Lessor chooses the first option, Lessee shall pay to Lessor the full amount of the additional rent payment on the later of (i) receipt of notice or (ii) the first day of the year for which such adjustment is being made. If Lessor chooses the second option, the rental payments for each month subsequent to when Lessor provided Lessee notice of such rent shall be increased accordingly.

(b)    Lessee's obligations under this Section 2 shall survive any expiration or termination of this Agreement.

(c)    Until the Lease Commencement Date, Lessor shall have the right to adjust the rent as set forth in the Schedule(s). In addition, Lessee acknowledges that Lessor may adjust the rent, up or down, by no more than 10% within each Schedule to account for equipment change orders, equipment returns, invoicing errors, and similar matters.  Lessor shall send Lessee a written notice stating the final rent, if it has changed.

## 3.    TAXES:  If permitted by law, Lessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof); this Agreement (or any rents or receipts hereunder), any Schedule, Lessor or Lessee by any governmental entity or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "Taxes").  Lessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Lessor except as provided in Sections 2 and 14.  Lessee shall promptly reimburse Lessor (on an after tax basis) for any Taxes charged to or assessed against Lessor. Lessee shall show Lessor as the owner of the Equipment on all tax reports or returns, and send Lessor a copy of each report or return and evidence of Lessee's payment of Taxes upon request by Lessor.

Confidential
V&S 00384

4.   REPORTS:

(a)   If any tax or other lien shall attach to any Equipment, Lessee will notify Lessor in writing, within ten days after Lessee becomes aware of the tax or lien. The notice shall include the full particulars of the tax or lien and the location of such Equipment on the date of the notice.

(b)   Lessee will deliver to Lessor, Lessee's complete financial statements, certified by a recognized firm of certified public accountants within 90 days of the close of each fiscal year of Lessee. Lessee will deliver to Lessor copies of Lessee's quarterly financial report certified by the chief financial officer of Lessee, within 90 days of the close of each fiscal quarter of Lessee. Lessee will deliver to Lessor all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within 30 days after the date on which they are filed.

(c)   Lessor may inspect any Equipment during normal business hours after giving Lessee reasonable prior notice (except as otherwise provided in Section 8).

(d)   If any Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Equipment cost or ten thousand and 00/100 dollars ($10,000)), or is otherwise involved in an accident causing personal injury or property damage, Lessee will promptly and fully report the event to Lessor in writing.

5.   DELIVERY, USE AND OPERATION:

(a)   All Equipment shall be shipped directly to Lessee.

(b)   Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable laws, regulations and insurance policies.

(c)   Lessee will not move any equipment from the location specified on the Schedule, without the prior written consent of Lessor.

(d)   Lessee will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Lessor.

(e)   Lessor shall not disturb Lessee's quiet enjoyment of the Equipment during the term of the Agreement unless a default has occurred and is continuing under this Agreement.

6.   MAINTENANCE:

(a)   Unless Lessee is under a support agreement with Lessor, Lessee will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted and also maintain the Equipment in accordance with manufacturer's recommendations. Lessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the term of this Agreement. If Lessor requests, Lessee shall affix plates, tags or other identifying labels showing ownership thereof by Lessor.

(b).   Lessee will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Lessor. All additions, parts, supplies, accessories, and equipment ("Additions") furnished or attached to any Equipment that are not readily removable shall become the property of Lessor. All Additions shall be made only in compliance with applicable law. Lessee will not  attach or install any Equipment to or in any other personal or real property without the prior written consent of Lessor.

7.   INSURANCE:   The Lessee's obligation to insure the Equipment will be as set forth in an Addendum to this Agreement.

8.   DEFAULT AND REMEDIES:

(a)   Lessor may in writing declare this Agreement in default if: (i) Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten days; (ii) Lessee breaches any of its insurance obligations under a Schedule; (iii) Lessee breaches any of its other obligations and fails to cure that breach within 30 days after written notice from Lessor; (iv) any representation or warranty made by Lessee in connection with this Agreement shall be false or misleading in any material respect; (v) Lessee or any guarantor or other obligor for the Lessee's obligations hereunder ("Guarantor") becomes insolvent or ceases to do business as a going concern; (vi) Lessee assigns any of its interests in this Agreement or in the Equipment without Lessor's prior consent; (vii) if Lessee or any Guarantor is a natural person, any death or incompetency of Lessee or such Guarantor; (viii) a petition is filed by or against Lessee or any Guarantor under any bankruptcy or insolvency laws and in the event of an involuntary petition, the petition is not dismissed within 45 days of the filing date; or (ix) any material adverse change occurs in Lessee's financial condition or business operations (or of any Guarantor) or any material change occurs in the ownership of Lessee.  The default declaration shall apply to all Schedules unless specifically excepted by Lessor.

(b)   Upon the occurrence of an event of default hereunder, Lessor shall have the non-exclusive option to:  (i) declare the aggregate rents (or, with respect to non-GE Equipment, the Stipulated Loss Value (see Schedule)) payable under any or all of the Schedules immediately due and payable; (ii) declare all other amount(s) due Lessor hereunder immediately due and payable; (iii) collect from Lessee, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies, but not exceeding the lawful maximum; (iv) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Lessee; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to Lessee; (v) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as Lessor may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by Lessor to Lessee not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Lessee; (vi) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as Lessor, in its sole discretion, may determine; and (vii) assert any other remedies available to Lessor at law or in equity (including, without limitation, under the Uniform Commercial Code). In the event Lessor proceeds pursuant to this subsection (b) Lessee hereby appoints Lessor its agent to dispose of the Equipment at the best price obtainable on as "AS-IS, WHERE-IS" BASIS. Any return and/or repossession of the Equipment shall not waive or impair any of Lessor's rights or remedies.  Except as otherwise provided for herein or by law, all amount(s) due Lessor after an event of default shall be due and payable without any notice or demand by Lessor, and without regard to any action taken by Lessor regarding the Equipment.

(c)   After deducting all expenses of retaking, repairing, holding, transporting, selling and/or reletting the Equipment, the net proceeds (if any) from such sale or reletting by Lessor shall be applied against Lessee's obligation hereunder (without regard to the fact that each Schedule constitutes a separate lease of property). The proceeds of any sale, re-lease, or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Lessor's costs, charges and expenses in taking, removing, holding, repairing, selling, re-leasing and disposing of the Equipment; (ii) second, to the extent not previously paid by Lessee (or by a Guarantor of Lessee's obligations hereunder) to pay Lessor all amounts due from Lessee hereunder; (iii) third, to reimburse to Lessee (or any Guarantor) any sums previously paid as damages to Lessor by Lessee (or such Guarantor); and (iv) lastly, any surplus shall be

(Rev. 03/15/01)

Confidential
V&S 00385

retained by Lessor. Lessor shall have the right to seek a deficiency from Lessee notwithstanding Lessor's repossession or abandonment of the Equipment, or Lessor's sale or reletting the Equipment to a third party.

(d)    The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under statute. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay Lessor's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Lessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default.

9.    ASSIGNMENT: LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF LESSEE IN THE EQUIPMENT OR THE RIGHTS OR OBLIGATIONS OF LESSEE UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. Lessor may, without the consent of Lessee, assign this Agreement, any Schedule or the right to enter into a Schedule, provided that any such assignment shall not relieve Lessor of its obligations hereunder. Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Schedule to such assignee or as instructed by Lessor. Lessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

10.    REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE: Lessee makes each of the following representations, warranties, and covenants to Lessor on the date hereof and on the date of execution of each Schedule.

(a)    Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents"). Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)    The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(c)    No approval, consent or withholding of objections is required from any governmental authority or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d)    The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e)    There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which if decided against Lessee will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(f)    The Equipment is and will remain tangible personal property.

(g)    Each financial statement delivered to Lessor has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the Lessee.

(h)    Lessee is and will be at all times validly existing and in good standing under the laws of the State of its formation (specified in the first sentence of this Agreement).

(i)    The Equipment will at all times be used for commercial or business purposes.

