IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DILBAGH SINGH, M.D., PAUL KIRSCH, M.D., V. RAO NADELLA, M.D., and MARTIN JACOBS, M.D., | : <br> : Civil Action No. 04-186E <br> : <br> : <br> : The Honorable Judge Cohill <br> : |
| Relators, | : <br> : |
| v. | : <br> : |
| BRADFORD REGIONAL MEDICAL CENTER, V & S MEDICAL ASSOCIATES, LLC, PETER VACCARO, M.D., KAMRAN SALEH, M.D., and DOES I through XX, | : <br> : <br> : <br> : <br> : <br> : (Filed Electronically) <br> : |
| Defendants. | : |

**V&S MEDICAL ASSOCIATES, LLC, PETER VACCARO, M.D. AND KAMRAN SALEH, M.D.'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT UNDER LOCAL RULE 56.1**

Defendants V&S Medical Associates, LLC ("V&S"), Peter Vaccaro, M.D. ("Vaccaro"), and Kamran Saleh, M.D., ("Saleh") (collectively referred to as the "V&S Defendants"), by their undersigned counsel, file the following Concise Statement of Material Facts In Support of Their Motion for Summary Judgment Under Local Rule 56.1, stating as follows:

**I.     Incorporation of BRMC's Concise Statement of Facts.**

1.     The V&S Defendants incorporate by reference paragraphs 1-3, 7, and 9-29 of the Concise Statement of Facts filed by co-Defendant Bradford Regional Medical Center ("BRMC"). In addition, the V&S Defendants assert the following additional facts.

## II.    Factual Background.

2.    Drs. Vaccaro and Saleh are the sole and equal owners of a two-physician medical practice in the small town of Bradford, Pennsylvania.[1]

3.    Drs. Vaccaro and Saleh specialize in the practice of internal medicine and are members of the medical staff of BRMC.[2]

4.    Vaccaro and Saleh were previously employed by BRMC, but in 2000, they purchased their practice from BRMC and created V&S.[3]  The transaction included a payment by Vaccaro and Saleh of $300,000 to BRMC to release the doctors from two year non-compete agreements they had in their employment agreements with BRMC.[4]

5.    In 2001, approximately one year after purchasing their practice, Vaccaro and Saleh decided to expand their practice by leasing a nuclear camera and performing related diagnostic services for their patients in their office.[5]

6.    However, shortly after they were committed to their nuclear camera lease, they were informed by BRMC that by operating a nuclear camera in their office, the doctors would

---

[1] Deposition Transcript of Kamran Saleh, M.D., August 9, 2007 at pp. 6:6 to 6:23 and 12:10 to 13:13. Selected pages of Dr. Saleh's transcript are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit A; *see also* Affidavit of Kamran Saleh ("Saleh Aff.") at ¶ 2 and Affidavit of Peter Vaccaro ("Vaccaro Aff.") at ¶ 2, true and correct copies of which are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibits B and C, respectively.

[2] Exhibit A, Saleh Transcript, at pp. 9:20 to 11:18. Deposition Transcript of Peter Vaccaro, M.D., August 9, 2007 at pp. 7:10-15 and 15:7-15.  Selected pages of Dr. Vaccaro's transcript are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit D.

[3] Exhibit A, Saleh Transcript, at pp. 6:8-23 and 13:6 to 14:17; Deposition Transcript of Bradford Regional Medical Center's Corporate Designee, July 26, 2007 at pp. 91:2 to 92:19. Selected pages of BRMC's Corporate Designee transcript are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit E.

[4] Exhibit A, Saleh Transcript, at p. 15:1-14.

