# EXHIBIT
# F



## BRADFORD REGIONAL MEDICAL CENTER
## RESOLUTION OF THE BOARD OF DIRECTORS

### POLICY ON PHYSICIANS WITH COMPETING FINANCIAL INTERESTS

**WHEREAS,** Bradford Regional Medical Center (the "Medical Center"), through its Board of Directors, reaffirms its mission to provide quality care to the people in its region regardless of their ability to pay; and

**WHEREAS,** it is the continuing desire of the Board to provide a broad range of services within its facilities at a reasonable cost; and

**WHEREAS,** it is the responsibility of the Board to exercise reasonable care and skill in preserving the fiscal integrity of the Medical Center and in protecting patients; and

**WHEREAS,** in accordance with its legal and ethical responsibilities, the Board of the Medical Center has a fiduciary duty to facilitate the efficient and effective management and operation of its services and facilities; and

**WHEREAS,** the Medical Center is facing increasing competition from other health care entities, which may not share the same commitment to providing quality, comprehensive health care services, including charitable or uncompensated services to patients in the region; and

**WHEREAS,** the Board has determined that proper management of the assets of the Medical Center and sound professional practice require that certain steps be taken to further its mission.

**NOW BE IT RESOLVED THAT** a practitioner who has a financial relationship with, or an ownership or investment interest in, any competing health care entity or services that has or may have a significant impact (as determined by the Board) upon the Medical Center: (i) shall be ineligible to be granted appointment (initial or reappointment) or clinical privileges to practice at the Medical Center and its facilities, and (ii) shall be ineligible for continued appointment and clinical privileges if the practitioner currently has an appointment to the Medical

-1-



DEPOSITION
EXHIBIT
8
7-26-07   jah

HOSP 0004321

Staff and/or clinical privileges to practice at the Medical Center. For the purpose of this Resolution, "financial relationship" shall include, but not be limited to, ownership or investment interests and compensation arrangements. An ownership or investment interest may be through equity, debt, or other means. A compensation arrangement shall include, but not be limited to, arrangement pursuant to which remuneration or an economic benefit is received, directly or indirectly, by the practitioner from the entity.

**BE IT FURTHER RESOLVED THAT** the Medical Center, consistent with legal standards, will use its best efforts to foster cooperative relationships with practitioners to facilitate the provision of health care services in the region so that high quality care can be provided in the most cost-effective manner.

**BE IT FURTHER RESOLVED THAT** action by the Medical Center determining a practitioner to be ineligible for initial appointment, continued appointment, reappointment and/or clinical privileges, as set forth in this Resolution, shall not constitute a professional review action, and thus shall not trigger any rights to a hearing or appeal under the Medical Center's Policy on Appointment, Reappointment and Clinical Privileges, nor shall such determination be reportable to the National Practitioner Data Bank or the Pennsylvania State Board of Medicine.

**BE IT FURTHER RESOLVED THAT** the Management of the Medical Center shall provide notice of this Resolution and Policy as soon as possible after its adoption to all Medical Staff members and other interested parties.

**BE IT FURTHER RESOLVED THAT** the Management of the Medical Center is authorized and directed to develop a protocol or procedures to implement this Board Resolution and Policy and its principles.

ADOPTED this _23rd_ day of _May_____, 2001.

_____
Secretary, Board of Directors

D:\Administration\Board\CompetingInterests-BoardResolution&Policy.wpd

-2-

# BRADFORD REGIONAL MEDICAL CENTER

## PROCEDURES FOR ASSESSING WHETHER PRACTITIONERS HAVE SIGNIFICANT COMPETING FINANCIAL RELATIONSHIPS

## I.    INTRODUCTION

On May 23, 2001, the Board of Directors (the "Board") of Bradford Regional Medical Center (the "Medical Center") adopted a resolution which addressed the issue of practitioners ("Covered Practitioners")[1] who have a financial relationship[2] with, concerning, or investment interest in, a competing health care entity or services ("Competing Entity")[3] that have or may have a significant impact (as determined by the Board) detrimental to the ability of the Medical Center to fulfill its mission.[4]  In adopting the resolution, the Board was concerned that Covered Practitioners would have an incentive to direct their patients away from the services and facilities available at the Medical Center and toward the Competing Entity for reasons unrelated to patient preference, medical necessity, or third-party payor requirements.