11.    LIMITATION OF REMEDIES AND DAMAGES: THE TOTAL LIABILITY OF LESSOR AND ITS REPRESENTATIVES TO LESSEE AND LESSEE'S EXCLUSIVE REMEDY RELATING TO A SCHEDULE IS LIMITED TO THE MONTHLY RENTAL WHICH IS THE BASIS FOR THE CLAIM. Lessee agrees that Lessor and its representatives have no liability to Lessee for (i) any penal, punitive, special, incidental, or consequential damages such as lost profit of revenue, (ii) any assistance not required under the Schedule, or (iii) anything occurring after the end of a Schedule. Lessee will be barred from any remedy unless Lessee gives Lessor prompt written notice of the problem. This is a commercial lease transaction. Any claim related to this contract will be covered solely by commercial legal principles. Lessor, its representatives and Lessee will not have any negligence or other tort liability to the other arising from a schedule. This limitation does not affect claims by third parties for personal injury due to product liability or the negligence of Lessor, Lessee or their representatives.

12.    END-OF-TERM OPTIONS: At least one hundred eighty days prior to the expiration of the original term of a Schedule or any subsequent term, Lessee must elect, by written notice to Lessor, one of the following end-of-term options: (i) Lessee's renewal of that Schedule for a one or two year term at a monthly rental determined at the time of renewal (based on the Equipment's then fair market value), (ii) Lessee's purchase of the Equipment as set forth in Section 13 below; or (iii) Lessee's return of the Equipment to Lessor. If Lessee does not elect an end-of-term option, the term of the Schedule shall automatically extend on a month-to-month basis at the highest monthly rental under that Schedule.

13.    PURCHASE OPTION:

(a)    Lessee may at lease expiration purchase all (but not less than all) of the Equipment in any Schedule on an AS IS BASIS for cash equal to its then Fair Market Value (plus all applicable taxes). Lessee must notify Lessor of its intent to purchase the Equipment in writing at least 180 days in advance. If Lessee is in default or if the corresponding Schedule has already been terminated Lessee may not purchase the Equipment.

(b)    "Fair Market Value" shall mean the price that a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell. In determining the Fair Market Value the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement. If the Equipment is installed it shall be valued on a fully assembled and operational basis. The costs of removal from its current location shall not be a deduction from the value of the Equipment. All installation, freight, taxes and other costs are included in the determination of Fair Market Value. If Lessor and Lessee are unable to agree on the Fair Market Value at least 135 days before lease expiration, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value. The independent appraiser's determination shall be final, binding and conclusive. Lessee shall bear all costs associated with any such appraisal.

(c)    Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable

Master Lease                            Page 3 of 4

(Rev. 03/16/01)

Confidential
V&S 00386

election to exercise the same within 15 days after Fair Market Value is told to Lessee.

**14. TAX BENEFIT INDEMNIFICATION:** Lessor and Lessee agree that should either the United States government or any state or local tax authority disallow, eliminate, reduce, recapture, or disqualify, in whole or in part, the tax benefits claimed under a Schedule by Lessor, Lessee will then indemnify Lessor by payment, at its choice, of either: (i) supplemental rent to Lessor during the remaining period of the term of the Schedule in an amount necessary to permit Lessor to receive (on an after tax basis over the full term of the Schedule) the same rate of return that Lessor would have realized had there not been a loss or disallowance of such benefits, together with any interest or penalties which might be assessed by the governmental authority(ies) with respect to such loss or disallowance, or (ii) a lump sum, payable on demand, to Lessor which will be equal to the amount necessary to permit Lessor to receive (on an after-tax basis over the full term of that Schedule) the same rate of return that Lessor would have realized had there not been a loss or disallowance of such benefits, together with the amount of any interest or penalties which might be assessed by the governmental authority(ies) with respect to such loss or disallowance. All references to Lessor in this Section include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's rights, privileges and indemnity contained in this Section shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**15. FILING:** Lessee will sign and return to Lessor when requested such instrument(s) as applicable law requires or permits to give public notice of Lessor's interest in the Equipment. Lessee hereby irrevocably appoints Lessor or its designee as Lessee's agent and attorney-in-fact to sign such instrument(s) on Lessee's behalf and to file them.

**16. MISCELLANEOUS:**

(a)   LESSEE AND LESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING.    THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, ADDENDA OR

MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)   Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right at any other time to demand strict compliance with this Agreement. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have specified in writing. This Agreement and any addendum, schedule and annexes hereto constitute the entire agreement of the parties with respect to the subject matter hereof.    No prior proposals, statements, course of dealing, or usage of trade will be a part of this Agreement. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING    AND    SIGNED    BY    AN    AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c)   If Lessee does not comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor. Lessee shall pay the additional rent within five days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(d)   Any provisions in this Agreement, any Schedule, addendum or amendment hereto that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(e)   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION,    VALIDITY    AND    PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.

(f)   Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement, any Schedule, addendum or amendment hereto, of the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By:_____

Name:_____

Title:_____

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: _Kamran_    _Salah_ .

Title: _Partner_.

Confidential
V&S 00387

**GE Healthcare Financial Services**

# GE EQUIPMENT ADDENDUM
## TO MASTER LEASE AGREEMENT
### DATED AS OF 6/6/01
### LEASELINE®/MAXISERVICE™

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Lease Agreement (the "Agreement") between GE Healthcare Financial Services ("Lessor") and the undersigned lessee ("Lessee") and is incorporated by reference into the Lease. This Addendum modifies and supplements the Lease and sets forth additional terms and conditions that apply to Equipment that has been manufactured by the General Electric Company or its affiliates. Any conflict between this Addendum and the Lease shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Lease.

1. DELIVERY, TRANSPORTATION AND RISK OF LOSS: Delivery dates are approximate. Lessor shall not be liable for delays in performance or delivery due to causes beyond its reasonable control. If such a delay occurs, Lessor may extend the performance or delivery date for a period of time equal to the delay. Shipping terms are C.I.F. Lessor's shipping dock pursuant to Section 2-320 of the Uniform Commercial Code. Lessor is responsible for payment of freight and payment or providing for property damage or loss until delivery to Lessee.

2. INSURANCE: Lessor, at its own expense, will maintain Fire and Extended Coverage Insurance on the Equipment (with the exception of Equipment installed in mobile, transportable or relocatable vans or trailers). The proceeds of this insurance in the event of loss or damage will be applied, at Lessor's sole discretion, to the repair or a comparable replacement of the Equipment and/or the payment of some or all of Lessee's monetary obligations under a Schedule. Lessee will be responsible for any loss or damage to the Equipment from any cause not included as part of the above insurance coverage. Lessee agrees to insure any Equipment installed in mobile, relocatable or transportable vans or trailers for such amounts and against such hazards as Lessor might require. Notwithstanding the above insurance coverages, Lessee will be solely responsible for any loss or damage from any cause where such loss or damage is the result of negligence or willful misconduct on the part of anyone other than Lessor or its agents or service contractor.

3. FINAL ASSEMBLY, INSTALLATION AND TESTING:

(a) Lessee shall be responsible for making the site ready for installation in compliance with Lessor's written specifications. Lessor is responsible for assembling the Equipment and connecting it to electrical outlets provided by Lessee. Lessee shall pay for any employees other than Lessor's whom Lessee uses or Lessor is directed to use for installation or assembly.

(b) Lessor does not install, test, certify or provide any software license or warranty for products which are not listed in Lessor's price pages at the time of acquisition by Lessee. These products are normally identified by NL or NW series numbers. However, Lessor will pass on to Lessee any manufacturer or dealer

warranty received by Lessor with respect to these products, to the extent such a warranty may be passed on to Lessee.

(c) Lessee shall provide any government permits and approvals needed for installation and use of the Equipment.

(d) Lessor will complete final testing using its appropriate performance specifications, instruments and procedures. Lessor will file any required federal and state reports relating to its installation activities.