[5] Exhibit A, Saleh Transcript, at pp. 16:15-17 and 21:18 to 25:6; Exhibit B, Saleh Aff., at ¶ 3; Exhibit C, Vaccaro Aff., at ¶ 3.

likely be in violation of BRMC's recently approved new Policy On Physicians With Competing Financial Interests ("the Policy").[6] The Policy and its related procedures identified certain competing interests that would result in a physician being ineligible for medical staff appointment and clinical privileges at BRMC.[7]

7. The V&S Defendants, who simply wanted to operate a nuclear camera in their office, were faced with limited choices as a result of BRMC's new Policy. They could (i) continue to operate the nuclear camera and allow BRMC to withdraw their privileges (a significant consequence in a small, one hospital town like Bradford, Pennsylvania); (ii) stop using their nuclear camera for which they had a contractual commitment, forego the associated revenue, and suffer the related economic consequences; (iii) engage in costly litigation with BRMC over its ability to deny their privileges with a potential negative outcome given the existing legal climate and state of the law at the time; or (iv) seek some other resolution with BRMC.[8]

8. The V&S Defendants and their legal counsel spent almost two years intensely negotiating with BRMC over the appropriateness and legality of enforcing the Policy against Drs. Vaccaro and Saleh, at a significant cost for all parties, and ultimately sought a compromise to resolve their dispute prior to what could have been costly, disruptive, drawn-out litigation.[9]

---

[6] Exhibit A, Saleh Transcript, at p. 43:10-14. *See also* Policy On Physicians With Competing Financial Interests, dated May 23, 2001. A true and correct copy of the Policy is attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit F and authenticated by BRMC's Corporate Designee at Exhibit E, pp. 85:13 to 86:1; Exhibit B, Saleh Aff., at ¶ 4; Exhibit C, Vaccaro Aff., at ¶ 4.

[7] Exhibit A, Saleh Transcript, at p. 45:4-8; Exhibit B, Saleh Aff., at ¶ 4; Exhibit C, Vaccaro Aff., at ¶ 4.

[8] Exhibit B, Saleh Aff., at ¶ 5; Exhibit C, Vaccaro Aff., at ¶ 5.

[9] Exhibit A, Saleh Transcript, at pp. 82:1 to 84:7 and 103:5-13; Deposition Transcript of George Leonhardt, April 1, 2008 at pp. 43:6 to 44:20 and Deposition Transcript of Edward Kabala, April 3, 2008 at pp. 6:13 to 8:23, 12:12-18 and 21:18 to 25:23. Selected pages of Mr. Leonhardt's and Mr. Kabala's transcripts are attached to the Appendix in

9. One of the solutions proposed by BRMC during these negotiations was an arrangement whereby nuclear cardiology imaging studies would be provided "under arrangement" by an entity that would be owned by physicians on the BRMC medical staff to BRMC patients ("the Under Arrangements Venture").[10] The V&S Defendants agreed to pursue this option, provided (i) that an acceptable financial arrangement could be reached and (ii) that the final arrangement received the appropriate regulatory approval in the form of an Advisory Opinion from the HHS Office of the Inspector General.[11]

10. However, given the amount of time required to explore and implement the Under Arrangements Venture, the parties negotiated a temporary and/or alternate resolution to their two-year dispute while the Under Arrangements Venture negotiations continued.[12] BRMC did not want V&S to continue to perform nuclear camera testing in its office, and BRMC had a need for a second nuclear camera.[13] Accordingly, in 2003, BRMC and V&S negotiated and ultimately entered into a sublease (the "Sublease"), under which V&S leased its nuclear camera to BRMC for a period of five years.[14] The Sublease is due to expire on September 30, 2008.[15]

---

Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibits G and H, respectively; Exhibit B, Saleh Aff., at ¶ 6; Exhibit C, Vaccaro Aff., at ¶ 6.

[10] Exhibit A, Saleh Transcript, at pp. 45:23 to 47:2; Exhibit H, Kabala Transcript, at 21:18 to 23:23; Exhibit B, Saleh Aff., at ¶ 7; Exhibit C, Vaccaro Aff., at ¶ 7.

[11] Exhibit B, Saleh Aff., at ¶ 7; Exhibit C, Vaccaro Aff., at ¶ 7.

[12] Exhibit A, Saleh Transcript, at p. 117:9-18; Exhibit H, Kabala Transcript, at pp. 21:18 to 23:23; Exhibit B, Saleh Aff., at ¶ 8; Exhibit C, Vaccaro Aff., at ¶ 8.

[13] Exhibit A, Saleh Transcript, at p. 74:17-21.