---

[1]    Covered Practitioner as used herein includes a corporation or business entity owned by the practitioner, or the practitioner's spouse, sibling, child or other relative who has or holds the financial relationship with or concerning the Competing Entity.

[2]    As used in these Procedures, the term "financial relationship" shall include ownership or investment interests and compensation agreements. An ownership or investment interest may be through equity, debt, or other means. A financial relationship shall also include any arrangement pursuant to which remuneration is paid directly or indirectly from the entity to the individual in question.

[3]    As used in these Procedures, the Competing Entity also must to be located within 30 miles of the Medical Center. A Competing Entity as used in these Procedures may be either (i) a distinct health care entity, or (ii) health care services that the Covered Practitioner provides in his or her practice. When the matter in question concerns (ii), the term Competing Entity and the provisions in which it is used will be understood accordingly.

[4]    At the time of its adoption of the resolution, based upon the information known to it at that time, the Board was not aware of any existing services being provided by any member of the Medical Center's Medical Staff that would constitute a significant impact detrimental to the ability of the Medical Center to fulfill its mission.

-1-

HOSP 0004323

In this way, Covered Practitioners would use the Medical Center's resources as a means to develop a patient base only to divert those patients to the Competing Entity. This use of the Medical Center's facilities would be inconsistent with the Medical Center's mission and would compromise the Medical Center's long-term viability. Thus, the resolution reflected a decision by the Board to deem Covered Practitioners ineligible both for initial appointment and clinical privileges, and reappointment and renewal of clinical privileges.

The Procedures will outline the process to be followed by the Board in determining whether initial applicants and members of the Medical Staff are Covered Practitioners.

-2-

HOSP 0004324

## II.    PROCESS FOR REVIEWING INDIVIDUALS WHO MAY BE "COVERED PRACTITIONERS"

There are some similarities in these Procedures concerning how initial applicants and current Medical Staff members are to be addressed. However, the differences are important enough that initial applicants and current members are addressed in separate sections of these Procedures. The final section of these Procedures will address procedural standards that are applicable to both initial applicants and Medical Staff members.

### A.    Initial Applicants Who Have a Financial Relationship With, Concerning, or Investment Interest in, a Competing Entity.

1.    During the pre-application or initial application process, a copy of these Procedures shall be provided to each applicant and they will be asked to indicate whether or not they have a financial relationship with, concerning, or investment interest in, a Competing Entity. If the Board learns that an initial applicant has a financial relationship concerning or with, or investment interest in, a Competing Entity, the individual will be required to supply information to the Board. The purpose of the information will be to assist the Board in determining whether the financial relationship or investment interest is significant and is inconsistent with, or detrimental to, the interests of the Medical Center.

2.    The following information illustrates the type of information the Board may require:

(a)    a copy of any agreement with or concerning the Competing Entity;

(b)    a copy of any and all policies and procedures of or concerning the Competing Entity that in any way impact on referrals, utilization of services, and incentive compensation;

-3-

HOSP 0004325

(c)     a complete disclosure of the individual's financial, investment or business relationship in, with or concerning the Competing Entity, including any return on investment which in any way is related to referrals;

(d)     an interview with the individual and/or a representative of the Competing Entity; and

(e)     other information deemed relevant by Board to the assessment of this issue.