4. SERVICE MATERIAL USE AND DATA ACCESS:

(a) In connection with the installation, configuration, maintenance, repair and/or de-installation of the Equipment, Lessor might deliver to Lessee, along with the Equipment or separately, attach to or install on the Equipment, and use, materials that have not been purchased by or licensed to Lessee. Lessee hereby consents (a) to this delivery, storage, attachment, installation and use, (b) to the presence of Lessor's locked cabinet or box on the Lessee's property, and (c) to Lessor's removal of all or any part of this property at any reasonable time, all without charge to Lessor. Lessee shall have no right or title to this property or any license or other right to access, use, or decompile this property. Any access to or use of this property (except in compliance with Lessor's written direction to Lessee to determine Equipment performance on Lessor's behalf) and any decompilation of this property by anyone other than Lessor's personnel is prohibited. Lessee agrees that it will use reasonable efforts to protect this property against damage or loss and to prevent any access to or use or decompilation of this property contrary to this prohibition.

(b) Lessee agrees to permit Lessor to access data related to the Equipment, to allow Lessor to gather, aggregate, compile, and use Equipment and resource usage data in various ways, including quality initiatives, benchmarking, and reporting services. The data collected by Lessor will be used, during and after the term of this Agreement, in a manner that will maintain patient and customer level confidentiality.

5. OPERATIONAL AND BASIC SOFTWARE LIMITED LICENSE:

(a) "Licensed Software" means the firmware, software, or data compilations (regardless of the media within which they are recorded, fixed or delivered) identified in the Schedule or provided for the operation, installation, use, de-installation, maintenance, or repair of the Equipment. Licensed Software will also include software for enhancing the operation or functionality of the Equipment, and any other software later provided to Lessee by Lessor for use with the Equipment. Licensed Software that is not stored internally in the Equipment shall include a notice that identifies it as GE proprietary.

(Rev. 03/16/01)

Confidential
V&S 00388

(b)  Except to the extent further limited by license terms for specific types of Licensed Software, Lessee is hereby granted a limited license to:

(i)  Use and permit its service contractors to use the Licensed Software only on the specific Equipment for which Lessor provided Lessee the Licensed Software at the identified geographic location or in the specific vehicle identified in the Schedule;

(ii)  Make one copy of the Licensed Software in machine-readable form solely for backup purposes.  Lessee must reproduce on such copy the copyright notice and any other proprietary notices that were on the original copy.

(iii)  Use the copy of the documentation delivered with the Equipment and having a white cover or label and/or notice that identifies it as "Operating Documentation" ("Operating Documentation") and use the tools or instruments delivered with the Equipment in a container having a white cover or label and/or a notice that identifies them as "Operating Tools" ("Operating Tools") for the sole purpose of Lessee's use of the Licensed Software and Equipment for its intended purpose.

(iv)  Transfer all authorized copies of the Licensed Software, Operating Documentation and Operating Tools to a purchaser of the Equipment who accepts all of the terms, conditions and limitations of this Limited License and any other applicable license terms.

(c)  Except as expressly set out above, Lessee is not granted any other rights or licenses in or under the Licensed Software, Operating Documentation or Operating Tools.  By way of example, and without limitation, Lessee is not granted: any ownership rights in the Licensed Software, Operating Documentation or Operating Tools or any media on which the Licensed Software is recorded or fixed; any other rights or licenses under any of Lessor's intellectual property (e.g., patents, copyrights, trademarks, trade secrets, etc.); any right to modify, adapt, translate, rent, lease, loan, resell for profit, distribute, network or create derivative works of any portion of the Licensed Software or Operating Documentation; any right to decompile, reverse engineer, disassemble, or otherwise reduce the Licensed Software to a human-perceivable form; any right to electronically transfer any portion of the Licensed Software over a network; or any right to retain copies of any versions or Licensed Software or Operating Documentation or Operating Tools which are rendered redundant by Licensed Software Lessee receives under the Schedule.

6.  LIMITED WARRANTIES AND DISCLAIMER:  Unless otherwise provided in a Schedule, GE Medical Systems provides specific written warranties applicable to the Equipment and any Licensed Software provided under a Schedule.  The applicable warranties are identified in the Schedule and are attached to the Schedule as an exhibit.  No warranty is furnished for anything excluded from the warranty form(s) or for Operating Documentation or Operating Tools associated with products.  All such items are provided AS IS.  EXCEPT AS PROVIDED ABOVE, NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLIES TO ANYTHING PROVIDED BY LESSOR.  Lessor may use refurbished parts in new products as long as Lessor uses the same quality control procedures and warranties as for new products.

7.  REMOVAL OF EQUIPMENT:

(a)  At the expiration of a Schedule, and with not less than 30 days prior written notice from Lessee to Lessor, Lessor will remove and arrange for the return of the Equipment at Lessor's expense including all transportation costs, within the Continental United States of America (excluding Hawaii and Alaska).  However, if the Equipment consists of magnetic resonance (excluding GE Lunar E-Scan and Artoscan-M), radiation therapy, or positron emission tomography equipment, and any related systems, including, but not limited to, any system for the production of radioactive isotopes, such removal and return, including all costs of transportation, will be at Lessee's expense.  In any case, and regardless of the type or nature of the Equipment, the cost of removal and return of the Equipment, including all transportation costs prior to the expiration of the Term of a Schedule will be at Lessee's expense.  Lessee may not remove, de-install, or crate the Equipment unless done so through the use of Lessor's authorized representative or other service person reasonably acceptable to Lessor.  If Lessee makes modification to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at Lessee's expense.

(b)  The Equipment and any Licensed Software, Operating Documentation and Operating Tools will be returned to Lessor or its assigns, on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with Lessor's then prevailing performance specifications for them.  If the Equipment, Licensed Software, Operating Documentation, and Operating Tools are not so returned, Lessor, at its sole expense, may have the Equipment, Licensed Software, Operating Documentation and Operating Tools restored to such a condition.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By:_____

Name:_____

Title:_____

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: _Kamran  Saleh_.

Title: _President_

Confidential
V&S 00389

**GE Healthcare Financial Services**

# NON-GE EQUIPMENT ADDENDUM
# TO MASTER LEASE AGREEMENT
## DATED AS OF 6/6/01
## MASTERLINE™

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Lease Agreement (the "Agreement") between GE Healthcare Financial Services ("Lessor") and the undersigned lessee ("Lessee") and is incorporated by reference into the Agreement. This Addendum modifies and supplements the Agreement and sets forth additional terms and conditions that apply to Equipment that has not been manufactured by the General Electric Company or its affiliates. This Addendum also applies if the Equipment is used GE Equipment that was acquired by Lessor from Lessee in a sale/leaseback transaction or purchased by Lessor from a third party vendor. Any conflict between this Addendum and the Agreement shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement.

1.    TRANSPORTATION AND RISK OF LOSS:

    (a)    The Equipment will be shipped to the site identified in a Schedule by the Supplier of the Equipment. Lessee will inform Lessor of the date the Equipment is delivered within 5 days of such delivery. Any necessary assembly or installation will be described in the Schedule. The Lessee agrees to accept shipment of the Equipment and to cooperate with any assembler to permit the assembler to complete its task without delay.

    (b)    The Lessee or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Lessor bear the risk of loss. The use of the term "risk of loss" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

2.    STIPULATED LOSS VALUE: If for any reason any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ("Casualty Occurrences") Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor on the Payment Date (defined below), the sum of (i) the Stipulated Loss Value (see Schedule(s)) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then currently outstanding and due under this Agreement for the affected unit. The "Payment Date" shall be the next rent payment date after the Casualty Occurrence. Upon Payment of all sums due hereunder, the term of this Agreement as to such unit of Equipment shall terminate.

3.    INSURANCE: Lessee agrees at its own expense, to keep the Equipment insured with companies acceptable to Lessor for such amounts and against such hazards as Lessor may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Lessor or its assigns, if any, and liability coverage for personal injuries, death and/or property damages on terms satisfactory to Lessor. General Electric Company and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Lessor's favor, as Lessor's interest may appear. Said Equipment shall be insured for

not less than its Stipulated Loss Value or such other amount as Lessor shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Lessor shall specify. Lessee hereby appoints Lessor as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to the insurance policies. Lessee may not make adjustments with insurers except with Lessor's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Lessor. In the event of damage to or loss, secretion, destruction or theft of the Equipment, or any portion of the Equipment, whether in whole or in part, Lessee will pay to Lessor the Stipulated Loss Value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except the extent that Lessor receives proceeds of insurance covering such Equipment). Lessor may, at Lessor's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it or (ii) to satisfy any of Lessee's obligations pursuant to this Agreement or a Schedule.