[14] Sublease, October, 1, 2003, at p. 2. A true and correct copy of the Sublease is attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit I and authenticated by Kamran Saleh, M.D. at Exhibit A, p. 162:12-16; Exhibit G, Leonhardt Transcript, at pp. 47:17 to 48:7; Exhibit B, Saleh Aff., at ¶ 8; Exhibit B, Vaccaro Aff., at ¶ 8.

[15] Exhibit I, Sublease, at p. 2; Exhibit B, Saleh Aff., at ¶ 8; Exhibit C, Vaccaro Aff., at ¶ 8.

11. The Sublease was first proposed in early 2003, and the parties spent approximately seven months negotiating and working out the terms of the Sublease.[16] During this time, V&S provided BRMC with data regarding its performance of nuclear camera services in its office, in order to support the numbers being proposed by it.[17]

12. Under the Sublease, BRMC pays a monthly amount to V&S which represents V&S' pass through costs for leasing the nuclear camera equipment, as well as an additional payment for V&S' agreement (i) not to own or operate competing nuclear cardiology imaging equipment within 30 miles of BRMC; and (ii) not to provide other outpatient diagnostic imaging services within 30 miles of BRMC while the Under Arrangements Venture is in development, or if the Under Arrangements Venture is not implemented, to give BRMC a right of first refusal for any other competing diagnostic imaging services.[18]

13. The Sublease expressly provides that if an Under Arrangements Venture is successfully implemented, then the Sublease automatically terminates.[19] Ultimately, though, BRMC has been unable to generate sufficient support for the Under Arrangements Venture and it has not gone forward.[20]

---

[16] Exhibit H, Kabala Transcript at pp. 6:13 to 8:23, 12:12-18 and 21:18 to 25:23; Exhibit B, Saleh Aff., at ¶ 10; Exhibit C, Vaccaro Aff., at ¶ 10.

[17] Exhibit B, Saleh Aff., at ¶ 10; Exhibit C, Vaccaro Aff., at ¶ 10.

[18] Exhibit I, Sublease, at pp. 2-3 and 9-11; *see also* Exhibit A, Saleh Transcript, at pp. 50:17 to 51:9.

[19] Exhibit I, Sublease, at p. 8.

[20] Exhibit A, Saleh Transcript, at pp. 48:10 to 49:2.

14.  Under the terms of the Sublease, the V&S Defendants are not required to refer any patients to BRMC.[21]  Furthermore, neither payment for the non-compete, nor the pass through costs vary based on the volume or value of any services referred to BRMC by Vaccaro and Saleh.[22]

15.  Prior to the Sublease, and prior to obtaining a nuclear camera, Vaccaro and Saleh referred many patients to BRMC for nuclear camera testing.[23]  After the Sublease, Vaccaro and Saleh have continued to make all of their referral decisions in the same manner that they did before they leased any nuclear camera equipment, on a case-by-case basis, based upon convenience, patient preference, and what is in the best interests of the patients.[24]

16.  The payment amount in the Sublease is essentially a straight pass through of V&S' cost for leasing nuclear camera equipment, plus a negotiated amount for the non-compete component of the Sublease.[25]

17.  V&S valued the non-compete component of the Sublease based upon the value of what they gave up under the Sublease.[26]  This included: (i) the convenience and financial benefit of operating a nuclear camera in their office and the ability to operate any other nuclear camera

---

[21] *See* Exhibit I, Sublease; Exhibit A, Saleh Transcript, at p. 104:5-18; *see also* Deposition Transcript of Sal A. Barbera, July 1, 2008, at pp. 89:16-20 and 184:18 to 185:2.  Selected pages of Mr. Barbera's transcript are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit J.

[22] *See* Exhibit I, Sublease; see also Exhibit J, Barbera Transcript, at p. 185:3-6.

[23] Exhibit A, Saleh Transcript, at p. 26:7-14; Exhibit D, Vaccaro Transcript, at pp. 18:23 to 20:15.