3.     At the direction of the Board, the CEO shall gather the above information and organize it for review.

4.     The Board, or a designated subcommittee, shall review the information prepared by the CEO of the Medical Center and make a preliminary recommendation. If the Board or the subcommittee's preliminary recommendation is that the individual is a Covered Practitioner, the individual shall be notified, in writing, with information concerning the reasons for this preliminary recommendation. The individual may request a meeting with the Board, or a designated subcommittee, to discuss the recommendation. Any request for a meeting must be in writing, directed to the CEO of the Medical Center, and received within 15 business days of the individual's receipt of the preliminary recommendation.

5.     After a Board or subcommittee meeting with the individual, or if no meeting is requested, the Board shall make a final decision as to whether the individual is a Covered Practitioner. The effect that such a decision would have upon the services provided to the community which the Medical Center serves will also be considered by the Board in its

-4-

HOSP 0004326

decision-making. The Board will make its determination either (a) on the same day it has met with the individual (or has learned that the individual does not desire to meet with the Board), or (b) by the next regularly scheduled Board meeting. A determination by the Board that the individual is a Covered Practitioner requires a 2/3 vote of Board Members present and voting at a duly constituted meeting.

6. If the Board concludes that an initial applicant does not have a financial relationship or investment interest that is significant and is inconsistent with, or detrimental to, the interests of the Medical Center, the individual will be eligible to seek initial appointment and clinical privileges, consistent with other Medical Center policies, and pursuant to the Policy on Appointment, Reappointment and Clinical Privileges of the Medical Center (the "Appointment Policy").

7. If the Board concludes that an initial applicant is a Covered Practitioner and is, therefore, ineligible to seek initial appointment and clinical privileges, notice shall be sent to the individual. The notice shall advise the initial applicant that he or she is ineligible for appointment and clinical privileges.

8. If the Board is unable to determine if the financial relationship or investment interest is significant and is inconsistent with, or detrimental to, the interests of the Medical Center, it may determine that the individual is eligible to seek initial appointment and clinical privileges, consistent with other Medical Center policies, and pursuant to the Appointment Policy, but that appointment and clinical privileges be conditioned on an agreement that the individual will:

-5-

HOSP 0004327

(a)   provide the Board with a copy of any subsequent amendments to the agreement with or concerning the Competing Entity within 10 business days of their effective date;

(b)   provide the Board with a copy of any relevant policies within 10 business days of their effective date;

(c)   inform the patient of services that are available at the Medical Center when they are needed by the patient.

9.    The Board may determine that an initial applicant who refuses to agree to abide by any of the above conditions is ineligible for initial appointment and/or clinical privileges. The Board may further provide that any violation of the above conditions will be deemed to be a voluntary resignation of appointment and clinical privileges.

-6-

HOSP 0004328

B.   **Medical Staff Members Who Have a Financial Relationship With, Concerning, or Investment Interest in, a Competing Entity.**

1.   Members of the Medical Staff who have a financial relationship with, concerning, or investment interest in, a Competing Entity will be subject to an audit, the purpose of which will be to determine if the arrangement or interest is significant and whether their practice patterns are inconsistent with, or detrimental to, the interests of the Medical Center.

2.   At the direction of the Board, the CEO or his designee will be responsible for conducting the audit and may request any relevant information, including information listed in Section II.A.2 above and any information pertaining to the member's referral patterns and utilization rates concerning the Competing Entity.

3.   At the direction of the Board, the CEO shall gather the above information and organize it for review.

4.   The Board, or a designated subcommittee, shall review the information prepared by the CEO of the Medical Center and make a preliminary recommendation.   If the Board or subcommittee's preliminary recommendation is that the member is a Covered Practitioner, the member shall be notified, in writing, with information concerning the reasons for this preliminary recommendation.  The member may request a meeting with the Board, or a designated subcommittee, to discuss the recommendation.  Any request for a meeting must be in writing, directed to the CEO of the Medical Center, and received within 15 business days of the individual's receipt of the preliminary recommendations.