4.    NET LEASE: THIS AGREEMENT CONSTITUTES A NET LEASE, AND LESSEE'S OBLIGATION TO PAY THE RENTS AND OTHER AMOUNTS DUE HEREUNDER (AND THE CONTINUING EFFECTIVNESS AND ENFORCEABILITY OF THIS AGREEMENT) ARE ABSOLUTE, UNCONDITIONAL AND INDEPENDENT OBLIGATIONS NOT SUBJECT TO ABATEMENT, DIMINUTION, SUSPENSION, DEFERMENT OR REDUCTION OF, OR OFFSET AGAINST, LESSEE'S OBLIGATIONS HEREUNDER FOR ANY REASON INCLUDING WITHOUT LIMITATION: (i) ANY CLAIMS OF LESSEE AGAINST LESSOR, OR THE MANUFACTURER OR SELLER OF THE EQUIPMENT; (ii) ANY DEFECT IN, DAMAGE TO, OR LOSS OR DESTRUCTION OF ANY UNIT HOWEVER ARISING; OR (iii) ANY INTERFERENCE WITH LESSEE'S USE OF ANY UNIT OR EQUIPMENT BY ANY THIRD PARTY (INCLUDING ANY GOVERNMENTAL BODY) EXCEPT AS EXPRESSLY SET FORTH HEREIN. IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL RENTS AND OTHER AMOUNTS PAYABLE BY LESSEE TO LESSOR HEREUNDER SHALL CONTINUE TO BE PROMPTLY AND UNCONDITIONALLY PAID IN ALL EVENTS.

5.    INDEMNIFICATION: Lessee hereby agrees to indemnify Lessor, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result from Lessor's gross negligence or willful misconduct ("Claims"). This indemnity shall include, but is not limited to, Lessor's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this

Confidential
V&S 00390

Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Lessor's rights, privileges and indemnities contained in this Section 5 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

6.    DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES.    LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS    OR    WORKMANSHIP,    MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee.

7.    REMOVAL AND RETURN OF EQUIPMENT:

    (a)    At the expiration or earlier termination of a Schedule, Lessee will arrange for the removal and return of the Equipment at its expense, including all transportation to a place designated by Lessor within the Continental United States of America.  If Lessee makes modifications to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at

Lessee's expense.  The Equipment will be returned to Lessor or its assigns on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the Supplier's and, if different, the manufacturer's then prevailing performance specifications for it.  All waste material and fluid must be removed from the Equipment and disposed of by Lessee in accordance with the then current waste disposal laws.  If the Equipment is not so returned, Lessor, at Lessee's sole expense, may have the Equipment restored to such a condition.  If Lessor so requires, the units of Equipment shall be de-installed and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor.

    (b)    If Lessor so requires, at Lessor's sole discretion, Lessee shall obtain a policy of transit insurance for the return of the Equipment to Lessor in an amount equal to the replacement value of the Equipment. Such transit insurance must name Lessor as the loss payee.  Lessee shall pay for all costs of complying with this section.

    (c)    Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up to date copy of all other documentation pertaining to the Equipment.

    (d)    All service manuals, blueprints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least 90 days, and not more than 120 days prior to the Agreement termination.

    (e)    Lessee shall make the Equipment available for Lessor's on-site operational inspection by potential purchasers at least 120 days prior to and continuing up to Agreement termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

GE Healthcare Financial Services,
a component of General Electric Company

By:_____

Name:_____

Title:_____

LESSEE:

V & S Medical Associates, LLC

By: _____

Name: _____Kamran_____Saleh_____

Title: _President_____

Confidential
V&S 00391



**GE Healthcare Financial Services**

---

## LANDLORD'S WAIVER

_____, a _____(type of entity) ("Landlord"), acknowledges it owns certain property located at _, 24 West Washington St_ (Address), _County, McKean (the "Premises") and has leased all or part of the Premises to _, a _PA_ (state) VGS Medical_ (type of entity) ("Tenant").

1.    "Finance Document" means all transaction documents that GENERAL ELECTRIC COMPANY, a New York corporation ("GE"), and Tenant have previously entered into or may enter into in the future with respect to the Equipment (as defined below), including, without limitation, promissory notes, lease, financing, and/or security agreements, and all schedules thereto. "Equipment" means any and all assets located at any time at the Premises (a) that GE has previously provided or leased to or financed for, and/or may in the future provide or lease to or finance for, Tenant; and/or (b) in which GE holds a security interest, whether such security interest exists now or is granted by Tenant in the future. Pursuant to the terms of each Finance Document, GE shall have the ownership of, first lien on, or other paramount right to the Equipment subject only to the Tenant's rights as specified in each Finance Document.

2.    In consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce GE to enter into any Finance Document in the future and permit Tenant to affix, install, or store the Equipment on the Premises, Landlord does hereby covenant and agree that: (a) the Equipment has been or may be affixed or otherwise installed or kept at, in, or upon the Premises; (b) the Equipment is to remain, and shall be conclusively deemed to be, personal property notwithstanding the manner in which it is or may become affixed to, installed upon, or stored at the Premises; (c) GE's claim in and to the Equipment shall remain undiminished and unaffected by such affixation, installation, or storage until and unless GE or any assignee of GE shall formally release or transfer its interests in and to the Equipment to or in favor of Tenant; (d) in the event of any default by Tenant in the performance of any of the terms and conditions of any Finance Document, GE or its assigns or agents may remove the Equipment, or any part thereof, from the Premises in accordance with the terms and conditions of the relevant Finance Document and this Waiver; (e) Landlord shall make no claim whatsoever to the Equipment or any interest or right therein, and Landlord further hereby grants GE, without requiring any payment therefor, the right of entry at any reasonable time to inspect or service the Equipment or to remove the Equipment from the Premises; (f) this Waiver shall apply to any Equipment that is already affixed to, installed upon, or stored at the Premises or may hereafter be delivered to or installed thereon; and (g) GE may, without affecting the validity of this Waiver, extend the time of payment of any obligation of Tenant under or the performance of any of the terms and conditions

**Confidential
V&S 00392**

LANDLORD'S WAIVER

of any Finance Document without the consent of Landlord and without giving notice thereof to Landlord.

  3.  Landlord hereby waives each and every right that Landlord now has or may hereafter acquire in the Equipment by virtue of any deed, lease, mortgage, or other agreement now in effect or hereafter received or under any applicable law to own, levy upon, distrain, seize, restrain, or otherwise hold or possess the Equipment for any reason. Landlord recognizes and acknowledges that any claim or claims that GE or its successor or assigns have or may hereafter acquire with respect to the Equipment are superior to any lien, right, or claim of any nature that Landlord now has or may hereafter acquire with respect to the Equipment by law, agreement, or otherwise.

  4.  Landlord agrees to be bound by this Waiver with the understanding that (a) GE is now contemplating a lease, or financing transaction with Tenant and may do so on other occasions in the future, and (b) if GE proceeds with any such transaction now and/or in the future, it does so and/or will do so in reliance on this Waiver. This Waiver shall inure to the benefit of GE's successors and assigns and shall be binding upon the heirs, personal representatives, successors, and assigns of Landlord. No delay or failure by GE to exercise any right under this Waiver or any underlying Finance Document, and no partial or single exercise of a right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein. This Waiver shall be construed in accordance with and governed by the laws of the state in which the Premises are located. This Waiver may be recorded at any time by GE or its successors or assigns.

Landlord

By: _____

Name: _____

Title: _Partner_____

Dated: _____

Address: _24 West Washington ST_
_Bradford P. A._

Confidential
V&S 00393



**GE Healthcare Financial Services**

## GUARANTY

THIS GUARANTY is executed as of the _____ day of _____, _____.