[24] Exhibit A, Saleh Transcript, at pp. 18:11 to 19:13, 35:2 to 36:22 and 74:22 to 75:5; Vaccaro Transcript, Exhibit D, at pp. 18:23 to 20:10; Exhibit B, Saleh Aff., at ¶ 17; Exhibit C, Vaccaro Aff., at ¶ 17.

[25] Exhibit A, Saleh Transcript, at pp. 50:21 to 51:9; Exhibit E, BRMC Corporate Designee Transcript, at pp. 142:15 to 143:12; Exhibit B, Saleh Aff., at ¶ 9; Exhibit C, Vaccaro Aff., at ¶ 9.

[26] Exhibit H, Kabala Transcript, at pp. 25:11 to 26:11; Exhibit B, Saleh Aff., at ¶ 11; Exhibit C, Vaccaro Aff., at ¶ 11.

within 30 miles of BRMC; and (ii) the ability to engage in future ventures such as CT, MRI, or other diagnostic imaging services, without giving BRMC the right of first refusal.[27] V&S never took into account the value of any referrals when it negotiated any portions of the Sublease.[28]

18. BRMC also independently valued the non-compete portions of the Sublease and arrived at its own value based upon its estimate of a fair price for V&S to get out of the nuclear camera business, which proved to be generally consistent with the amount proposed by the V&S Defendants.[29] BRMC did not indicate to V&S that it was taking into account the value of any referrals when it was negotiating any portions of the Sublease.[30]

19. Furthermore, BRMC had an independent valuation of the entire Sublease performed by an independent valuation expert, prior to execution, in order to ensure that it was fair market value, and communicated this fact to the V&S Defendants.[31]

20. As the Sublease was being finalized, BRMC decided to invoke a negotiated provision under the Sublease that allowed it to upgrade the nuclear camera equipment from the GE camera used by the V&S Defendants to a new Phillips nuclear camera.[32] The upgrade

---

[27] Exhibit B, Saleh Aff., at ¶ 11; Exhibit C, Vaccaro Aff., at ¶ 11.

[28] Exhibit A, Saleh Transcript, at pp. 118:20 to 119:8; Exhibit H, Kabala Transcript, at pp. 24:16 to 25:23; Exhibit B, Saleh Aff., at ¶ 11; Exhibit C, Vaccaro Aff., at ¶ 11.

[29] Exhibit H, Kabala Transcript, at pp. 26:20 to 27:21; Exhibit B, Saleh Aff., at ¶ 12; Exhibit C, Vaccaro Aff., at ¶ 12.

[30] Exhibit E, BRMC Corporate Designee Transcript, at pp. 147:17 to 149:8; Exhibit G, Leonhardt Transcript, at pp. 50:4 to 51:18 and 64:15 to 65:6; Exhibit H, Kabala Transcript, at pp. 13:22 to 14:3 and 28:14 to 29:2; Exhibit B, Saleh Aff., at ¶ 12; Exhibit C, Vaccaro Aff., at ¶ 12.

[31] Exhibit G, Leonhardt Transcript, at pp. 54:7 to 55:9; *see also* Report of Charles T. Day, a true and correct copy of which is attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibit K and authenticated by George Leonhardt at Exhibit G, p. 54:7-16; Exhibit B, Saleh Aff., at ¶ 13; Exhibit C, Vaccaro Aff., at ¶ 13.

[32] Exhibit A, Saleh Transcript, at pp. 51:10 to 53:6.

resulted in a slightly higher pass through cost paid by BRMC for the new equipment.[33] However, the amount paid for the non-compete remained the same.[34]

21. During an unexpected delay in upgrading the nuclear camera, the GE camera was not relocated to BRMC.[35] Instead, BRMC entered into a separate agreement for temporary use of the space and services of V&S by BRMC (the "Space and Services Agreement").[36] The Space and Services Agreement was memorialized in the form of a written proposal and invoice from V&S, and the invoice was approved and executed by BRMC's Chief Financial Officer.[37] The Space and Services Agreement, which was in effect for only several months and terminated in June of 2004, called for BRMC to pay V&S (i) $2,500 per month for the space where the GE camera was located in V&S's offices, (ii) pass through charges for performance of nuclear cardiology tests, and (iii) a billing fee equal to 10% of the amounts collected for nuclear cardiology services while tests were being performed at V&S on behalf of BRMC. *Id.*

22. The Relators have no knowledge of and have no evidence of any false claims submitted by the V&S Defendants to the Government.[38]

---

[33] Exhibit A, Saleh Transcript, at p. 53:7-16; Exhibit E, BRMC Corporate Designee Transcript, at pp. 186:8 to 187:11.