-7-

HOSP 0004329

5.  After a Board or subcommittee meeting with the member, or if no meeting is requested, the Board shall make a final decision as to whether the member is a Covered Practitioner. The effect that such a decision would have upon the services provided to the community which the Medical Center serves will also be considered by the Board in its decision-making. The Board will make its determination either (a) on the same day it has met with the individual (or has learned that the individual does not desire to meet with the Board), or (b) by the next regularly scheduled Board meeting. A determination by the Board that the individual is a Covered Practitioner requires a 2/3 vote of Board Members present and voting at a duly constituted meeting.

6.  If the Board concludes that the member of the Medical Staff does not have a financial relationship or investment interest that is significant and is inconsistent with, or detrimental to, the interests of the Medical Center, no further action will be taken.

7.  If the Board concludes that the member of the Medical Staff is a Covered Practitioner, it may deem the member ineligible for continued appointment and privileges and notice shall be sent. In the alternative, the Board at its sole discretion may allow the member to continue to practice until the expiration of the member's current appointment period.

8.  If the Board is unable to determine if the financial relationship or investment interest is significant and is inconsistent with, or detrimental to, the interests of the Medical Center, it may determine that the member is eligible to continue appointment and clinical privileges conditioned on an agreement that the member will:

-8-

HOSP 0004330

    (a)    provide the Board with a copy of any subsequent amendments to the agreement with or concerning the Competing Entity within 10 business days of their effective date;

    (b)    provide the Board with a copy of any relevant policies within 10 business days of their effective date;

    (c)    inform the patient of services that are available at the Medical Center when they are needed by the patient.

    (d)    not change referral rates as a result of a financial relationship with or concerning, or investment interest in, the Competing Entity;

    (e)    permit the Board to audit, on a quarterly basis, the individual's referrals.

9.    The Board may determine that a member of the Medical Staff who refuses to agree to abide by any of the above conditions is ineligible for continued appointment, reappointment and/or clinical privileges.

10.    Before a Medical Staff member invests in what could be determined to be a Competing Entity, the physician may provide the Board with a letter of intent that describes the potential venture or investment. The Board will review the letter of intent and provide the Medical Staff member with a response as to whether a Competing Entity would be involved, based upon the information provided in the letter of intent. (The Board can also request further information about the potential venture or investment in order to provide the individual with a well-informed response.) The individual can request that he or she meet with the Board either before it delivers its response or within 10 days after receiving the Board's response. The intent of this provision is to provide good faith information to the physician so that he or she can make a well-informed investment

HOSP 0004331

decision. Absent new, material information about the potential venture or investment not previously shared with the Board, once the Board has made its determination, no further review will be conducted so that the physician can make his or her informed investment decision.

HOSP 0004332

C.    **Procedural Standards.**

    1.    The Board's determination that an initial applicant or member of the Medical Staff is a Covered Practitioner, and is not eligible for initial appointment, continued appointment, or reappointment, shall be final. The meeting of the Board or subcommittee prior to this determination, as set forth in Sections II.A.4 and II.B.4 above, shall be the sole and exclusive remedy available to the applicant or member.

    2.    An initial applicant or member of the Medical Staff who is determined by the Board to be a Covered Practitioner may seek reconsideration if there is a material change in their financial relationship with or investment interest in the Competing Entity.

    3.    The Board's determination that an initial applicant or Medical Staff member is not eligible for initial appointment, continued appointment or reappointment does not constitute an adverse professional review action, does not trigger the hearing and appeal provisions set forth in the Appointment Policy, and is not reportable to the State Board or to the National Practitioner Data Bank.

    4.    Failure of an initial applicant to provide relevant information to the Medical Center so that a full and complete audit of the issue of whether the applicant has a financial relationship with, concerning, or investment interest in, a Competing Entity that is significant and is inconsistent with, or detrimental to, the interests of the Medical Center, will result in the application being deemed incomplete. An incomplete application will not be processed.

-11-

HOSP 0004333