1. GUARANTY

As an inducement to GE Healthcare Financial Services, a component of General Electric Company (hereinafter referred to as "Company"), and its affiliates, or any of them, to supply goods, equipment or services upon credit or consignment, or to provide financial assistance to **V & S Medical Associates, LLC** (hereinafter referred to as the "Customer"), and in consideration of Company, in its discretion, entering into any one or more such transactions, the undersigned does hereby guarantee the punctual payment and prompt performance of any and all indebtedness, liability, or obligation of any kind that Customer may now owe or that it may at any time hereafter owe to Company, whether such indebtedness or obligation arises from or is evidenced by any note, draft, check or other instrument or is based upon contract or open account or otherwise (the "Obligations"). The undersigned does hereby agree to pay reasonable attorney's fees and all other costs and expenses that may be incurred by Company in the enforcement of this Guaranty.

The undersigned agrees that nothing herein shall be deemed to render this Guaranty in any way conditional, or to require Company first to seek or exhaust any remedy against Customer, its successors or assigns, or any other person obligated or liable under any instrument, contract, open account, or other form of Obligation, and it is agreed that Company may, upon default of Customer, or at any time thereafter, make demand upon and receive payment of any sum or performance of any covenant or agreement hereunder guaranteed by the undersigned, with or without notice or demand for payment or performance by Customer, its successors or assigns, or any other person.

2. WAIVER OF NOTICE

The undersigned hereby expressly waives notice of each and every one of the following:

(a)  Acceptance of this Guaranty by Company;

(b)  Any Obligation incurred or owing on the part of Customer to Company;

Confidential
V&S 02267

GUARANTY

_____

    (c)   Default by Customer with respect to any Obligation owing to Company;

    (d)   Presentment, protest and demand, and notice of protest, demand, and dishonor, or any of them, with respect to any note or other instrument to which the Customer may be a party or as to which it may be obligated;

    (e)   Notice of adverse change in Customer's financial condition;

    (f)   Notice of any other fact that might materially increase the risk of the undersigned; and

    (g)   Company's first foreclosing, proceeding against, or exhausting any collateral or security for any Obligation before requiring the undersigned to pay the full amount of the liability hereby created.

## 3.  MODIFICATION OF OBLIGATIONS

The undersigned expressly agrees to remain bound under this Guaranty notwithstanding any of the following acts by Company:

    (a)   The extension of time of performance to, the granting of any other indulgence to, or any other modification of any Obligation of, Customer.

    (b)   The acceptance, alteration, or release of any security, whether provided by Customer or any other person.

## 4.  NATURE, SCOPE, AND DURATION OF GUARANTY

This Guaranty is unlimited in amount and shall continue from this date until revoked as provided below in this Section 4. This is a continuing, indivisible, and cumulative guaranty of each and every debt or Obligation incurred by or owing from Customer to Company either at the date hereof or at any time hereafter during the term of this Guaranty. The undersigned may at any time revoke this Guaranty to be effective 10 days from the receipt of notice of revocation sent by the undersigned, by registered mail, to GENERAL ELECTRIC COMPANY, c/o GE Healthcare Financial Services, P.O. Box 414, W-490, Milwaukee, WI 53201-0414, Attn: Risk Analyst. In the event of the death or incompetency of the undersigned, this Guaranty shall continue in effect for 6 weeks from the date of such death or incompetency unless Company sooner receives written notice thereof, in which case revocation shall be effective as of the date of receipt of such written notice. Revocation shall in no way terminate or otherwise affect (a) any liability or obligation of the undersigned existing on or prior to the effective date of such revocation or (b) any liability or obligation of the undersigned arising after the effective date of such revocation with respect to any Obligation incurred on or before the effective date of such revocation, including,

Rev. 3/14/01

Confidential
V&S 02268

GUARANTY

without limitation, unfulfilled orders or other contracts existing on the effective date and completed in due course thereafter or cancelled or terminated by either Company or Customer.

5. WAIVER BY COMPANY

The failure of Company to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or of the right thereafter to enforce the same.

6. WAIVER BY CUSTOMER AND COMPANY

To the extent permitted by law, the undersigned and Company agree to, and do, waive trial by jury in any action, proceeding, or counterclaim brought by either the undersigned or Company against the other on any matters whatsoever arising out of or in any way connected with this Guaranty or any claim of damage resulting from any act or omission of the undersigned or Company or either of them in any way connected with this Guaranty.

7. LIABILITY OF CO-GUARANTORS

If more than one party signs this instrument as the undersigned, all obligations and liabilities created by this instrument shall be the joint and several obligation and liability of each of such parties. Each undersigned party shall continue independently to be bound by this instrument notwithstanding any compromise, settlement, or release entered into with any one or more of the other undersigned parties hereunto.

8. APPLICABLE LAW

This Guaranty and its interpretation and application shall in all respects be governed by the law of the State of Pennsylvania.

9. ENTIRE AGREEMENT

This instrument contains the entire and only agreement between the undersigned and Company with respect to the guaranty of debts and Obligations of Customer by the undersigned, and any representation, promise, condition, or understanding in connection therewith that is not expressed in this instrument shall not be binding on Company or upon the undersigned, all prior collateral understandings and agreements concerning such Guaranty having been superseded by this instrument. The provisions of this instrument shall not be changed or discharged except by a written instrument signed by an authorized representative of Company and by the undersigned and may be terminated only in accordance with the provisions of Section 4.

Guaranty

Page 3 of 4

Rev. 3/14/01

Confidential
V&S 02269

GUARANTY

Signed and sealed by the parties hereto as of the date and year first above written.

Saleh Kamran

_Witness_

_Signature of Guarantor_

_Kamran Saleh_
Print Name

_President_
Title (if not individual)

_Bradford PA_
Guarantor's Address

Social Security # / Federal Tax ID #

Guaranty
Page 4 of 4

Rev. 3/14/01

Confidential
V&S 02270

MASTER LEASE SCHEDU_  EXHIBIT



**GE Healthcare Financial Services**

### ADDENDUM TO SCHEDULE DATED AS OF 6/6/01
### TO MASTER LEASE AGREEMENT DATED AS OF 6/6/01
### INTERNAL CONTRACT REFERENCE NUMBER 8515502
### INTERNAL ORDER REFERENCE NUMBER 861-107879
### EQUIPMENT DESCRIPTION: GE/SMV DSi Nuclear Camera

### EARLY BUY-OUT OPTION

This Addendum is attached to and made a part of the Schedule identified above. This Addendum sets forth specific terms and conditions in addition to those in the Schedule and the Master Lease Agreement to which the Schedule is attached and amends and supplements that Schedule. Capitalized terms not defined herein shall have the meanings assigned to them in the Schedule or the Master Lease Agreement identified above.

With respect to the Schedule only, the Schedule is amended and supplemented by adding the following Early Buy-Out Option provision:

1.   Provided the Schedule has not already been terminated and Lessee is not in default under the Schedule or any other agreement between Lessee and Lessor, LESSEE MAY, BY WRITTEN NOTICE TO LESSOR, AT LEAST 30 BUT NOT MORE THAN 90 DAYS BEFORE THE "EARLY PURCHASE DATE" SET FORTH BELOW, IRREVOCABLY ELECT TO PURCHASE all (but not less than all) of the Equipment described in the Schedule to which this Addendum is attached for the "FMV Early Option Price" set forth next to the corresponding Early Purchase Date plus all applicable taxes:

| Early Purchase Date | FMV Early Option Price |
|---|---|
| after 60 monthly payments | $56,023.00 |

Lessee and Lessor agree that if Lessee acquires any upgrade to or non-severable improvement of the Equipment and/or in the case of GE Equipment any Licensed Software which increases its productivity or value, then Lessee and Lessor will adjust the FMV Early Option Price to also reflect the upgrade or improvement. If the upgrade is financed by a party other than Lessor or paid for in cash, the value of this upgrade will not be included in determining the FMV Early Option Price.

2.   Lessee's purchase of the Equipment (and in the case of GE Equipment any Operating Documentation and Tools) is on an AS-IS, WHERE-IS basis without recourse or warranty of any kind against or by Lessor.