[34] Exhibit E, BRMC Corporate Designee Transcript, at p. 189:8-11.

[35] Exhibit G, Leonhardt Transcript, at pp. 77:21 to 78:6 and 87:12 to 88:7.

[36] True and correct copies of the Letter from Drs. Saleh and Vaccaro to George Leonhardt, dated October 2, 2003 (authenticated by George Leonhardt at Exhibit G, p. 91:2-11), and V&S Billing Statements and Receipts (authenticated by Kamran Saleh, M.D. at Exhibit A, pp. 151:17 to 159:22) are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibits L and M, respectively. *See also* Exhibit G, Leonhardt Transcript, at pp. 78:13 to 80:3.

[37] Exhibit G, Leonhardt Transcript, at pp. 78:13 to 80:3 and 91:2-11; Exhibit A, Saleh Transcript, at pp. 151:17 to 159:22; *see also* Exhibits L and M.

[38] Deposition Transcript of V. Rao Nadella, M.D., August 20, 2007 at pp. 143:23 to 144:20; Deposition Transcript of Dilbagh Singh, M.D., August 21, 2007 at p. 128:14-23; Deposition Transcript of Martin David Jacobs, M.D., August 21, 2007 at pp. 52:7 to 53:4; Deposition Transcript of Paul B. Kirsch, M.D., August 20, 2007 at pp. 73:21 to 74:5. Selected pages of Dr. Nadella's, Dr. Singh's, Dr. Jacob's and Dr. Kirsch's transcripts are attached to the

23.     The Relators do not claim that the V&S Defendants submitted any claims to the Government for reimbursement for services that were not actually provided by them.[39]

24.     The Relators do not claim that the V&S Defendants submitted any claims to the Government for reimbursement for services they provided that were not medically necessary.[40]

25.     The V&S Defendants had no involvement in the preparation, review or submittal of any cost reports submitted to the Government by BRMC.[41] Prior to this litigation, the V&S Defendants were not aware of the cost reports filed by BRMC and other hospitals, or any certifications which may be included with the hospital cost reports.[42] The Relators themselves, who are all other physicians in the Bradford region, admit to being unaware of the hospital cost reports and accompanying certifications, prepared and submitted by BRMC prior to this litigation.[43]

26.     Prior to the above-captioned litigation, the V&S Defendants never saw copies of the written valuation prepared for BRMC by Charles Day, or the internal summaries regarding the Sublease prepared by BRMC for the BRMC Board of Directors.[44]

---

Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibits N, O, P, and Q, respectively.

[39] Exhibit N, Nadella Transcript, at pp. 144:21 to 145:5; Exhibit O, Singh Transcript, at p. 129:6-10; Exhibit P, Jacobs Transcript, at p. 55:11-15; Exhibit Q, Kirsch Transcript, at p. 76:3-7.

[40] Exhibit N, Nadella Transcript, at pp. 144:21 to 145:1; Exhibit O, Singh Transcript, at p. 129:1-5; Exhibit P, Jacobs Transcript, at p. 55:6-10; Exhibit Q, Kirsch Transcript, at pp. 75:21 to 76:2.

[41] Exhibit B, Saleh Aff., at ¶ 18; Exhibit C, Vaccaro Aff., at ¶ 18.

[42] *Id.*

[43] Exhibit N, Nadella Transcript, at pp. 145:10 to 146:21; Exhibit O, Singh Transcript, at pp. 58:18 to 60:20 and 130:5 to 131:9; Exhibit P, Jacobs Transcript, at pp. 22:11 to 23:8 and 53:5 to 55:5; Exhibit Q, Kirsch Transcript, at pp. 74:6 to 75:20.