Confidential
V&S 02271

MASTER LEASE SCHEDUL   DDENDUM

3.   Lessee and Lessor agree and acknowledge that the FMV Early Option Price set forth above is a reasonable prediction of the fair market value of the Equipment at the corresponding Early Purchase Date.

4.   Lessee may only exercise the option to purchase described in **Paragraph 1**, if, at the time of such exercise, no uncured Event of Default exists under this Schedule or under any other Schedule or agreement between Lessee and Lessor.

5.   Notwithstanding anything to the contrary contained herein, Lessee's failure to pay the FMV Early Option Price within the terms of Lessor's invoice to Lessee for the FMV Early Option Price shall, at Lessor's sole discretion, render this option to purchase and Lessee's exercise of this option to purchase null and void, and Lessee shall have no further option or right to purchase the Equipment.

6.   If Lessee does not exercise this option to purchase within the time provided, or if Lessee's timely exercise of the option to purchase is rendered null and void by Lessee's failure to pay the FMV Early Option Price in a timely manner as provided in **Paragraph 5**, the terms and provisions of the "End-of-Term Options" section of the Master Lease Agreement will govern the expiration of the Schedule.

Lessor:
**GE Healthcare Financial Services,**
**a component of General Electric Company**

Lessee:
**V & S Medical Associates, LLC**

_____

Authorized Signature

_____

Authorized Signature

_Partner_

Title

_____

Title

_____

Date

_____

Date

**Confidential**
**V&S 02272**

 **GE Healthcare Financial Services**

## GUARANTY

THIS GUARANTY is executed as of the _____ day of _____, _____.

## 1. GUARANTY

As an inducement to GE Healthcare Financial Services, a component of General Electric Company (hereinafter referred to as "Company"), and its affiliates, or any of them, to supply goods, equipment or services upon credit or consignment, or to provide financial assistance to **V & S Medical Associates, LLC** (hereinafter referred to as the "Customer"), and in consideration of Company, in its discretion, entering into any one or more such transactions, the undersigned does hereby guarantee the punctual payment and prompt performance of any and all indebtedness, liability, or obligation of any kind that Customer may now owe or that it may at any time hereafter owe to Company, whether such indebtedness or obligation arises from or is evidenced by any note, draft, check or other instrument or is based upon contract or open account or otherwise (the "Obligations"). The undersigned does hereby agree to pay reasonable attorney's fees and all other costs and expenses that may be incurred by Company in the enforcement of this Guaranty.

The undersigned agrees that nothing herein shall be deemed to render this Guaranty in any way conditional, or to require Company first to seek or exhaust any remedy against Customer, its successors or assigns, or any other person obligated or liable under any instrument, contract, open account, or other form of Obligation, and it is agreed that Company may, upon default of Customer, or at any time thereafter, make demand upon and receive payment of any sum or performance of any covenant or agreement hereunder guaranteed by the undersigned, with or without notice or demand for payment or performance by Customer, its successors or assigns, or any other person.

## 2. WAIVER OF NOTICE

The undersigned hereby expressly waives notice of each and every one of the following:

(a)  Acceptance of this Guaranty by Company;

(b)  Any Obligation incurred or owing on the part of Customer to Company;

**Confidential
V&S 00681**

. GUARANTY

---

(c)   Default by Customer with respect to any Obligation owing to Company;

(d)   Presentment, protest and demand, and notice of protest, demand, and dishonor, or any of them, with respect to any note or other instrument to which the Customer may be a party or as to which it may be obligated;

(e)   Notice of adverse change in Customer's financial condition;

(f)   Notice of any other fact that might materially increase the risk of the undersigned; and

(g)   Company's first foreclosing, proceeding against, or exhausting any collateral or security for any Obligation before requiring the undersigned to pay the full amount of the liability hereby created.

## 3. MODIFICATION OF OBLIGATIONS

The undersigned expressly agrees to remain bound under this Guaranty notwithstanding any of the following acts by Company:

(a)   The extension of time of performance to, the granting of any other indulgence to, or any other modification of any Obligation of, Customer.

(b)   The acceptance, alteration, or release of any security, whether provided by Customer or any other person.

## 4. NATURE, SCOPE, AND DURATION OF GUARANTY

This Guaranty is unlimited in amount and shall continue from this date until revoked as provided below in this Section 4. This is a continuing, indivisible, and cumulative guaranty of each and every debt or Obligation incurred by or owing from Customer to Company either at the date hereof or at any time hereafter during the term of this Guaranty. The undersigned may at any time revoke this Guaranty to be effective 10 days from the receipt of notice of revocation sent by the undersigned, by registered mail, to GENERAL ELECTRIC COMPANY, c/o GE Healthcare Financial Services, P.O. Box 414, W-490, Milwaukee, WI 53201-0414, Attn: Risk Analyst. In the event of the death or incompetency of the undersigned, this Guaranty shall continue in effect for 6 weeks from the date of such death or incompetency unless Company sooner receives written notice thereof, in which case revocation shall be effective as of the date of receipt of such written notice. Revocation shall in no way terminate or otherwise affect (a) any liability or obligation of the undersigned existing on or prior to the effective date of such revocation or (b) any liability or obligation of the undersigned arising after the effective date of such revocation with respect to any Obligation incurred on or before the effective date of such revocation, including,

Confidential
V&S 00682

without limitation, unfulfilled orders or other contracts existing on the effective date and completed in due course thereafter or cancelled or terminated by either Company or Customer.

5. WAIVER BY COMPANY

The failure of Company to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or of the right thereafter to enforce the same.

6. WAIVER BY CUSTOMER AND COMPANY

To the extent permitted by law, the undersigned and Company agree to, and do, waive trial by jury in any action, proceeding, or counterclaim brought by either the undersigned or Company against the other on any matters whatsoever arising out of or in any way connected with this Guaranty or any claim of damage resulting from any act or omission of the undersigned or Company or either of them in any way connected with this Guaranty.

7. LIABILITY OF CO-GUARANTORS

If more than one party signs this instrument as the undersigned, all obligations and liabilities created by this instrument shall be the joint and several obligation and liability of each of such parties.   Each undersigned party shall continue independently to be bound by this instrument notwithstanding any compromise, settlement, or release entered into with any one or more of the other undersigned parties hereunto.

8. APPLICABLE LAW

This Guaranty and its interpretation and application shall in all respects be governed by the law of the State of Pennsylvania.

9. ENTIRE AGREEMENT

This instrument contains the entire and only agreement between the undersigned and Company with respect to the guaranty of debts and Obligations of Customer by the undersigned, and any representation, promise, condition, or understanding in connection therewith that is not expressed in this instrument shall not be binding on Company or upon the undersigned, all prior collateral understandings and agreements concerning such Guaranty having been superseded by this instrument. The provisions of this instrument shall not be changed or discharged except by a written instrument signed by an authorized representative of Company and by the undersigned and may be terminated only in accordance with the provisions of Section 4.

Confidential
V&S 00683

· GUARANTY

_____

Signed and sealed by the parties hereto as of the date and year first above written.

Saleh Kamran

_Alma Faaaap_
Witness

_Ker Kay_
Signature of Guarantor

_Kamran Saleh._
Print Name

_President_
Title (if not individual)

▓▓▓▓▓▓▓▓▓▓▓▓ _St_
_Bradford PA_
Guarantor's Address

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Social Security # / Federal Tax ID #

Guaranty                        Page 4 of 4                        Rev. 3/14/01

Confidential
V&S 00684

MASTER LEASE SCHEDULE EXHIBIT

 **GE Healthcare Financial Services**

## ADDENDUM TO SCHEDULE DATED AS OF 6/6/01
## TO MASTER LEASE AGREEMENT DATED AS OF 6/6/01
## INTERNAL CONTRACT REFERENCE NUMBER 8515502
## INTERNAL ORDER REFERENCE NUMBER 861-107879
## EQUIPMENT DESCRIPTION: GE/SMV DSi Nuclear Camera

### EARLY BUY-OUT OPTION

This Addendum is attached to and made a part of the Schedule identified above. This Addendum sets forth specific terms and conditions in addition to those in the Schedule and the Master Lease Agreement to which the Schedule is attached and amends and supplements that Schedule. Capitalized terms not defined herein shall have the meanings assigned to them in the Schedule or the Master Lease Agreement identified above.