[44] Exhibit B, Saleh Aff., at ¶ 19; Exhibit C, Vaccaro Aff., at ¶ 19.

27. As owners and employees of V&S, Vaccaro and Saheh's compensation does not currently vary in any manner with or take into account the volume or value of services or studies ordered by them at BRMC or elsewhere, nor has such compensation varied with or taken into account such referrals at any time during the term of the sublease.[45]

28. The Relators' own purported expert, a former hospital administrator, acknowledges that there is nothing inherently unlawful about either a sublease for medical equipment, or a non-compete agreement between a hospital and a physicians' practice.[46]

29. When they entered into them, Vaccaro and Saleh did not believe that the Sublease and related arrangements violated any federal law, including, without limitation, the Stark Law and the Anti-kickback Statute.[47]

30. Vaccaro and Saleh believed that the Sublease and related arrangements were fair market value, without any consideration of potential referrals.[48]

31. The Relators have never had a valuation performed on the Sublease and related arrangements and have not and cannot offer any expert opinions that the Sublease and related arrangements are not fair market value.[49]

---

[45] Exhibit B, Saleh Aff., at ¶ 16; Exhibit C, Vaccaro Aff., at ¶ 16.

[46] Exhibit J, Barbera Transcript, at pp. 79:3-7, 115:22 to 116:7 and 184:8-17.

[47] Exhibit B, Saleh Aff., at ¶ 14; Exhibit C, Vaccaro Aff., at ¶ 14; Exhibit A, Saleh Transcript, at pp. 86:2 to 91:1 and 93:17 to 94:1; Exhibit D, Vaccaro Transcript, at pp. 40:14 to 41:2; Exhibit H, Kabala Transcript, at pp. 12:18 and 23:9-23.

[48] Exhibit B, Saleh Aff., at ¶¶ 11, 15; Exhibit C, Vaccaro Aff., at ¶¶ 11, 15.

[49] Exhibit J, Barbera Transcript, at pp. 81:6-17 and 123:9-22.

32. The Defendants in this case have had a nationally recognized valuation expert review the Sublease and related arrangements, and he has concurred with the prior opinion of BRMC's valuation expert that they are all fair market value.[50]

                                                     Respectfully submitted,

                                                     FOX ROTHSCHILD LLP

Dated: September 10, 2008                    s/Carl J. Rychcik
                                                   Carl J. Rychcik
                                                   PA. I.D. # 73754
                                                   FOX ROTHSCHILD LLP
                                                   625 Liberty Avenue, 29th Floor
                                                   Pittsburgh, Pa  15222
                                                   Phone:  (412) 394-5549
                                                   crychcik@foxrothschild.com

                                                   Attorneys for Defendants
                                                   V&S Medical Associates, LLC
                                                   Peter Vaccaro, M.D.
                                                   Kamran Saleh, M.D.

---

[50] See Expert Report of James H. Jordon, CFA, ASA, June 5, 2008, at pp. 1-4, authenticated by James Jordon at his July 2, 2008 deposition at pp. 6:15 to 7:12.  True and correct copies of the Expert Report of James H. Jordon and the Deposition Transcript of James H. Jordon are attached to the Appendix in Support of V&S Medical Associates, LLC, Peter Vaccaro, M.D. and Kamran Saleh, M.D.'s Motion for Summary Judgment at Exhibits R and S, respectively.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2008, a true and correct copy of the foregoing Concise Statement of Material Facts In Support of Its Motion For Summary Judgment Under Local Rule 56.1 was served via the Court's ECF transmission facilities upon the following counsel of record:

Andrew M. Stone
Allegheny Building, Suite 1400
429 Grant Street
Pittsburgh, PA  15219
astone@stones2.com

G. Mark Simpson
Simpson Law Firm, LLC
165 North Main Street
Jonesboro, GA  30236
mark@marksimpsonlaw.com

Paul E. Skirtich
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
paul.skirtich@usdoj.gov

Daniel M. Mulholland, III
Horty, Springer & Mattern, P.C.
4614 Fifth Avenue
Pittsburgh, PA  15213
dmulholland@hortyspringer.com


　　　　　　　　s/Carl J. Rychcik