With respect to the Schedule only, the Schedule is amended and supplemented by adding the following Early Buy-Out Option provision:

1. Provided the Schedule has not already been terminated and Lessee is not in default under the Schedule or any other agreement between Lessee and Lessor, LESSEE MAY, BY WRITTEN NOTICE TO LESSOR, AT LEAST 30 BUT NOT MORE THAN 90 DAYS BEFORE THE "EARLY PURCHASE DATE" SET FORTH BELOW, IRREVOCABLY ELECT TO PURCHASE all (but not less than all) of the Equipment described in the Schedule to which this Addendum is attached for the "FMV Early Option Price" set forth next to the corresponding Early Purchase Date plus all applicable taxes:

   | Early Purchase Date | FMV Early Option Price |
   |---|---|
   | after 60 monthly payments | $56,023.00 |

   Lessee and Lessor agree that if Lessee acquires any upgrade to or non-severable improvement of the Equipment and/or in the case of GE Equipment any Licensed Software which increases its productivity or value, then Lessee and Lessor will adjust the FMV Early Option Price to also reflect the upgrade or improvement. If the upgrade is financed by a party other than Lessor or paid for in cash, the value of this upgrade will not be included in determining the FMV Early Option Price.

2. Lessee's purchase of the Equipment (and in the case of GE Equipment any Operating Documentation and Tools) is on an AS-IS, WHERE-IS basis without recourse or warranty of any kind against or by Lessor.

Early Buy-Out Option                                                           Rev. 3/14/01

Page 1 of 2

**Confidential
V&S 00685**

MASTER LEASE SCHEDULE ADDENDUM

3.  Lessee and Lessor agree and acknowledge that the FMV Early Option Price set forth above is a reasonable prediction of the fair market value of the Equipment at the corresponding Early Purchase Date.

4.  Lessee may only exercise the option to purchase described in **Paragraph 1**, if, at the time of such exercise, no uncured Event of Default exists under this Schedule or under any other Schedule or agreement between Lessee and Lessor.

5.  Notwithstanding anything to the contrary contained herein, Lessee's failure to pay the FMV Early Option Price within the terms of Lessor's invoice to Lessee for the FMV Early Option Price shall, at Lessor's sole discretion, render this option to purchase and Lessee's exercise of this option to purchase null and void, and Lessee shall have no further option or right to purchase the Equipment.

6.  If Lessee does not exercise this option to purchase within the time provided, or if Lessee's timely exercise of the option to purchase is rendered null and void by Lessee's failure to pay the FMV Early Option Price in a timely manner as provided in **Paragraph 5**, the terms and provisions of the "End-of-Term Options" section of the Master Lease Agreement will govern the expiration of the Schedule.

Lessor:                                          Lessee:
GE Healthcare Financial Services,                V & S Medical Associates, LLC
a component of General Electric Company

_____                 _____

Authorized Signature                             Authorized Signature

                                                 _Partner_

_____                 _____

Title                                            Title

_____                 _____

Date                                             Date

Confidential
V&S 00686



## BRADFORD REGIONAL MEDICAL CENTER
### Bradford, Pennsylvania

## MEMORANDUM

**TO:**    James Tarasovitch,
           Senior Vice President/CFO

**FROM:**  Glen A. Washington,
           Senior Vice President, Operations

**DATE:**  March 18, 2005

**RE:**    V&S CAMERA

Tim Brown and I spoke to Wes Feldin of Philips Capital this morning, and the payments break out as follows:

**GE CAMERA BUYOUT:**
$149,025 - Effective 1/20/05
Separate Invoice:  Monthly Payment of $3,958 First Month on 2/1/05 *(Paid)*
59 Subsequent Payments of $3,159.38 - Effective 3/1/05 *(Not Paid)*

**PHILIPS NUCLEAR CAMERA:**
60 Payments of $4,494.77 - Effective 1/1/05 *(Not Paid)*

**PHILIPS SERVICE AGREEMENT:**
60 Payments of $2,299.14/mo - Effective 2/09/05  *(2/05 and 3/05 Not Paid)*

These will go to V&S as three separate monthly invoices.  Our regular monthly payments for the camera will be:

| | |
|---|---|
| GE Buyout: | $ 3,159.38 |
| Philips Nuc Camera | $ 4,494.77 |
| Monthly Service | $ 2,299.14 |
| Sublease Rights | $23,655.00 |
| **TOTAL** | **$33,608.29** |

GAW:cr
cc:    George Leonhardt
       Peter Vaccaro, MD
       Kamran Saleh, MD

HOSP 0003717

*Revised*

*Memo*

**BRADFORD REGIONAL MEDICAL CENTER**
Bradford, PA  16701

M E M O R A N D U M

To:       Glen Washington, Sr. V.P. Operations

From:    Michael D. Shanks, Budget Manager

Date:    March 23, 2005

Subject:  **V & S Payments**

*CONFIDENTIAL*

    Based on your letter to Jim Tarasovitch, dated March 18th, please see
the attached schedule detailing the payments already made to V & S, the
amounts due in the future, and the proposed payment for April 1,2005.

    The proposed payment for April is $48,305.26 with subsequent payments
of $33,608.29 through September, 2008, and payments for the Phillips
portion  being made through January, 2010.


cc: Jim Tarasovitch, C.F.O.
    John Greenly, Controller

HOSP 0003718

**Bradford Regional Medical Center**
Analysis of payments due to V & S
January, '05 thru January '10

| Month | Phillips Medical Capital - GE Camera | V & S - Rights Under Sublease | Phillips Nuclear Camera | Phillips Serv. Agreement | Total Payment | Amount Due | Amount Paid |
|---|---|---|---|---|---|---|---|
| Jan-05 | 6,545.00 | 23,655.00 | 4494.77 | | 34,694.77 | | 30,200.00 |
| Feb-05 | 3,958.13 | 23,655.00 | 4494.77 | 2299.14 | 34,407.04 | | 30,200.00 |
| Mar-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | 27,613.13 |
| Apr-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | 136,318.39 | 48,305.26 (a) |
| May-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jun-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jul-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | (a) Proposed amount to pay | |
| Aug-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | - 4/1/05 | |
| Sep-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Oct-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Nov-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Dec-05 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jan-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Feb-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Mar-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Apr-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| May-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jun-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jul-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Aug-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Sep-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Oct-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Nov-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Dec-06 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jan-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Feb-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Mar-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Apr-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| May-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jun-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jul-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Aug-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Sep-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Oct-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Nov-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Dec-07 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jan-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Feb-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Mar-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Apr-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| May-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jun-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Jul-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Aug-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Sep-08 | 3,159.38 | 23,655.00 | 4494.77 | 2299.14 | 33,608.29 | | |
| Oct-08 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Nov-08 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Dec-08 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Jan-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Feb-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Mar-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Apr-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| May-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Jun-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Jul-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Aug-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Sep-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Oct-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Nov-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Dec-09 | 3,159.38 | | 4494.77 | 2299.14 | 9,953.29 | | |
| Jan-10 | 3,159.38 | | | 2299.14 | 7,654.15 | | |
| | 196,906.55 | 1,064,475.00 | | | 1,671,211.78 | | |

CONFIDENTIAL

@001

05/22/2003 16:28 FAX

## HORTY, SPRINGER & MATTERN

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4614 FIFTH AVENUE, PITTSBURGH, PA 15213
TELEPHONE: (412) 687-7677
Facsimile: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE E. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAPENTA
LAURA W M. MARSUCCI
NICHOLAS I. CALABRESP
I CEANNO WII CHELL O'BRIEN
MONICA J. HANSLOVAN
RACHEL R. REMALEY
PHILIP W. ZARONE

ERIC W. SPRINGER OF COUNSEL

CLARA L. MATTERN (1931-1981)

**FACSIMILE COVER PAGE**

# CONFIDENTIAL

*IMPORTANT NOTICE*

*This message is intended only for the use of the individual or entity to which it is addressed  It may contain information that is privileged, confidential and exempt from disclosure under law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service.  Thank you*

TO:        **Edward J. Kabala, Esquire**

NAME OF HOSPITAL/FIRM:  **Fox, Rothschild, O'Brien & Frankel, L.L.P.**

FROM:      **Alan J. Steinberg**

DATE:      **May 22, 2003**

TIME:      **4:32 pm**

NUMBER OF PAGES (Including this Page): **8**

SENT BY: **Ann Schneider**

NOTES:

IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION
PLEASE CALL 412-687-7677

Confidential
V&S 00985

☑002

05/22/2003 18:29 FAX

# HORTY, SPRINGER & MATTERN

### ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

4614 FIFTH AVENUE, PITTSBURGH, PA 15213

TELEPHONE: (412) 687-7677
FACSIMILE: (412) 687-7692
www.hortyspringer.com

JOHN HORTY
LINDA HADDAD
BARBARA A. BLACKMOND
DANIEL M. MULHOLLAND III
CHARLOTTE S. JEFFERIES
HENRY M. CASALE
PAUL A. VERARDI
ALAN J. STEINBERG
SUSAN M. LAPENTA
LAUREN M. MASSUCCI
NICHOLAS T. CALABRESS
LEEANNE MITCHELL O'BRIEN
MONICA J. HANELOVAN
RACHEL B. REMALEY
PHILIP W. ZARONE

ERIC W. SPRINGER [OF COUNSEL]
CLARA L. MATTERN [1931-1981]

## CONFIDENTIAL

### VIA FACSIMILE
### AND U.S. MAIL

May 22, 2003

Edward J. Kabala, Esquire
Fox, Rothschild, O'Brien & Frankel, L.L.P.
625 Liberty Avenue
29th Floor
Pittsburgh, PA  15222-3115

> Re:   Bradford Regional Medical Center/
>           Drs. Saleh and Vaccaro

Dear Ed:

As per the voice-mail I left you earlier today, enclosed are confidential copies of the letter George Leonhardt received from physicians critical of the nuclear imaging equipment transaction and the Medical Center's letter response.

We are sharing this with you so that Drs. Saleh and Vaccaro are knowledgeable about these communications and won't be caught unaware. The Medical Center feels that its return letter is a strong response which also leaves open the door to working together in the future. That is still the end goal, through the Under Arrangements venture.

The Medical Center requests that Drs. Saleh and Vaccaro refrain from talking about either of these letters with any of the Medical Staff physicians. For our end goal of the Under

Edward J. Kabala, Esquire
May 22, 2003
Page 2

Arrangements venture, we need a calm and dispassionate reaction by both the Medical Center
and V&S Medical Associates. The Medical Center appreciates that kind of even-tempered, goal-
focused handling by your clients.

If you have any questions or would like to discuss this further, please give me a call.

Very truly yours,

Alan J. Steinberg

cc:    George Leonhardt (letter only)

AJS/avs

Enclosures

127051 1

HORTY, SPRINGER & MATTERN, P.C.

Confidential
V&S 00987

05/22/2003 19:28 FAX     16145885722          ADMIN                          @004
                                                                        PAGE  02

May 12, 2003


George E. Leonhardt
Chief Executive Officer
Bradford Regional Medical Center
116 Interstate Parkway
Bradford, PA 16701

Dear Mr. Leonhardt:

   We are writing as physicians who are concerned regarding the activities of the Bradford
Regional Medical Center (BRMC) in providing preferential treatment to certain physicians. We
believe this preferential treatment could constitute impermissible activity under federal law and,
therefore, we are requesting additional information.

   On December 12, 2001 the Bradford Regional Medical Center Board of Directors
adopted a policy entitled "Procedures for Assessing whether Practices have Significantly
Competing Financial Relationships." This Policy deals with new applicants and existing staff
members who have a financial relationship with, concerning or interest in a Competing Entity.
The recruitment of Dr. Weintraub, the purchase of certain practices and the departure of Drs.
Saleh, Vaccaro and Jamil is well known in the community. It is also recognized that substantial
Hospital charitable assets were expended to support these practices. Nonetheless, these
physicians have instituted various diagnostic testing services (namely nuclear medicine and
stress testing), the performance of which is in direct competition with the Hospital and has been
in direct competition throughout the existence of the above referenced Hospital Policy. To our
knowledge, however, there has been no curtailment of staff privileges for any of these
physicians.

   Now it appears that BRMC is using its charitable resources to purchase the physicians'
equipment in order to divert diagnostic testing in the physicians' private offices to the Hospital
rather than enforcing the Hospital Policy. Although BRMC is free to enter into contractual
agreements with private parties to purchase equipment, etc., we have reason to believe that the
amounts to be paid to the physicians far exceeds fair market value and, consequently, is payment
for referrals.

   We have significant concerns regarding this activity and believe the resources that have
been expended, or will be expended, by BRMC as a tax exempt facility have or could constitute
private inurement. In addition, it appears that many of the actions being taken are done so in
order to induce these individuals to refer patients to the Hospital for diagnostic testing by
purchasing this right. Although this may be an attempt to accomplish this in the guise of a
contract to purchase equipment, we continue to believe that the amounts contemplated create
significant legal problems. Outside of the legal implications for the Hospital and certain

Confidential
V&S 00988

05/22/2003 19:29 FAX    16145085722                ADMIN                              @005
                                                                                     PAGE  83

George E. Leonhardt
May 12, 2003
Page 2


physicians, we believe that the Board Policy has been invalidated and is, therefore, not
applicable to any applicants or members of the Medical Staff.

    We do not believe it is in the community's best interest to utilize Hospital resources in
this manner.  In addition, we believe that these transactions may very well fall outside of the
permissible parameters for tax exempt entities as well as constitute a violation of the federal anti-
kickback statutes contained in the amendments to the Social Security Act.

    If you do not respond by contacting us to discuss this further, we will need to raise these
concerns directly with the Attorney General's Office as well as the Office of Inspector General.
We do not wish to go in that direction, but we do not believe that the Hospital's actions are
responsible.

                                   Very truly yours,


J. R. Nadell, M.D.
(J. RAO NADEWLA, MD)

FAIEZ ROWHANI, MD                          Alan Aziz, M.D.
                                           (ABU AZIZ)
M Jacobs, MD

Paul B. Kirsch M.D.                        (D) DeJawo MD
D. Singh, M.D.
(D. SINGH)


cc:  Bradford Regional Medical Center
     Board of Trustees


**Confidential
V&S 00989**

# V & S MEDICAL ASSOCIATES

Peter Vaccaro, M.D.
Kamran Saleh, M.D.
Qazi Jamil, M.D.

24 WEST WASHINGTON STREET
BRADFORD, PENNSYLVANIA 16701-0797
Telephone (814) 368-1000

December 11, 2006

Gary Marris, Senior Vice President
Hamot Medical Center
201 State Street
Erie, PA  16550-0001

Dear Mr. Marris:

   This letter serves as notice that we are making a charitable donation to Hamot
Medical Center of a 2001 GE/SMV, Model DSX-i gamma camera.  If anything further is
needed please do not hesitate to contact us.

Sincerely,

Kamran Saleh, MD

Peter Vaccaro, MD

KS:ap

V&S 03319

 

**Hamot**

Hamot Medical Center
201 State Street
Erie, PA 16550
(814) 877-6000
www.hamot.org

December 12, 2006

Kamran Saleh, M.D.
Peter Vaccaro, M.D.
V & S Medical Associates
24 West Washington Street
Bradford, PA  16701-1000

Dear Drs Saleh and Vaccaro:

Hamot Medical Center would like to express its deepest appreciation for your generosity for the donation of the 2001GE/SMV, Model DSX-I gamma camera from V & S Medical Associates.  We will take possession of the equipment with this letter of acceptance and make arrangements to remove the equipment as soon as possible.

Charitable contributions such as this, will allow us to continue to serve that patients of the region with the highest quality medical care.

Sincerely,

Brad Dinger
Director of Finance

Gary Maras
Senior Vice President, Hamot Medical Center

V&S 03320